UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| SEAN WILSON, individually and on behalf of all other similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> PTT, LLC, a Delaware limited liability company d/b/a HIGH 5 GAMES, LLC, a Delaware limited liability company, <br><br> Defendant. | NO. 3:18-cv-05275-RBL <br><br> MOTION TO DISMISS AND MEMORANDUM IN SUPPORT THEREOF <br><br> ORAL ARGUMENT REQUESTED <br><br> **NOTE ON MOTION CALENDAR: June 15, 2018** |

MOTION TO DISMISS AND MEMORANDUM IN SUPPORT
Case No. 3:18-CV-05275-RBL

**CARNEY BADLEY SPELLMAN, P.S.**
701 FIFTH AVENUE, SUITE 3600
SEATTLE, WA 98104-7010
(206) 622-8020

## TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................................1

II. FACTUAL BACKGROUND ...............................................................................................2

    A.  High 5's Games Only Provide Entertainment, Never Monetary Prizes ............................2

    B.  Washington Gambling Commission Determined Online Games Like the High 5 Video Games Do Not Constitute Gambling. ......................................................................4

    C.  Plaintiff's Counsel Seeks to Manufacture A Series of Class Actions Based on a New, but Potentially Short-lived, Interpretation of Gambling. ..........................................5

    D.  Wilson's $1.99 In-App Purchase Appears Strategic ........................................................6

    E.  High 5 Lacks Contacts with Washington .........................................................................7

III.    ARGUMENT ......................................................................................................................8

    A.  This Court does not have personal jurisdiction over High 5 ...........................................8

        1.  The Court lacks general personal jurisdiction. ...........................................................9

        2.  The Court Lacks Specific Personal Jurisdiction. .....................................................10

            a)  There is No Purposeful Direction. .....................................................................10

            b)  Wilson's Claims do not Arise out of High 5's Forum-related Activities. ..............15

            c)  It Would be Unreasonable for the Court to Exercise Personal Jurisdiction Over High 5. ........................................................................................................15

    B.  In the Alternative, High 5 Requests this Court Transfer the Case ..................................17

    C.  Wilson Has Failed to State a Claim. ...............................................................................18

        1.  Fed. R. Civ. P. 12(B)(6)Standards ...........................................................................18

        1.  All of Wilson's Claims Fail Given That High 5 Video Games Are All Free to Play ..........................................................................................................................19

        2.  The $1.99 "In-App" Purchase Was a "Bona Fide Business Transaction," Not Gambling. .................................................................................................................21

        3.  $1.99 In-App Purchase Does Not Constitute Illegal Gambling ...............................22

IV.    CONCLUSION .................................................................................................................24

MOTION TO DISMISS AND MEMORANDUM IN SUPPORT  
Case No. 3:18-CV-05275-RBL

**CARNEY BADLEY SPELLMAN, P.S.**  
701 FIFTH AVENUE, SUITE 3600  
SEATTLE, WA 98104-7010  
(206) 622-8020

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ................................................................................................ 14, 18

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
 874 F.3d 1064 (9th Cir. 2017) ................................................................................ 10, 14

*Bristol-Myers Squibb Co. v. Sup. Ct.*,
 ---U.S.---, 137 S. Ct. 1773 (2017) ............................................................................ 8, 9

*Burger King Corp. v. Rudzewicz*,
 471 U.S. 462 (1985) ...................................................................................................... 11

*Burns v. City of Seattle*,
 164 P.3d 475 (Wash. 2007) ........................................................................................... 23

*Cabell v. Zorro Prods., Inc.*,
 No. 13-cv-00449RSM, 2015 WL 452327 (W.D. Wash. Feb. 3, 2015) ............................ 17

*Camp v. HC Composites LLC*,
 No. C11-5340 RBL, 2012 WL 3023221 (W.D. Wash. July 24, 2012),
 *abrogated on other grounds by Axiom Foods, Inc.*, 874 F.3d 1064 ................................... 11

*Caruth v. Int'l Psychoanalytical Ass'n*,
 59 F.3d 126 (9th Cir. 1995) ........................................................................................... 17

*Clegg v. Cult Awareness Network*,
 18 F.3d 752 (9th Cir. 1994) ........................................................................................... 19

*Core-Vent Corp. v. Nobel Indus. AB*,
 11 F.3d 1482 (9th Cir. 1993) ......................................................................................... 17

*Dole Food Co., Inc. v. Watts*,
 303 F.3d 1104 (9th Cir. 2002) ....................................................................................... 11

*Easter v. Am. W. Fin.*,
 381 F.3d 948 (9th Cir. 2004) ........................................................................................... 8

*Getty Images (US), Inc. v. Virtual Clinics*,
 No. C13-0626JLR, 2013 WL 4827815 (W.D. Wash. Sept. 9, 2013) ..................... 13, 14, 15

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
 564 U.S. 915 (2011) ........................................................................................................ 9

MOTION TO DISMISS AND MEMORANDUM IN SUPPORT
(3:18-CV-05275-RBL)

**CARNEY BADLEY SPELLMAN, P.S.**
701 FIFTH AVENUE, SUITE 3600
SEATTLE, WA 98104-07010
(206) 622-8020

*Gray & Co. v. Firstenberg Mach. Co., Inc.*,
　913 F.2d 758 (9th Cir. 1990) ............................................................................. 16

*Hansen v. Boeing Co.*,
　903 F. Supp. 2d 1215 (W.D. Wash. 2012) ......................................................... 19

*Hart v. Massanari*,
　266 F.3d 1155 (9th Cir. 2001) ........................................................................... 21

*Hatset v. Century 21 Gold Coast Realty*,
　649 F. App'x 400 (9th Cir. 2016) ................................................................ 12, 14

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
　466 U.S. 408 (1984) ........................................................................................... 12

*High Maint. Bitch, LLC v. Uptown Dog Club, Inc.*,
　No. C07-888Z, 2007 WL 3046265 (W.D. Wash. Oct. 17, 2007) ................ 13, 14

*In re Custody of E.A.T.W.*,
　227 P.2d 1284 (Wash. 2010) .............................................................................. 23

*In re Wash. Mut., Inc. Securities, Derivative & ERISA Litig.*,
　259 F.R.D. 490 (W.D. Wash. 2009) ................................................................... 19

*Int'l Shoe Co. v. Washington*,
　326 U.S. 310 (1945) ..................................................................................... 10, 12

*Intercarrier Commc'ns, LLC v. Whatsapp, Inc.*,
　No. 3:12-cv-776-JAG, 2013 WL 5230631 (E.D. Va. Sept. 13, 2013) ......... 12, 13

*J. McIntyre Mach., Ltd. v. Nicastro*,
　564 U.S. 873 (2011) ..................................................................................... 13, 14

*Kater v. Churchill Downs Inc.*,
　886 F.3d 784 (2018) .................................................................................... passim

*Kater v. Churchill Downs, Inc.*,
　No. C15-612 MJP, 2015 WL 9839755 (W.D. Wash. Nov. 19, 2015) ................. 5

*Kimzey v. Yelp Inc.*,
　21 F. Supp. 3d 1120 (W.D. Wash. 2014) ........................................................... 19

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
　647 F.3d 1218 (9th Cir. 2011) ..................................................................... 13, 14

*Menken v. Emm*,
　503 F.3d 1050 (9th Cir. 2007) ........................................................................... 15

MOTION TO DISMISS AND MEMORANDUM IN SUPPORT
(3:18-CV-05275-RBL)

**CARNEY BADLEY SPELLMAN, P.S.**
701 FIFTH AVENUE, SUITE 3600
SEATTLE, WA 98104-07010
(206) 622-8020

*Microsoft Corp. v. Commc'ns & Data Sys. Consultants, Inc.*,
  127 F. Supp. 3d 1107 (W.D. Wash. 2015) .................................................................... 8

*Morrill v. Scott Fin. Corp.*,
  873 F.3d 1136 (9th Cir. 2017) ......................................................................... 11, 15

*Paccar Int'l, Inc. v. Commercial Bank of Kuwait, S.A.K.*,
  757 F.2d 1058 (9th Cir. 1985) .............................................................................. 16

