The Honorable Ronald B. Leighton

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA**

| | |
|---|---|
| SEAN WILSON, individually and on behalf of all others similarly situated, | NO. 3:18-cv-05275-RBL |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DIMSISS UNDER FED. R. CIV. P. 12(b)(2)** |
| v. | |
| PTT, LLC., a Delaware limited liability company, d/b/a HIGH 5 GAMES, LLC, a Delaware limited liability company, | |
| Defendant. | |

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
PERSONAL JURISDICTION MOTION
Case No. 3:18-cv-05275-RBL-i

i

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

## TABLE OF CONTENTS

**INTRODUCTION** .................................................................................................................... 1

**FACTUAL BACKGROUND** .................................................................................................. 2

**ARGUMENT** ............................................................................................................................ 3

**I.** **Wilson's Claim Sounds In Contract, So A Purposeful-Availment Analysis Is Appropriate** ................................................................................................................ 4

**II.** **High 5 Purposefully Availed Itself Of The Privilege Of Conducting Business In Washington** ................................................................................................................ 5

   A.    High 5's conducts substantial and continuous business in Washington ................ 5

   B.    High 5's IP address data is accurate enough to support a jurisdictional finding .... 8

   C.    High 5 does far more than merely make a website available in Washington ......... 8

   D.    High 5 cannot avoid personal jurisdiction simply by selling via the App Store ..... 9

   E.    High 5's cases are inapposite ................................................................................. 10

**III.** **Wilson's Claim Arises Out Of High 5's Forum-Related Activities** .......................... 12

**IV.** **The Exercise Of Personal Jurisdiction Here Is Reasonable** .................................... 12

**CONCLUSION** ........................................................................................................................ 15

## TABLE OF AUTHORITIES

**United States Supreme Court Cases**

*Asahi Metal Indus. Co. v. Super Ct. of Cal., Solano Cty.*,
480 U.S. 102 (1987).............................................................................................. 13

*Burger King Corp. v. Ruzdewicz*,
471 U.S. 462 (1985)...........................................................................................13, 14

*Helicopteros Nacionales de Colombia S.A. v. Hall*,
466 U.S. 408 (1984).............................................................................................. 10

*Irwin v. Williar*,
110 U.S. 499 (1884)................................................................................................ 4

*J. McIntyre Mach., Ltd. v. Nicastro*,
564 U.S. 873 (2011)................................................................................................ 7

*Keeton v. Hustler Magazine, Inc.*,
465 U.S. 770 (1984)................................................................................................ 9

**United States Courts of Appeals Cases**

*AF Holdings, LLC v. Does 1-1058*,
752 F.3d 990 (D.C. Cir. 2014)............................................................................... 8

*Boschetto v. Hansing*,
539 F.3d 1011 (9th Cir. 2008) ........................................................................... 3, 5

*CollegeSource, Inc. v. AcademyOne, Inc.*,
653 F.3d 1066 (9th Cir. 2011) ..........................................................................14, 15

*Dole Food Co., Inc. v. Watts*,
303 F.3d 1104 (9th Cir. 2002) .......................................................................12, 13, 14

*Kater v. Churchill Downs Inc.*,
886 F.3d 784 (9th Cir. 2018) ................................................................................ 1

*Mattel, Inc. v. MCA Records, Inc.*,
296 F.3d 894 (9th Cir. 2002) ................................................................................ 9

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
647 F.3d 1218 (9th Cir. 2011) ............................................................................ 9, 11

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
PERSONAL JURISDICTION MOTION
Case No. 3:18-cv-05275-RBL-iii

iii

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

*Picot v. Weston*,
   780 F.3d 1206 (9th Cir. 2015) ................................................................................ 5

*Plixer Int'l, Inc. v. Scrutinizer GmbH*,
   No. 18-1195, 2018 WL 4357137 (1st Cir. Sept. 13, 2018) ................................... *passim*

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) ................................................................. *passim*

*Sher v. Johnson*,
   911 F.2d 1357 (9th Cir. 1990) ............................................................... 14

*Sinatra v. Nat'l Enquirer, Inc.*,
   854 F.2d 1191 (9th Cir. 1988) ...............................................................13, 14, 15

*Tuazon v. R.J. Reynolds Tobacco Co.*,
   433 F.3d 1163 (9th Cir. 2006) ............................................................... 5

**United States District Court Cases**

*City of Raton v. Ark. River Power Authority*,
   611 F. Supp. 2d 1190 (D.N.M. 2008) ..................................................... 4

*CMFG Life Ins. Co. v. UBS Secs.*,
   30 F. Supp. 3d 822 (W.D. Wis. 2014) .................................................... 4

*Falco v. Nissan N. Am. Inc.*,
   96 F. Supp. 3d 1053 (C.D. Cal. 2015) .................................................... 12

*Goes Int'l, AB v. Dodur Ltd.*,
   No. 3:14-CV-05666-LB, 2015 WL 5043296 (N.D. Cal. Aug. 26, 2015) ........................ 10

*Helicopter Transport Servs., LLC v. Sikorsky Aircraft Corp.*,
   253 F. Supp. 3d 1115 (D. Or. 2017) ...................................................... 6, 7

