## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT TACOMA

| | |
|---|---|
| SEAN WILSON, individually and on behalf of all others similarly situated, | Case No. 18-cv-05275-RBL |
| *Plaintiff*, | **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR A PROTECTIVE ORDER RE PLAINTIFF'S SUBPOENAS TO APPLE INC. AND GOOGLE LLC** |
| v. | |
| PTT, LLC, a Delaware limited liability company, d/b/a HIGH 5 GAMES, LLC, a Delaware limited liability company, | |
| *Defendant*. | |

## TABLE OF CONTENTS

ARGUMENT ....................................................................................................... 1

   1.  LEGAL STANDARD. ................................................................................ 1

   2.  PLAINTIFF DOES NOT OPPOSE HIGH 5'S "RELEVANT TIME PERIOD" AND "CLASS MEMBER CONTACT INFORMATION" OBJECTIONS. ...................................................................................... 2

   3.  PLAINTIFF SHOULD BE PERMITTED TO PURSUE THIRD-PARTY DISCOVERY INTO HIGH 5 VEGAS. ........................................... 2

   4.  PLAINTIFF SHOULD BE PERMITTED TO PURSUE DISCOVERY OF NATIONWIDE PURCHASE HISTORY DATA FROM APPLE AND GOOGLE. ............................................................................. 5

CONCLUSION .................................................................................................. 7

# TABLE OF AUTHORITIES

**United States Circuit Court of Appeals Cases**

*Davidson v. Kimberly-Clark Corp.*,
    889 F.3d 956 (9th Cir. July 20, 2018) ............................................................. 4

**United States District Court Cases**

*Advocare Int'l, L.P. v. Scheckenbach*,
    No. 08-cv-5332-RBL, 2008 WL 5156424 (W.D. Wash. Dec. 8, 2008).......................... 1

*Clancy v. The Bromley Tea Co.*,
    308 F.R.D. 564 (N.D. Cal. 2013) ...................................................................... 5

*Daimler Truck N. Am. LLC v. Younessi*,
    No. 08-CV-5011-RBL, 2008 WL 2519845 (W.D. Wash. June 20, 2008) ...................... 1

*Miller v. Ghirardelli Chocolate Co.*,
    912 F. Supp. 2d 861 (N.D. Cal. 2012)................................................................ 4

*Silcox v. AN/PF Acquisitions Corp.*,
    No. 17-cv-1131-RSM, 2018 WL 1532779 (W.D. Wash. Mar. 29, 2018).................... 2, 7

*Wilson v. Frito-Lay N. Am. Inc.*,
    961 F. Supp. 2d 1134 (N.D. Cal. 2013)............................................................... 4

*Wilson v. Playtika*,
    349 F. Supp. 3d 1028 (W.D. Wash. Nov. 20, 2019) ........................................ 3, 4, 5

**<u>Miscellaneous Authority</u>**

Fed. R. Civ. P. 26 ...................................................................................... 1, 6

F.R.E. 401 ...................................................................................................... 5

**ARGUMENT**

High 5 has filed a motion for a protective order seeking to narrow the scope of documents Plaintiff may pursue from third parties Google and Apple. *See* Dkt. 80 (the "Motion"). The Motion asks the Court to bar Plaintiff from pursuing third-party discovery into four categories of information: (1) putative class member contact information; (2) in-game transaction data predating April 7, 2014; (3) in-game transaction data from IP addresses outside of Washington; and (4) information related to High 5 Vegas (as distinguished from High 5 Casino). *See id.*

In an effort to minimize unnecessary burdens upon the Court, Plaintiff does not—for purposes of this motion—oppose High 5's objections regarding the first two categories of information. But because High 5 Vegas is squarely at issue in this putative class action case, the Court should permit Plaintiff to conduct third-party discovery into that social casino. And because information regarding in-game transaction data from IP addresses outside of Washington is both relevant to this case and necessary for Plaintiff to understand data High 5 previously produced in this case, the Court should permit Plaintiff to pursue discovery of nationwide purchase history data from Apple and Google.

Save for Plaintiff's concessions, the Motion should be denied.

