HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SEAN WILSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>PTT, LLC, a Delaware limited liability company, d/b/a HIGH 5 GAMES, LLC, a Delaware limited liability company,<br><br>Defendant. | CASE NO. 18-cv-05275-RBL<br><br>ORDER ON MOTIONS FOR PROTECTIVE ORDER<br><br>DKT. ## 80, 118 |

**INTRODUCTION**

THIS MATTER is before the Court on Defendant High 5 Games, LLC's Motions for Protective Order regarding Plaintiff Sean Wilson's Subpoenas to Google, LLC and Facebook, Inc.[1] Dkt. ## 80, 118. This class action is one of several seeking to recover money lost playing app-based casino games. High 5 now moves to limit Wilson's discovery into information held by third-party companies, arguing that Wilson's subpoenas are overbroad. More specifically, High 5 asserts that the subpoenas impermissibly seek data reflecting purchases made outside the 4-year

---

[1] The Court notes that High 5's first Motion also challenges Wilson's subpoena to Apple, Inc., but that issue is now moot because Apple has since responded to that subpoena. Dkt. # 129.

statute of limitations, purchases outside of Washington State, purchases in the "High 5 Vegas" app that Wilson never played, and identifying information for putative class members.

Wilson does not oppose High 5's Motions with respect to data reflecting purchases outside the statute of limitations period and identifying information of putative class members. These aspects of High 5's Motions therefore do not merit discussion. However, Wilson does contest High 5's remaining arguments. After considering the parties' arguments, the Court GRANTS High 5's Motions in part and DENIES them in part.

**DISCUSSION**

**1.    Legal Standard**

Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). However, Rule 26(c)(1) permits the Court to, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1). "A party can move for a protective order in regard to a subpoena issued to a non-party if it believes its own interests are jeopardized by discovery sought from a third party and has standing under Rule 26(c) to seek a protective order regarding subpoenas issued to non-parties which seek irrelevant information." *In re REMEC, Inc. Sec. Litig.*, No. CIV 04CV1948 JLS AJB, 2008 WL 2282647, at *1 (S.D. Cal. May 30, 2008). "The party seeking a protective order has the burden to demonstrate good cause, and must make 'a particular and specific demonstration of fact as distinguished from stereotypical and conclusory statements' supporting the need for a protective order." *Silcox v. AN/PF*

| | |
|---|---|
| 1 | *Acquisitions Corp.*, No. 17-cv-1131-RSM, 2018 WL 1532779, at *3 (W.D. Wash. Mar. 29, |
| 2 | 2018) (citation omitted). |

**2. Information regarding High 5 Vegas**

High 5 argues that the Court should restrict Wilson's discovery into data reflecting purchases made on the "High 5 Vegas" app, which is distinct from the "High 5 Casino" app that Wilson played on. High 5 contends that High 5 Vegas is irrelevant because Wilson did not allege any claims arising out of purchases on that app. Further, High 5 asserts that Wilson lacks standing to assert claims related to High 5 Vegas, which he never used and which has a different coin-allocation system than High 5 Casino. Wilson responds that High 5's arguments attempt to prematurely adjudicate issues relevant to class certification. According to Wilson, High 5's standing argument is actually about the typicality and commonality of Wilson's claims—issues that should be left for class certification.

The Court agrees with Wilson. "In putative class actions like this one, . . . plaintiffs can demonstrate standing at the pleading stage if they plead sufficiently detailed facts that the non-purchased products are 'substantially similar' to the purchased products for which they have standing." *Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1140–41 (N.D. Cal. 2013); *see also Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 870 (N.D. Cal. 2012) (finding no standing where products were all made by Ghirardelli but were "otherwise dissimilar"). Unlike *Frito-Lay*, where the plaintiffs broadly asserted that 85 snack foods they had never bought were "basically the same," Wilson's Complaint identifies only two apps and explains their similarity. *Id*. at 1141; Complaint, Dkt. # 1 at 1-2. For example, he alleges that both apps provide an initial free allotment of coins and eventually attempt to sell the user more. *Id*. at 2. This is enough to give Wilson standing to assert claims related to both apps.

