1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SEAN WILSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>PTT, LLC, a Delaware limited liability company d/b/a HIGH 5 GAMES, LLC, a Delaware limited liability company,<br><br>Defendant. | CASE NO. 3:18-cv-05275-RBL<br><br>ORDER ON DEFENDANT'S MOTION TO CERTIFY ISSUES TO WASHINGTON SUPREME COURT<br><br>DKT. # 103 |

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

THIS MATTER is before the Court on Defendant High 5's Motion to Certify Issues to

the Washington Supreme Court. Dkt. # 103. As the three-digit docket number for High 5's

Motion indicates, the parties have already spent considerable time and judicial resources

litigating this case about the legality of app-based casino games in Washington State. Much of

those resources went into deciding High 5's motion to dismiss for failure to state a claim, which

was filed on July 2, 2018. Dkt. # 34. In its motion, High 5 argued that Wilson's claims depended

on him proving that: "(1) a High 5 virtual coin constitutes a 'thing of value' under

RCW 9.46.0285; (2) Wilson's $1.99 purchase of High 5 virtual coins satisfies the definition of

'gambling' under RCW 9.46.0237, [which exempts 'bona fide business transactions']; and

1 (3) the playing of a High 5 game is 'illegal gambling' for purposes of RCW 4.24.070." *Id*. at 18.

2 High 5 argued that Wilson could not meet these requirements, but this Court disagreed and

3 denied High 5's motion. Dkt. # 57.

4 Now, over a year and a half later, High 5 would like to certify the same questions it raised

5 in its motion to dismiss to the Washington Supreme Court. Specifically, High 5 wants the

6 Supreme Court to weigh in on the following issues: "(1) Are virtual coins 'things of value,' when

7 players can play the game without paying for any coins, additional coins can be obtained without

8 payment, and when the coins cannot be converted to cash, redeemed for prizes, or transferred to

9 other users? (2) Does an in-app purchase of virtual coins constitute a 'bona fide business

10 transaction,' which is expressly excepted from Washington's definition of gambling? [and] (3) Is

11 playing an online, casino-themed video game the type of 'illegal' activity RCW § 4.24.070 was

12 designed to address, when the game offers no prize?" Motion, Dkt. # 103, at 3-4. In opposition,

13 Wilson contends that High 5 has already had its bite at this apple and certification at this stage of

14 the case is unwarranted.

15 Although federal courts may decide state law issues of first impression, they also have

16 discretion to certify such issues to the state's highest court. *Murray v. BEJ Minerals, LLC*, 924

17 F.3d 1070, 1071 (9th Cir. 2019). Washington law allows certification of question to the

18 Washington Supreme Court when "the local law has not been clearly determined." RCW

19 § 2.60.020; accord, RAP 16.16(a). But the Ninth Circuit has made clear that the certification

20 process is not to be "lightly" invoked. *Murray*, 924 F.3d at 1072 (quoting *Kremen v. Cohen*, 325

21 F.3d 1035, 1037 (9th Cir. 2003)). It requires "careful consideration" of the following factors:

22 "(1) whether the question presents 'important public policy ramifications' yet unresolved by the

23 state court; (2) whether the issue is new, substantial, and of broad application; (3) the state

24

1  court's caseload; and (4) 'the spirit of comity and federalism.'" *Id*. at 1072 (quoting *Kremen*, 325

2  F.3d at 1037-38).

3      "There is a presumption against certifying a question to a state supreme court after the

4  federal district court has issued a decision." *Thompson v. Paul*, 547 F.3d 1055, 1065 (9th Cir.

5  2008). Courts in this circuit and elsewhere have recognized that allowing parties to exploit

6  certification as a de facto reconsideration or appeal would turn the district court's decision into

7  "nothing but a gamble." *Id*. (quoting *Perkins v. Clark Equip. Co., Melrose Div.*, 823 F.2d 207,

8  209–10 (8th Cir.1987)); *see also Enfield v. A.B. Chance Co.*, 228 F.3d 1245, 1255 (10th Cir.

9  2000); *Cantwell v. Univ. of Mass.*, 551 F.2d 879, 880 (1st Cir. 1977). In short, "[a] party should

10 not be allowed a second chance at victory through certification." *Hinojos v. Kohl's Corp.*, 718

11 F.3d 1098, 1109 (9th Cir. 2013) (quoting *Thompson*, 547 F.3d at 1065 (internal quotation

12 omitted)).

13     High 5 cannot overcome this presumption against post-hoc certification. As recounted

14 previously, High 5 seeks certification of the exact same issues it raised in its motion to dismiss in

15 2018. Before that, the core issue of whether High 5's virtual coins are a "thing of value" under

16 RCW 9.46.0285 was also decided by the Ninth Circuit in *Kater v. Churchill Downs Inc.*, 886

17 F.3d 784 (9th Cir. 2018). Even with the knowledge that the Ninth Circuit had already rejected

18 many of its positions, High 5 chose to argue in federal court that its app-based games did not

19 constitute gambling. It would take something very special to convince the Court that certification

20 is appropriate under such circumstances.

21     High 5's arguments do not rise to that level. High 5 makes some valid points in favor of

22 certification, the most persuasive being that regulation of gambling is a state function and the

23 highest state court should be the one to decide whether a new category of games meets the

24

1   definition of illegal gambling. But this new-found preference for a state court decision does not

2   justify High 5's choice to try its luck in federal court first.

3          Further, the Ninth Circuit's decision in *Kater* was a straightforward exercise in statutory

4   interpretation that did not, as High 5 contends, fatally ignore legislative purpose. *See* Order on

5   Motion to Dismiss, Dkt. # 57, at 17-18 (holding that statement of legislative purpose in

6   RCW 9.46.010 is broad and does not clearly suggest a different interpretation from *Kater*). And

7   while *Kater* and this Court's subsequent decisions may affect app-based casino games, it is

8   unclear whether any other types of online games would be impacted. Washington's definition of

9   "gambling" only reaches "staking or risking something of value upon the outcome of a contest *of*

10  *chance* or a future contingent event *not under the person's control or influence*" and contains

11  numerous exceptions. RCW 9.46.0237 (emphasis added). Most games not derived from casinos

12  involve some amount of skill and would thus be unlikely to meet the statutory definition.

13         High 5 chose to litigate the merits of this case in federal court and that is where it will

14  remain. High 5's Motion to Certify Issues to the Washington Supreme Court is DENIED.

15         IT IS SO ORDERED.

16

17         Dated this 6th day of April, 2020.

18

19  _____

        Ronald B. Leighton
20      United States District Judge

21

22

23

24