*Pareto v. F.D.I.C.*,
  139 F.3d 696 (9th Cir. 1998) ............................................................................... 19

*Phillips v. Double Down Interactive LLC*,
  No. 15 C 04301, 2016 WL 1169522 (N.D. Ill. Mar. 25, 2016).............................................. 5

*Picot v. Weston*,
  780 F.3d 1206 (9th Cir. 2015) ........................................................................... 8, 10

*Private Res. Fin., LLC v. Borenstein*,
  No. C13-5788 RBL, 2014 WL 2208944 (W.D. Wash. May 28, 2014) ............................................ 17

*Ranza v. Nike, Inc.*,
  793 F.3d 1059 (9th Cir. 2015) ............................................................................ 9, 18

*Rippey v. Smith*,
  16 F. App'x 596 (9th Cir. 2001)............................................................................ 16

*Robertson v. GMAC Mortgage LLC*,
  982 F. Supp. 2d 1202 (W.D. Wash. 2013) .................................................................... 18

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ......................................................................... 9, 10, 11

*Seatoma Convalescent Ctr. v. Department of Social & Health Serv.*,
  929 P.2d 602 (Wash. Ct. App. 1996) ....................................................................... 24

*Soto v. Sky Union, LLC*,
  No. 15 C 4768, 2016 WL 362379 (N.D. Ill. Jan. 29, 2016) .................................................. 5

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) ............................................................................. 19

*State v. J.P.*,
  69 P.3d 318 (Wash. 2003) ................................................................................. 20

*State v. LaPointe*,
  404 P.3d 610 (Wash. 2017) ................................................................................ 20

*State v. Van Woerden*,
    967 P.2d 14 (Wash. Ct. App. 1998) ......................................................................... 22

*Tomelleri v. Medl Mobile, Inc.*,
    No. 2:14-CV-02113-JAR, 2015 WL 1957801 (D. Kan. Apr. 29, 2015) ................ 12, 13, 14

*United States v. Moore*,
    62 F. Supp. 660 (W.D. Wash. 1945) (Ninth Circuit decision on same legal
    question not binding because Ninth Circuit relied on different, material
    facts) ........................................................................................................................ 21, 22

*Vernon Johnson Fam. Ltd. P'ship v. Bank One Tex., N.A.*,
    80 F. Supp. 2d 1127 (W.D. Wash. 2000) ................................................................ 16, 17

*Walden v. Fiore*,
    134 S. Ct. 1115 (2014) ......................................................................... 11, 12, 13, 14

*Williams v. Yamaha Motor Co.*,
    851 F.3d 1015 (9th Cir. 2017) ................................................................................... 8, 9

*Zalatel v. Prisma Labs, Inc.*,
    226 F. Supp. 3d 599 (E.D. Va. 2016) ...................................................................... 12, 13, 14

### STATUTES

28 U.S.C. § 1391(b)(1) ..................................................................................................... 18

28 U.S.C. § 1631 ........................................................................................................ 17, 18

RCW 4.24.070 ....................................................................................................... passim

RCW 4.28.185 .................................................................................................................. 8

RCW 9.46.010 ............................................................................................................. 4, 23

RCW 9.46.070 ................................................................................................................. 4

RCW 9.46.070(11) ................................................................................................... 4, 5, 23

RCW 9.46.210 ................................................................................................................ 23

RCW 9.46.210(3) ............................................................................................................ 4

RCW 9.46.0237 ..................................................................................... 18, 21, 22, 23

RCW 9.46.0285 .................................................................................................... 18, 19, 20

Wash. Rev. Code §§ 9.46.0285, 9.46.0237 and 4.24.070 ........................................... 8

Washington Consumer Protection Act ....................................................................................... 1

Washington Gambling Act. RCW 9.46.070(14) ....................................................................... 4

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6) .................................................................................................... 2, 8, 18

Fed. R. Civ. P. 12(B)(6)Standards......................................................................................... 18

Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6)............................................................ 1

Rest. 2d of Torts § 2 (1964)................................................................................................. 11

MOTION TO DISMISS AND MEMORANDUM IN SUPPORT
(3:18-CV-05275-RBL)

**CARNEY BADLEY SPELLMAN, P.S.**
701 FIFTH AVENUE, SUITE 3600
SEATTLE, WA 98104-07010
(206) 622-8020

Defendant High 5 Games, LLC ("High 5"), by and through its undersigned counsel of record, hereby submits this Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6).

## I.      INTRODUCTION

High 5[1] is the developer of casino-themed online video games which can be played through an app on a mobile phone.  The High 5 games are free to download, free to play, and do not give out monetary awards.  Like other similar video games, the High 5 games allow players to make "in-app" purchases of virtual coins which can only be used within the game to make play more entertaining.  The Washington State Gambling Commission ("Commission"), the state agency charged with ruling on and applying Washington's gambling statutes, has determined that such video games do not constitute "gambling" under Washington law because game play only results in entertainment, not in a prize which can be monetized.  Recently, however, in *Kater v. Churchill Downs Inc.*, 886 F.3d 784 (2018), a Ninth Circuit panel rejected the Commission's longstanding determination, reversed a ruling from a federal district court in Washington, and effectively created a new interpretation of what constitutes "gambling" under Washington law.

Against this backdrop, the same counsel that represent the plaintiff in *Churchill Downs* have hurriedly filed six new putative class actions in Washington federal court, including the one here, in order to leverage the *Churchill Downs* opinion.  The plaintiff here, Sean Wilson, serves as the sole plaintiff in three of the newly filed cases.

In this case, plaintiff Sean Wilson alleges he purchased $1.99 of virtual coins in December 2016 for use in a High 5 video game and should be allowed to recover that amount under RCW 4.24.070, a Washington gambling statute entitled "Recovery of money lost at gambling", under the Washington Consumer Protection Act, and under a claim of unjust enrichment.  Plaintiff also seeks to recover on behalf of other alleged class members.

High 5 brings this Motion to Dismiss and concurrently files a Motion to Stay.  First,

---

[1] In the Complaint, Defendant High 5 is wrongly identified as the d/b/a for PTT, LLC.

MOTION TO DISMISS AND MEMORANDUM IN SUPPORT - 1
(3:18-CV-05275-RBL)

**CARNEY BADLEY SPELLMAN, P.S.**
701 FIFTH AVENUE, SUITE 3600
SEATTLE, WA 98104-7010
(206) 622-8020

the Court should dismiss or transfer this case because it does not have personal jurisdiction over High 5. Any contacts between High 5 and the State of Washington were created by Wilson, owing to his choice to reside in Washington and download and use High 5's games. Under controlling precedents, these contacts are jurisdictionally irrelevant.

Second, if the Court somehow concludes that personal jurisdiction exists, the Court should stay this action for the reasons set forth in High 5's Motion to Stay, filed herewith. A stay is warranted on abstention grounds because this action presents significant questions of state law bearing on policy problems of substantial public import—the State of Washington's regulation of gambling, and the extent to which it applies to the kinds of free-to-play casino-themed video games. Should the Court determine that it has personal jurisdiction and this action should proceed in this district, High 5 intends to move to certify the issue of whether these video games constitutes illegal gambling under Washington law to the Supreme Court of Washington for resolution. At a *minimum*, the Court should stay this action until the Ninth Circuit has resolved the pending Churchill Downs Petition for Rehearing En Banc, which would avoid unnecessary costs and effort litigating issues based on a panel opinion that may soon be overruled or modified.

Finally, if the Court forgoes a stay, the Court should grant High 5's motion to dismiss on Fed. R. Civ. P. 12(b)(6) grounds because High 5's video games plainly do not involve illegal gambling, and plaintiff's claims are therefore meritless.

## II.   FACTUAL BACKGROUND

### A.   High 5's Games Only Provide Entertainment, Never Monetary Prizes

The High 5 video games provide casino-themed game play, allowing a player to entertain themselves on their iPhones or iPads with a variety of animated, virtual slot machines. Declaration of Patrick Benson in Support of Mot. to Dismiss ("Benson Decl."), ¶ 6. The games are free to download, free to play, and never result in monetary prizes. *Id.*, Ex. E (FAQ Real Money). High 5's games are like many other app-based video games (ranging from virtual farming to virtual military combat). *Id.*, ¶ 6. While these games are free to play,

MOTION TO DISMISS AND MEMORANDUM IN SUPPORT
- 2
(3:18-CV-05275-RBL)

CARNEY BADLEY SPELLMAN, P.S.
701 FIFTH AVENUE, SUITE 3600
SEATTLE, WA 98104-7010
(206) 622-8020

players can choose to make "in-app" purchases of virtual items which enhance play but are not usable outside the game. *Id.*, ¶¶ 6-10, Exs. A-E.