*In re Testosterone Replacement Therapy Prods. Liab. Litig. Coordinated Pretrial Proceedings*,
   No. 14 C 1748, 2016 WL 5890022 (N.D. Ill. Oct. 10, 2016) ................................. 8, 9

*Intercarrier Commc'ns LLC v. WhatsApp Inc.*,
   No. 3:12–cv–776–JAG, 2013 WL 5230631 (E.D. Va. Sept. 13, 2013) .......................... 11

*Lil' Man in the Boat, Inc. v. Auk Ta Shaa Discovery, Inc.*,
   No. 16-cv-01471-JST, 2016 WL 6679558 (N.D. Cal. Nov. 14, 2016) .......................... 6, 7

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
PERSONAL JURISDICTION MOTION
Case No. 3:18-cv-05275-RBL-iv

iv

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
    243 F. Supp. 2d 1073 (C.D. Cal. 2003)............................................................... 14

*Nu Image, Inc. v. Does 1-23, 322*,
    799 F. Supp. 2d 34 (D.D.C. 2011) ......................................................................... 8

*Opperman v. Path, Inc.*,
    No. 13-CV-00453-JST, 2014 WL 246972 (N.D. Cal. Jan. 22, 2014) ............................ 10

*Patterson v. Home Depot USA, Inc.*,
    684 F. Supp. 2d 1170 (D. Ariz. 2010).......................................................................... 12

*Prater v. Staples the Office Superstore, LLC*,
    No. C11–526 RAJ, 2012 WL 398623 (W.D. Wash. Feb. 6, 2012) ................................. 9

*Senne v. Kansas City Royals Baseball Corp.*,
    105 F. Supp. 3d 981 (N.D. Cal. 2015) ....................................................................13, 14

*Sherles v. Fox*,
    No. C18-0016-MAT, 2018 WL 3046429 (W.D. Wash. June 20, 2018)........................... 4

*Star Asia USA, LLC v. Great Neck Saw Mfrs., Inc.*,
    No. C05-505Z, 2005 WL 1950297 (W.D. Wash. Aug. 12, 2005) ............................... 6, 7

*Symbolstix, LLC v. Smarty Ears, LLC*,
    152 F. Supp. 3d 1027 (N.D. Ohio 2015).......................................................................... 10

*Tomelleri v. MEDL Mobile, Inc.*,
    No. 2:14–CV–02113–JAR, 2015 WL 1957801 (D. Kan. Apr. 29, 2015) ....................... 11

*Varney v. Air & Liquid Sys. Corp.*,
    No. 3:18-cv-05105-RJB, 2018 WL 1517669 (W.D. Wash. Mar. 28, 2018)..................... 6

*Zaletel v. Prisma Labs, Inc.*,
    226 F. Supp. 3d 599 (E.D. Va. 2016).......................................................................... 10

**State Supreme Court Cases**

*Failla v. FixtureOne Corp.*,
    336 P.3d 1112 (Wash. 2014) ...................................................................................... 3

**Statutory Provisions**

Fed. R. Civ. P. 4 ................................................................................................................... 3

RCW 4.24.070............................................................................................................... *passim*

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
PERSONAL JURISDICTION MOTION
Case No. 3:18-cv-05275-RBL-v

v

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

RCW 9.46.010........................................................................................................... 5, 13

**Miscellaneous Authorities**

38 Am. Jur. 2d *Gambling* § 161 ................................................................................ 4, 5

Jasmine Solana, "PokerStars stops offering free online poker in Washington state,"
      AYRE MEDIA GROUP, available at https://bit.ly/2opclAt
      (last visited August 31, 2018)......................................................................... 9

Letter from Professor Natasha Dow Schüll to the Washington State Gambling Commission,
      (Aug. 1, 2018), available at https://bit.ly/2NKQONw....................................... 2

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
PERSONAL JURISDICTION MOTION
Case No. 3:18-cv-05275-RBL-vi

vi

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

**INTRODUCTION**

Plaintiff Sean Wilson, a Washington resident, alleges that casino video games owned and operated by Defendant High 5 Games, LLC ("High 5") constitute illegal gambling under Washington law. *See* RCW 4.24.070; *Kater v. Churchill Downs Inc.*, 886 F.3d 784 (9th Cir. 2018). Within these casino video games, including "High 5 Casino" and "High 5 Vegas," High 5 sells valuable in-game currency needed to extend gameplay. Wilson contends that his purchases from High 5 are gambling losses that he may recover under RCW 4.24.070. One of High 5's principal defenses is that Wilson cannot recover his gambling losses in Washington because High 5 lacks minimum contacts with the state. That is incorrect.

In fact, the evidence shows that High 5 conducts significant and continuous █████ business in Washington, amounting to ███████████ in transactions with consumers in Washington. Not only that, but High 5 also advertises extensively within Washington: High 5 ads have been seen ████████████ by █████████ individuals in Washington. These acts—the systematic and continuous solicitation and conducting of business with individuals in Washington—create the required minimum contacts with the forum state, and permit this Court to exercise personal jurisdiction over High 5.