**1.     LEGAL STANDARD.**

Parties may discover "any non-privileged matter that is relevant to any party's claim or defense" and that information "need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Advocare Int'l, L.P. v. Scheckenbach*, No. 08-cv-5332-RBL, 2008 WL 5156424, at *2 (W.D. Wash. Dec. 8, 2008) (quoting Fed. R. Civ. P. 26(b)(1)). Discovery of electronically stored information can be limited if production "is unreasonable due to its burden or cost." *Daimler Truck N. Am. LLC v. Younessi*, No. 08-CV-5011-RBL, 2008 WL 2519845, at *4 (W.D. Wash. June 20, 2008) (citing Fed. R. Civ. P. 26(b)(2)(B)). "The party seeking a protective order has the burden to demonstrate good cause, and must make 'a particular and specific demonstration of fact as distinguished from

stereotypical and conclusory statements' supporting the need for a protective order." *Silcox v. AN/PF Acquisitions Corp.*, No. 17-cv-1131-RSM, 2018 WL 1532779, at *3 (W.D. Wash. Mar. 29, 2018) (citation omitted).

## 2. PLAINTIFF DOES NOT OPPOSE HIGH 5'S "RELEVANT TIME PERIOD" AND "CLASS MEMBER CONTACT INFORMATION" OBJECTIONS.

In an effort to minimize unnecessary burdens upon the Court, Plaintiff begins with two concessions. First, for purposes of this motion only,[1] Plaintiff does not oppose High 5's request that Apple and Google limit responsive Purchase Information to purchases occurring on or after April 7, 2014. *See* Motion, at 1. Furthermore, again for purposes of this motion only, Plaintiff does not oppose High 5's request that Apple and Google refrain from producing the names or contact information of putative class members. *Id.*

Plaintiff's counsel will communicate these concessions to Apple and Google before this motion's noting date, and likewise will ensure that—in the likely event Plaintiff's counsel is forced to pursue an enforcement action against Apple and Google in the United States District Court for the Northern District of California—the court assigned to that enforcement action is made aware of them. *See* Declaration of Todd Logan ("Logan Decl.") ¶ 3.

## 3. PLAINTIFF SHOULD BE PERMITTED TO PURSUE THIRD-PARTY DISCOVERY INTO HIGH 5 VEGAS.

High 5 argues that Plaintiff may not pursue third-party discovery regarding "High 5 Vegas" primarily because that social casino is "not part of the claims alleged in the Complaint" and is—according to High 5 and its lawyers—"materially different" than "High 5 Casino." *See* Motion, at 1. But the complaint puts High 5 Vegas squarely at issue, and there is no basis at this stage in the case for the Court to determine as a matter of law that High 5 Vegas is so different than High

---

[1] To be clear, Plaintiff does not concede that Defendant's "Relevant Time Period" and "Class Member Contact Information" objections are meritorious. Plaintiff believes that Purchase Information prior to April 2014 is relevant to, *inter alia*, his claims that High 5's business practices fall afoul of the CPA, and furthermore believes that—under the facts and circumstances of this case—putative class member contact information is likely discoverable pre-certification.

5 Casino that Plaintiff may not even pursue discovery as to the former. And while High 5 also argues that Plaintiff lacks Article III standing to pursue class claims against High 5 Vegas because he has not played that game, that argument is foreclosed in the Ninth Circuit.

Literally the first paragraph of the complaint identifies two specific social casino games, owned and operated by Defendant, that Plaintiff challenges through this lawsuit: (1) High 5 Casino, and (2) High 5 Vegas. *See* Dkt. 1 ¶ 1. The complaint likewise makes clear that Plaintiff seeks to represent not just High 5 Casino players but also High 5 Vegas players (and players of High 5's other "online casino games."). *See id.* ¶ 32 (defining the proposed class as "All persons in the State of Washington who purchased and lost chips by wagering at Defendant's High 5 Games' online casino games."). That puts High 5 Vegas at issue in this case.

It's true that Plaintiff does not allege he played High 5 Vegas, but that's of no moment here. Plaintiff alleges that his claims are typical of the claims of other members of the proposed Class, and furthermore alleges that common questions proposed by this action—which render class treatment appropriate—include "[w]hether Defendant's online casino games are 'gambling' as defined by RCW § 9.46.0237." *Id.* ¶ 34-35. Because this case is a proposed class action, that is more than enough to put High 5 Vegas at issue. *See Wilson v. Playtika*, 349 F. Supp. 3d 1028, 1045 (W.D. Wash. Nov. 20, 2019) ("The defining feature of class actions is the plaintiff's ability to assert claims on behalf of themselves and those similarly situated. It necessarily follows from this that the plaintiff will claim damages for harms that they themselves did not suffer, with the operative issue being whether those other harms are sufficiently similar to theirs.").