1    Nor is it the case that High 5 Vegas is an irrelevant afterthought in Wilson's Complaint.
2    While Wilson only mentions High 5 Vegas once, this is because his Complaint generally refers
3    to High 5's two apps collectively (for comparison, he only mentions High 5 Casino by name
4    three times). *Id*. at 2, 6, 9. As this Court held in a similar case to recover gambling losses, "[t]he
5    defining feature of class actions is the plaintiff's ability to assert claims on behalf of themselves
6    and those similarly situated. It necessarily follows from this that the plaintiff will claim damages
7    for harms that they themselves did not suffer, with the operative issue being whether those other
8    harms are sufficiently similar to theirs." *Wilson v. Playtika, Ltd.*, 349 F. Supp. 3d 1028, 1045
9    (W.D. Wash. 2018). While High 5 asserts that its High 5 Vegas app differs by providing players
10   with a continuously-accumulating allotment of coins, whether this means that Wilson's claims
11   related to High 5 Vegas are too dissimilar is a question best left for class certification. High 5's
12   Motion is DENIED with respect to Wilson's discovery into High 5 Vegas.

**3.      Data regarding Purchases made Outside of Washington State**

14   High 5 also challenges Wilson's attempt to subpoena information about purchases made
15   on its apps nationwide, arguing that such information is irrelevant to Wilson's Washington-
16   focused lawsuit. According to High 5, this discovery is an improper attempt to obtain
17   information about potential plaintiffs and claims for future class actions. Wilson admits that
18   "transactions that have no nexus to the state of Washington are [not] at issue in this case."
19   Opposition, Dkt. # 86, at 5. Nonetheless, Wilson argues that this information is necessary
20   because High 5 has produced two inconsistent sets of data about its Washington purchases,
21   forcing Wilson to obtain a nationwide dataset for comparison purposes. Further, Wilson contends
22   that this data is relevant to proving that "Washington players make up a disproportionate per-
23   capita share of High 5's 'whales,' which is a fact relevant both to Plaintiff's claims that High 5

1 has violated the CPA by targeting Washington and to High 5's defense that the Court may not
2 exercise personal jurisdiction over it." *Id.* at 7.

3       Wilson's arguments are not persuasive. According to Wilson, High 5's first dataset of
4 Washington purchases was over-inclusive, while the second dataset contained a gap. But Wilson
5 does not articulate why comparing with data showing nationwide purchases, rather than accurate
6 data on Washington purchases, is necessary to resolve these issues. From the Court's
7 perspective, cross-referencing High 5's data with an accurate list of Washington purchases
8 would show which purchases from the first dataset were made outside Washington (because they
9 would be absent in the third parties' data) and which purchases from the second dataset were
10 missing (because they would be present in the third parties' data). In addition, Wilson has more
11 recently conducted a 30(b)(6) deposition of High 5, in which High 5's expert provided an
12 adequate explanation of the differences between the two datasets that were produced. *See*
13 Dkt. # 127 at 3-4. Wilson's rationale for obtaining information on purchases outside Washington
14 does not hold up.

15       Nor is such data relevant to Wilson's claims. The Court has already decided the issue of
16 personal jurisdiction in Wilson's favor; there is no need for him to seek discovery into that now.
17 *See* Order Denying Motion to Dismiss, Dkt. # 57, at 5-12. The Court also cannot discern how
18 High 5's disproportionate targeting of Washington consumers would be relevant to Wilson's per
19 se CPA claim. Wilson's Complaint alleges that High 5 impacted the public interest by
20 "continuously advertis[ing] to and solicit[ing] the general public in Washington State and
21 throughout the United States to play its unlawful online casino games of chance." Complaint,
22 Dkt. # 1, at 15. Whether High 5 *disproportionately* targeted Washingtonians appears unimportant

1 | as long as it did target them. High 5's request to limit Wilson's discovery into nationwide
2 | purchases is GRANTED.

**CONCLUSION**

For the above reasons, the Court GRANTS High 5's Motion with respect to data reflecting purchases outside the statute of limitation period, purchases outside of Washington, and consumer contact, and identifying information of putative class members. The Court DENIES High 5's Motion with respect to data related to High 5 Vegas.

IT IS SO ORDERED.

Dated this 6th day of April, 2020.

Ronald B. Leighton
United States District Judge