As players receive free virtual coins in a variety of ways, they need not purchase the virtual coins to play. *Id.*, ¶ 7, Exs. A-E. Players receive free coins when they download the game app. *Id.*, ¶ 7, Ex. A (FAQ Free Coins). Players can get new allotment of free coins every four hours. *Id.*, ¶ 7, Ex. A (FAQ Free Coins). Each day, a player receives additional free bonuses simply by opening the game app, collecting the Daily Bonus, and spinning the Daily Bonus Wheel. *Id.*, ¶ 7, Ex. B (FAQ Daily Bonus), Ex. C (FAQ Daily Reward), Ex. D (FAQ Daily Wheel). Players also receive free spins of a wheel which can result in even more free virtual coins. *Id.*, ¶ 7.

The High 5 games never award monetary prizes. *Id.*, ¶ 8, Ex. E (FAQ Real Money). A player may not "cash out" their virtual coins for real money. *Id.* To block any secondary market exchanges, the High 5 video games do not allow one player to transfer his virtual coins to another player. *Id.* The virtual coins can only be used within the game. *Id.*

Each player makes decisions relating to the pace, duration, and intensity of the game play. *Id.*, ¶ 9. For example, for every spin, a player decides the number of lines and virtual coins to play on the virtual slot machine. *Id.* These types of decisions regarding the use of the virtual coins allow the player to engage with the High 5 video game in the way he finds most entertaining. *Id.*

Although the games can be played for free, players of the High 5 games can choose to make "in-app" purchase of additional virtual coins to enhance their entertainment. *Id.*, ¶ 10; Dkt. 1. A player may choose to make an in-app purchase because she finds it more entertaining to put large numbers of virtual coins in play on a spin or does not want to wait a few hours to get a fresh distribution of more free virtual coins. *Id.*, ¶ 10. But regardless of how the player intends to use the virtual coins within the game, the player makes the in-app purchase knowing virtual coins can otherwise be obtained for free, cannot be used

MOTION TO DISMISS AND MEMORANDUM IN SUPPORT
- 3
(3:18-CV-05275-RBL)

**CARNEY BADLEY SPELLMAN, P.S.**
701 FIFTH AVENUE, SUITE 3600
SEATTLE, WA 98104-7010
(206) 622-8020

outside the game, and cannot be converted money or anything else of value.  *Id.*, ¶¶ 7-10, Exs. A-E.

**B.    Washington Gambling Commission Determined Online Games Like the High 5 Video Games Do Not Constitute Gambling.**

Washington statutes set policy and define what constitutes gambling under state law. RCW 9.46.010 states Washington policy; the statute recognizes "the close relationship between professional gambling and organized crime . . .and declares the resulting need to restrain "professional gambling," but also recognizes that gambling regulation must "<u>avoid restricting participation by individuals in activities and social pastimes, which activities and social pastimes are more for amusement rather than for profit, do not maliciously affect the public, and do not breach the peace.</u>"  RCW 9.46.010 (emphasis added).

RCW 9.46.070 designates the Commission as the state agency charged by the legislature with the "power to enforce" the "penal laws of [the] state relating to the conduct of or participation in gambling activities."  RCW 9.46.210(3).  The Commission has the power to "adopt such rules and regulations as are deemed necessary to carry out the purposes and provisions of" the Washington Gambling Act.  RCW 9.46.070(14).  The Commission is to "regulate and establish the type and scope of and manner of conducting the gambling activities authorized by this chapter, including but not limited to, the extent of the wager, money, or other thing of value which may be wagered or contributed or won by a player in any such activities."  RCW 9.46.070(11).

The Commission has officially addressed video games like the High 5 games at issue here and determined the games do not constitute gambling.  In March 2014, the Commission issued public guidance in a publication entitled *Online Social Gaming: When is it legal? What to Consider* (March 2014).  Req. Judicial Notice, Ex. L.  The publication set forth the Commission's position concerning these games (which it referred to generally as "online social gaming"), specifically stating that gambling under Washington law requires three elements—a prize, consideration, and chance—and that if one of those elements is absent, the

MOTION TO DISMISS AND MEMORANDUM IN SUPPORT - 4
(3:18-CV-05275-RBL)

game is not gambling. *See id.* The Commission explained that social gaming websites do not constitute gambling, and thus are "OK To Play," because the award of virtual coins cannot constitute the element of a "prize" since the virtual coins cannot be redeemed for "real" money. *Id.*

The Commission's action and inaction confirm this official position. While the Commission has taken action against various types of conduct it considers to be illegal gambling under state law, it has taken no enforcement action against video games like the High 5 games. *See* Req. Judicial Notice, Exs. J-L. In fact, following the Ninth Circuit ruling in *Churchill Downs*, the Director of the Commission issued a statement announcing the Commission was not participating in the case and gave no indication that the Commission was changing its position that the use of virtual chips does not constitute gambling. *See* Req. Judicial Notice, Ex. B (Press Release Apr. 17, 2018).

### C.   Plaintiff's Counsel Seeks to Manufacture A Series of Class Actions Based on a New, but Potentially Short-lived, Interpretation of Gambling

Since at least 2015 (when they filed the putative class action in case *Kater v. Churchill Downs*), the law firms now representing Wilson in this case have been trying to manufacture class action cases by asserting that, contrary to the Washington Gambling Commission's determination, the use of virtual coins in mobile phone video games constitutes gambling. Req. Judicial Notice, Ex. I (En Banc Petition) at 4. In line with the fate of other class action firms that adopted the same strategy in other states[2], these law firms found their complaint against Churchill Downs dismissed with prejudice by the trial court. *See Kater v. Churchill Downs, Inc.*, No. C15-612 MJP, 2015 WL 9839755, at *4 (W.D. Wash. Nov. 19, 2015).

---

[2] District courts around the country that have dismissed similar cases alleging that free to play online games that offer no tangible prize are illegal gambling. *See Phillips v. Double Down Interactive LLC*, No. 15 C 04301, 2016 WL 1169522, *9 (N.D. Ill. Mar. 25, 2016); *Soto v. Sky Union, LLC*, No. 15 C 4768, 2016 WL 362379, *11 (N.D. Ill. Jan. 29, 2016); and *Mason*, 140 F. Supp. 3d 457, 470 (D. Md. 2015).

MOTION TO DISMISS AND MEMORANDUM IN SUPPORT - 5
(3:18-CV-05275-RBL)

However, in late March of 2018, a Ninth Circuit panel reversed and remanded to the *Churchill Downs* trial court, becoming the first court to hold that the winning and losing of virtual tokens within a video game constituted gambling. *Kater v. Churchill Downs, Inc.*, 886 F.3d 784, 788-89 (9th Cir. 2018); *see also* Req. Judicial Notice, Ex. I (En Banc Petition) (providing context and summary of *Churchill Downs* ruling).  Churchill Downs, Incorporated filed a petition for rehearing *en banc* before the Ninth Circuit. *Id.*  The petition is currently pending.  Req. Judicial Notice, Ex. H (*Churchill Downs* 9th Cir. docket).

Hoping to leverage the *controversial* ruling in the *Churchill Downs* opinion while they can,  plaintiff's counsel quickly filed five putative class actions, including this lawsuit, in federal district court in Washington. *Id.*, Exs. C-F, M.  The complaints from these putative class actions echo one another's factual and legal allegations. *Id.*  In addition to this case, Wilson is serving as plaintiff and putative class representative in two of the other lawsuits. *Id.*, Ex. E, Ex. F.