High 5 will likely trot out two rebuttals to this evidence: First, it will argue that whether or not it solicits and conducts business with Washington residents, it doesn't specifically seek to exploit the Washington market. But that (in any event specious) line of argument is immaterial because, as shown below, High 5 has purposefully availed itself of the privilege of conducting business in Washington. Second, High 5 will likely argue that the data tying its sales and advertisements to Washington is imperfect because it is based on IP addresses, which, according to High 5, are imperfect indicators of geolocation. But there can be no serious dispute that individuals in Washington have made ████████████ purchases of High 5's in-game currency amounting to █████████ in revenue for High 5. Nor can High 5 dispute that it has enjoyed the spoils of serving █████████ advertisements in Washington. And to be

clear, the data imprecision High 5 is likely to complain of cuts both ways: while some individuals captured by the IP address evidence might not be Washington residents, others not included in the produced data might well be Washington residents. In the absence of more precise data, or any specific showing by High 5 that its information is vastly overbroad (and High 5 has so far made none), the Court should move forward with the available evidence. And that evidence conclusively demonstrates that High 5 has minimum contacts with Washington.

**FACTUAL BACKGROUND**

High 5 developed and operates High 5 Casino, a "social" casino video game that includes games such as the colorfully named Da Vinci Diamonds, Golden Goddess, and Black Widow. (Dkt. 1, ¶ 20.) The games simulate a traditional casino on a user's computer or mobile phone, including through the use of casino sounds and the experience of wagering money to win casino chips. (*Id.* ¶¶ 25-30.) Unlike at the Muckleshoot or the Emerald Queen casino, the only possible "win" is continued gameplay. (*Id.* ¶¶ 11, 18, 25, 29; Dkt. 34, at 2-3.) That difference aside, these games operate in a substantially similar fashion to each other and to the archetypal Vegas casino: A new user is enticed with a small allotment of free chips that can be used to wager at the slot machine—but when these chips are inevitably exhausted, extended gameplay requires the user to purchase more chips. (*Id.* ¶¶ 13, 23-25; *see also* Letter from Professor Natasha Dow Schüll to the Washington State Gambling Commission, available at https://bit.ly/2NKQONw, at 2 (explaining that brick-and-mortar casinos also encourage gamblers to get hooked by providing them with free chips as an introductory enticement). In describing their games, High 5 focuses on the regular provision of nominal amounts of free chips. (Dkt. 34, at 3.) But this aspect of the games does not render them "free," as High 5 contends.

In fact, individuals in Washington have purchased more than ███████████ of chips from a single one of High 5's games—"High 5 Casino"—since the ███████████. *See* Declaration of Todd Logan In Support of Plaintiff's Opposition to Defendant High 5's Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction ("Logan Decl." ¶ 2); Exhibit 1 to

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
PERSONAL JURISDICTION MOTION
Case No. 3:18-cv-05275-RBL-2

2

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

Logan Decl. (High 5's discovery responses) at 10. That works out to around ███████ Washington-based purchases of High 5's virtual currency every month. Exh. 1 at 10. Those revenues were generated through more than ████████ transactions with individuals in Washington, including transactions on ████████████████████████. *Id* at 5, 8.

Given how lucrative these games are, it is no surprise that High 5 advertises them extensively throughout the state of Washington. The evidence indicates that High 5 has served more than ████████ advertisements to ████████ individuals located in Washington. *Id.* at 14, 16. And even though High 5 at all times had the ability to prevent its advertisements from being served in Washington, or to stop selling virtual chips in Washington, it never chose to do so.

## ARGUMENT

In this diversity case, personal jurisdiction is governed in the first instance by Washington law. Fed. R. Civ. P. 4(k)(1)(A). But Washington's long-arm statute permits Washington courts to assert personal jurisdiction to the fullest extent allowed by the Constitution, so the statutory and Constitutional inquiries merge. *See Failla v. FixtureOne Corp.*, 336 P.3d 1112, 1116 (Wash. 2014). The Ninth Circuit has established a three-part test for assessing whether a court may assert specific personal jurisdiction over a defendant consistent with due process:

(1) The defendant must have minimum contacts with the forum, perhaps by purposefully directing activities at the forum, consummating a transaction with a resident of the forum, or performing some act by which it purposefully avails itself of the privilege of conducting activities in the forum;

(2) The claim must arise out of or relate to these forum-based contacts; and

(3) The exercise of personal jurisdiction must be reasonable.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
PERSONAL JURISDICTION MOTION
Case No. 3:18-cv-05275-RBL-3

3

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

*See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).[1] The plaintiff bears the burden of showing that a defendant has minimum, suit-related contacts with the forum, and the defendant bears the burden of demonstrating that the exercise of personal jurisdiction is unreasonable. *Id.*; *see also Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (if minimum, suit-related contacts are shown, the defendant "must come forward with a compelling case that the exercise of jurisdiction would not be reasonable").

As *Schwarzenegger* explains, minimum contacts may be established if the defendant purposefully directed its conduct at the forum *or* purposefully availed itself of the privilege of conducting business in a particular forum. *See Schwarzenegger*, 374 F.3d at 802; *Sherles v. Fox*, 2018 WL 3046429, at *3 (W.D. Wash. June 20, 2018). A purposeful-direction analysis applies if the claim at issue sounds in tort, but a purposeful-availment analysis is used for lawsuits sounding in contract. *Schwarzenegger*, 374 F.3d at 802.