High 5's motion requests that the Court determine—as a matter of law, prior to the close of class discovery, and before merits discovery has even begun—that High 5 Vegas is so materially different than High 5 Casino that Plaintiff may not even pursue discovery as to the latter. *See* Motion at 1, 7. That request puts the proverbial cart about a mile before the horse. The purpose of conducting discovery into claims and allegations that survive the pleadings stage is to test their veracity. Here, class discovery into High 5 Vegas will inform the parties' briefs on the

propriety of class certification. High 5 is of course entitled to argue—in its opposition to class certification—that Wilson's claims are not typical of those of High 5 Vegas players, and consequently that certification is improper. Plaintiff intends to prove otherwise, and respectfully submits that High 5's attempt to draw a sharp distinction between "High 5 Casino" and "High 5 Vegas" falters even before one gets past the titles of the respective social casino apps,[2] but that is beside the point. The salient point is that these arguments are supposed to be made during class certification briefing, and are supposed to be supported by evidence obtained in discovery. As the Court previously held in a related case:

> Whether or not [Plaintiff's] specific harm is "typical" of the class will turn on how the transactions he entered into with [Defendant] compare with the rest of the class. It will not necessarily turn on which specific games [Plaintiff] played, except to the extent the games function differently such that [Plaintiff] entered into different types of transactions than some of the class members. In any case, that question **should be addressed at the class certification stage**, since there is no indication at this point that [a game Plaintiff did not allege playing] functions so uniquely that the allegations related to that game are "immaterial."

*Playtika*, 349 F. Supp. 3d at 1045 (emphasis added). That analysis applies with equal force here.

Relying chiefly on two outdated district court opinions from outside the Western District of Washington (both in the consumer fraud context), High 5 also argues that Plaintiff lacks Article III standing to pursue claims against High 5 Vegas. *See* Motion at 7-10 (*citing Wilson v. Frito-Lay N. Am. Inc.*, 961 F. Supp. 2d 1134 (N.D. Cal. 2013) and *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861 (N.D. Cal. 2012)). As an initial matter, it bears noting that a motion for a protective order over third-party discovery is an unusual and improper occasion for a defendant to first raise purportedly constitutional deficiencies in a case.

In any event, Defendant's argument is foreclosed by Ninth Circuit precedent. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 972 (9th Cir. July 20, 2018). In *Kimberly-Clark*, the

---

[2] It also bears noting that, in its motion to dismiss, High 5 made no distinction between High 5 Casino and High 5 Vegas, and expressly sought dismissal of Plaintiff's claims as to both. *See* Dkt. 34 at 21 (seeking dismissal of claims against "the High 5 games").

plaintiff alleged that she had bought one of the defendant's four varieties of purportedly "flushable" wipes (the "Scott Wipes" variety), but sought to certify claims on behalf of a class of all persons who bought any of the four varieties of defendant's wipes. *Id.* at 962 (Plaintiff "sought to certify a class of all persons who purchased Cottonelle Wipes, Scott Wipes, Huggies Wipes, and Kotex Wipes."). After conducting a searching review of the district court's conclusion that the plaintiff lacked Article III standing, the Ninth Circuit reversed. *Id.* at 972. While the *Kimberly-Clark* opinion focuses primarily on the plaintiff's Article III standing to pursue injunctive relief, the relevant takeaway here is that the Ninth Circuit—while squarely focused on the issue of the plaintiff's Article III standing or lack thereof—did not bat an eye at the notion that the plaintiff sought to certify a class of purchasers of Cottonelle Wipes, Huggies Wipes, and Kotex Wipes. *See generally id.* The reason for that is simple: the issue Defendant raises here isn't one of Article III standing; it is a typicality issue reserved for class certification proceedings. *See Playtika*, 349 F. Supp. 3d at 1045; *accord Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 571 (N.D. Cal. 2013) (rejecting *Frito-Lay* and *Ghirardelli*, and concluding that "Transmogrifying typicality or commonality into an issue of standing would undermine the well-established principles that '[i]n a class action, standing is satisfied if at least one named plaintiff meets the requirements.'") (citation omitted). That extinguishes Defendant's Article III argument here.

**4.    PLAINTIFF SHOULD BE PERMITTED TO PURSUE DISCOVERY OF NATIONWIDE PURCHASE HISTORY DATA FROM APPLE AND GOOGLE.**

Plaintiff does not dispute that the class he seeks to represent is limited to Washingtonians and those who have gambling losses to High 5 that occurred in Washington. *See* Motion at 4-5. Nor does Plaintiff contend that transactions that have no nexus to the state of Washington are at issue in this case. *Id.* Nevertheless, the Court should permit Plaintiff to pursue discovery of nationwide purchase history data from third-parties Apple and Google. Nationwide purchase history data is absolutely *relevant*, as that word is contemplated by F.R.E. 401 and Fed. R. Civ.