**D.    Wilson's $1.99 In-App Purchase Appears Strategic**

The timing and nature of Wilson's activity underlying the allegations indicate his in-app purchase was likely a strategic action taken to further the class-action scheme.  Wilson played High 5 video games for free, for years, before he made his single $1.99 in-app purchase of virtual coins.  Dkt. 1, ¶¶ 30-31; Benson Decl., ¶¶ 13-17.  He downloaded the app on April 26, 2013, played the video games for over three years thereafter, during which time he played entirely for free.  Benson Decl., ¶¶ 13-17.  Wilson's history of game play shows he knew how to acquire free virtual coins and was satisfied playing only with free virtual coins for years. *Id.*  He logged into the app to receive allotments of free coins and played his free spins. *Id.*, ¶ 16.

The context for Wilson's single in-app purchase is significant.  First, he made this purchase on December 17, 2016, less than three weeks after the *Churchill Downs* Ninth Circuit appeal was noticed for hearing. *Id.*, ¶ 13; Req. Judicial Notice, Ex. H (*Churchill Downs* 9th Cir. docket).  Second, he had not run out of virtual coins when he made the

MOTION TO DISMISS AND MEMORANDUM IN SUPPORT - 6
(3:18-CV-05275-RBL)

purchase, meaning he did not need to purchase the virtual coins in order to continue playing.[3] Benson Decl., ¶ 14, Ex. G (Wilson's Spin History). Third, he logged out of the app immediately after making the purchase, indicating he did not buy the virtual coins intending to play the game but instead bought them to acquire standing in a class action lawsuit. *Id.*, ¶¶ 13-14, Ex. F (Wilson's User Profile), Ex. G (Wilson's Spin History). Wilson logged in several different times after his $1.99 purchase to collect allotments of free virtual coins and did not play the video games again until he had acquired almost the same number of free virtual coins as those that he had already purchased. *Id.*, ¶ 16, Ex. F (Wilson's User Profile), Ex. G (Wilson's Spin History). Had Wilson simply chosen to gather free virtual coins between December 17, 2016 (when Wilson made the $1.99 in-app purchase) and January 4, 2017 (when Wilson next played High 5 Casino video games), Wilson could have collected at least 201,000 virtual coins for free, about ten times as many as he chose to purchase. *Id.*, ¶ 17.

### E.    High 5 Lacks Contacts with Washington

High 5 is a Delaware limited liability company, headquartered in New York (Manhattan). *Id.*, ¶ 2. No members of the limited liability company are citizens of Washington. *Id.* High 5 is not registered to do business in Washington. *Id.* High 5 has no physical presence in Washington. *Id.* It has no offices, employees, or bank accounts in Washington. *Id.* High 5 does not advertise its games to residents of any particular geographic area, including Washington. *Id.*, ¶ 3. None of its video games contain any Washington-specific advertising or information. *Id.* High 5 does not track revenue that flows from users in any particular state, including Washington. *Id.*

High 5's iPhone apps, High 5 Casino and High 5 Vegas, are downloaded solely from a third-party site, Apple's online "app store." *Id.*, ¶ 5. Likewise, any in-app payments or

---

[3] Wilson acknowledges the games were free to play. He avoids pleading he was required to purchase any virtual coins, pleading simply that he made a $1.99 purchase "[a]fter Plaintiff lost the balance of his initial allocation of free chips." Dkt. 1, ¶ 30. And he neglects to mention that this purchase occurred 3 1/2 years into his game play.

MOTION TO DISMISS AND MEMORANDUM IN SUPPORT - 7
(3:18-CV-05275-RBL)

purchases are made to Apple, not to High 5. *Id.* The distribution of any funds from Apple to High 5 is governed by a standard agreement required by Apple. *Id.* Apple receives the revenue and then distributes a percentage to High 5. *Id.* High 5's video game software is housed in a cloud-based service run by a third party, for which the server farm is located in New Jersey. *Id.*, ¶ 4. High 5's software running the games does not (and cannot) track where a user is located when downloading or using High 5 video games. *Id.* The video games were not developed in Washington. *Id.* Relevant witnesses, documents, and data on the design and use of High 5's video games are in New York. *Id.*

## III.    ARGUMENT

The Court should dismiss the lawsuit based on the lack of personal jurisdiction or, alternatively, transfer the matter to the Southern District of New York. If the Court somehow finds personal jurisdiction and does not grant the stay sought in High 5's Motion to Stay filed concurrently herewith, then the Court should dismiss all of Wilson's claims pursuant to Rule 12(b)(6) as he has failed to allege facts which satisfy the elements of the statutes on which his claims depend--Wash. Rev. Code §§ 9.46.0285, 9.46.0237 and 4.24.070.

### A.    This Court does not have personal jurisdiction over High 5.

"Federal courts apply state law to determine the bounds of their jurisdiction over a party." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1020 (9th Cir. 2017). The Court's "personal jurisdiction analysis begins with the "long-arm" statute of the state in which the court sits." *Microsoft Corp. v. Commc'ns & Data Sys. Consultants, Inc.*, 127 F. Supp. 3d 1107, 1113 (W.D. Wash. 2015). Washington's long-arm statute (RCW 4.28.185) permits the exercise of jurisdiction to the full extent of the due process clause of the U.S. Constitution. *Easter v. Am. W. Fin.*, 381 F.3d 948, 960 (9th Cir. 2004). Because the long-arm statute is coextensive with the limits of due process, the only question is whether the constitutional standard has been met. *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015).

Under the due process analysis, there are two types of personal jurisdiction—general and specific. *Bristol-Myers Squibb Co. v. Sup. Ct.*, ---U.S.---, 137 S. Ct. 1773, 1779-80

MOTION TO DISMISS AND MEMORANDUM IN SUPPORT
- 8
(3:18-CV-05275-RBL)

**CARNEY BADLEY SPELLMAN, P.S.**
701 FIFTH AVENUE, SUITE 3600
SEATTLE, WA 98104-7010
(206) 622-8020

(2017).  The plaintiff bears the burden to establish personal jurisdiction is proper.  *Ranza*, 793 F.3d at 1068.  For the case to survive dismissal, Wilson must make a prima facie showing of jurisdictional facts.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  Wilson has not, and cannot demonstrate general or specific jurisdiction.

### 1.   The Court lacks general personal jurisdiction.

For purposes of general jurisdiction, the "paradigm forum" for a corporation is the "one in which the corporation is fairly regarded as at home."  *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)); *see also Bristol-Myers*, 137 S. Ct. at 1780.  It is an "exceptional" case where a defendant corporation's activities in a state other than its place of incorporation or principal place of business are "so substantial and of such a nature as to render the corporation at home in that state" and subject to general jurisdiction.  *Daimler*, 134 S. Ct. at 754, *see* also. "*Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015) (quoting *Daimler*, 134 S. Ct. at 762 n.20 and holding no general jurisdiction over foreign LLC).  Even a "'corporation that operates in many places can scarcely be deemed at home in all of them.'"  *Id.*

In *Martinez v. Aero Caribbean*, the Ninth Circuit held general jurisdiction did not exist over a defendant that was not incorporated or headquartered in California, had no offices or physical presence there, and was not licensed to do business in California, notwithstanding defendant's contracts with California companies "worth between $225 and $450 million," defendant's sending employees into California on official business, and defendant's advertising in trade publications with distribution in California.  764 F.3d 1062, 1069-70 (9th Cir. 2014); *see also Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1021-22 (9th Cir. 2017) (no general jurisdiction over defendant with no offices or employees in forum state).

General jurisdiction does not exist here. High 5 is not organized under Washington law, nor headquartered in Washington.  Benson Decl., ¶ 2.  It has no offices, employees, or physical presence in Washington.  *Id.*  It is not registered to do business in Washington.  *Id.*

MOTION TO DISMISS AND MEMORANDUM IN SUPPORT - 9
(3:18-CV-05275-RBL)

**2.      The Court Lacks Specific Personal Jurisdiction.**

Wilson, not High 5, created any "contacts" with Washington. The contacts with Washington are fortuitous at best, existing solely due to the fact Wilson chose to download the game from the Apple app store and chose to reside in the forum state. Accordingly, specific jurisdiction cannot be exercised over High 5, and additionally would be unreasonable.