## I. Wilson's Claim Sounds In Contract, So A Purposeful-Availment Analysis Is Appropriate.

As a threshold issue, High 5 asserts—without elaboration—that Wilson's claim sounds in tort and therefore that a purposeful-direction analysis applies here. (Dkt. 34 at 11.) That barebones contention is wrong. The crux of this case is Mr. Wilson's claim under RCW 4.24.070, which is a claim to unwind a particular transaction on grounds of illegality. That is an inherently contract-based claim contesting the validity of a given consumer contract.[2] This follows from the statute's common law background. At common law, a wager constituted a gambling contract. 38 Am. Jur. 2d *Gambling* § 161 ("Where gambling is lawful, the placing of a bet gives rise to legally enforceable contract rights."). But gambling contracts were deemed

---

[1]   Wilson does not contend that High 5, which has corporate offices in New York, New Jersey, Kansas, and London, is at home in Washington so as to subject it to general jurisdiction.

[2]   To be sure, a claim seeking rescission on the basis of a misrepresentation might sound partially in tort, *see City of Raton v. Ark. River Power Authority*, 611 F. Supp. 2d 1190, 1206 (D.N.M. 2008), but there is no allegation that High 5 misrepresented anything about its in-game currency. *But see CMFG Life Ins. Co. v. UBS Securities*, 30 F. Supp. 3d 822, 825 (W.D. Wis. 2014) (holding that claims for rescission, on whatever theory, sound in contract because "claims for rescission seek a *contractual* remedy").

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
PERSONAL JURISDICTION MOTION
Case No. 3:18-cv-05275-RBL-4

4

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

unenforceable as against public policy. *See Irwin v. Williar*, 110 U.S. 499, 510 (1884). Nevertheless, courts refused to assist either side to recover money otherwise owed on account of a wager. 38 Am. Jur. 2d *Gambling* § 161 ("the law will not lend its aid to a party in either the execution or rescission of such a contract").

State legislatures, discerning that the common law's hands-off approach to gambling did nothing to prevent its spread, stepped into the breach with statutes like RCW 4.24.070, which allow for rescission of an illegal gambling contract. *See also* RCW 9.46.010 ("It is hereby declared to be the policy of the legislature, recognizing the close relationship between professional gambling and organized crime, to restrain all persons from seeking profit from professional gambling activities in this state; [and] to restrain all persons from patronizing such professional gambling activities …"). Given that the statute's history is steeped in contract law, and that the statute provides for a contractual remedy (rescission), the Court should conclude that Wilson's claim under RCW 4.24.070 sounds in contract, and that, therefore, a purposeful-availment analysis is appropriate.

**II.    High 5 Purposefully Availed Itself Of The Privilege Of Conducting Business In Washington.**

A.    High 5's conducts substantial and continuous business in Washington.

"A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Schwarzenegger*, 374 F.3d at 802. A "one-shot affair," like a single sale that does not create any "ongoing obligations," is typically insufficient to show purposeful availment. *See Boschetto*, 539 F.3d at 1017; *see also Picot v. Weston*, 780 F.3d 1206, 1212-13 (9th Cir. 2015) (no jurisdiction in California over contractual dispute because contract was formed in, and contemplated performance in, Michigan, and defendant only twice traveled to California). But "substantial and continuous contacts" will typically support a finding of personal jurisdiction. *See Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
PERSONAL JURISDICTION MOTION
Case No. 3:18-cv-05275-RBL-5

5

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1163, 1170 (9th Cir. 2006) (defendant subject to jurisdiction in Washington when it "generates substantial revenue and reaches many in-state customers").

Given this authority, district courts in this Circuit have generally drawn a line between cases involving random or sporadic transactions with individuals or entities in the forum state (which do not establish minimum contacts) and cases in which a defendant has continuous or systematic contacts with the forum state (which do establish minimum contacts). For instance, in *Helicopter Transport Services, LLC v. Sikorsky Aircraft Corp.*, 253 F. Supp. 3d 1115 (D. Or. 2017), the court concluded that the defendant had minimum contacts with Oregon because it sold goods "throughout the world, including in Oregon," it advertised in Oregon, and it maintained a highly interactive website which it had reason to know was regularly accessed by Oregon residents. *Id.* at 1128-29. By these actions, the court concluded that the defendant "promotes the transaction of business within the forum state." *Id.* at 1129; *see also Star Asia USA, LLC v. Great Neck Saw Mfrs., Inc.*, 2005 WL 1950297, at *2-*3 (W.D. Wash. Aug. 12, 2005) (defendant purposefully directed conduct at the forum state through "substantial sales of the Defendant's product in Washington," "purposeful[ly] creat[ing] a market for its products in Washington," and maintaining an interactive Internet website accessible in Washington); *Varney v. Air & Liquid Sys. Corp.*, 2018 WL 1517669, at *2 (W.D. Wash. Mar. 28, 2018) (defendant who knows that its products are being purchased in a given state "should reasonably anticipate being haled into court here"); *Plixer Int'l, Inc. v. Scrutinizer GmbH*, No. 18-1195, 2018 WL 4357137, at *5 (1st Cir. Sept. 13, 2018) (in Rule 4(k)(2) context, Defendant "knew that it was serving [in-forum] customers and took no steps to limit its website's reach or block its use by [in-forum] customers. After three-and-a-half years of knowingly serving [in-forum] customers, [Defendant] cannot now claim that its contact with the [forum] was involuntary.").