P. 26(b), to the claims and defenses alleged in this case. *Cf. id.* (raising exclusively a relevance objection, and declining to raise proportionality and/or burden objections). More to the point here, in order to conduct adequately-informed depositions of High 5 witnesses, Plaintiff needs access to nationwide transaction data from Apple and Google, which will speak to the accuracy and completeness of the two vastly different, inconsistent datasets High 5 has produced to date.

By way of background, Plaintiff has been pursuing High 5 transaction history information through traditional party-discovery Requests for Production for more than a year. Logan Decl. ¶ 4. On December 10, 2019, High 5 finally produced a responsive dataset ("First Dataset"). *Id.* ¶ 5. That same day, Plaintiff's counsel requested by email that High 5 identify "which transactions are included in this file? (*e.g.*, are these transactions associated with Washington IP addresses? Is it all Washington transactions during the included time period?)." *Id.* ¶ 6. On December 11, 2019, Defendant's counsel responded by email that the First Dataset reflected "purchase history from IP addresses associated with Washington," but that transactions from a certain time period might be missing from the First Dataset. *Id.* ¶ 7. But after a telephonic meet and confer in which Plaintiff's counsel identified other concerns regarding the First Dataset, Defendant's counsel stated by email on December 12, 2019, that the First Dataset in fact reflected "more than just purchases from Washington IP addresses." *Id.* ¶ 8.

Defendant's counsel then produced a new dataset ("Second Dataset"), which it represented contained "the results of the query of Washington IP address purchases" but would be missing eleven months of transactions. *Id.* ¶ 9. Concerned both with the missing transactions in the Second Dataset and with stark inconsistencies as between the two datasets, Plaintiff's counsel followed up via both email and telephonic meet and confer over the next several weeks in an attempt to interpret the First and Second Datasets (and, more specifically, in an attempt to understand how either could actually reflect what High 5 claimed they reflected). *Id.* ¶ 10. Notwithstanding these efforts, High 5's counsel refused—and continues to refuse—to explain the inconsistencies identified by Plaintiff's counsel. *Id.* ¶ 11.

Against this backdrop, the Court should permit Plaintiff to pursue third-party discovery of nationwide High 5 purchase history information. The sought-after information is squarely relevant to the claims and defenses alleged this case: Plaintiff anticipates learning through this third-party discovery that Washington players make up a disproportionate per-capita share of High 5's "whales," which is a fact relevant both to Plaintiff's claims that High 5 has violated the CPA by targeting Washington and to High 5's defense that the Court may not exercise personal jurisdiction over it. Moreover, at this juncture, the only way for Plaintiff to assess the completeness and accuracy of the First and Second Datasets High 5 has produced—and, consequently, the only way for Plaintiff to conduct adequately-informed upcoming depositions of High 5 witnesses—is for Plaintiff to be able to compare those datasets to a complete, unassailable, nationwide database of High 5 transactions.

To the extent High 5 attempts on reply to raise burden or proportionality arguments, the arguments should be stricken as waived. In any event, High 5 has no credible claim of burden here because the third-party discovery Plaintiff seeks does not threaten to burden High 5. Apple and Google are of course entitled to raise their own objections in due course, and Plaintiff's counsel have no doubt that enforcement proceedings in the Northern District of California will be vigorously contested. But that underscores the point: because Plaintiff seeks relevant information from third parties, High 5 has no legitimate dog in this fight. And for that reason, High 5 cannot meets its burden of "good cause," supported by a "particular and specific demonstration," so as to justify the entry of a protective order. *Silcox*, 2018 WL 1532779, at *3 (W.D. Wash. Mar. 29, 2018).

## CONCLUSION

Save for Plaintiff's concessions, the Motion should be denied.

Dated: February 10, 2020

Respectfully submitted,

**SEAN WILSON**, individually and on
behalf of all others similarly situated,

By: /s/ Todd Logan
EDELSON PC
Rafey Balabanian*
*rbalabanian@edelson.com*
Todd Logan*
*tlogan@edelson.com*
Brandt Silver-Korn*
*bsilverkorn@edelson.com*
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300 | Fax: 415.373.9435

By: /s/ Cecily C. Shiel
TOUSLEY BRAIN STEPHENS PLLC
Cecily C. Shiel, WSBA #50061
cshiel@tousley.com
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600

*Admitted *pro hac vice*

*Attorneys for Plaintiff and the Proposed
Class*