The Court employs a three-part test to determine specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802. "Due process requires that the defendant 'have certain minimum contacts' with the forum state 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Picot*, 780 F.3d at 1211 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

When a defendant challenges personal jurisdiction, the "plaintiff bears the burden of satisfying the first two prongs of the test." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017). Only if the plaintiff meets this burden does the "burden then shift[] to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." *Id.* (internal quotation marks omitted).

**a)      There is No Purposeful Direction.**

Under the first prong of the three-part specific jurisdiction test, plaintiff must establish that defendant either purposefully availed itself of the privilege of conducting activities in the forum state or purposefully directed its activities toward the forum state. *Schwarzenegger*, 374 F.3d at 802. Usually purposeful availment corresponds to suits sounding in contract, while purposeful direction corresponds to suits sounding in tort. *Id.* Purposeful direction is

MOTION TO DISMISS AND MEMORANDUM IN SUPPORT
- 10
(3:18-CV-05275-RBL)

**CARNEY BADLEY SPELLMAN, P.S.**
701 FIFTH AVENUE, SUITE 3600
SEATTLE, WA 98104-7010
(206) 622-8020

the appropriate test here because Wilson's claims sound in tort.[4] *See, e.g., Camp v. HC Composites LLC*, No. C11-5340 RBL, 2012 WL 3023221, at *4-5 (W.D. Wash. July 24, 2012) (applying purposeful direction test to consumer protection and related claims), *abrogated on other grounds by Axiom Foods, Inc.*, 874 F.3d 1064.

To establish purposeful direction, the plaintiff must demonstrate that (1) defendant committed an intentional act (2) expressly aimed at the forum state (3) causing harm defendant knows is likely to be suffered in the forum state. *Schwarzenegger*, 374 F.3d at 802 (citing *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)).

### (1) The Only Possible "Intentional Acts" Were Developing and Offering Games to the General Public.

An "intentional act" is merely "'an external manifestation of the actor's will and does not include any of its results, even the most direct, immediate, and intended.'" *Id.* at 806 (quoting Rest. 2d of Torts § 2 (1964)). Here, the only possible intentional acts relevant to Plaintiff's claims are that High 5 develops the video games at issue and contracts with third-party Apple to distribute High 5 games to the general public through Apple's app store. *See id.* (intentional act was placement of an allegedly infringing advertisement); Benson Decl., ¶ 4. These acts did not occur in Washington. *Id.*

### (2) The Acts Were Not Expressly Aimed at the Forum State.

The U.S. Supreme Court recently reiterated that the only contacts relevant to specific jurisdiction are those "that the 'defendant *himself*' creates with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (emphasis in original)). The "unilateral activity of another party or a third party is not an appropriate consideration when determining whether a defendant has sufficient

---

[4] The test for purposeful availment does not apply because this is not a contract action. *See Schwarzenegger*, 374 F.3d at 802. But if it did, the test would not be met for similar reasons. *See Morrill*, 873 F.3d at 1149 (holding purposeful availment test not met when purposeful direction was not present because defendant's contacts were not aimed at the forum state).

MOTION TO DISMISS AND MEMORANDUM IN SUPPORT - 11
(3:18-CV-05275-RBL)

**CARNEY BADLEY SPELLMAN, P.S.**
701 FIFTH AVENUE, SUITE 3600
SEATTLE, WA 98104-7010
(206) 622-8020

contacts with a forum State to justify an assertion of jurisdiction." *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)).  The court should consider the defendant's contacts "with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* (citing *Int'l Shoe Co.*, 326 U.S. at 319).

In *Walden*, the Court held there were insufficient minimum contacts with Nevada when Nevada resident plaintiffs alleged a DEA agent defendant illegally seized their cash in an Atlanta airport, and prolonged the illegal seizure through false statements. *Id.* at 1119-21. Defendant's actions were not "jurisdictionally relevant," regardless of the fact he knew plaintiffs were Nevada residents. *Id.* at 1119, 1125.  Defendant's contacts were only connected to Nevada because the plaintiffs chose to reside in Nevada. *Id.* ("Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State."); *see also Hatset v. Century 21 Gold Coast Realty*, 649 F. App'x 400 (9th Cir. 2016) (holding no purposeful direction because under *Walden* defendant's communications with plaintiff while plaintiff was physically present in forum state only connected defendant to plaintiff and did not connect defendant to forum state).

A user's location when he downloads or uses an app is only a "random, fortuitous, or attenuated user-initiated contact[]" with the forum state that does not evidence purposeful direction. *See Zalatel v. Prisma Labs, Inc.*, 226 F. Supp. 3d 599, 608-12 (E.D. Va. 2016) (quoting *Walden*, 134 S. Ct. at 1123 and holding no purposeful targeting of forum state even though numerous users downloaded and used app in the forum state); *Tomelleri v. Medl Mobile, Inc.*, No. 2:14-CV-02113-JAR, 2015 WL 1957801, at *6, 8-9 (D. Kan. Apr. 29, 2015) (holding no purposeful direction on the basis that app was available nationwide); *Intercarrier Commc'ns, LLC v. Whatsapp, Inc.*, No. 3:12-cv-776-JAG, 2013 WL 5230631, at *4-5 (E.D. Va. Sept. 13, 2013) (holding no personal jurisdiction over app developer that sold app worldwide, including in the forum state).  "[T]he user has unilateral control over where the user is located when communicating with the server[.]" *Zalatel*, 226 F. Supp. 3d at 608, 610.

MOTION TO DISMISS AND MEMORANDUM IN SUPPORT - 12
(3:18-CV-05275-RBL)

**CARNEY BADLEY SPELLMAN, P.S.**
701 FIFTH AVENUE, SUITE 3600
SEATTLE, WA 98104-7010
(206) 622-8020

The user thus "determines whether the contact will occur in [the forum state] or in any other state." *Id.* at 608.  Under *Walden*, such contacts are not "jurisdictionally relevant." *Id.* at 608-12; *Walden*, 134 S. Ct. at 1125.

Offering an app to the general public or, similarly, making a website available to the general public cannot establish defendant expressly aimed its conduct at the forum state. *See, e.g.*, "*High Maint. Bitch, LLC v. Uptown Dog Club, Inc.*, No. C07-888Z, 2007 WL 3046265, at *3 (W.D. Wash. Oct. 17, 2007) (The "existence of an interactive website which may be accessed by Washington residents does not satisfy specific jurisdiction."); *Zalatel*, 226 F. Supp. 3d at 611 (holding no personal jurisdiction); *Intercarrier Commc'ns, LLC*, 2013 WL 5230631, at *4-5 (holding no personal jurisdiction).  "[S]imply being able to predict . . . your goods will reach a forum state, is not enough to establish personal jurisdiction." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882 (2011).  U.S. Supreme Court "precedents make clear that it is the defendant's actions, not his expectations, that empower a State's courts to subject him to judgment." *Id.* at 883.

For these reasons, something more than allowing the general public to access or use defendant's software is required to show purposeful direction.  The out-of-state defendant must engage in forum-specific advertising or include forum-specific content in its online offerings.  *See, e.g.*, *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1230-31 (9th Cir. 2011) (holding there was purposeful direction where defendant sold space on its website for ads targeted at California residents, and subject matter of website was particularly of interest in California (celebrities and entertainment industry)); *Getty Images (US), Inc. v. Virtual Clinics*, No. C13-0626JLR, 2013 WL 4827815, at *4-5 (W.D. Wash. Sept. 9, 2013) (holding copyright infringing websites were expressly aimed at the forum state because they advertised Washington veterinary clinics); *accord Tomelleri*, 2015 WL 1957801, at *6, 8-9 (D. Kan. Apr. 29, 2015) (holding no purposeful direction on the basis that defendant offered app that was available for purchase nationwide, but there was purposeful direction based on Kansas-specific maps and fishing information).