On the other hand, the court found that the defendant did not have minimum contacts in *Lil' Man in the Boat, Inc. v. Auk Ta Shaa Discovery, Inc.*, 2016 WL 6679558 (N.D. Cal. Nov. 14, 2016), *aff'd* 708 F. App'x 484 (9th Cir. 2018). Although the defendant there advertised in the

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
PERSONAL JURISDICTION MOTION
Case No. 3:18-cv-05275-RBL-6

6

forum state through a website, the only suit-related contact was a single sale with a tenuous connection to that website. *Id.* at *3. This single sale, the court concluded, did not establish that the defendant regularly solicited business in California. *Id.* at *4. Notably, the court contrasted that situation with other cases in which a defendant regularly solicits business in the forum state, or regularly delivers goods to the forum state. *Id.* In the latter case, the court reasoned, the defendant will have availed itself of the privilege of conducting business in that state, and thus be subject to the jurisdiction of the courts of that state.

This case is more like *Helicopter Transport* than *Lil' Man in the Boat*. High 5 completed ████████████████████ every month directly with individuals in Washington, generating more than ████████████ every month from individuals in the state. Exh. 1 at 10. As the First Circuit explained just days ago, because High 5 transacts directly with individuals in the forum, the record provides "an objectively clearer picture of [High 5's] intent to serve the forum, the crux of the purposeful availment inquiry." *Plixer Int'l*, 2018 WL 4357137, at *5. Further, High 5's advertising efforts reach Washington consumers ████████████████. Exh. 1 at 16. Far from a single sale or ephemeral connection with the forum state, the evidence in the record shows a continuous and systematic flow of commerce between Washington and High 5. *See generally id.* As in *Helicopter Transport*, High 5 has minimum contacts with Washington because it regularly "promotes the transaction of business within the forum state." 253 F. Supp. 3d at 1129. Just like that case, High 5 transacts business throughout the world (including regular business in the forum state), advertises in Washington, and operates a highly interactive Internet-based game that it has reason to know is accessed ████████████ individuals in Washington. *See id.* at 1128-29; Exh. 1 at 8; *see also J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 889 (2011) (Breyer, J., concurring in the judgment) ("regular course" of sales in forum state sufficient for specific personal jurisdiction); *Plixer Int'l*, 2018 WL 4357137, at *6 (minimum contacts shown on the basis of $200,000 worth of sales into the forum over a 3.5-year period); *Lil' Man in the Boat*, 2016 WL 6679558, at *4 (reasoning that "regular sales" into a particular

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
PERSONAL JURISDICTION MOTION
Case No. 3:18-cv-05275-RBL-7

7

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

state established minimum contacts in that state); *Star Asia*, 2005 WL 1950297, at *2-*3 ("substantial sales" into forum state and purposeful creation of market for product in that state established purposeful availment).

B.   High 5's IP address data is accurate enough to support a jurisdictional finding.

Apparently seeking to avoid the weight of this evidence and precedent, High 5's discovery responses emphasize that IP address information is not necessarily a reliable indicator of geolocation. *See generally* Exh. 1. High 5 overstates its case. As the D.C. Circuit has recognized, while IP addresses may not necessarily provide evidence of a user's street address, they do show a user's general location. *See AF Holdings, LLC v. Does 1-1058*, 752 F.3d 990, 996 (D.C. Cir. 2014). A D.C. district judge also concluded that IP address geolocation "can place a user no farther away than a city that borders the user's actual location." *Nu Image, Inc. v. Does 1-23, 322*, 799 F. Supp. 2d 34, 41 (D.D.C. 2011). This moderate level of imprecision need not detain the Court. Most of Washington's residents, including all residents of Seattle, Tacoma, Spokane, Olympia, Yakima, and Everett, would be accurately located in the state of Washington, and there exists only an unquantified possibility that High 5 customers in, say, Walla Walla might be incorrectly placed in Oregon, or that users in Moscow, Idaho, might be inaccurately deemed residents of Pullman. This might be an issue for WSU or U of I graduates, but absent a sturdier evidentiary foundation, it is not one this Court need concern itself with. *See In re Testosterone*, 2016 WL 5890022, at *3-*4 (N.D. Ill. Oct. 10, 2016) (concluding that, because defendants did not keep more precise data, plaintiffs were entitled to rely on reasonable inferences from available data to show that personal jurisdiction was proper).

C.   High 5 does far more than merely make a website available in Washington.

High 5 also argues that because it offers a universally accessible Internet service, that renders it amenable to jurisdiction nowhere. Dkt. 34 at 10-15. Whether or not that is true under a purposeful-direction analysis (applied in all of High 5's cases), because High 5 actively solicits and directly conducts ▮▮▮▮▮▮▮▮ business with Washington residents, it is immaterial

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
PERSONAL JURISDICTION MOTION
Case No. 3:18-cv-05275-RBL-8