MOTION TO DISMISS AND MEMORANDUM IN SUPPORT - 13
(3:18-CV-05275-RBL)

There is no such purposeful direction here, however. High 5 has no physical presence in Washington and does not operate in Washington. Wilson alleges no contrary facts. *See generally* Dkt. 1. Wilson's allegation that High 5 "conducts business throughout this District, [and] Washington State" is a conclusion unsupported by factual allegations and need not be taken as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

At most, High 5 has only random, fortuitous, and attenuated contacts with Washington, which do not and, as a matter of law, cannot amount to purposeful direction. The fact Wilson alleges he "is a citizen of the state of Washington" is not jurisdictionally relevant to purposeful direction for several reasons. Dkt. 1 at ¶ 6. Assuming that Wilson downloaded and/or used High 5's games in Washington, however, his download or use of High 5's games are only connected to the forum because Wilson chose to be in Washington. *See Walden*, 134 S. Ct. at 1119, 1125. Data exchanged between Wilson's iOS device and High 5's servers is only connected to Washington because of Wilson's unilateral choice, not because High 5 took any actions to target Washington. *Walden*, *Hatset*, *Zalatel*, *Tomelleri*, and *Intercarrier Communications* all hold that the plaintiff's unilateral choice is insufficient.

While High 5 may generally anticipate its video games could be played by some residents of Washington because the videogames are broadly available through the Apple app store, "simply being able to predict . . . your goods will reach a forum state, is not enough to establish personal jurisdiction." *J. McIntyre Mach.,* 564 U.S. at 882. High 5 does not expressly aim activity at the forum state because it targets no particular geographic area with advertising, much less Washington. Benson Decl., ¶ 3. None of its games contain any Washington-specific information. *Id.* And Wilson's single payment of $1.99 was initiated by Wilson and paid by Wilson to a third party (Apple), not High 5. Dkt. 1 at ¶ 31; Benson Decl., ¶ 5, 13. Under *Mavrix Photo*, *Axiom Foods*, *Uptown Dog Club*, *Getty Images*, *Tomelleri*, the

MOTION TO DISMISS AND MEMORANDUM IN SUPPORT - 14
(3:18-CV-05275-RBL)

**CARNEY BADLEY SPELLMAN, P.S.**
701 FIFTH AVENUE, SUITE 3600
SEATTLE, WA 98104-7010
(206) 622-8020

absence of state-specific activity, advertising, or information is fatal to the exercise of specific jurisdiction.

**(3)      The Acts Did Not Cause Harm Defendant Knows is Likely to be Suffered in the Forum State.**

This prong is met when a defendant's intentional act has foreseeable effects in the forum. *Getty Images*, 2013 WL 4827815, at *5. Foreseeability of alleged harm turns on whether defendant's conduct was expressly aimed at the forum state. *See id.* (infringing website was targeted to Washington residents losses occurring in Washington were foreseeable). Here, because there was no targeting of Washington residents, harm was not foreseeable.

**b)      Wilson's Claims do not Arise out of High 5's Forum-related Activities.**

Because there is no purposeful direction, the Court need not consider the second or third prongs of specific jurisdiction. *See, e.g.*, *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142-49 (9th Cir. 2017) (considering only purposeful availment and purposeful direction and affirming dismissal because that prong was not satisfied). Further, even if the Court were to consider whether the second prong is met, Wilson has alleged no jurisdictionally relevant contacts from which Wilson's claims may arise.

**c)      It Would be Unreasonable for the Court to Exercise Personal Jurisdiction Over High 5.**

The Court need only consider the third prong if plaintiff is able to set forth a prima facie case for personal jurisdiction. *See Morrill*, 873 F.3d at 1142-49. Assuming solely for argument that Wilson could demonstrate the first two prongs, the Court's exercise of jurisdiction would be unreasonable here. The Court considers seven factors to determine reasonableness, listed below. *See Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007).

All factors either weigh in favor of jurisdiction being unreasonable, or are neutral:

MOTION TO DISMISS AND MEMORANDUM IN SUPPORT - 15
(3:18-CV-05275-RBL)

**CARNEY BADLEY SPELLMAN, P.S.**
701 FIFTH AVENUE, SUITE 3600
SEATTLE, WA 98104-7010
(206) 622-8020

1. The extent of defendant's purposeful interjection into the forum state's affairs. As explained above, High 5 has not purposefully aimed any of its conduct at Washington. It has offered its video games through a third-party, on a national basis. The factor weighs in High 5's favor.

2. The burden on the defendant of defending in the forum. When the burden of litigating away from the home forum is "comparable" between plaintiff and defendant, this factor weighs in favor of defendant "because the law of personal jurisdiction is 'primarily concerned with the defendant's burden.'" *Vernon Johnson Fam. Ltd. P'ship v. Bank One Tex., N.A.*, 80 F. Supp. 2d 1127, 1135 (W.D. Wash. 2000) (holding exercise of jurisdiction over banks in putative class action would be unreasonable). High 5 is headquartered in Manhattan. Benson Decl., ¶ 2. The relevant witnesses and documents are located in New York. Benson Decl., ¶ 4. Wilson's primary counsel is located in Chicago. This factor weighs in High 5's favor.

3. The extent of conflict with the sovereignty of defendant's state. This factor is neutral as the alternate available jurisdictions are in the United States. *See Gray & Co. v. Firstenberg Mach. Co., Inc.*, 913 F.2d 758, 761 (9th Cir. 1990) ("When alternative forums are within the United States, any conflicting sovereignty interests are best accommodated through choice-of-law rules rather than jurisdictional rules.").

4. The forum state's interest in adjudicating the dispute. On balance, this factor is neutral. Washington arguably has an interest but that interest must be considered in context. Washington should have no special interest in regulating the conduct of a New York-based company not registered to do business in Washington. *See, e.g., Paccar Int'l, Inc. v. Commercial Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1065 (9th Cir. 1985) (holding exercise of personal jurisdiction would be unreasonable and stating, "California has no special interest in regulating banks that are not chartered under California law"); *Rippey v. Smith*, 16 F. App'x 596, 599-600 (9th Cir. 2001) (holding exercise of personal jurisdiction would be unreasonable and stating "California has no special interest in regulating the conduct of British attorneys").

MOTION TO DISMISS AND MEMORANDUM IN SUPPORT - 16
(3:18-CV-05275-RBL)

**CARNEY BADLEY SPELLMAN, P.S.**
701 FIFTH AVENUE, SUITE 3600
SEATTLE, WA 98104-7010
(206) 622-8020

New York, where High 5 is headquartered, has at least as much interest as Washington in regulating conduct of a New York-based business.

5. The most efficient judicial resolution of the controversy. "Courts evaluate the efficiency of adjudicating a dispute in the forum state by looking to the likely location of witnesses and evidence." *Private Res. Fin., LLC v. Borenstein*, No. C13-5788 RBL, 2014 WL 2208944, at *4 (W.D. Wash. May 28, 2014) (citing *Vernon Johnson Family Ltd. P'ship*, 80 F. Supp. 2d at 1136). The majority of witnesses and documents and information are in New York. This factor weighs in High 5's favor. Benson Decl., ¶ 4.

6. The importance of the forum in the plaintiff's interest in convenient and effective relief. This factor is neutral. "Although the importance of the forum to the plaintiff nominally remains part of this test, cases have cast doubt on its significance" and should "not significantly influence [the court's] analysis." *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 129 (9th Cir. 1995); *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1490 (9th Cir. 1993) ("A mere preference of the plaintiff does not affect the balancing[.]").

7. The existence of an alternative forum. This weighs in favor of the court declining to exercise jurisdiction because the Southern District of New York, where High 5 is headquartered, is an available, alternative forum.

Base on the following, it would be unreasonable for the Court to exercise jurisdiction over High 5. The Court should dismiss for lack of personal jurisdiction.

**B.    In the Alternative, High 5 Requests this Court Transfer the Case**

If the Court declines to dismiss this case for lack of personal jurisdiction, it may transfer  the case to the Southern District of New York. *See* 28 U.S.C. § 1631 ("Whenever a civil action is filed in a court as defined in section 610 of this title . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed[.]"); *Cabell v. Zorro Prods., Inc.*, No. 13-cv-00449RSM, 2015 WL 452327, at *1

MOTION TO DISMISS AND MEMORANDUM IN SUPPORT - 17
(3:18-CV-05275-RBL)

CARNEY BADLEY SPELLMAN, P.S.
701 FIFTH AVENUE, SUITE 3600
SEATTLE, WA 98104-7010
(206) 622-8020

(W.D. Wash. Feb. 3, 2015) (analyzing transfer under Section 1631 upon finding of no personal jurisdiction).