8

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

that High 5's casino games are available without regard to location: It still has availed itself of the privilege of conducting business in Washington. *See, e.g.*, *Plixer Int'l*, 2018 WL 4357137, at *4-*7 (noting, among other things, that "this is not a situation where a defendant merely made a website accessible in the forum . . . Instead, [Defendant's] voluntary service of the [forum's] market and its not insubstantial income from that market show that it could have "reasonably anticipated" being haled into [the forum]."); *Prater v. Staples the Office Superstore, LLC*, 2012 WL 398623, at *5 (W.D. Wash. Feb. 6, 2012) ("Nova intentionally created a distribution channel, presumably for profit, to deliver its products to all fifty states, including Washington. Accordingly, the evidence establishes a prima facie case of purposeful availment."); *In re Testosterone Replacement Theory Prods. Liab. Litig.*, 2016 WL 5890022, at *3-*4 (N.D. Ill. Oct. 10, 2016) (finding specific personal jurisdiction based on evidence of nationwide sales, reasoning that "the very high volume of national sales for a non-state-specific product that was marketed nationwide supports a strong inference that significant amounts of [the product] were sold in each of the forum states").[3]

D.    High 5 cannot avoid personal jurisdiction simply by selling via the App Store.

Finally, High 5 argues that the Court may not exercise personal jurisdiction here because High 5 distributes its gambling apps and receives its gambling revenues exclusively through

---

[3]    Though many of its competitors choose not to offer their gambling games in Washington, *see* Jasmine Solana, "PokerStars stops offering free online poker in Washington state," AYRE MEDIA GROUP, available at https://bit.ly/2opclAt (last visited September 17, 2018), High 5 has chosen to offer its gambling games in Washington and to distribute ▓▓▓▓▓▓▓ advertisements in Washington. Those choices establish that—in addition to purposefully availing itself of the privilege of doing business in Washington—High 5 purposefully *directs* unlawful conduct at the state of Washington. As the Ninth Circuit held in *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 899 (2002), conduct expressly aimed at all fifty states potentially subjects the defendant to specific jurisdiction in each state. The argument for jurisdiction on that basis is even stronger here, because High 5 could easily have chosen—as have several of its peers—to stop offering its illegal gambling products in Washington. *See, e.g.*, *Plixer Int'l*, 2018 WL 4357137, at *5 ("For instance, Scrutinizer could design its website not to interact with [forum-based] users, but it has not done so.") (citation omitted). Thus, High 5's choice to instead forge ahead with business and advertisements in Washington was a choice to aim unlawful conduct at Washington. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780-81 (1984) (defendant's choice to "continuously and deliberately exploit[]" a particular state's market within the context of generalized, nationwide activity sufficient to establish minimum contacts in that state); *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1230-31 (9th Cir. 2011) (specific jurisdiction may be proper in any jurisdiction where "consumption was a predictable consequence" of the defendant's business model, even if that meant jurisdiction is proper in all 50 states).

Apple's App store. (Dkt. 34 at 7-8, 10, 14). Again, while that argument might be relevant to a purposeful-direction analysis, it is immaterial here because High 5 has purposefully *availed* itself of the privilege of conducting business in the forum. *See Schwarzenegger*, 374 F.3d at 802. Moreover, district courts in this circuit and nationwide have repeatedly rejected similar attempts by internet-based companies to evade personal jurisdiction by selling products exclusively through distribution channels like the Apple App store or the Google Play store. *See, e.g.*, *Goes Int'l, AB v. Dodur Ltd.*, No. 3:14-CV-05666-LB, 2015 WL 5043296, at *10 (N.D. Cal. Aug. 26, 2015) (distribution of software through Apple App store and Google Play store sufficient for exercise of specific personal jurisdiction over defendant); *Opperman v. Path, Inc.*, No. 13-CV-00453-JST, 2014 WL 246972, at *1 (N.D. Cal. Jan. 22, 2014) (similar); *Symbolstix, LLC v. Smarty Ears, LLC*, 152 F. Supp. 3d 1027, 1032 (N.D. Ohio 2015) (similar). As the Court in *Goes* explained, a defendant who uses the Apple App store to distribute its product to a particular forum cannot blame any "intervening decision of a distributor" for its in-forum commerce. *Goes*, 2015 WL 5043296, at *10; *see also Plixer*, 2018 WL 4357137, at *5 (defendant cannot blame "intervening actor" for having done business in particular forum where defendant could have made—but chose not to make—efforts to bar customers from the particular forum). That distinguishes this case from "stream of commerce" cases like *Asahi* and *Nicastro* that High 5 seeks to rely on. (Dkt. 34 at 13; *but see Goes*, 2015 WL 5043296, at *10 ("The world-wide distribution here included [in-forum] customers and happened not by an intervening decision of a distributor such as the Chinese tire maker in *Asahi* but instead by [Defendant] itself.").

E.    High 5's cases are inapposite.

In any event, all of High 5's cases are factually distinguishable. In *Zaletel v. Prisma Labs, Inc.*, 226 F. Supp. 3d 599 (E.D. Va. 2016), a copyright-infringement case, for instance, the court emphasized that the allegedly infringing smartphone application was available for download free of charge through third parties. *See id.* at 607; *see also Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 416-17 (1984) (emphasizing that acts of third parties are

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
PERSONAL JURISDICTION MOTION
Case No. 3:18-cv-05275-RBL-10

10

generally irrelevant to the minimum-contacts analysis); *Plixer Int'l*, 2018 WL 4357137, at *5 (noting that cases involving direct transactions with customers differ from cases in which third parties are involved, because when defendants transact directly with consumers, they can choose to serve or not particular fora, and the decision to serve customers in a given location helps establish intent to target that forum). Here, by contrast, High 5 charges money for in-game currency, and these transactions are conducted directly with High 5, so High 5 makes a conscious choice to serve customers in a given location.