This case "could have been brought" in the District Court of the Southern District of New York.  That court has general personal jurisdiction over High 5. *See Ranza*, 793 F.3d at 1069 (general jurisdiction appropriate over entity in the state of its principal place of business).  Venue would be proper there as well. *See* 28 U.S.C. § 1391(b)(1) ("A civil action may be brought in . . . a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located.").  While High 5 believes dismissal is appropriate, the Court could transfer the case to the Southern District of New York.

**C.      Wilson Has Failed to State a Claim.**

All of Wilson's causes of action are premised upon the contention the each of the following statutory hurdles are met: (1) a virtual coin constitutes a "thing of value" under RCW 9.46.0285; (2) the $1.99 purchase of virtual coins satisfies the definition of "gambling" under RCW 9.46.0237; and (3) the playing of a High 5 game is "illegal gambling" under RCW 4.24.070 (Recovery Act).  As the statutes are interdependent, and each cause of action ultimately depends upon a violation of the Recovery Act, the Court need only find that one of the hurdles in not met in order to dismiss all of the claims.[5]  Here, Wilson cannot meet any of the statutory hurdles.

**1.      Fed. R. Civ. P. 12(B)(6)Standards**

A complaint must be dismissed when the allegations within it fail to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6); *Robertson v. GMAC Mortgage LLC*, 982 F. Supp. 2d 1202, 1206 (W.D. Wash. 2013). To survive a 12(b)(6) motion to dismiss, a complaint must state a claim for relief that is plausible . *Iqbal*, 556 U.S. at 678.  In evaluating whether that standard has been satisfied, the court accepts as true all material allegations pled

---

[5] RCW 9.46.0285 (Thing of Value) is a defined term in RCW 9.46.0237 (Gambling) is defined term in RCW 4.24.070 (Recovery Act), the statute which is the basis for the first cause of action, the second cause of action (Consumer Protection Act), and the third cause of action (Unjust Enrichment).

MOTION TO DISMISS AND MEMORANDUM IN SUPPORT - 18
(3:18-CV-05275-RBL)

and reasonable inferences to be drawn therefrom.  *See Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). The court does not accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citing *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994)).

The Court may consider facts properly subject to judicial notice on a motion to dismiss for failure to state a claim.  *In re Wash. Mut., Inc. Securities, Derivative & ERISA Litig.*, 259 F.R.D. 490, 495 (W.D. Wash. 2009).  The Court may also consider documents incorporated by reference into the complaint, whether because they are "referenced extensively in the complaint" or because they "form the basis" of the claims.  *Kimzey v. Yelp Inc.*, 21 F. Supp. 3d 1120, 1121 n.2 (W.D. Wash. 2014); *see also Hansen v. Boeing Co.*, 903 F. Supp. 2d 1215, 1217 (W.D. Wash. 2012) (The court "may rely on a document to which the complaint refers if the document is central to the party's claims and its authenticity is not in question.").[6]

### 1.    All of Wilson's Claims Fail Given That High 5 Video Games Are All Free to Play

All of Plaintiff's claims are premised on the false legal conclusion that High 5 video game virtual coins constitute "thing[s] of value" under RCW 9.46.0285.  Dkt. 1, ¶¶ 49-50. This conclusion is wrong because High 5's video games can be played free of charge.

Under the statute, a "thing of value" means:

> any money or property, any token, object or article
> exchangeable for money or property, or <u>any form of credit</u> or
> promise, directly or indirectly, contemplating transfer of money
> or property or of any interest therein, or <u>involving extension of</u>

---

[6]  To be clear, High 5 only requests the Court consider documents allegedly incorporated by reference in the Complaint and facts subject to judicial notice for purposes of its 12(b)(6) arguments, not other evidence that may have been submitted in support of High 5's personal jurisdiction arguments.  The FAQs are incorporated by reference because they address the basis of Wilson's claims, the way the video games at issue function.

MOTION TO DISMISS AND MEMORANDUM IN SUPPORT - 19
(3:18-CV-05275-RBL)

**CARNEY BADLEY SPELLMAN, P.S.**
701 FIFTH AVENUE, SUITE 3600
SEATTLE, WA 98104-7010
(206) 622-8020

> a service, entertainment or a privilege of playing at a game or scheme **without charge**.

RCW 9.46.0285 (emphasis added).

The court "must interpret and construe a statute to harmonize and give effect to the language used in the statute with no portion rendered meaningless or superfluous[.]" *State v. LaPointe*, 404 P.3d 610, 615, 617 (Wash. 2017) (rejecting argument that would render statutory language superfluous). And the Court must avoid interpreting the statute to lead to an absurd result. *State v. J.P.*, 69 P.3d 318, 320 (Wash. 2003).

Here, the phrase "without charge" must be given its obvious effect, which is that the previously-referenced "entertainment" or "game" is not free to experience or play. The statute would not need to include the language "without charge" if the entertainment or game at issue could only be obtained by paying a charge. Had the drafters intended the statute to apply to "credits" to "entertainment" or "game[s]" that are free (as is the case with the High 5 video games), they would not have included the language "without charge." The phrase "without charge" only makes sense if the referenced "entertainment" or "game" can only be viewed or played by paying a "charge." And failing to give meaning to the phrase "without charge" would lead to an absurd result: that a credit to play without charge a game that can be played for free is a "thing of value."

Here, the High 5 games can always be played "without charge." Players automatically receive free virtual coins on an ongoing basis which can be used to play the game. Benson Decl., ¶¶ 6-10, Ex. A (FAQ Free Coins). Players receive allotments of free virtual coins by simply opening the app, as often as every four hours and also receive daily bonuses of free virtual coins, free spins, and other rewards of free virtual coins. *Id.*, ¶¶ 6-10, Exs. A-E. In turn, the virtual coins in the High 5 video games cannot constitute "things of value" because the virtual coins do not involve a privilege of playing a game "without charge"; High 5's video games can always be played for free. Because Wilson cannot

MOTION TO DISMISS AND MEMORANDUM IN SUPPORT - 20
(3:18-CV-05275-RBL)

establish that the virtual coins in the High 5 games are "things of value" and, as all of Wilson's claims depend on meeting this definition, his complaint should be dismissed.

Dismissal on this basis does not conflict with the decision in *Churchill Downs* or principles of *stare decisis*. While the *Churchill Downs* panel addressed whether virtual coins in the Churchill Downs game were "things of value, the panel expressly stated it was proceeding based on the allegation that the Churchill Downs games were not free to play. *See* 886 F.3d at 787. Thus, because *Churchill Downs* was decided on materially different facts, it is not binding on this Court and is inapposite here. *See Hart v. Massanari*, 266 F.3d 1155, 1172 (9th Cir. 2001) (court must "parse the precedent" to determine whether factual differences are material to application of the rule); *United States v. Moore*, 62 F. Supp. 660, 663 (W.D. Wash. 1945) (Ninth Circuit decision on same legal question not binding because Ninth Circuit relied on different, material facts).

### 2. The $1.99 "In-App" Purchase Was a "Bona Fide Business Transaction," Not Gambling.

Accepting Wilson's allegations as true, his in-app purchase of virtual coins constitutes a "bona fide business transaction" which is expressly excepted from the definition of "gambling."

> The Washington statute defines  "gambling" as:
>> staking or risking something of value upon the outcome of a contest of chance or a future contingent event not under the person's control or influence, upon an agreement or understanding that the person or someone else will receive something of value in the event of a certain outcome. . . . Gambling does not include . . . bona fide business transactions valid under the law of contracts, including, but not limited to, contracts for the purchase or sale at a future date of securities or commodities . . . .

RCW 9.46.0237 (emphasis added).

Without limiting what constitutes a bona fide transaction, the statute provides a non-exclusive list of examples, including a contract for the future sale of a security. *Id. See* also,

MOTION TO DISMISS AND MEMORANDUM IN SUPPORT - 21
(3:18-CV-05275-RBL)

**CARNEY BADLEY SPELLMAN, P.S.**
701 FIFTH AVENUE, SUITE 3600
SEATTLE, WA 98104-7010
(206) 622-8020

*State v. Van Woerden*, 967 P.2d 14, 18 (Wash. Ct. App. 1998) (Under the *ejusdem generis* rule, when a general term is followed by the word "including" and specific examples, the general term applies to other, similar examples).