*Tomelleri v. MEDL Mobile, Inc.*, 2015 WL 1957801 (D. Kan. Apr. 29, 2015), is similar. Also a copyright-infringement action, the court there concluded that the defendant through its website did not purposefully direct infringing conduct at the forum state because no sales were made through that website and there was no evidence that any individual in the forum state purchased the product through a third party. *Id.* at *7. The record here, by contrast, contains that evidence: it shows that over ███████████ High 5 has sold virtual currency to individuals in Washington more than ████████████████████████ Washington-based revenue *every month*. Exh. 1 at 5, 10.

The fact that in-forum sales occurred only through a third party also was irrelevant to dismissal of a patent-infringement claim in *Intercarrier Communications LLC v. WhatsApp Inc.*, 2013 WL 5230631, at *1 (E.D. Va. Sept. 13, 2013). Further, the plaintiff there developed no record about the extent of sales in the forum state or about whether any advertisements placed by the defendant were seen in the forum state. *Id.* at *4. In fact, the record there showed that the defendant placed *no* relevant advertisements. *Id.* Here, however, the record shows continuous and substantial sales by High 5 itself to individuals in Washington, and evidence that individuals in Washington have seen advertisements placed by High 5 itself. This record is a far cry from what was before the court in *Intercarrier Communications*.[4]

---

[4]    Within its purposeful-direction analysis, High 5 contends that state-specific advertising is *required* to show purposeful direction. (Dkt. 34, at 13-14.) Not so. In fact, in *Mavrix Photo* the Ninth Circuit concluded that jurisdiction was proper in any state because the defendant's website was set up to "exploit a national market." 647 F.3d at 1231. The Ninth Circuit rejected an argument that would have permitted jurisdiction only in two states

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
PERSONAL JURISDICTION MOTION
Case No. 3:18-cv-05275-RBL-11

11

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

**III.    Wilson's Claim Arises Out Of High 5's Forum-Related Activities.**

High 5 next contends that Wilson's claim is not connected to High 5's forum-related activities. (Dkt. 34, at 15.) This contention, however, is based exclusively on the premise that High 5 does not have any minimum contacts with Washington. (Dkt. 34, at 15.) Both the premise (as explained above) and the conclusion (as explained here) are wrong. Wilson's claim arises from his purchase of High 5 Casino's in-game currency, the substantial and continuous sale of which into Washington helps establish that High 5 has minimum contacts with Washington. Thus, Wilson's claim arises out of High 5's forum-related activities. *See, e.g.*, *Falco v. Nissan N. Am. Inc.*, 96 F. Supp. 3d 1053, 1060 (C.D. Cal. 2015) (claim arose of out defendant's forum-related activities because claim alleged misrepresentations in sale of cars to plaintiff in forum); *Patterson v. Home Depot USA, Inc.*, 684 F. Supp. 2d 1170, 1186 (D. Ariz. 2010) (similar).

**IV.    The Exercise Of Personal Jurisdiction Here Is Reasonable.**

Because High 5 has minimum contacts with Washington, and because Wilson's claim arises out of those contacts, High 5 bears the burden of presenting a "compelling case" that the exercise of jurisdiction would be unreasonable here. *See Schwarzenegger*, 374 F.3d at 802. The Ninth Circuit's cases emphasize that this is a heavy burden, not met even by many foreign defendants. *See Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1117 (9th Cir. 2002) (collecting cases). The Ninth Circuit has set forth seven factors for courts to consider in this analysis: "(1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in

---

because that "theory of jurisdiction would allow corporations whose websites exploit a national market to defeat jurisdiction in states where those websites generate substantial profits from local consumers." *Id.* That argument, the Ninth Circuit concluded, was inconsistent with the Supreme Court's cases and with basic fairness concerns.  The Ninth Circuit acknowledged "the burden that our conclusion may impose on some popular commercial websites," *id.*, but concluded that the Constitution tolerated this burden.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
PERSONAL JURISDICTION MOTION
Case No. 3:18-cv-05275-RBL-12

12

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

convenient and effective relief; and (7) the existence of an alternative forum." *Id.* at 1114. Several of these factors weigh decidedly in Wilson's favor.

For example, as explained above, High 5 conducts significant business with individuals in Washington, and reaches ████████████████████████████ with its advertising. Exh. 1 at 14. Not only do these acts satisfy the personal-availment prong, they also render the exercise of jurisdiction reasonable. *See Dole Food*, 303 F.3d at 1114-15 ("There may be circumstances under which the level of purposeful injection into the forum supports a finding of purposeful availment yet still weighs against the reasonableness of jurisdiction, but this is not such a case."); *see also Plixer*, 2018 WL 4357137, at *9 ("When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant.") (quoting *Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.*, 480 U.S. 102, 114 (1987)).