In such a transaction, a person agrees to pay a fixed amount to acquire a security, knowing the security's value at the later date could be virtually worthless or substantially more valuable, and that the value will not be under the purchaser's control or influence.

Here, Wilson's alleged transaction is like the securities example except he is "paying" for a future right to entertainment instead of the future right to a security. As alleged, Wilson paid $1.99 for virtual coins knowing the sole, future use of the virtual coins was to obtain entertainment and knowing the duration and intensity of the entertainment would be determined by events not under his control or influence.[7] This is no different than many other bona fide transactions for entertainment, such as when a person buys a pay-per-view ticket for a boxing match. When a person purchases pay-per-view for a boxing match, he purchases the right to entertainment for a duration and of an intensity he does not control. The fight could end after a single punch or could last 15 rounds. Such transactions for entertainment, like the transaction Wilson has alleged here, are bona fide business transactions under the law of contracts. Accordingly the alleged transaction does not constitute "gambling" and all of Wilson's claims should be dismissed.[8]

### 3.    $1.99 In-App Purchase Does Not Constitute Illegal Gambling

Even if Plaintiff could plausibly argue that the High 5 video games at issue technically fall within the statutory definition of "gambling" under RCW 9.46.0237 (they plainly do not), Plaintiff's claims still would fail as a matter of law because Plaintiff fails to allege facts sufficient to demonstrate that High 5 has engaged in ***illegal*** "gambling." *See, e.g.*, RCW

---

[7] In fact, it is this uncertainty which makes the game entertaining. Benson Decl., ¶ 9.

[8] The *Churchill Downs* court did not address this element of the statute. *See* 886 F.3d at 784-89. This Court is not bound by the *Churchill Downs* opinion on this issue. *See United States v. Moore*, 62 F. Supp. 660, 663 (W.D. Wash. 1945)

MOTION TO DISMISS AND MEMORANDUM IN SUPPORT - 22
(3:18-CV-05275-RBL)

**CARNEY BADLEY SPELLMAN, P.S.**
701 FIFTH AVENUE, SUITE 3600
SEATTLE, WA 98104-7010
(206) 622-8020

4.24.070 ("All persons losing money or anything of value at or on any ***illegal*** gambling . . . .") (emphasis added).

The primary goal in construing a statute and its statutory scheme is to determine and give effect to the intent of the legislature. *In re Custody of E.A.T.W.*, 227 P.2d 1284, 1288 (Wash. 2010). The Washington Supreme Court has held that:

> The plain meaning of a statute is discernible by examining everything the legislature has said in the statute itself and any related statutes that reveal legislative intent regarding the provision at issue. . . . The meaning of words in a statute is not determined from those words alone but from all the terms and provisions of the act as they relate to """"the subject of the legislation, the nature of the act, the general object to be accomplished and consequences that would result from construing the particular statute in one way or another.

*Id*. (quoting *Burns v. City of Seattle*, 164 P.3d 475 (Wash. 2007)).

Here, RCW 9.46.010 sets forth the legislature's intent very clearly. It provides that the gambling statutes should be interpreted to "avoid restricting participation by individuals in activities and social pastimes, which activities and social pastimes are more for amusement rather than for profit, do not maliciously affect the public, and do not breach the peace." RCW 9.46.010. The Washington gambling statutes, including RCW 9.46.0237 and RCW 4.24.070, must be interpreted in accordance with this expression of legislative intent, and thus social gaming in which there is no monetary prize awarded—like the game of pinball and other similar games—cannot constitute illegal gambling in Washington.

In addition, under Washington law, it is the Washington State Gambling Commission that has been tasked with "establish[ing] the ***type and scope of*** . . . gambling activities authorized by [the Washington gambling statutes]." RCW 9.46.070(11) (emphasis added). As explained above, the Commission has spoken: social games that do not award a monetary prize are "OK To Play." Req. Judicial Notice, Ex. L. The Commission and other law enforcement agencies in Washington have long had an express duty to enforce the state's gambling laws, *see* RCW 9.46.210, but for years neither the Washington Gambling

MOTION TO DISMISS AND MEMORANDUM IN SUPPORT
- 23
(3:18-CV-05275-RBL)

**CARNEY BADLEY SPELLMAN, P.S.**
701 FIFTH AVENUE, SUITE 3600
SEATTLE, WA 98104-7010
(206) 622-8020

Commission nor any other agency of the state of Washington has taken any action asserting that the makers or players of online social games are violating Washington gambling laws. Req. Judicial Notice, Exs. J-L. In fact, the Washington Gambling Commission issued a press release denying any responsibility for or agreement with the Panel decision in *Churchill Downs*. Req. Judicial Notice, Ex. A. "Substantial weight and deference should be given to an agency's interpretation of the statutes and regulations it administers." *Seatoma Convalescent Ctr. v. Department of Social & Health Serv.*, 929 P.2d 602, 613 (Wash. Ct. App. 1996) (citing, *e.g.*, *St. Francis Extended Health Care v. Department of Social & Health Serv.*, 801 P.2d 212 (Wash. 1990)). Thus, even if High 5's social games could somehow be shoehorned into Washington's statutory definition of "gambling," they are not the kind of "illegal gambling" that could invoke RCW 4.24.070 or give rise to Plaintiffs' claims in this action.

## IV.   CONCLUSION

Based on the foregoing and High 5's Motion to Stay filed concurrently herewith, the Defendant requests the Court (1) dismiss for lack of personal jurisdiction, (2) in the alternative, transfer the case to the Southern District of New York, (3) in the alternative, stay proceedings, or (4) dismiss the complaint based on Wilson's failure to state a claim.

DATED this 18th day of May, 2018.

*s/ Erik F. Stidham*
Christopher A. Wright, WSBA #26601
Emilia J. Sweeney, WSBA #23371
Attorneys for Defendant
CARNEY BADLEY SPELLMAN, P.S.
701 Fifth Avenue, Suite 3600
Seattle, WA 98104
Tel: (206) 622-8020 / Fax: (206) 467-8215

Erik F. Stidham (Admitted *Pro Hac Vice)*
Jennifer M. Jensen *(*Admitted *Pro Hac Vice)*
Holland & Hart LLP
800 W. Main Street, Suite 1750
Boise, ID 83702
Tel: (208) 342-5000 / Fax: (208) 343-8869

MOTION TO DISMISS AND MEMORANDUM IN SUPPORT
- 24
(3:18-CV-05275-RBL)

**CARNEY BADLEY SPELLMAN, P.S.**
701 FIFTH AVENUE, SUITE 3600
SEATTLE, WA 98104-7010
(206) 622-8020

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 18th day of May, 2018, I electronically filed the foregoing

**MOTION TO DISMISS AND MEMORANDUM IN SUPPORT** with the Clerk of the

Court using the CM/ECF system which will send notification of such filing to the following:

**Attorneys for Plaintiff**
Janissa Ann StrabukCecily C. Shiel
TOUSLEY BRAIN STEPHENS PLLC
1700 7th Ave Ste 2200
Seattle WA  98101-4416
Tel:  (206) 682-5600
jstrabuk@tousley.com
cshiel@tousley.com

**Attorneys for Plaintiff**
Benjamin H. Richman
EDELSON PC
350 North LaSalle St 14th Fl
Chicago IL  60654
Tel:  (312) 589-6370
brichman@edelson.com

**Attorneys for Plaintiff**
Todd LoganRafey S. Balabanian
Eve-Lynn Rapp
EDELSON PC
123 Townsend St Ste 100
San Francisco CA  94107
Tel:  (415) 638-9660
tlogan@edelson.com
rbalabanian@edelson.com
erapp@edelson.com

DATED this 18th day of May, 2018.

_s/  Stacy Gust_
Stacy Gust, Legal Assistant

MOTION TO DISMISS AND MEMORANDUM IN SUPPORT - 25
(3:18-CV-05275-RBL)

**CARNEY BADLEY SPELLMAN, P.S.**
701 FIFTH AVENUE, SUITE 3600
SEATTLE, WA 98104-7010
(206) 622-8020