Next, Washington has a strong interest in adjudicating this dispute. *See* RCW 9.46.010 (one express purpose of Washington anti-gambling laws is to "safeguard the public against the evils induced" by professional gambling). And "[a] State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger King Corp. v. Ruzdewicz*, 471 U.S. 462, 474 (1985); *see also Dole Food*, 303 F.3d at 1115-16 (observing that a state "has a strong interest in providing a forum for residents" who have been injured); *Senne v. Kansas City Royals Baseball Corp.*, 105 F. Supp. 3d 981, 1044 (N.D. Cal. 2015) ("Where plaintiffs reside in California and the injury occurs here, California has a strong interest in adjudicating the dispute."). For its part, High 5 relies on cases in which the plaintiffs were not suing in their own forum. (Dkt. 34, at 16-17.) These cases are inapposite, as the Ninth Circuit has explained. *See Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1200 (9th Cir. 1988) ("Thus, this case is different from the weak state interests present when nonresidents sue in California courts.").

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
PERSONAL JURISDICTION MOTION
Case No. 3:18-cv-05275-RBL-13

13

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

Further, this forum will be able to most effectively adjudicate this controversy. *See Dole Food*, 303 F.3d at 1116. Dismissing the case in favor of refilling it in New York (which is High 5's preferred resolution) would only cause delay. *See Senne*, 105 F. Supp. 3d at 1045 (concluding that it would be more efficient to litigate case in California along with related cases in part because dismissal and refiling would cause unnecessary delay). Further, it is undisputed that Washington law will apply to this dispute, which counsels in favor of jurisdiction here. *See Dole Food*, 303 F.3d at 1116 (implying that California would be a more efficient forum for a case arising under California law). Finally, because this is one of several similar actions pending before this Court, it would be more efficient to litigate here, because the Court will be able to generate a body of relevant substantive knowledge, and Wilson will not be at risk of inconsistent or conflicting rulings. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 243 F. Supp. 2d 1073, 1094 (C.D. Cal. 2003) ("The Court is thus already immersed in this litigation and best suited to adjudicate it.").

As *Dole Food* makes clear, because some factors show persuasively that the exercise of jurisdiction here is reasonable, High 5 must make a compelling case that countervailing factors require dismissal. 303 F.3d at 1117. High 5 highlights that many witnesses do not reside in Washington, implying that litigation here is inconvenient. (Dkt. 34, at 16-18.) This falls far short of demonstrating that jurisdiction is unreasonable. High 5 is tasked with showing that litigating in Washington would place it at a "severe disadvantage," not that litigation in Washington is merely inconvenient. *Burger King*, 471 U.S. at 478; *Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990). This it cannot do. The burdens of travel are relatively minimal, and many can be eliminated entirely by modern technology. *See, e.g.*, *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1080 (9th Cir. 2011) (suggesting that requiring allegedly small Pennsylvania company to litigate in California was not particularly inconvenient); *Sher*, 911 F.2d at 1365 ("In this era of fax machines and discount air travel, requiring the partnership to defend itself in California under the circumstances as it alleges them would not be so unreasonable as to violate

due process."); *Sinatra*, 854 F.2d at 1199 ("modern advances in communications and transportation have significantly reduced the burden of litigating in another country"). In sum, High 5's protestations about minor inconvenience do not move the personal-jurisdiction needle one bit.

Finally, there is no need to worry about conflicting sovereign interests because all parties are American. And whether or not an alternative forum exists is irrelevant: The existence of an alternative forum is "an issue only when the forum state is shown to be unreasonable," and High 5 has not made that showing here. *CollegeSource*, 653 F.3d at 1080 (*quoting Sinatra*, 854 F.2d at 1201). In the end, High 5 has not carried its burden to show that the exercise of jurisdiction here would be unreasonable.  The motion to dismiss should be denied.

## CONCLUSION

In light of High 5's systematic and continuous contacts with Washington, the Court should have no trouble concluding that High 5 has minimum contacts with Washington. The motion to dismiss under Rule 12(b)(2), or alternatively to transfer under 28 U.S.C. § 1631, should be denied.

Respectfully Submitted,

**SEAN WILSON**, individually and on behalf of all others similarly situated,

Dated: September 17, 2018                By:   /s/ Janissa A. Strabuk

One of Plaintiff's Attorneys

TOUSLEY BRAIN STEPHENS, PLLC
Janissa A. Strabuk
jstrabuk@tousley.com
Cecily C. Shiel
cshiel@tousley.com
1700 Seventh Avenue, Suite 2200

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
PERSONAL JURISDICTION MOTION
Case No. 3:18-cv-05275-RBL-15
15
TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

Seattle, Washington 98101-4416
Tel: 206.682.5600
Fax: 206.682.2992

Rafey Balabanian*
rbalabanian@edelson.com
Eve-Lynn J. Rapp*
erapp@edelson.com
Todd Logan*
tlogan@edelson.com
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

*Attorneys for Plaintiff and the Putative Class*

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
PERSONAL JURISDICTION MOTION
Case No. 3:18-cv-05275-RBL-16

16

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

## CERTIFICATE OF SERVICE

I, Janissa A. Strabuk, hereby certify that I served the above and foregoing document by causing true and accurate copies of such paper to be transmitted to all counsel of record via the Court's CM/ECF electronic filing system on September 17, 2018.

/s/ Janissa A. Strabuk

PLAINTIFF'S OPPOSITION TO DEFENDANT'S PERSONAL JURISDICTION MOTION
Case No. 3:18-cv-05275-RBL-17

17

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992