1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Honorable Ronald B. Leighton

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

SEAN WILSON, individually and on behalf of all other similarly situated,

Plaintiff,

v.

PTT, LLC, a Delaware limited liability company d/b/a HIGH 5 GAMES, LLC, a Delaware limited liability company,

Defendant.

NO. 3:18-cv-05275-RBL

**HIGH 5 GAMES, LLC'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND FOR PRELIMINARY INJUNCTION**

**ORAL ARGUMENT REQUESTED**

**NOTE ON MOTION CALENDAR: August 28, 2020**

OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
AND FOR PRELIMINARY
INJUNCTION - 1
(3:18-cv-05275-RBL)

HOLLAND & HART LLP
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................... 1

II. FACTUAL BACKGROUND ......................................................................... 2

   A.  High 5 Offers Free-to-Play Social Games. ........................................... 2

   B.  Wilson Got What He Bargained for from His $1.99 Purchase. ............. 3

   C.  Wilson Filed for Bankruptcy But Failed to Disclose His Claims. ........ 4

   D.  Counsel Solicits Wilson to Become the Named Plaintiff. ................... 4

   E.  In Related Litigation, Wilson and His Counsel Have Taken the Position That Games That Provide Free Virtual Coins on An Ongoing Basis Do Not Violate Washington Gambling Statutes ............................................................. 5

III.   THE COURT SHOULD STRIKE OR DISREGARD IMPROPER EVIDENCE. 6

   A.  Declarations Relating to Different Games Are Irrelevant. ................... 6

   B.  Improper Expert Testimony Should Be Stricken. ................................ 6

   C.  Wilson Fails to Provide Foundation for Data. ..................................... 7

IV.   WILSON LACKS BOTH ARTICLE III AND PRUDENTIAL STANDING; THEREFORE, HE CANNOT REPRESENT A CLASS, AND HIS CLAIMS MUST BE DISMISSED. ........................................................................... 8

   A.  Wilson Lacks Article III Standing. ...................................................... 8

   B.  Wilson Also Lacks Prudential Standing. ........................................... 12

V. THE COURT SHOULD DENY CLASS CERTIFICATION. ................................ 13

   A.  There Is No Common Question with a Class-Wide Answer. ............ 13

   B.  Wilson Cannot Establish Typicality or Adequacy Because He Has Unique Claims and Is Subject to Unique Defenses. .................................... 18

     1.  Wilson is uniquely lacking in credibility and subject to impeachment. ........ 18

     2.  Wilson never played or made a purchase from High 5 Vegas. .................... 21

     3.  Wilson's CPA claim is atypical. ................................................................ 22

     4.  Wilson is subject to a unique unclean hands defense. .............................. 22

OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
AND FOR PRELIMINARY
INJUNCTION - i
(3:18-CV-05275-RBL)

**HOLLAND & HART LLP**
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

5.  Wilson is subject to a unique judicial-estoppel defense. ............................... 23

C.  Individualized Issues Predominate. .................................................................... 25

1.  Wilson cannot establish liability with common, class-wide evidence. ......... 26

2.  Individualized liability issues predominate. ................................................. 26

3.  Individualized damages issues predominate. ................................................ 27

D.  A Class Action Is Not the Superior Method of Adjudication. ........................... 30

E.  There Is No Factual Basis for Certification Under Rule 23(b)(2). ................... 31

VI.  THERE IS NO BASIS TO ENTER A PRELIMINARY INJUNCTION. .......... 32

A.  Wilson Lacks Standing to Seek a Preliminary Injunction. ............................... 33

B.  Wilson Has Proven None of the Four Preliminary Injunction Elements. .......... 33

1.  There is no likelihood of irreparable harm. .................................................. 35

2.  Wilson is unlikely to succeed on the merits of his CPA claim. .................... 37

3.  The balance of hardships or equities favors High 5. ..................................... 39

4.  An injunction would disserve the public interest. ......................................... 41

VII.  CONCLUSION ............................................................................................ 42

OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
AND FOR PRELIMINARY
INJUNCTION - ii
(3:18-CV-05275-RBL)

HOLLAND & HART LLP
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Adams v. Target Corp.*,
   2014 WL 12558858 (C.D. Cal. Nov. 25, 2014) ................................................................. 31

*AF Holdings LLC v. Doe*,
   2012 WL 12906122 (C.D. Cal. Oct. 2, 2012) ................................................................... 31

*Ah Quin v. Cnty. of Kauai Dept. of Transp.*,
   733 F.3d 267 (9th Cir. 2013) ..................................................................................... 23, 24

*Allen v. Hyland's Inc.*,
   300 F.R.D. 643 (C.D. Cal. 2014) ...................................................................................... 21

*Alpert v. Nationstar Mortg. LLC*,
   2019 WL 1200541 (W.D. Wash. Mar. 14, 2019) ............................................................. 38

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) .................................................................................................... 13, 25

*Anderson v. United States*,
   612 F.2d 1112 (9th Cir. 1979) ......................................................................................... 34

*Avritt v. Reliastar Life Ins. Co.*,
   615 F.3d 1023 (8th Cir. 2010) ......................................................................................... 26

*Barber-Day v. Matson Navigation Co. Inc.*,
   2008 WL 1837319 (W.D. Wash. Apr. 22, 2008) ............................................................... 7

*Bayley Constr. v. Great Am. E&S Ins. Co.*,
   980 F. Supp. 2d 1281 (W.D. Wash. 2013) ......................................................................... 6

*Benson v. Double Down Interactive, LLC*,
   No. 2:18-cv-00525-RBL (W.D. Wash. Aug. 11, 2020), Dkt. 127 ...................................... 1

*Berry v. Transdev Servs., Inc.*,
   2019 WL 117997 (W.D. Wash. Jan. 7, 2019) ................................................................... 16

*Bess v. Ocwen Loan Serv. LLC*,
   334 F.R.D. 432 (W.D. Wash. 2020) ................................................................................. 28

*Black v. Midland Credit*,
   2013 WL 5140181 (W.D. Wash. Sept. 12, 2013) ....................................................... 23, 24

OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
AND FOR PRELIMINARY
INJUNCTION - iii
(3:18-CV-05275-RBL)

**HOLLAND & HART LLP**
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

*Brider v. Nationwide Credit, Inc.*,
    1998 WL 729747 (N.D. Ill. Oct. 14, 1998) ................................................................ 20, 21

*Burnham v. Ruan Transp.*,
    2015 WL 12646485 (C.D. Cal. Feb. 6, 2015) ................................................................ 6

*Bushbeck v. Chicago Title Ins. Co.*,
    2011 WL 13100725 (W.D. Wash. Aug. 15, 2011) ........................................................ 14

*Butler v. Harvest Mgmt. Sub, LLC*,
    2018 WL 905764 (W.D. Wash. Feb. 15, 2018) ............................................................ 25

*Caribbean Marine Servs. Co. v. Baldrige*,
    844 F.2d 668 (9th Cir. 1988) ........................................................................................ 37

*CE Design Ltd. v. King Architectural Metals, Inc.*,
    637 F.3d 721 (7th Cir. 2011*) (Posner, J.)*................................................................... 18

*Celestial Inc. v. Hash*,
    2012 WL 12897994 (C.D. Cal. May 1, 2012) .............................................................. 31

*Chalk v. U.S. Dist. Ct.*,
    840 F.2d 701 (9th Cir. 1988) ........................................................................................ 37

*Churchill Vill., L.L.C. v. Gen. Elec. Co.*,
    169 F. Supp. 2d 1119 (N.D. Cal. 2000), *aff'd* 361 F.3d 566 (9th Cir. 2004) .................... 35

*Citizens of the Ebey's Reserve for a Healthy, Safe & Peaceful Env't v. U.S.*
    *Dep't of the Navy*,
    122 F. Supp. 3d 1068 (W.D. Wash. 2015) ......................................................... 35, 36, 37

*City of L.A. v. Lyons*,
    461 U.S. 95 (1983) ........................................................................................................ 33

*Cohen v. Beneficial Indus. Loan Corp.*,
    337 U.S. 541 (1949) ...................................................................................................... 18

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) ....................................................................................... 9, 25, 27, 28

*Daniels Sharpsmart, Inc. v. Smith*,
    889 F.3d 608 (9th Cir. 2018) ........................................................................................ 30

*Darvin v. Int'l Harvester Co.*,
    610 F. Supp. 255 (S.D.N.Y. 1985) ............................................................................... 20

OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
AND FOR PRELIMINARY
INJUNCTION - iv
(3:18-CV-05275-RBL)

**HOLLAND & HART LLP**
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

*Devenny v. Lakewood Fire Dist. 2,*
   2011 WL 766131 (W.D. Wash. Feb. 25, 2011) ................................................................. 8

*Doyle v. Chrysler Grp., LLC,*
   663 F. App'x 576 (9th Cir. 2016)................................................................. 28

*Dunmore v. United States,*
   358 F.3d 1107 (9th Cir. 2004) ................................................................. 12

*E. Bay Sanctuary Covenant v. Trump,*
   950 F.3d 1242 (9th Cir. 2020) ................................................................. 35

*Earth Island Inst. v. Carlton,*
   626 F.3d 462 (9th Cir. 2010) ................................................................. 41

*EEOC v. Chrysler Corp.,*
   733 F.2d 1183 (6th Cir. 1984) ................................................................. 37

*Ellis v. Costco Wholesale Corp.,*
   657 F.3d 970 (9th Cir. 2011) ................................................................. 13

*Erica P. John Fund, Inc. v. Halliburton Co.,*
   563 U.S. 804 (2011) ................................................................. 26

*Florer v. Kenney,*
   2011 WL 2898954 (W.D. Wash. June 20, 2011) ................................................................. 39

*Fosmire v. Progressive Max Ins. Co.,*
   277 F.R.D. 625 (W.D. Wash. 2011)................................................................. 19, 20

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.,*
   528 U.S. 167 (2000) ................................................................. 9

*Garcia v. Google, Inc.,*
   786 F.3d 733 (9th Cir. 2015) (en banc) ................................................................. 34, 36, 37

*Geier v. M-Qube, Inc.,*
   2016 WL 3458345 (W.D. Wash. June 24, 2016) ................................................................. 27

*Geier v. M-Qube Inc.,*
   314 F.R.D. 692 (W.D. Wash. 2016) ................................................................. 15

*Gen. Tel. Co. of the Sw. v. Falcon,*
   457 U.S. 147 (1982) ................................................................. 13, 22

*Gladstone Realtors v. Vill. of Bellwood,*
   441 U.S. 91 (1979) ................................................................. 11

OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
AND FOR PRELIMINARY
INJUNCTION - v
(3:18-CV-05275-RBL)

HOLLAND & HART LLP
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

*Goschie v. JP Morgan Chase Bank, N.A.*,
  2014 WL 6064783 (D. Or. Nov. 7, 2014) ......................................................... 6

*Ha v. U.S. Bank Nat'l Ass'n*,
  2020 WL 618542 (W.D. Wash. Feb. 10, 2020) ............................................... 34

*Hamilton v. State Farm Fire & Cas. Co.*,
  270 F.3d 778 (9th Cir. 2001) ......................................................................... 25

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
  719 P.2d 531 (Wash. 1986) ..................................................................... 15, 38

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) .................................................................... 18, 21

*Hargrave v. Univ. of Wash.*,
  113 F. Supp. 3d 1085 (W.D. Wash. 2015) ....................................................... 6

*Hay v. First Interstate Bank of Kalispell*,
  978 F.2d 555 (9th Cir. 1992) ................................................................. passim

*Hooper v. City of Seattle*,
  2017 WL 4410029 (W.D. Wash. Oct. 4, 2017), *aff'd sub nom. Willis v.
  City of Seattle*, 943 F.3d 882 (9th Cir. 2019) ............................................... 14

*In re Edwards*,
  2011 WL 4485560 (9th Cir. 2011) ................................................................. 12

*In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Practices & Liab.
  Litig.*,
  903 F.3d 278 (3d Cir. 2018) ............................................................................ 9

*Isomedia, Inc. v. Spectrum Direct, Inc.*,
  2009 WL 10676393 (W.D. Wash. July 1, 2009) ............................................. 35

*J. L. Cooper & Co. v. Anchor Sec. Co.*,
  113 P.2d 845 (Wash. 1941) ............................................................................ 23

*Janaszak v. Wells Fargo Bank NA*,
  2012 WL 4514460 (W.D. Wash. Oct. 1, 2012) ............................................... 24

*Kater v. Churchill Downs, Inc.*,
  886 F.3d 784 (9th Cir. 2018) .............................................................. 4, 24, 39

*Keyes v. Bollinger*,
  640 P.2d 1077 (Wash. 1982) .......................................................................... 37

OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
AND FOR PRELIMINARY
INJUNCTION - vi
(3:18-CV-05275-RBL)

HOLLAND & HART LLP
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

*Keywords, LLC v. Internet Shopping Enters., Inc.*,
    2005 WL 8156440 (C.D. Cal. June 29, 2005)................................................................ 40

*Klem v. Wash. Mut. Bank*,
    295 P.3d 1179 (Wash. 2013) ........................................................................................ 38

*Kline v. Wolf*,
    702 F.2d 400 (2d Cir. 1983) ................................................................................... 19, 20

*Larson v. Isle of Capri Casinos, Inc.*,
    2018 WL 6495074 (W.D. Mo. Dec. 10, 2018)............................................................... 6

*Lewert v. Boiron, Inc.*,
    2014 WL 12626335 (C.D. Cal. Nov. 5, 2014) ............................................................. 21

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
    350 F.3d 1018 (9th Cir. 2003) ............................................................................. 8, 9, 11

*Lyons v. Homecomings Fin. LLC*,
    770 F. Supp. 2d 1163 (W.D. Wash. 2011) ................................................................... 22

*M.D. ex rel. Stukenberg v. Perry*,
    675 F.3d 832 (5th Cir. 2012)........................................................................................ 13

*Miller v. Time Warner Cable Inc.*,
    2016 WL 7471302 (C.D. Cal. Dec. 27, 2016)......................................................... 33, 34

*Moore v. Apple Inc.*,
    309 F.R.D. 532 (N.D. Cal. 2015) ................................................................................... 9

*Morrison v. Esurance Ins. Co.*,
    2020 WL 583824 (W.D. Wash. Feb. 6, 2020) ............................................................. 30

*Moussouris v. Microsoft Corp.*,
    2018 WL 3328418 (W.D. Wash. June 25, 2018), *aff'd*, 799 F. App'x 459
    (9th Cir. 2019) ............................................................................................................. 22

*Myers-Armstrong v. Actavis Totowa, LLC*,
    2009 WL 1082026 (N.D. Cal. Apr. 22, 2009) *aff'd*, 382 F. App'x 545 (9th
    Cir. 2010)..................................................................................................................... 10

*Nat'l Ctr. for Immigrants Rights, Inc. v. INS*,
    743 F.3d 1365 (9th Cir. 1984)...................................................................................... 36

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ..................................................................................................... 12

OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
AND FOR PRELIMINARY
INJUNCTION - vii
(3:18-CV-05275-RBL)

**HOLLAND & HART LLP**
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

*Oakland Tribune, Inc. v. Chronicle Pub. Co.*,
  762 F.2d 1374 (9th Cir. 1985) ................................................................ 37

*Owner Operator Ind. Drivers Ass'n, Inc. v. Swift Transp. Co., Inc.*,
  367 F.3d 1108 (9th Cir. 2004) ................................................................ 39

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) .................................................................. 32

*Pelzel v. LSI Tit. Agency, Inc.*,
  2014 WL 4674240 (W.D. Wash. Sept. 18, 2014) .................................. 12

*Pence v. Andrus*,
  586 F.2d 733 (9th Cir. 1978) .................................................................... 9

*PJY Enters., LLC v. Kaneshiro*,
  2013 WL 12203247 (D. Haw. Feb. 28, 2013) ....................................... 41

*Preferred Nutrition, Inc. v. Vanderhaeghe*,
  2010 WL 11565193 (W.D. Wash. Nov. 22, 2010) ................................. 40

*Raines v. Byrd*,
  521 U.S. 811 (1997) ............................................................................... 11

*Reichert v. Keefe Commissary Network, LLC*,
  331 F.R.D. 541 (W.D. Wash. 2019) (Leighton, J.) ............................... 18

*Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*,
  944 F.2d 597 (9th Cir. 1991) .................................................................. 35

*Rivera v. Wyeth-Ayerst Labs.*,
  283 F.3d 315 (5th Cir. 2002) .................................................................. 10

*Sam Francis Found. v. Christies, Inc.*,
  784 F.3d 1320 (9th Cir. 2015) ................................................................ 30

*Samson v. Murray*,
  415 U.S. 61 (1974) ................................................................................. 35

*Savino v. Computer Credit, Inc.*,
  164 F.3d 81 (2d Cir. 1998) ..................................................................... 18

*Shiring v. Tier Techs., Inc.*,
  244 F.R.D. 307 (E.D. Va. 2007) ............................................................ 19

*Smith v. Bank of Am., N.A.*,
  679 F. App'x 549 (9th Cir. 2017) ........................................................... 11

OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
AND FOR PRELIMINARY
INJUNCTION - viii
(3:18-CV-05275-RBL)

HOLLAND & HART LLP
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

*Spokeo, Inc. v. Robins*,
  136 S.Ct. 1540 (2016) ........................................................................... 11

*Stanley v. Univ. of S. Cal.*,
  13 F.3d 1313 (9th Cir. 1994) ................................................................. 34

*State v. Barajas-Verduzco*,
  198 Wash. App. 1072 (2017) ................................................................. 23

*Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*,
  992 F. Supp. 2d 962 (C.D. Cal. 2014) ................................................... 10

*Thimmegowda v. Big Fish Games Inc.*,
  No. 2:19-cv-00199-RBL (July 24, 2020), Dkt. No. 172-1 .......................... passim

*U.S. ex rel. CK One Consulting Servs., Inc. v. A.W. Schell Elec. Servs., Inc.*,
  2014 WL 1660612 (W.D. Wash. Apr. 24, 2014) ........................................ 8

*Valentino v. Carter-Wallace, Inc.*,
  97 F.3d 1227 (9th Cir. 1996) ................................................................. 30

*Victorino v. FCA US LLC*,
  326 F.R.D. 282 (S.D. Cal. 2018) ........................................................... 32

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ......................................................................... passim

*Walsh v. Nev. Dept' of Human Res.*,
  471 F.3d 1033 (9th Cir. 2006) ............................................................... 33

*Wang v. Chinese Daily News, Inc.*,
  737 F.3d 538 (9th Cir. 2013) ................................................................. 14

*Ward v. Apple Inc.*,
  784 F. App'x 539 (9th Cir. 2019) .......................................................... 28

*Weidenhamer v. Expedia, Inc.*,
  2015 WL 7157282 (W.D. Wash. Nov. 13, 2015) ..................................... 32

*Wiener v. Dannon Co.*,
  255 F.R.D. 658 (C.D. Cal. 2009) ...................................................... 21, 22

*Wilson v. Playtika, Ltd.*,
  No. 3:18-cv-05277-RBL (W.D. Wash. Apr. 6, 2018), Dkt. 1 ....................... 4, 5

*Winter v. NRDC*,
  555 U.S. 7 (2008) .......................................................................... 34, 37

OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
AND FOR PRELIMINARY
INJUNCTION - ix
(3:18-CV-05275-RBL)

**HOLLAND & HART LLP**
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

*Yue v. Conseco Life Ins. Co.*,
   282 F.R.D. 469 (C.D. Cal. 2012) ........................................................................ 37

## <u>STATUTES</u>

28 U.S.C. § 2072(b) ..................................................................................................... 26

RCW 4.24.070 .............................................................................................................. 38

RCW 9.46.010 ........................................................................................................ passim

RCW 9.46.250 .............................................................................................................. 41

RCW 19.86.090 ............................................................................................................ 39

RCW 19.105.500 .......................................................................................................... 15

RCW 4.24.070 .............................................................................................................. 16

## <u>OTHER AUTHORITIES</u>

FRE 402, 403 ................................................................................................................. 7

FRE 801, 802 ............................................................................................................. 7, 8

FRCP 23 ........................................................................... 13, 14, 25, 26, 31, 32, 33

FRCP 30(b)(6) ............................................................................................................. 29

7A Wright & Miller, et al., Fed. Prac. & Proc. § 1766 ............................................. 18

11A Wright & Miller, et al., Fed. Prac. & Proc. § 2948.1 ................................. 35, 37

OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
AND FOR PRELIMINARY
INJUNCTION - x
(3:18-CV-05275-RBL)

HOLLAND & HART LLP
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

Defendant High 5 Games, LLC ("High 5") hereby submits this Brief in Opposition to Plaintiff's Motion for Class Certification and for Preliminary Injunction.[1]

## I.    INTRODUCTION

Plaintiff Wilson's presentation of evidence is a diversion. Lacking a class representative whose claims and circumstances are, in fact, representative of those of putative class members, his counsel relies heavily on evidence of *different injuries* to *different claimants* who played *different video games* made by *different companies* that operate based on *different rules*. Dkt. 142 at 1–6. The Court should decline the invitation to "weigh this and other evidence of High 5's conduct," *id.* at 4, because it is *not* evidence of High 5's conduct. Instead, the Court should strike this irrelevant evidence (*see infra* § III) and focus instead on *Wilson's* circumstances and *High 5's* games.

As shown below, Wilson lacks both Article III and prudential standing. He thus cannot bring his own claim, much less represent other claimants. His claims are atypical and he is an inadequate representative because he is subject to multiple, unique defenses. The app he was playing, High 5 Casino, provides free coins on an ongoing basis.[2]  Wilson did not need to deplete his free coins and did not need to make his single $1.99 purchase to keep playing the game in question.[3] High 5 Vegas, the app Wilson never played but that is somehow also the target of his motion, likewise is formulated to ensure its games can be played for free. Wilson has failed to prove either predominance or superiority, particularly when individual claimants can bring their own claims and, if successful, recover attorney fees and treble damages, and

---

[1] Plaintiff filed a combined brief in support of his Motion for Class Certification and Motion for Preliminary Injunction. Dkt. 142. High 5, for efficiency purposes, likewise responds to both motions in a combined brief which falls within the combined page limitation.

[2] Wilson and his counsel have conceded in related cases that Washington law is not violated if casino-themed apps allow for free game play and the player is not required to make in-app purchases to keep playing. *Infra* § II.E.

[3] *Cf.* Order, *Benson v. Double Down Interactive, LLC*, No. 2:18-cv-00525-RBL (W.D. Wash. Aug. 11, 2020), Dkt. 127 at 6 ("Double Down's hypothetical about a player who never depleted their chips before buying more may never become relevant in this case and therefore does not warrant certification.")

OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
AND FOR PRELIMINARY
INJUNCTION - 1
(3:18-CV-05275-RBL)

there is no common evidence showing which purchases occurred while the player was located in Washington.

Wilson has failed to present any evidence entitling him to the extraordinary relief of a mandatory preliminary injunction under the Washington Consumer Protection Act (CPA). He lacks standing to seek injunctive relief because he faces no imminent threat of irreparable harm. He deleted the High 5 Casino app and stopped playing High 5's games before filing this lawsuit. And while his motion rants about emotional distress, Wilson submits no evidence that he suffered either past or likely future emotional harm caused by playing High 5's game. The claimed emotional harm is all based on irrelevant testimony from individuals who did not play High 5's games.  And in any event, it is not irreparable as a matter of law, because the CPA does not cover such harm. Finally, his delay in seeking an injunction prevents any credible argument that he expects imminent, irreparable harm.

Wilson also cannot establish likelihood of success on the merits because he does not argue a legally adequate basis for High 5's games to constitute an "unfair practice." The balance of equities tips in High 5's favor due to the enormity of loss threatened by imposing a mandatory injunction requiring the engineering of new software to isolate and seek to block Washington transactions—technology High 5 does not possess. For similar reasons, a preliminary injunction would not be in the public interest.

Both motions should be denied.

## II.     FACTUAL BACKGROUND

### A.     High 5 Offers Free-to-Play Social Games.

High 5 develops and offers casino-themed social games that can be played on mobile devices by downloading the High 5 Casino or the High 5 Vegas app. Dkt. 82, ¶ 2. These apps are free to download. And the games within the apps are free to play and give out no monetary award or other prize. Dkt. 23, ¶ 6. In High 5 Casino and High 5 Vegas, the virtual coins are used for "spins" in animated slot machines of varying themes and gameplay. *See id.*

OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
AND FOR PRELIMINARY
INJUNCTION - 2
(3:18-CV-05275-RBL)

HOLLAND & HART LLP
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

When game play results in a "win," the player receives winnings in the form of virtual coins. *See id.* The virtual coins are usable only for entertainment within High 5 Casino or High 5 Vegas respectively. *See* Dkt. 23, ¶ 8. The coins cannot be redeemed, exchanged, traded with others for anything of value, and have no use outside the game. *Id.* High 5 does nothing to mislead. Players understand that the apps can only be played for entertainment.

Players are provided with free virtual coins to play the games. Dkt. 82, ¶¶ 4-5. As is the case in any number of social gaming apps, players can choose to make in-app purchases of additional virtual coins to enhance their entertainment. *Id.*, ¶ 10; Dkt. 144-12. But the players of the High 5 apps never need to make any monetary purchase to continue or extend the player's entertainment. *Id.*, ¶ 7.

The apps provide players with free coins in different ways. High 5 Vegas offers free coins on a constant, ongoing basis so that the player *never runs out* regardless of the passage of time. Dkt. 82, ¶ 4. In High 5 Casino, free virtual coins are made available based on player actions like opening the app, playing games within the app, and taking free spins of a wheel in the app's virtual "lobby" (known as "lobby spins"). *Id.*, ¶ 5. High Casino also makes available free virtual coins every four hours, through a daily bonus and in other ways tied to the passage of time or frequency of game usage. *Id.*

**B.      Wilson Got What He Bargained for from His $1.99 Purchase.**

Wilson played High 5 Casino for years without making any virtual coin purchase. Jensen Decl., Ex. 1 (Wilson 140:22-141:14, 149:10-19). He never played High 5 Vegas. *Id.* at 27:9-28:1. During the time he played High 5 Casino, he only made one purchase—for $1.99—on December 17, 2016. *Id.* at 27:1-4, 171:9-12. At the time he made that purchase, he still had virtual coins. *Id.* at 156:1-9, 161:23-162:19, Ex. 2 at 14, ln. 551. Wilson did not need to purchase the coins to keep playing. *Id.* at 142:9-144:7, 152:19-155:24, 174:3-17. Wilson purchased the coins and then exited High 5 Casino without playing them. *Id.* at 171:9-172:8. Further, Wilson was aware that, as an alternative to making the $1.99 purchase, he could

OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
AND FOR PRELIMINARY
INJUNCTION - 3
(3:18-CV-05275-RBL)

**HOLLAND & HART LLP**
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

readily obtain more coins for free taking certain actions within the app; he simply chose not to do so. *Id.* at 142:9-144:7, 152:19-155:24, 174:3-17.

Wilson fully understood that the coins he purchased could only be used to play the game and that there was no possibility of winning money. *Id.* at 21:2-12, 82:21-24, 108:11-15. He also knew that spins in the game were controlled by an algorithm that made it more likely than not that his "spin" would result in a loss of virtual coins. *Id.* at 90:9-15. Wilson admitted that he got everything he bargained for from the $1.99 purchase—credits for animated entertainment. *Id.* at 82:7-15, 92:24-94:21, 138:11-139:1.

Wilson stopped playing High 5 Casino in early 2017 and subsequently deleted the app because the games were "boring," "the app sucked," and he "didn't typically find High 5 games to be compelling enough . . . to want to purchase coins[.]" *Id.* at 146:25-147:19.

**C.      Wilson Filed for Bankruptcy But Failed to Disclose His Claims.**

On December 30, 2016, Wilson filed for protection under Chapter 7 of the bankruptcy code. *Id.* at 109:13-15, 197:14-198:4; Dkt. 112 at 42. On January 16, 2017, he filed schedules of assets and liabilities. Ex. 1 at 198:19-199:1; Dkt. 112 at 56-94. In the schedules, Wilson answered "no" to the question whether he had any "claims against third parties, whether or not you have filed a lawsuit or made a demand for payment." Dkt. 112 at 62. He never amended these schedules. *See* Dkt. Report, No. 16-45252-MJH (Bankr. W.D. Wash. 2016). The bankruptcy court entered a discharge order on April 12, 2017. Dkt. 112 at 96-97.

**D.      Counsel Solicits Wilson to Become the Named Plaintiff.**

Shortly after *Kater v. Churchill Downs, Inc.*, 886 F.3d 784 (9th Cir. 2018) was published, Edelson P.C. launched an advertising campaign through Facebook to recruit a user of High 5's games to serve as a plaintiff for the lawsuit they planned to file. *See* Ex. 1, 11:24-13:19. Edelson thereby procured Wilson for this lawsuit and two similar lawsuits against other social gaming companies. *See id.* at 11:24-13:19, 128:13-130:5; *see* Complaint, *Wilson*

OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
AND FOR PRELIMINARY
INJUNCTION - 4
(3:18-CV-05275-RBL)

HOLLAND & HART LLP
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

1   *v. Playtika, Ltd.*, No. 3:18-cv-05277-RBL (W.D. Wash. Apr. 6, 2018), Dkt. 1; Complaint,

2   *Wilson v. Huuuge, Inc.*, No. 3:18-cv-05276-RBL (W.D. Wash. Apr. 6, 2018), Dkt. 1.

3     In April 2018, Wilson responded to the Facebook ad and filed this suit shortly

4   thereafter. Ex. 1 at 11:24-13:19; Dkt. 1. In his deposition, he testified that he believed High 5

5   Casino was illegal gambling from the first time he downloaded the app. *Id.* at 19:21-24,

6   25:19-22, 76:7-21, 182:8-17. More specifically, Wilson claimed ███████████████████

7   ████████████████████████████████████████████. *Id.* at 91:7-13, 151:14-

8   22.  But he readily conceded under oath that ████████████████████████████████

9   ████████████████████████. *Id.* at 167:20-168:8.

10  **E.**  **In Related Litigation, Wilson and His Counsel Have Taken the Position That
    Games That Provide Free Virtual Coins on An Ongoing Basis Do Not Violate
    Washington Gambling Statutes.**

11

12

13    As reflected in settlement documents and declarations filed in related cases, Wilson

14  and his counsel indicate a casino-theme app complies with Washington law provided the app

15  allows "players who run out of sufficient virtual coins to continue to play slot games within

16  the Application they are playing without needing to purchase additional virtual coins or to

17  wait until they would have otherwise received free additional virtual coins in the ordinary

18  course." Declaration of Todd Logan, Ex. 1: Class Action Settlement Agreement § 2(c),

19  *Wilson v. Playtika, Ltd.*, No. 3:18-cv-05277-RBL (Aug. 6, 2020), Dkt. 121-1 ("Playtika

20  Settlement Agreement"). The position Wilson's counsel has repeatedly asserted to this Court

21  is that no illegal gambling occurs under Washington statutes if a player is provided with free

22  game play on an ongoing basis. *See* Declaration of Todd Logan, Ex. 1: Class Action

23  Settlement Agreement § 2.2(c), *Thimmegowda v. Big Fish Games Inc.*, No. 2:19-cv-00199-

24  RBL, (July 24, 2020), Dkt. No. 172-1 ("Big Fish Settlement Agreement"). As described

25  above, the High 5 apps provide for free game play on an ongoing basis.

26

### III.     THE COURT SHOULD STRIKE OR DISREGARD IMPROPER EVIDENCE.

### A.     Declarations Relating to Different Games Are Irrelevant.

Wilson filed declarations from five individuals who claim they played different social games that were not developed or offered by High 5 ("Other Game Declarations"). Dkts. 144-6, 144-8 to 144-11. The Court should strike the Other Game Declarations. *See* LCR 7(g); Dkts. 144-6, 144-8 to 144-11. The declarants are not class members, did not play High 5's games, and their testimony about their experiences playing other games by other companies is irrelevant. *See Larson v. Isle of Capri Casinos, Inc.*, 2018 WL 6495074, at *14-15 (W.D. Mo. Dec. 10, 2018) (striking as irrelevant evidence related to plaintiffs' experiences at non-party companies); *Burnham v. Ruan Transp.*, 2015 WL 12646485, at *4 (C.D. Cal. Feb. 6, 2015) (same); *Goschie v. JP Morgan Chase Bank, N.A.*, 2014 WL 6064783, at *2-3 (D. Or. Nov. 7, 2014) (disregarding declaration about loan modification practice at a different office of same company as irrelevant and lacking foundation).

### B.     Improper Expert Testimony Should Be Stricken.

Plaintiff also seeks to circumvent the deadline and process for disclosing expert testimony by submitting a letter from Natasha Dow Schull ("Schull") a self-proclaimed "expert on gambling technology and gambling addiction[.]" Dkt. 144-20. In this case, Wilson chose to not disclose an expert and the deadline has passed. Jensen Decl., ¶ 2. Wilson also did not disclose Schull in initial disclosures. *Id.* In addition to being improper expert testimony, the Schull letter does not address High 5's games. Dkt. 144-20. Instead, the Schull letter decries Big Fish Games, making a number of assertions about Big Fish Games and real slot machines without citing anything but herself as a source. Dkt. 144-20.

The Court should strike undisclosed expert testimony. *See, e.g.*, *Hargrave v. Univ. of Wash.*, 113 F. Supp. 3d 1085, 1107 (W.D. Wash. 2015) (striking professor's declaration containing legal and factual opinions, when party had not disclosed professor as an expert or fact witness); *Bayley Constr. v. Great Am. E&S Ins. Co.*, 980 F. Supp. 2d 1281, 1289 n.5

OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
AND FOR PRELIMINARY
INJUNCTION - 6
(3:18-CV-05275-RBL)

**HOLLAND & HART LLP**
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

(W.D. Wash. 2013) (striking declarations containing expert testimony from undisclosed expert); *Barber-Day v. Matson Navigation Co. Inc*., 2008 WL 1837319, at *2 (W.D. Wash. Apr. 22, 2008) ("If a party fails to disclose an expert witness, then it cannot use that witness to supply evidence on a motion.").

In addition to reflecting an improper attempt to circumvent expert disclosure rules, the Schull letter is irrelevant, unfairly prejudicial, and lacking foundation, because it presents bare accusations about another company's games. *See id.*; FRE 402, 403. The letter is also hearsay. FRE 801, 802. The Schull letter should be stricken for any or all these reasons.

## C.     Wilson Fails to Provide Foundation for Data.

Wilson submitted four data sets reflecting in-app purchases. *See* Dkt. 144-1 to 144-4. Although absent class members must be located in Washington at the time of the virtual coin purchase in order to have a claim, *infra* § V.C.3., Wilson provides no foundation for how the Apple or Google data sets (collectively "Third-Party Data Sets") accurately reflect such purchases, as opposed to purchases made from a credit card with a billing address in Washington, or some other criteria for culling the data. *See* Dkts. 144-3, 144-4. And the two High 5 data sets (collectively "High 5 Data Sets") reflect data query results based on geolocation, which does not accurately reflect a person's location when making a purchase. Dkts. 144-1, 144-2; *infra* § V.C.3.

The Third-Party Data Sets should be stricken for lack of foundation. The Apple data set has a column with entries simply reading "Washington." Dkt. 144-3. Wilson provides no foundation as to how the "Washington" designation was determined. *See* Dkt. 144. There is no IP address or geolocation information. *See* Dkt. 144-3. Further, the Apple data set does not identify the application to which the data pertains. There appears to be an internal reference number for purchases from one application in one tab of the spreadsheet and a different internal reference number for purchases from another application in another tab. *See id.* But there is no way to determine to which application each tab refers, or if either tab refers to

OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
AND FOR PRELIMINARY
INJUNCTION - 7
(3:18-CV-05275-RBL)

HOLLAND & HART LLP
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

High 5's applications at all. The spreadsheet does not mention High 5 Casino, High 5 Vegas, or High 5. *See id.* And previously, Wilson erroneously filed the Google data of a different social gaming company in support of his motions in this case (Dkt. 148), which underscores the need for a proper foundation. The Apple data thus might be the data of another company or application. There is nothing to show that the data is what Wilson's counsel says it is. *See, e.g.*, *U.S. ex rel. CK One Consulting Servs., Inc. v. A.W. Schell Elec. Servs., Inc.*, 2014 WL 1660612, at *3 (W.D. Wash. Apr. 24, 2014) (striking documents that "lack[ed] appropriate foundation by a person with personal knowledge"); *Devenny v. Lakewood Fire Dist. 2*, 2011 WL 766131, at *4 (W.D. Wash. Feb. 25, 2011) (striking documents for which there was no way to determine reliability because there was no "proper evidentiary foundation").

The Google data set similarly lacks foundation. While it does contain references to High 5, the data set lacks crucial information demonstrating that the purchases occurred while the player was located in Washington. *See* Dkt. 144-4. There is no IP address or geolocation information. *See id.* Rather, given zip codes are included, it appears the purchases were pulled based on a physical address, perhaps a billing address. But based on the information Wilson has provided, there is no way to know. *See id.*; Dkt. 144; *See CK One Consulting Servs., Inc.*, 2014 WL 1660612, at *3; *Devenny*, 2011 WL 766131, at *4.

## IV.   WILSON LACKS BOTH ARTICLE III AND PRUDENTIAL STANDING; THEREFORE, HE CANNOT REPRESENT A CLASS, AND HIS CLAIMS MUST BE DISMISSED.

### A.   Wilson Lacks Article III Standing.

A putative class representative must have Article III standing at the outset of the class action to maintain the case in federal court. *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003). If the sole class representative lacked standing from the outset, the court must dismiss the action without leave to substitute a new representative. *Id.* at 1023 (vacating class certification and remanding for dismissal without leave to substitute new plaintiff after sole named plaintiff was found to have lacked standing from the outset of

**HOLLAND & HART LLP**
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

the litigation). Because the class representative never had a live claim, the court never had subject matter jurisdiction. *Id.*

No justiciable case or controversy exists under Article III unless Wilson can show: "(1) [he] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000). A plaintiff seeking to serve as a class representative must "allege and show that [he] personally ha[s] been injured, not that injury has been suffered by other, unidentified members of the class to which [he] belong[s]" and purports to represent. *Lierboe*, 350 F.3d at 1022 (quoting *Pence v. Andrus*, 586 F.2d 733, 736-37 (9th Cir. 1978)). In moving for class certification, a plaintiff cannot rely on only the pleadings; instead, he must show standing "through evidentiary proof." *Moore v. Apple Inc.*, 309 F.R.D. 532, 539-40 (N.D. Cal. 2015) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)). Thus, to establish Article III standing, Wilson must prove he suffered some concrete and particularized injury caused by High 5. *See Friends of the Earth*, 528 U.S. at 180-81. He has failed to do so for several reasons.

*First*, Wilson only claims to have suffered an "economic injury" of $1.99 to purchase virtual coins from High 5, a transaction in which he obtained the full benefit of his bargain. *See* Dkt. 1, ¶ 63; Dkt. 112, Ex. 1 at 82:7-15, 89:21-90:7. But even that small purchase involved no injury-in-fact. There is no economic injury when a plaintiff like Wilson receives the benefit of his bargain, including in the context of an alleged illegal transaction.

A person suffers an economic injury when, as a result of a deceptive act or an unfair practice, he is deprived of the benefit of his bargain. *See In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Practices & Liab. Litig.*, 903 F.3d 278, 287-88 (3d Cir. 2018) (to allege "an economic injury as a result of simply purchasing [a product], [the plaintiff] must

OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
AND FOR PRELIMINARY
INJUNCTION - 9
(3:18-CV-05275-RBL)

HOLLAND & HART LLP
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

allege that she purchased [a product] that was worth less than what she paid for."). But, where a buyer receives the benefit of his bargain, he "has not suffered Article III injury-in-fact traceable to the defendant's conduct." *Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 972 (C.D. Cal. 2014); *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319–21 (5th Cir. 2002) (plaintiff, who claimed she "would like her money back" after purchasing an allegedly defective product that lacked certain disclosures, had no injury-in-fact); *Myers-Armstrong v. Actavis Totowa, LLC,* 2009 WL 1082026, at *3–4 (N.D. Cal. Apr. 22, 2009) *aff'd*, 382 F. App'x 545 (9th Cir. 2010) ("after consuming [recalled] pills and obtaining their beneficial effect with no downside, the consumer cannot get a refund . . . the civil law should not be expanded to regulate every hypothetical ill in the absence of some real injury").

Wilson suffered no actual injury because he received exactly what he bargained for from High 5—virtual coins he could use to continue to play High 5 Casino. Wilson repeatedly testified that he knew the coins he purchased could only be used to play the game and that there was no possibility of winning money. Dkt. 112; Ex. 1 at 21:2-12, 82:21-24, 108:11-15. Wilson only played High 5 Casino for entertainment purposes (watching casino-themed animation). *Id.* at 92:24-94:21. Wilson understood that the transaction was complete once he purchased the coins, explaining, "you pay this $1.99 and you get X coins, . . . you bought a particular item and they gave you that item." *Id.* at 82:7-15.

Wilson understood there was no requirement to pay for virtual coins; he could wait or take actions within the app to obtain additional free coins. *Id.* at 142:9-144:7, 152:19-155:24, 174:3-17. Moreover, at the time he made his single, $1.99 purchase, he still had free coins. *Id.* at 156:1-9, 161:23-162:19, Ex. 2 at 14, ln. 551. He did not need to purchase any coins in order to continue playing the game.

Wilson also knew that game spins were controlled by an algorithm that made it more likely than not that his "spin" would result in a loss of virtual coins. *Id.* at 90:9-15. He even testified that he believed High 5's game was illegal gambling under Washington law from the

OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
AND FOR PRELIMINARY
INJUNCTION - 10
(3:18-CV-05275-RBL)

HOLLAND & HART LLP
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

1    first time he downloaded it. *Id.* at 19:21-24, 25:19-22, 76:7-21, 182:8-17. Wilson therefore got

2    the full benefit of a bargain he knowingly and voluntarily chose to make.

3         *Second*, Wilson's assertion that his purchase was supposedly "illegal" does not create

4    Article III standing. *See Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 99 (1979) (case

5    or controversy exists only if plaintiff "personally has suffered some actual or threatened injury

6    as a result of the putatively illegal conduct of the defendant."). A statutory violation (or

7    associated statutory damages) does not, by itself, meet the standing requirements to invoke

8    federal jurisdiction. *See, e.g.*, *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997) ("Congress cannot

9    erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff

10   who would not otherwise have standing."); *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547

11   (2016) (FCRA violation alone was not an adequately alleged injury for Article III standing).

12   The Ninth Circuit thus held that plaintiffs' receipt of a statutorily deficient tax form was not

13   an injury-in-fact absent any allegation that they filed erroneous tax returns in reliance on the

14   deficient form, received a smaller tax deduction, or otherwise suffered any injury by using the

15   form. *Smith v. Bank of Am., N.A.*, 679 F. App'x 549 (9th Cir. 2017).

16        Here, Wilson cannot establish actual injury because he received exactly what he

17   bargained for from High 5—virtual coins to play the video game. This conclusion would not

18   change even if the Court were to rule that High 5 Casino constitutes illegal gambling. In

19   addition, because Wilson admits he believed the game to be illegal when he first purchased

20   virtual coins, he suffered no injury by playing it. He therefore cannot show any constitutional

21   injury caused by High 5. Moreover, Wilson does not even provide evidence that he played the

22   virtual coins that he purchased.

23        Nor can Wilson establish standing based on others' alleged injuries. *See Lierboe*, 350

24   F.3d at 1022. He relies on proof of injuries to other persons, mostly persons who aren't even

25   putative class members because they didn't play High 5's games. *See* Dkt. 142 at 2-3 (citing

26

OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
AND FOR PRELIMINARY
INJUNCTION - 11
(3:18-CV-05275-RBL)

HOLLAND & HART LLP
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

declarations of Jill Interrante, Willa Moore, Jan Saari, Laura Perkinson, and Donna Reed). This is patently insufficient—indeed, irrelevant—evidence of injury in fact. *See supra* § IV.A.

When a named class representative lacks standing to proceed in federal court with his own claims, he may not represent a putative class. *See O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other members of the class."). Accordingly, Wilson's motion for class certification should be denied and his Complaint dismissed.

## B.    Wilson Also Lacks Prudential Standing.

A Chapter 7 debtor lacks prudential standing to pursue causes of action that arose before the filing of a bankruptcy petition, because the claims are the bankruptcy estate's property, even if they were undisclosed in the bankruptcy. *Dunmore v. United States*, 358 F.3d 1107, 1112 (9th Cir. 2004); *Pelzel v. LSI Tit. Agency, Inc.*, 2014 WL 4674240, at *5-8 (W.D. Wash. Sept. 18, 2014) (granting defendant summary judgment because, after plaintiff filed for bankruptcy, he was no longer the real party in interest and lacked prudential standing). The "bankruptcy trustee [has] the exclusive right to sue on behalf of the estate." *In re Edwards*, 2011 WL 4485560, at *4 (9th Cir. 2011) (dismissing debtor's claims that arose prepetition because only the trustee had standing to pursue them). The debtor lacks the right to sue, whether the nondisclosure of his causes of action was "by accident or intent[.]" *Id.*

Wilson lacks prudential standing to pursue the claims alleged in the Complaint, which are all pre-petition claims. He filed his Chapter 7 petition on December 30, 2016. Dkt. 112 at 42; Ex. 1 at 197:17-198:4. He did not disclose any potential cause of action as an asset, though he had made his single in-app purchase on December 17, 2016, just two weeks before filing his bankruptcy petition. *Id.*, Ex. 1 at 145:13-16, 171:9-17, Dkt. 112 at 62; *see also* Dkt.

OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
AND FOR PRELIMINARY
INJUNCTION - 12
(3:18-CV-05275-RBL)

HOLLAND & HART LLP
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

1   Rpt., No. 16-45252-MJH (Bankr. W.D. Wash. 2016). He cannot now bring claims that he has

2   no standing to pursue.[4]

3   **V.      THE COURT SHOULD DENY CLASS CERTIFICATION.**

4           Class actions are "an exception to the usual rule that litigation is conducted by and on

5   behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338,

6   348 (2011) (citation omitted). Before certifying a class, a court must conduct a "rigorous

7   analysis" to ensure that Rule 23's requirements have been satisfied. *Gen. Tel. Co. of the Sw. v.*

8   *Falcon*, 457 U.S. 147, 161 (1982). Class certification "'generally involves considerations that

9   are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Wal-*

10  *Mart*, 564 U.S. at 351 (quoting *Falcon*, 457 U.S. at 160). Accordingly, a court not only "may"

11  but "*must* consider the merits if they overlap with the Rule 23(a) requirements." *Ellis v.*

12  *Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (emphasis in original).

13          Plaintiffs "bear the burden of demonstrating that they have met each of the four

14  requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of

15  Rule 23(b)." *Id.* at 979-80. This includes, for both proposed classes, the four Rule 23(a)

16  requirements of numerosity, commonality, typicality, and adequacy of representation, and for

17  the proposed damages class, the Rule 23(b)(3) requirements of predominance and superiority.

18  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-15 (1997). Wilson has failed to prove

19  these prerequisites, including (i) commonality, (ii) typicality, (iii) the plaintiff's adequacy,

20  (iv) predominance, and (v) superiority. The Court should therefore decline to certify a class.

21  **A.      There Is No Common Question with a Class-Wide Answer.**

22          Wilson wrongly suggests that the "commonality prerequisite is not meant to be a

23  demanding hurdle." Dkt. 142 at 11. In *Wal-Mart,* the Supreme Court "elevate[d] the [Rule

24  23](a)(2) inquiry so that it is no longer 'easily satisfied.'" *Wal-Mart*, 564 U.S. at 375

25  (Ginsburg, J., dissenting) (citation omitted); *see M.D. ex rel. Stukenberg v. Perry*, 675 F.3d

26  ─────────────────────
    [4] High 5 intends to move for summary judgment on Wilson's claims in the coming weeks.

OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
AND FOR PRELIMINARY
INJUNCTION - 13
(3:18-CV-05275-RBL)

**HOLLAND & HART LLP**
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

832, 839 (5th Cir. 2012) (*Wal-Mart* "heightened the standards for establishing commonality"); *see also Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 541 (9th Cir. 2013) (holding that *Wal-Mart*'s new commonality analysis was "a significant legal development" and remanding for the district court to conduct the analysis required by *Wal-Mart*).

In *Wal-Mart*, the Supreme Court explained the requirement to prove there are "questions of law or fact common to the class." 564 U.S. at 345 (quoting FRCP 23(a)(2)). This language is "easy to misread" because "'[a]ny competently crafted class complaint literally raises common 'questions.'"" *Wal-Mart*, 564 U.S. at 349 (citation and internal quotation marks omitted). The Court clarified that, though one common question will do, it must be "capable of classwide resolution," meaning that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. The question thus must have a "common answer" that is determinative of "all the class members' claims for relief[.]" *Id.* at 352.

Wilson doesn't even posit a common question pertaining to unjust enrichment. That claim therefore cannot be certified for class treatment. *See Bushbeck v. Chicago Title Ins. Co.*, 2011 WL 13100725, at *8 (W.D. Wash. Aug. 15, 2011) (plaintiffs met burden to establish commonality on their RESPA claim, but not their good faith claim); *Hooper v. City of Seattle*, 2017 WL 4410029, at *5 (W.D. Wash. Oct. 4, 2017) (analyzing whether each of various constitutional claims met commonality requirement), *aff'd sub nom. Willis v. City of Seattle*, 943 F.3d 882 (9th Cir. 2019).

As for the CPA, Wilson fails to allege a common question central to that claim. The only question Wilson poses concerning the claim is, "[D]oes the legislative declaration of purpose in RCW 9.46.010 render High 5's violations of the gambling laws also an unfair practice under the Washington CPA." Dkt. 142 at 11. This proposed question conflates the requirements for establishing a *per se public interest impact* with the requirements for establishing a *per se unfair or deceptive trade practice*.

OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
AND FOR PRELIMINARY
INJUNCTION - 14
(3:18-CV-05275-RBL)

HOLLAND & HART LLP
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

To succeed on his CPA claim, Wilson must prove (1) an unfair or deceptive act or practice, (2) in trade or commerce, (3) which affects the public interest, (4) causing (5) injury to plaintiff in his business or property. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986). A *per se* unfair trade practice, satisfying the first two elements, "exists when a statute which has been declared by the Legislature to constitute an unfair or deceptive act in trade or commerce has been violated." *Id.* at 535. The *Hangman Ridge* court provided examples of such declarations, which state that a violation constitutes "an unfair or deceptive act or practice or unfair method of competition in the conduct of trade or commerce," or use materially identical terms. *Id.* at 536; *see* RCW 19.105.500; 19.09.340; 19.110.170; 18.28.185; 18.39.350; 58.19.270; 63.10.050; 64.36.170.

Separately, a plaintiff may also establish a *per se* public interest impact, satisfying the third element, where a statute contains a legislative declaration of public interest. However, the Washington Supreme Court has "emphasized that when a statute containing a legislative public interest pronouncement can be shown to have been violated, only the public interest requirement is satisfied *per se*." *Hangman Ridge*, 719 P.2d at 538.

Here, the legislative declaration of purpose in RCW 9.46.010 establishes, at most, the third element of Wilson's CPA claim—public interest impact—but it has no bearing on unfair or deceptive trade practices. The words "unfair," "deceptive," and "trade" do not appear anywhere in RCW 9.46.010. RCW 9.46.010 is simply not a legislative declaration that makes the violation of the Gambling Act as an unfair or deceptive trade practice. *See Anderson v. Valley Quality Homes, Inc.*, 928 P.2d 1143, 1145-46 (Wn. Ct. App. 1997).

Wilson therefore has failed to proffer any common question pertaining to the gravamen of his CPA claim—an allegedly unfair or deceptive trade practices by High 5. *See Geier v. M-Qube Inc.*, 314 F.R.D. 692, 697 (W.D. Wash. 2016) (holding that question of public interest impact was not a significant question of law "apt to drive the resolution of the litigation"). Indeed, he has failed to even allege that any specific acts or practices by High 5

OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
AND FOR PRELIMINARY
INJUNCTION - 15
(3:18-CV-05275-RBL)

HOLLAND & HART LLP
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

1   are unfair or deceptive; instead, he appears to rely on his mistaken assumption that proving a

2   violation of state gambling laws establishes a per se unfair or deceptive trade practice. *Berry*

3   *v. Transdev Servs., Inc.*, 2019 WL 117997, at *4 (W.D. Wash. Jan. 7, 2019) ("Commonality

4   cannot be determined without a precise understanding of the nature of the underlying

5   claims."). Wilson thus has failed to propound a common contention central to his CPA claim

6   that "is capable of classwide resolution." *Walmart*, 564 U.S. at 338.

7        Wilson's final claim is directly under RCW § 4.24.070. He submits three purported

8   common questions relating to this claim: Whether virtual coins are "things of value," whether

9   High 5 Casino and High 5 Vegas are "gambling games," and whether Wilson is entitled to

10  recover money under the statute. Dkt. 142 at 10-11. The last of the three questions is plainly

11  not common. The answer to the question whether Wilson can recover cannot necessarily be

12  applied to any other putative class member. As noted above and below, he had free coins

13  available when he made his sole, $1.99 purchase, and he is subject to several unique defenses.

14  *See supra* §§ II.B. & D. and *infra* § V.B.

15       The other two questions likewise do not qualify as common questions under *Wal-*

16  *Mart*. *First*, contrary to Wilson's assertion, High 5 Casino and High 5 Vegas are materially

17  different games. *See* Dkt. 82, ¶ 2. Users download and play these games separately, and

18  virtual coins from one game cannot be used in the other. *Id.* These games also provide users

19  free virtual coins in different ways. In High 5 Casino, users start with an allotment of coins

20  that can be replenished every four hours, via daily bonuses, free lobby spins, or other ways.

21  *Id.* at ¶ 5. But users can temporarily expend all of their free virtual coins and then must wait

22  for more free coins or purchase coins before continuing to play. *Id.* High 5 Vegas is different.

23  In that game, users are provided free virtual coins on an ongoing basis so that the player never

24  runs out of coins and is never required to wait for or purchase coins in order to play. *Id.* at ¶ 4.

25       Plaintiff's counsel concedes that illegal gambling does not occur if a user does not

26  need to purchase virtual coins to extend gameplay as freely obtained virtual coins are not a

OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
AND FOR PRELIMINARY
INJUNCTION - 16
(3:18-CV-05275-RBL)

**HOLLAND & HART LLP**
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

"thing of value" under Washington gambling law. *See* Big Fish Settlement Agreement, § 2.2(c); Playtika Settlement Agreement § 2(c). But if (as appears to be the case) Plaintiff's counsel is taking the position that the mechanism by which apps provide for free game play is meaningful to the interrelated questions of "things of value" and whether game play constitutes illegal gambling, then the position of Plaintiff's counsel prohibits a "one stroke" resolution of the question which applies to both games. *See Wal-Mart*, 564 U.S. at 350.

     *Second*, these questions are not common even for players of only High 5 Casino under the statutory interpretation accepted by Wilson and his counsel. Again, as Wilson and his counsel concede in filings in related cases, if (as was the case for Wilson) a player has free coins—or free spins to seek more free coins—then the coins are not "things of value," and therefore, using free coins in High 5 Casino is not gambling. *See* Big Fish Settlement Agreement § 2.2(c); Playtika Settlement Agreement § 2(c). Indeed, Wilson's theory and representation to this Court all along has been that having to purchase coins to continue gameplay is material to the coins being deemed "things of value." *See* Dkt. 1, ¶ 25; Dkt. 41 at 13; Dkt. 57 at 16 (denying High 5's Motion to Dismiss, this Court assumed the accuracy of Wilson's allegation that "*at the moment* they run out" of their free coins, players must buy more coins to continue playing) (emphasis in original).

     But as High 5 averred and discovery bore out, this allegation was *false*. And, whether any player of High 5 Casino had free coins—or free spins to seek more free coins—when they made a purchase will require individualized inquiries. Some High 5 Casino players might have purchased coins when they still had both free coins and free spins. Wilson himself had free coins available when he bought his coins. *See id.* at 156:1-9, 161:23-162:19; Ex. 2 at 14, ln. 551. He could have continued playing without buying coins. Other players might have been out of coins and spins when they made their purchases. In short, Wilson cannot show that any of his four proposed common questions has an answer that will be the same for all putative class members.

OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
AND FOR PRELIMINARY
INJUNCTION - 17
(3:18-CV-05275-RBL)

HOLLAND & HART LLP
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

**B.      Wilson Cannot Establish Typicality or Adequacy Because He Has Unique Claims and Is Subject to Unique Defenses.**

"The typicality and adequacy of representation analyses tend to 'merge' in many respects." *Reichert v. Keefe Commissary Network, LLC*, 331 F.R.D. 541, 550 (W.D. Wash. 2019) (Leighton, J.). Both requirements concern whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart*, 564 U.S. at 349, n.5.

The typicality test focuses on the nature of the class representative's claims or defenses, and unique defenses defeat typicality. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992) (a plaintiff "fails to satisfy" typicality because "a major focus of the litigation will be on a defense unique to him."). Here, Wilson cannot establish typicality or adequacy, because he lacks credibility, he is subject to unique defenses, and he never made a purchase from one of the two games included in the proposed class definition.

**1.      Wilson is uniquely lacking in credibility and subject to impeachment.**

*First*, a putative class representative's lack of credibility defeats both typicality and adequacy of representation. A plaintiff who lacks credibility is by definition inadequate, because when he sues on behalf of a class, he puts the class's interests "in[] his hands, dependent upon his diligence, wisdom and integrity." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 549 (1949). Courts thus examine a plaintiff's "honesty and conscientiousness," and when he "displays a lack of credibility," they find him to be inadequate. 7A Wright & Miller, et al., Fed. Prac. & Proc. § 1766 (3d ed. 2005); *see also CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 725 (7th Cir. 2011*)* (Posner, J.) (vacating order certifying class and remanding for reconsideration of whether named plaintiff had typical claims and was an adequate representative, when record raised serious doubts about plaintiff's credibility); *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998) (affirming

finding that class representative was inadequate where his pleadings and testimony were contradictory); *Shiring v. Tier Techs., Inc.*, 244 F.R.D. 307, 316–17 (E.D. Va. 2007) (finding class representative inadequate and denying class certification where plaintiff displayed "inadvertence or [] indifference" to the truth of statements in a formal certification).

A plaintiff's lack of credibility also renders him atypical.[5] *See Fosmire v. Progressive Max Ins. Co.*, 277 F.R.D. 625, 632–33 (W.D. Wash. 2011) (plaintiff's misstatements made her atypical because credibility issues "threaten[ed] to become a preoccupation [at] trial."); *Kline v. Wolf*, 702 F.2d 400, 401-03 (2d Cir. 1983) (affirming denial of class certification because both named plaintiffs were subject to unique defense of impeachment).

Wilson's material misstatements throughout the case render him inadequate and atypical. These misstatements began in his Complaint. There, he alleged that in High 5's games, "[o]nce a player runs out of their allotment of free coins, they cannot continue to play the game without buying more coins for real money." Dkt. 1 at ¶ 25. This is false. As Wilson admitted at his deposition, High 5 Casino provides free spins and free credits to players at regular intervals. *See* Ex. 1 at 97:10-15. This misstatement is material, because it implicates whether High 5's games qualify as gambling under Washington law. If High 5 users need not buy coins to play its games, then they are not wagering a "thing of value." *See* Big Fish Settlement Agreement § 2.2(c); Playtika Settlement Agreement, 2(c).

Wilson also alleged that High 5's coins "range in price from $4.99 for 192,000" to "$99.99 for 9,600,000." Dkt. 1 at ¶ 25. This too is false. Wilson spent only $1.99 on High 5 coins, less than the alleged $4.99 minimum. Ex. 1 at 133:15–134:7. He admitted that he failed to confirm that information in the Complaint. *Id.* at 134:8–16. At best, this misstatement reveals his "indifference or inadvertence" to the truth, which makes him an inadequate representative. *Shiring*, 244 F.R.D. at 316–17 (finding plaintiff an inadequate class

---

[5] To assist, High 5 will submit a brief for the Court linked to Wilson's video-taped deposition.

**HOLLAND & HART LLP**
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

representative where he certified that he purchased stock at $8.50 per share on June 15, 2005

when he actually purchased stock for $8.46 per share on May 25, 2005).

Wilson's pattern of misstatements continued in his deposition. He initially testified

that he purchased $1.99 in coins because he had run out of free coins and needed to purchase

more in order to keep playing. *See, e.g.*, Ex. 1 at 96:15–24. In fact, he had free coins available

when he purchased the coins. *See id.* at 142:18–143:17; Ex. 2 at 14, l. 551. He could have

continued to play without buying coins. *Id.* at 174:3-17. After purchasing his coins, Wilson

immediately stopped playing the game, indicating that he didn't buy the coins in order to

continue playing. Ex. 1 at 171:9-172:8, 161:23-162:10; Ex. 2 at 14, l. 551. And before he

resumed playing again, he received a number of additional free coins and had the opportunity

to obtain thousands more during the period that passed before he played again. Ex. 1 at

161:23-163:10; Ex. 2, lns. 552-559. These misstatements and mischaracterizations are

material because, again, if a player has free spins or free coins available, then coins are not

"things of value" under Washington law, and therefore, using coins in High 5 games is not

gambling. *See* Big Fish Settlement Agreement § 2.2(c); Playtika Settlement Agreement, 2(c).

Courts have frequently found that inconsistent testimony makes a class representative

inadequate and atypical. *See Fosmire*, 277 F.R.D. at 632–33 (finding plaintiff in an insurance

class action atypical where she failed to identify her fiancé as an additional driver in her

original insurance application); *Kline*, 702 F.2d at 402–03 (finding plaintiff inadequate where

he testified that he purchased stock in reliance on a report that did not exist at the time of the

purchase); *Brider v. Nationwide Credit, Inc*., 1998 WL 729747, at *3–4 (N.D. Ill. Oct. 14,

1998) (finding plaintiff inadequate where she gave false deposition testimony); *Darvin v. Int'l

Harvester Co.*, 610 F. Supp. 255, 256–58 (S.D.N.Y. 1985) (denying class certification where

plaintiff's "inconsistent testimony could create serious problems with respect to plaintiff's

credibility and could become the focus of . . . unique defenses at trial").

OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
AND FOR PRELIMINARY
INJUNCTION - 20
(3:18-CV-05275-RBL)

HOLLAND & HART LLP
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

1   Finally, ███████████████████████████████████████████████

2   ██████████████████████████████████████ *see id.* at 91:7–13, ███████████

3   ██████████████████████████████████████████████████████

4   █████████ *see id.* at 146:13–147:19. ███████████████████████████

5   ██████████████████████████████████████████████████████

6   ████████████████████████████ *See id.* at 151:14–22; 168:14-169:19. ████████

7   ████████████████████████████████████████████████████

8   *See id.* at 167:20–168:8. █████████████████████████████████████

9   ██████████████████. This facially incredible testimony raises serious doubts about Wilson's

10  honesty, making him inadequate and atypical.

## 2. Wilson never played or made a purchase from High 5 Vegas.

12  Wilson's claims are also atypical of those of the purported damages class—purchasers

13  of High 5 Casino *or* High 5 Vegas virtual coins—because those two games are materially

14  different, and Wilson only purchased virtual coins for High 5 Casino. A key test for typicality

15  is "whether other members" of the putative class "have the same or similar injury[.]" *Hanon*,

16  976 F.2d at 508. A plaintiff's claim is atypical where he seeks to represent purchasers of a

17  materially different product that the plaintiff never purchased. *See, e.g. Allen v. Hyland's Inc.*,

18  300 F.R.D. 643, 661 (C.D. Cal. 2014) (denying certification as to two out of twelve products

19  where no named plaintiff purchased those products); *Wiener v. Dannon Co.*, 255 F.R.D. 658,

20  666 (C.D. Cal. 2009) (denying class certification on grounds of atypicality where plaintiff

21  purchased only one of three products at issue); *Lewert v. Boiron, Inc.*, 2014 WL 12626335, at

22  *11–*12 (C.D. Cal. Nov. 5, 2014) (limiting definition of class to exclude products not

23  purchased by plaintiff); *see also Weiner*, 255 F.R.D. at 666 (collecting cases).

24  Wilson seeks to represent a class of purchasers of "virtual casino chips on either High

25  5 Casino *or* High 5 Vegas." Dkt. 142 at 8 (emphasis added). But he admits that he has never

26  played High 5 Vegas and never made any purchase in that game. *See* Ex. 1 at 27:1–28:1.

OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
AND FOR PRELIMINARY
INJUNCTION - 21
(3:18-CV-05275-RBL)

Because Wilson never made a purchase from High 5 Vegas, and because High 5 Vegas is materially different than High 5 Casino, *see supra* § V.A., he cannot represent a putative class that includes purchasers of virtual coins in both games. Simply put, the claims of those who purchased virtual coins from High 5 Vegas are not "fairly encompassed by [Wilson's] claims." *Wiener*, 255 F.R.D. at 666 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982)). Wilson is therefore an atypical and inadequate class representative.

### 3. Wilson's CPA claim is atypical.

Wilson's CPA claim is atypical because he cannot show that he was injured by the same conduct that allegedly injured other class members. *Moussouris v. Microsoft Corp.*, 2018 WL 3328418, at *27 (W.D. Wash. June 25, 2018) ("[I]f the plaintiffs cannot establish that they were injured by the same conduct that injured other class members, then their claims cannot be typical of other members of the class."), *aff'd*, 799 F. App'x 459 (9th Cir. 2019).

The CPA requires that the plaintiff be "injured by" the defendant's conduct. *See Lyons v. Homecomings Fin. LLC*, 770 F. Supp. 2d 1163, 1167 (W.D. Wash. 2011) (plaintiff's injury must be causally linked to defendant's conduct). As explained above, *see supra* § V.A., Wilson has failed to allege any specific unfair or deceptive trade practice. Instead, he appears to incorrectly assume that proving a violation of Washington's gambling laws establishes a *per se* unfair or deceptive trade practice. To the extent he claims that operating an online game that violates RCW 9.46.010 is a deceptive act because players believe they are playing a legal game, his claim is still atypical, because Wilson always believed High 5 Casino violated Washington law. *See* Ex. 1 at 19:21-24, 25:19-22, 76:7-21, 182:8-17. He was not deceived by any of High 5's trade practices. His CPA claim is thus atypical.

### 4. Wilson is subject to a unique unclean hands defense.

Wilson is also an atypical representative because High 5 has a unique unclean hands defense to his unjust enrichment claim. Wilson alleges that High 5 was unjustly enriched through his purchase of virtual coins. Dkt. 1, ¶¶ 67–71. But to succeed on this equitable claim,

OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
AND FOR PRELIMINARY
INJUNCTION - 22
(3:18-CV-05275-RBL)

**HOLLAND & HART LLP**
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

he must "come into the court with clean hands." *J. L. Cooper & Co. v. Anchor Sec. Co.*, 113 P.2d 845, 857 (Wash. 1941). "A court will not allow the use of its powers and process to obtain a benefit founded directly upon a breach of law by the applicant therefor." *Id.* at 858; *see also State v. Barajas-Verduzco*, 198 Wn. App. 1072 (2017) ("[E]quity will not aid an applicant in securing . . . gains from wrongdoing.") (cited pursuant to WA GR 14.1).

Here, Wilson testified that he "knew" High 5's games were "illegal" and "improper" from "the first time" he played them. Ex. 1 at 19:21-24, 25:19-22, 76:7-21, 182:8-17. Wilson thus accuses High 5 of illegal gambling, and at the same time, he claims that he knowingly gambled illegally. This he cannot do. Wilson's admission that he knowingly engaged in what he believed was an illegal transaction shows he has unclean hands and provides High 5 with a unique defense to his unjust enrichment claim.

### 5. Wilson is subject to a unique judicial-estoppel defense.

"In the bankruptcy context, the federal courts have developed a basic *default* rule: If a plaintiff-debtor omits a pending (or soon-to-be-filed) lawsuit from the bankruptcy schedules and obtains a discharge (or plan confirmation), judicial estoppel bars the action." *Ah Quin v. Cnty. of Kauai Dept. of Transp.*, 733 F.3d 267, 271 (9th Cir. 2013) (emphasis added). When deciding whether to apply the doctrine, the salient question for the court is whether "the debtor has knowledge of enough facts to know that a potential cause of action exists during the pendency of the bankruptcy, but fails to amend his schedules . . . to identify the cause of action as a contingent asset." *Black v. Midland Credit*, 2013 WL 5140181, at *2 (W.D. Wash. Sept. 12, 2013); *see also Hay v. First Interstate Bank of Kalispell*, 978 F.2d 555, 556 (9th Cir. 1992) (granting summary judgment because party was judicially estopped from asserting claim when party did not know all facts surrounding the cause of action, but knew enough to conclude that it had been "taken advantage" of).

There is significant evidence Wilson's situation meets the judicial estoppel elements. At the time Wilson filed for and pursued his bankruptcy, he had knowledge of the facts

OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
AND FOR PRELIMINARY
INJUNCTION - 23
(3:18-CV-05275-RBL)

HOLLAND & HART LLP
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

underlying the claims he asserts here. He believed High 5 Casino constituted illegal gambling from the time he first played it—44 months before he filed for bankruptcy. Ex. 1 at 19:8-20:15, 25:19-22, 140:24-141:3, 140:24-141:3; Dkt. 112 at 42. He made his single, in-app purchase two weeks before filing for bankruptcy. Ex. 1 at 27:1-4, 171:9-172:8; Dkt. 112 at 42. But Wilson never disclosed his claims against High 5 in his bankruptcy case. *See* Ex. 1 at 198:19-199:1; Dkt. 112 at 62; Dkt., No. 16-45252-MJH (Bankr. W.D. Wash. 2016). And he never took the remedial step of amending his schedule of assets and liabilities, even after his failure to disclose was brought to his attention at his deposition.  Ex. 1 at 118:12-119:1.

Wilson insists that judicial estoppel does not apply because he did not omit the claims from his bankruptcy in "bad faith." Dkt. 142 at 13. But bad faith is not the standard. *See, e.g.*, *Ah Quin*, 733 F.3d at 271; *Black*, 2013 WL 5140181, at *2.

Wilson also argues he had no obligation to disclose the claims because the district court's decision in *Kater* meant his claims were "worthless." Dkt. 142 at 14. But Wilson's understanding of the law is irrelevant (nor does his counsel assert Wilson knew about the *Kater* decision). The "standard is not knowledge of the claims, it is knowledge of the facts." *Janaszak v. Wells Fargo Bank NA*, 2012 WL 4514460, at *2 (W.D. Wash. Oct. 1, 2012); *see also Black*, 2013 WL 5140181, at *3 ("That she may not have learned of the claim until speaking with an attorney is irrelevant to the consideration of whether enough facts existed for her to know the claim existed."). And even if Wilson's understanding of his claims were relevant, Wilson testified he believed High 5 Casino was illegal gambling since he downloaded the app. Ex. 1 at 19:8-20:15, 25:19-22, 140:24-141:3, 140:24-141:3.

In a footnote, Wilson's counsel alleges Wilson "has recently begun the process of engaging Bankruptcy Counsel for purposes of potentially pursuing an express and/or amended discharge of his claims against High 5." Dkt. 142 at 14, n.3. Assuming this unsupported allegation is true, the timing of Wilson's efforts actually demonstrates bad motive, not good faith. *See Butler v. Harvest Mgmt. Sub, LLC*, 2018 WL 905764, at *3 (W.D. Wash. Feb. 15,

OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
AND FOR PRELIMINARY
INJUNCTION - 24
(3:18-CV-05275-RBL)

HOLLAND & HART LLP
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

2018) (dismissing on judicial estoppel grounds; timing of motion to re-open bankruptcy was suspect when "[a]ssuming that Plaintiffs did not, as they allege, know that they had a potential claim until September of 2016, they still did not file a motion to re-open their bankruptcy proceedings until June 30, 2017, or two weeks after Defendant filed this Motion to Dismiss"). Further, taking inchoate steps toward amending bankruptcy schedules does not bar application of judicial estoppel. *See Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778 (9th Cir. 2001) ("Regardless, notifying the trustee by mail or otherwise is insufficient to escape judicial estoppel.").  Wilson's vulnerability to this and several other unique defenses makes his claims atypical and renders him an inadequate class representative.

Further, Wilson alludes to the value of his "sub $2 claim" as a reason to not apply judicial estoppel. Dkt. 142 at 14. But he does not truly value his claim at $1.99. Wilson is also the named plaintiff in two other putative class actions. In at least one of the other lawsuits, he seeks an "incentive award" of "no more than $5,000" for serving as the named plaintiff. Playtika Settlement Agreement, § 8.3.

## C.      Individualized Issues Predominate.

The predominance standard is "even more demanding" than the commonality standard. *Comcast*, 569 U.S. at 34. It requires, among other things, that common questions "predominate over any questions affecting only individual members." Rule 23(b)(3); *see Amchem Prods.*, 521 U.S. at 623-24 (predominance cannot be shown by class members' common exposure to defendants' asbestos products; the predominance inquiry necessitates consideration of individual issues).

The predominance analysis "begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). "At the core of Rule 23(b)(3)'s predominance requirement is the issue of whether the defendant's liability to all plaintiffs may be established with common evidence." *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1029 (8th Cir. 2010) (emphasis added). If, on a given question, the

OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
AND FOR PRELIMINARY
INJUNCTION - 25
(3:18-CV-05275-RBL)

HOLLAND & HART LLP
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

same evidence will suffice for each class member, the issue is common; if the evidence will vary from class member to class member, the issue is individual. *Id.*

Contrary to Wilson's contention, the predominance inquiry is not "straightforward," nor does its resolution turn solely on evidence of "the operation of High 5's casinos." Dkt. 142 at 17. Instead, this case is rife with individualized issues.

## 1. Wilson cannot establish liability with common, class-wide evidence.

As shown above, Wilson cannot establish liability on any of his three claims with common, class-wide evidence. *See supra* § V.A. Nor will the same evidence suffice to prove liability as to both High 5 Casino and High 5 Vegas, or even within a putative class of High 5 Casino players. *See id.*

## 2. Individualized liability issues predominate.

As Wilson's own circumstances illustrate, individual defenses to the three claims must be adjudicated, and those results cannot be applied to all putative class members. *See supra* § V.B.

This Court is bound by the Rules Enabling Act, which "forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right.'" *Wal-Mart*, 564 U.S. at 367 (quoting 28 U.S.C. § 2072(b)). High 5 is entitled to explore, with respect to each claimant, (1) whether they actually made the purchase in Washington, (2) whether they knew or believed the game they were playing constituted illegal gambling, (3) whether they had virtual coins and spins available when they made purchases, and (4) whether they got the benefit of their bargain. *See id.*; *see also infra* §§ V.C. & D. Precluding High 5 from exploring these individual issues with each potential claimant would abridge its substantive rights.

And to the extent Wilson's CPA claim posits that High 5's offering of in-app purchases in High 5 Casino and High 5 Vegas constitutes an "unfair practice," this claim presents individualized issues not proper for class resolution. *See* Dkt. 142 at 22. "A practice is unfair if it 'causes or is likely to cause substantial injury to consumers which is not

OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
AND FOR PRELIMINARY
INJUNCTION - 26
(3:18-CV-05275-RBL)

HOLLAND & HART LLP
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

reasonably avoidable by consumers themselves and is not outweighed by countervailing benefits.'" *Geier v. M-Qube, Inc.*, 2016 WL 3458345, at *3 (W.D. Wash. June 24, 2016). Whether the injury is "reasonably avoidable" is an objective standard that takes into account the individual circumstances of the consumer, including what each consumer knew about the alleged unfair practice. *Id.* at *4-5 (holding predominance not established).

Wilson demonstrated that any injury was reasonably avoidable in his circumstances: When he made his one in-app purchase, he closed the app immediately without playing the coins. Ex. 1 at 171:9-172:8. He never made another in-app purchase. *See id.* at 27:1-4, 171:9-12. He later deleted High 5 Casino from his phone. Ex. 1 at 81:6-9, 140:22-141:11. Further, High 5 will block a player's account permanently upon request from the player. Ex. 3 at 35:14-36:9. This practice has been in place for at least the last four years. *Id.* at 33:10-34:11. What each player of High 5's games knew about in-app purchases, removing the application from their devices, and requesting their accounts be blocked are all individual circumstances relevant to whether the alleged unfair practice was "reasonably avoidable" for users. These individualized issues bearing on whether an unfair practice exists predominate. *See Geier*, 2016 WL 3458345, at *3-5.

### 3.    Individualized damages issues predominate.

In *Comcast*, the Supreme Court cautioned that if "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class," then predominance is lacking. 569 U.S. at 34. Further, failing to provide a well-evidenced common methodology of determining class damages is fatal to a motion for class certification.

"The time to present an adequate methodology to calculate damages such that the Court may be assured individual issues will not predominate is at the time of certification, not at an unspecified future date." *Bess v. Ocwen Loan Serv. LLC*, 334 F.R.D. 432, 439 (W.D. Wash. 2020) (denying class certification because individual damages issues predominated over common questions). In *Bess*, the court found insufficient plaintiff's expert's references to

OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
AND FOR PRELIMINARY
INJUNCTION - 27
(3:18-CV-05275-RBL)

**HOLLAND & HART LLP**
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

defendant's records and public records, which he asserted would contain the correct dates by which to measure damages. *Id.* And promises of future expert opinion was not enough. *Id.*; *see also Doyle v. Chrysler Grp., LLC*, 663 F. App'x 576, 580 (9th Cir. 2016) (reversing grant of class certification when plaintiff pursued a partial reimbursement approach to calculating damages but did not offer a model determining what percentage of the purchase price damages should include, so there was "no way to determine whether the proposed damages model measured damages solely attributable to the theory of liability"); *Ward v. Apple Inc*., 784 F. App'x 539, 540 (9th Cir. 2019) (affirming denial of class certification because plaintiffs' economist did not 'provide a workable method for classwide determination of the impact of the antitrust violation . . . [but] merely asserted that he would be able to develop a model at some point in the future'"); *Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013) ("The plaintiffs bear the burden at class certification, and I conclude their lack of an expert opinion on their ability to prove total damages to the jury is fatal.").

Here, Wilson claims that out-of-pocket damages for coin purchases will be easy to assess. Dkt. 142 at 17. He is wrong. As explained below, Wilson has no common evidence or common methodology for determining class damages, which necessitates individual inquiries into each player's location when engaging in each in-app purchase. There is no way to reconcile the purchase data sets he submitted with his briefing. And Third Party Data Sets (to the extent they can even be considered) do not purport to reflect the type of purchases relevant to the class: purchases that occurred in the state of Washington (as opposed to purchases by individuals with some profile tied to Washington or purchases made from credit cards with a billing address in Washington).

There is no common methodology of damages. The parties agree that High 5 Data Sets cannot serve as the basis for a damages calculation for the class. Plaintiff's counsel stated in his declaration that "a reasonable finder of fact would likely conclude that High 5 Production

OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
AND FOR PRELIMINARY
INJUNCTION - 28
(3:18-CV-05275-RBL)

HOLLAND & HART LLP
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

2 is substantially underinclusive as compared to at-issue transactions in this litigation, and that

High 5 Production 1 is to some extent overinclusive as compared to at-issue transactions in

this case." Dkt. 144, ¶ 6.[6] High 5 provided Rule 30(b)(6) testimony explaining why the first

production was overinclusive and thus should not be relied upon. Ex. 4 at 32:9-35:4; *see also*

Dkt. 132 at 5 (order stating High 5 "provided an adequate explanation of the differences

between the two datasets that were produced"). Indeed, neither of the High 5 Data Sets

accurately reflects purchases that occurred in Washington. High 5's data are query results

based on geolocation. Ex. 4 at 32:9-35:4. But the geolocation service cannot distinguish

between VPN logins that occurred inside or outside of Washington. *Id.* at 38:4-23. And the

geolocation service does not accurately report devices logging in near a border. *Id.*

Wilson's apparent proffer of the Third-Party Data Sets to compare with the High 5

Data Sets does not meet his burden either. The High 5 Data Sets cannot be reconciled with the

Apple and Google data. The Third-Party Data Sets do not appear to reflect purchases based on

geolocation, much less accurate geolocation. Dkt. 144-3, 144-4. The Google and Apple data

does not purport to reflect purchases made while the player was physically located in

Washington (as opposed to purchases by individuals with some profile tied to Washington or

purchases made from credit cards with a billing address in Washington). The High 5 and

Third-Party Data Sets are oranges and apples, not capable of useful comparison.

And more importantly, the Third-Party Data Sets have no bearing on the at-issue

damages in this case. The location of each in-app purchase determines whether the court may

constitutionally apply Washington statute to the purchase. Enforcing Washington statutes

against purchases outside the state would violate the Dormant Commerce Clause, even if the

player is a Washington resident. *See Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320,

1323-24 (9th Cir. 2015) (California statute requiring royalty payment on art purchases if seller

---

[6] Despite Plaintiff's counsel's admission that the data set is overinclusive, Plaintiff's brief opens with a graph titled ████████████████████████ Dkt. 142.

OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
AND FOR PRELIMINARY
INJUNCTION - 29
(3:18-CV-05275-RBL)

HOLLAND & HART LLP
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

1    was California resident violated Dormant Commerce Clause); *Daniels Sharpsmart, Inc. v.*

2    *Smith*, 889 F.3d 608, 614 (9th Cir. 2018) (affirming preliminary injunction prohibiting

3    regulators' attempts to enforce California regulations against California waste disposal

4    company's conduct outside the state).

5          Further, to the extent Wilson and putative class members seek damages arising from

6    so-called addiction or any alleged harm other than the purchase price of virtual coins, Wilson

7    failed to identify those damages, much less establish a methodology for calculating them. *See*

8    Dkt. 142 at 2 (calling out-of-pocket financial losses "the tip of the iceberg"). These

9    individualized damages cannot be adjudicated in a class action.

10   **D.    A Class Action Is Not the Superior Method of Adjudication.**

11         A class action is the superior method for managing litigation if no realistic alternative

12   exists." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996); *see also*

13   *Morrison v. Esurance Ins. Co.*, 2020 WL 583824, at *6 (W.D. Wash. Feb. 6, 2020)

14   (superiority not met because CPA has attorney fee provision and potential treble damages,

15   thus incentivizing individual lawsuits, and court would have to individually evaluate who

16   were class members).

17         A class action is not superior to individual actions. As in *Morrison*, players have

18   sufficient incentive to file their own actions, and there are significant problems identifying

19   class members. And as explained above, the location of each in-app purchase determines

20   whether the court may constitutionally apply Washington statutes to the purchase because

21   enforcing Washington statutes against purchases outside the state would violate the Dormant

22   Commerce Clause, even if the player is a Washington resident. Accordingly, membership in

23   the class cannot be determined through common evidence. There is no reliable, common

24   evidence of the transactions occurring in Washington. Where a plaintiff has the burden to

25   demonstrate another party's status based on his location at the time of the conduct at issue,

26   more than a bare assertion of geolocation is required. *See AF Holdings LLC v. Doe*, 2012 WL

OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
AND FOR PRELIMINARY
INJUNCTION - 30
(3:18-CV-05275-RBL)

HOLLAND & HART LLP
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

12906122, at *1-2 (C.D. Cal. Oct. 2, 2012) (allegation of jurisdiction based on geolocation without information demonstrating geolocation accuracy is too conclusory to withstand motion to dismiss); *Celestial Inc. v. Hash*, 2012 WL 12897994, at *1-2 (C.D. Cal. May 1, 2012) (where personal jurisdiction depended on defendant's physical location during illegal online activity, court dismissed complaint for failure to provide sufficient information explaining geolocation service's reliability and accuracy). Wilson has thus failed to prove superiority.

**E.      There Is No Factual Basis for Certification Under Rule 23(b)(2).**

Wilson "devotes a mere [18] lines . . . to arguing that the requirements for a Rule 23(b)(2) class are met" and most of them "are devoted to reciting legal standards[.]" *Adams v. Target Corp.*, 2014 WL 12558858, at *4 (C.D. Cal. Nov. 25, 2014). His cursory request for certification of an "Injunctive Class" under Rule 23(b)(2) is meritless. Rule 23(b)(2) allows a court to certify a class if the prerequisites of Rule 23(a) are satisfied and "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Here, the prerequisites of Rule 23(a) have not been satisfied, and a single injunction would not provide relief to the whole injunctive class.

The key to certifying a Rule 23(b)(2) class is "the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or to none of them." *Parsons v. Ryan*, 754 F.3d 657, 687 (9th Cir. 2014) (quoting *Wal-Mart*, 564 U.S. at 360). "In other words, Rules 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Id.* at 687-88. If the injunction sought is not applicable to the entire class, the class cannot be certified under Rule 23(b)(2). *Id.*

Wilson defines the "Injunctive Class" as "[a]ll individuals in Washington who played either High 5 Casino or High 5 Vegas after April 9, 2014." Dkt. 142 at 8. He seeks to enjoin

OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
AND FOR PRELIMINARY
INJUNCTION - 31
(3:18-CV-05275-RBL)

**HOLLAND & HART LLP**
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

High 5 "from selling—from within Washington or to individuals located in Washington—virtual casino chips or coins . . . for use in virtual slot machines or other simulated gambling in internet-based casino-style apps, including, but not limited to, High 5 Casino and High 5 Vegas." *Id.* at 20. But, as described above, High 5 Casino and High 5 Vegas are free to download and free to play. And High 5 Vegas provides free coins continuously; no player ever must wait for more coins. Many proposed "injunctive class" members thus did not purchase coins, and an order enjoining High 5 from selling coins would not apply to them. A single injunction therefore would not "provide relief to each member of the class," *Parsons*, 754 F.3d at 688, and certification under Rule 23(b)(2) is unwarranted. *See Victorino v. FCA US LLC*, 326 F.R.D. 282, 307-08 (S.D. Cal. 2018) (rejecting request to certify an injunctive class under Rule 23(b)(2), when the proposed class included individuals who would not benefit from the requested injunction because they had sold their vehicles or obtained repairs); *Weidenhamer v. Expedia, Inc.*, 2015 WL 7157282, at *16 (W.D. Wash. Nov. 13, 2015) (rejecting request to certify an injunctive "baggage fee class" because "a single injunction will not provide relief to every member of the class").

Furthermore, as explained both above and below, *see supra* § V.C. & D.; *infra* § VI.A & B.3, Wilson has no standing to seek injunctive relief and has presented no reliable geolocation evidence showing that all the transactions he seeks to enjoin occurred in Washington. Rule 23(b)(2) is simply inapposite here, and the Court should decline to certify an injunction class under this rule.

## VI.     THERE IS NO BASIS TO ENTER A PRELIMINARY INJUNCTION.

Wilson's request for a preliminary injunction should be denied. Wilson lacks standing to seek an injunction because he faces no imminent threat of alleged harm, given that he deleted High 5 Casino and stopped playing High 5's games before he filed this lawsuit. And he has failed to establish any of the four elements necessary for injunctive relief.

OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
AND FOR PRELIMINARY
INJUNCTION - 32
(3:18-CV-05275-RBL)

**HOLLAND & HART LLP**
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

**A.      Wilson Lacks Standing to Seek a Preliminary Injunction.**

To obtain injunctive relief, Wilson must show he has "(1) suffered an injury that (2) was caused by the defendant and (3) is likely to be redressed by the relief [he] seeks." *Walsh v. Nev. Dept' of Human Res.*, 471 F.3d 1033, 1036-37 (9th Cir. 2006) (no standing when the alleged employment discrimination would not be redressed by an injunction requiring a new anti-discriminatory policy, because plaintiff no longer worked for defendant and was not seeking reinstatement). In other words, a "plaintiff is only entitled to injunctive relief if [he] can demonstrate a 'real or immediate threat' that [he] will be subject to the illegal conduct again." *Miller v. Time Warner Cable Inc.*, 2016 WL 7471302, at *3 (C.D. Cal. Dec. 27, 2016) (quoting *City of L.A. v. Lyons*, 461 U.S. 95, 96 (1983)) (denying preliminary injunction in putative class action when plaintiff had not received unsolicited calls from defendant since before filing suit, making threat of future calls too speculative to support standing).

Here, the requested injunction—barring High 5's sale of virtual coins in Washington—does not redress any potential injury *to Wilson*. He played "only" High 5 Casino, not High 5 Vegas, Ex. 1 at 27:9-28:1, and he deleted the High 5 Casino app and stopped playing it long before filing his Complaint, *id.* at 81:6-9, 140:22-141:11. According to Wilson, the game was "boring," "the app sucked," and he "didn't typically find High 5 Games to be compelling enough . . . to want to purchase coins[.]" *Id.* at 146:25-147:19. Like the plaintiff in *Miller*, any alleged future injury to Wilson is far too speculative to support standing.

**B.      Wilson Has Proven None of the Four Preliminary Injunction Elements.**

A preliminary injunction is "an extraordinary remedy never awarded as of right." *Ha v. U.S. Bank Nat'l Ass'n*, 2020 WL 618542, at *3 (W.D. Wash. Feb. 10, 2020) (quoting *Winter v. NRDC*, 555 U.S. 7, 24 (2008)). A party seeking temporary injunctive relief must establish (1) likelihood of irreparable injury if injunctive relief is not granted, (2) likelihood of

OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
AND FOR PRELIMINARY
INJUNCTION - 33
(3:18-cv-05275-RBL)

**Holland & Hart LLP**
800 W. Main Street, Suite 1750
Boise, ID 83702
Tel: 208.342.5000
Fax: 208.343.8869

1  success on the merits, (3) balance of hardships favoring the movant, and (4) advancement of

2  the public interest. *Winter*, 555 U.S. at 20.

3        The law distinguishes between prohibitory injunctions (preserving the status quo) and

4  mandatory injunctions (requiring a party to take affirmative action). *Stanley v. Univ. of S.*

5  *Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994). A movant seeking a mandatory preliminary

6  injunction has a "doubly demanding" burden to demonstrate the *Winter* factors. *Garcia v.*

7  *Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) (denying mandatory preliminary

8  injunction to remove a video from YouTube and other websites). "When a mandatory

9  injunction is requested, the district court should deny such relief 'unless the facts and law

10  clearly favor the moving party.'" *Stanley*, 13 F.3d at 1320. The movant must show "extreme

11  or very serious damage" should the injunction not be granted. *Anderson v. United States*, 612

12  F.2d 1112, 1115 (9th Cir. 1979).

13        Wilson requests a mandatory injunction. Leaving the games as is would preserve the

14  status quo. Wilson seeks to force High 5 to take affirmative action to block individuals in

15  Washington from buying virtual coins. Declaration of Jon Fallon, ¶ 3; *see also Garcia*, 786

16  F.3d at 740 (requested relief to remove video from websites was mandatory injunction). But

17  High 5 does not track gameplay by state. Ex. 4 at 45:15-46:14. High 5 cannot simply flip a

18  switch and stop selling virtual coins to persons located in Washington. Fallon Decl., ¶ 3. High

19  5 does not currently have the technology to identify and isolate all IP addresses geolocated in

20  Washington and stop purchases from them with any reasonable level of accuracy. *Id.* In order

21  to comply with an order to stop selling virtual coins to players in Washington, High 5 would

22  have to invest significant monetary resources in third party technology and subsequently

23  integrate such technology within High 5's infrastructure and/or design, build, and engineer

24  new software that accurately identifies the geolocation of each player and blocks sales based

25  on the player's geolocation. *Id.* Wilson cannot meet the "doubly demanding" mandatory

26  injunction standard.

OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
AND FOR PRELIMINARY
INJUNCTION - 34
(3:18-CV-05275-RBL)

1.      **There is no likelihood of irreparable harm.**

"Irreparable harm is 'harm for which there is no adequate legal remedy, such as an award for damages." *E. Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1280 (9th Cir. 2020) (internal quotation marks omitted). Thus, "economic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award." *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.,* 944 F.2d 597, 603 (9th Cir. 1991); *see also Isomedia, Inc. v. Spectrum Direct, Inc.*, 2009 WL 10676393, at *3 (W.D. Wash. July 1, 2009) (quoting *Samson v. Murray*, 415 U.S. 61, 90 (1974)) ("The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.").

Consumer monetary losses do not constitute irreparable harm because they can be remedied by damages. *Churchill Vill., L.L.C. v. Gen. Elec. Co.*, 169 F. Supp. 2d 1119, 1129 (N.D. Cal. 2000), *aff'd* 361 F.3d 566 (9th Cir. 2004). Self-inflicted harm also is not irreparable harm. *Citizens of the Ebey's Reserve for a Healthy, Safe & Peaceful Env't v. U.S. Dep't of the Navy*, 122 F. Supp. 3d 1068, 1083 (W.D. Wash. 2015) (no likelihood of irreparable harm when many declarants who testified they were harmed by defendant's loud flight training had moved to the area after it had been zoned for high intensity noise); *see also* 11A Wright & Miller, et al., Fed. Prac. & Proc. § 2948.1 ("Not surprisingly, a party may not satisfy the irreparable harm requirement if the harm complained of is self-inflicted.").

Further, the irreparable harm must be "tethered" to the rights secured by the underlying statute. *See Garcia*, 786 F.3d at 747. In *Garcia*, an actress sought a preliminary injunction under the Copyright Act barring Google from hosting an anti-Islamic video that contained a clip featuring her without her consent. *Id.* at 738. She submitted credible evidence that she had received multiple death threats and threats to her family due to the video's presence on the Internet. *See id.* at 744. The Ninth Circuit held *en banc* that the death threats,

OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
AND FOR PRELIMINARY
INJUNCTION - 35
(3:18-CV-05275-RBL)

**HOLLAND & HART LLP**
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

emotional distress, and reputational injury did not constitute irreparable harm, because the harms were unrelated to the Copyright Act's purpose and remedies. *Id.* at 744-46.

No harm asserted here is irreparable for several independent reasons. *First*, Wilson asserts economic harm arising from the purchase of virtual coins in High 5 Casino, which is not irreparable harm. *See* Dkt. 142 at 23-24 (no argument regarding harms to Wilson); Dkt. 144-18 (no mention of harm to Wilson); Dkt. 145 (same); Dkt. 1, ¶ 31 (alleging $1.99 loss). Wilson argues that economic harm can be irreparable if it is "crippling" or akin to the loss of a business. Dkt. 142 at 23-24. But *he* never suffered such losses.

*Second*, Wilson's harm is self-inflicted. Players of High 5 Casino (or High 5 Vegas) choose to download the applications and play the games. This free choice is demonstrated by Wilson ceasing to play almost a year before filing this lawsuit. Ex. 1 at 81:6-9, 140:22-141:11, 146:25-147:19. Like plaintiffs in *Citizens of the Ebey's Reserve*, Wilson put himself in the position to suffer the alleged harm (*i.e.* to play the games), which he believed were illegal before he commenced playing them.

*Third*, the balance of Wilson's irreparable harm arguments rely on others' alleged emotional harm and should be rejected. *See* Dkt. 142 at 23-24.[7] Even if these harms were considered, emotional harm, as held in *Garcia*, is not intended to be protected by the statute at issue (here the CPA), and therefore, cannot support a finding of irreparable harm. *See Keyes v. Bollinger*, 640 P.2d 1077, 1084-85 (Wash. 1982) (CPA is meant to compensate for injury to one's "business or property," not for "mental distress, embarrassment, or inconvenience"). Wilson cites employment cases for the proposition that emotional and mental distress are irreparable harms, but unlike the CPA, employment discrimination claims cover those harms.

---

[7] Wilson improperly seeks injunctive relief based on alleged putative class members' injuries. Dkt. 142 at 21. The relevant inquiry is whether Wilson has made the requisite showing as to himself. *See Nat'l Ctr. for Immigrants Rights, Inc. v. INS*, 743 F.3d 1365, 1371 (9th Cir. 1984). Regardless there is no *evidence* of the class's injury. And the same arguments apply to putative class member Glover, who says she has "gotten really sucked into [High 5 Casino]" and "three weeks is the longest amount of time I've ever been able to stop." Dkt. 144-7, ¶ 4.

HOLLAND & HART LLP
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

*See* Dkt. 142 at 24 (citing *Chalk v. U.S. Dist. Ct.*, 840 F.2d 701, 710 (9th Cir. 1988) and

*EEOC v. Chrysler Corp.*, 733 F.2d 1183, 1186 (6th Cir. 1984)). Wilson's insurance case is

likewise inapposite, because it predates *Garcia* and holds that "stress, anxiety, and

uncertainty" are irreparable harms because insurance is purchased for "peace of mind." *Id.*

(citing *Yue v. Conseco Life Ins. Co.*, 282 F.R.D. 469, 483 (C.D. Cal. 2012)).

  *Finally*, a movant must establish that irreparable harm is likely, not just possible.

*Winters*, 555 U.S. at 22; *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 675 (9th

Cir. 1988) (speculative injuries cannot "constitute an irreparable harm"). A delay in seeking

injunctive relief belies the notion irreparable harm is imminent. *Citizens of the Ebey's*

*Reserve*, 122 F. Supp. 3d at 1083 (no likelihood of irreparable harm when plaintiff "waited 16

months to file for a preliminary injunction [and s]uch delay is inconsistent with the purpose of

a preliminary injunction"); *Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374, 1377

(9th Cir. 1985) (preliminary injunction properly denied where "Plaintiff's long delay before

seeking a preliminary injunction implies a lack of urgency and irreparable harm"); 11A

Wright & Miller, et al., Fed. Prac. & Proc. Civ. § 2948.1 (2d ed. 2011) (to the same effect).

  Wilson fails to show that any irreparable harm is likely. The alleged harm is too

speculative for the same reasons that he lacks standing. His reliance on declarants who played

other parties' games does nothing to help him meet his burden. *See* Dkts. 144-6, 144-8 to 144-

12. If High 5 were enjoined, there would be no effect on those declarants, because they do not

play High 5's games. And Wilson's more than two-year delay in moving for a preliminary

injunction shows that harm is neither irreparable nor imminently likely.

   **2.**  **Wilson is unlikely to succeed on the merits of his CPA claim.**

  Wilson seeks a preliminary injunction under the CPA, the five elements of which are

set forth above. *See supra* § V.A. Wilson claims High 5's conduct is "unfair" but not

deceptive. *See* Dkt. 142 at 22. He is unlikely to be successful in proving this first element.

OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
AND FOR PRELIMINARY
INJUNCTION - 37
(3:18-CV-05275-RBL)

**HOLLAND & HART LLP**
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

For the reasons explained above, he cannot establish a per se unfair practice. In the absence of a per se unfair practice, the court considers a practice "unfair if it causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and is not outweighed by countervailing benefits to consumers or to competition." *Alpert v. Nationstar Mortg. LLC*, 2019 WL 1200541, at *6 (W.D. Wash. Mar. 14, 2019) (quoting *Klem v. Wash. Mut. Bank*, 295 P.3d 1179, 1187 (Wash. 2013) (alterations and internal quotation marks omitted). A practice is "reasonably avoidable" if plaintiff could have chosen not to take part in it. *See id.* (force-placement of an insurance policy based on artificially inflated property valuation not an unfair practice, because plaintiff could have obtained his own policy). Here, making in-app purchases in High 5's games is reasonably avoidable. For example, Wilson chose to delete High 5 Casino. Ex. 1 at 81:6-9, 140:22-141:11. Further, players can request their accounts be blocked if they no longer want to play, and High 5 will block their accounts permanently. Ex. 3 at 33:10-34:11; 35:14-36:9.

Citing outdated Washington case law and out-of-state case law, Plaintiff contends he can show High 5's offering of social casino video games to be an "unfair practice" by establishing that the games are "unlawful" under Washington statutes. *See* Dkt. 142 at 22. As explained above, *see supra* § V.A., this is false. As *Hangman Ridge* and *Klem* make clear, a "per se violation" claim requires that the statute contain a legislative declaration expressly stating that a violation constitutes unfair or deceptive conduct. *See Klem*, 295 P.3d at 1186 (collecting examples); *Hangman Ridge*, 719 P.2d at 536 (same). The Gambling Act and Loss Recovery Act contain no such legislative declaration. *See* RCW 9.46.010; RCW 4.24.070.

Citing RCW 9.46.010, Wilson also argues that High 5's games are "offensive to Washington public policy" and therefore constitute an unfair practice. Dkt. 142 at 22. This is a nonstarter, because RCW 9.46.010 is about organized crime and its connection with illegal gambling. Wilson testified that even speculating about any connection between High 5's games and organized crime was "silly." Ex. 1 at 199:15-200:7.

OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
AND FOR PRELIMINARY
INJUNCTION - 38
(3:18-CV-05275-RBL)

HOLLAND & HART LLP
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

Finally, even if the *Kater* decision was correct, further facts and legal argument would need to be presented to address open questions regarding whether the *Kater* holding applies to Wilson's $1.99 purchase. Here, using different, but equally ineffective mechanisms, High 5 Vegas and High 5 Casino provide ongoing free game play. *See supra* § II.A. Wilson also must admit that at the time he made his $1.99 purchase for entertainment purposes, he was not required to do so to continue playing. *Id.* Court. And Wilson fails to offer evidence that he actually played the virtual coins acquired with the $1.99 purchase.

### 3.    The balance of hardships or equities favors High 5.

Wilson maintains that the Court may skip this element because injunctive relief is available under the CPA. Dkt. 142 at 24 (citing *Owner Operator Ind. Drivers Ass'n, Inc. v. Swift Transp. Co., Inc.*, 367 F.3d 1108, 1111 (9th Cir. 2004). He is incorrect. "Congress . . . has the power to require the federal courts to automatically enjoin actual or imminent violations of a statute without an individualized balancing of the equities" if done by the "clearest command." *Id.* at 1111-12. But no act of Congress is at issue here. The Washington state legislature enacted the CPA, and in any event, the statute contains no clear command to federal courts to automatically enjoin actual or imminent violations. *See* RCW 19.86.090.

Wilson cannot show that the equities tip in his favor. When a movant fails to establish imminent irreparable harm, he cannot establish this element. *See Florer v. Kenney*, 2011 WL 2898954, at *5 (W.D. Wash. June 20, 2011) (denying injunctive relief because "[w]ithout evidence of a threatened injury that is more than speculative, there is no basis for a finding that the balance of hardships tips sharply in plaintiff's favor").

Further, the balance of equities favors the non-movant when the requested injunction endangers its business and its employees' job security. *See Preferred Nutrition, Inc. v. Vanderhaeghe*, 2010 WL 11565193, at *12 (W.D. Wash. Nov. 22, 2010) (balance of equities tipped in defendant's favor because injunction requiring defendant to stop selling her products to Americans "might well require her to stop selling her products to online retailers entirely");

OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
AND FOR PRELIMINARY
INJUNCTION - 39
(3:18-CV-05275-RBL)

HOLLAND & HART LLP
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

*Keywords, LLC v. Internet Shopping Enters., Inc.*, 2005 WL 8156440, at *15 (C.D. Cal. June 29, 2005) (balance weighed in defendant's favor because forcing it to shut down its servers and websites would result in loss of all future income, and employee job loss).

As explained above, Wilson will suffer no irreparable harm. His rhetoric is colorful—"preying on addicts," "crippling personal and financial ruin," and "pernicious and predatory" games, Dkt. 142 at 23-25—but his evidence is non-existent: Wilson suffered no such harms. The balance of equities weighs against him for that reason alone.

Even if the harms he allegedly suffered were deemed irreparable, the balance of equities would still weigh in High 5's favor. As in *Preferred Nutrition*, it is possible the result of demanding that High 5 stop selling coins to players located in Washington would be for High 5 to bar gameplay in the entire United States, at least for a time, given how complex and difficult the work would be to accurately isolate purchases in Washington. Fallon Decl., ¶ 5. Significant practical obstacles exist to implementing a mandatory injunction applying only to Washington players. *Id.*, ¶ 3. As mentioned above, High 5 cannot simply switch off sales in Washington. *Id.* To merely investigate the cost and disruption to High 5's day-to-day business operations would require several days' worth of man-hours, as High 5's system was not built with this functionality in mind. *Id.* Most likely, the actual scope of the work required to implement the injunction Wilson seeks would, at a minimum, be a significant diversion of software engineer time and resources. *Id.* It could very well require several dedicated weeks' worth of effort for a team of engineers, project managers, and other technicians. *Id.* It is very possible that High 5 would also need third-party assistance, as it is unknown if the work required is within the skill set of High 5's current employees. *Id.* In addition to the direct cost of labor, the use of High 5's team would disrupt other ongoing projects, most of which are focused on High 5's European gaming business operations, in which High 5 has heavily invested in the last 12 months. *Id.*, ¶ 4. Taking away resources from those operations may delay contractual delivery dates with High 5's partners, which would have a materially

OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
AND FOR PRELIMINARY
INJUNCTION - 40
(3:18-CV-05275-RBL)

HOLLAND & HART LLP
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

negative impact on those contractual relationships, from which High 5 may never recover. *Id.* The entire project to implement the injunction sought would cost an estimated few hundred thousand dollars on a low end, and potentially millions of dollars on the high end. *Id.*, ¶ 5. Assuming High 5 could effectively stop virtual coin purchases in Washington without stopping all virtual coin purchases in the United States, the loss of this revenue to High 5 would likely cause High 5 employees to lose their jobs. *Id.*, ¶ 6. And if High 5 cannot effectively stop virtual coin purchases in Washington and ends up having to stop all virtual coin purchases in the United States, High 5 would certainly have to lay off a significant number of employees, and potentially close most of its U.S. operations. *Id.* Weighed against Wilson's one-time purchase, this element heavily favors High 5.

### 4.    An injunction would disserve the public interest.

Wilson insists that an injunction is "plainly in the public interest." As support, he cites an inapplicable gambling statute (RCW 9.46.250), which states that "gambling premises are common nuisances" and instructs how the real property interests in such premises must be adjudicated. Offering only inapposite authority and no evidence, Wilson has failed to carry his burden to show that a mandatory injunction is in the public interest. On the contrary, a mandatory injunction would be highly disruptive to High 5's business, causing financial losses and potential employee layoffs. The public interest would thus be disserved. *See Earth Island Inst. v. Carlton*, 626 F.3d 462, 475 (9th Cir. 2010) (affirming denial of preliminary injunction when defendant's continued operation would boost the economy and create jobs); *PJY Enters., LLC v. Kaneshiro*, 2013 WL 12203247, at *10 (D. Haw. Feb. 28, 2013) (in dispute over removal of game arcade consoles allegedly violating gambling laws, public interest factor was neutral and preliminary injunction was denied).

Finally, the Washington Gambling Commission has repeatedly stated its belief—and thus, the public interest of Washington authority charged with making such determinations— that social video games should not be regulated as gambling. *See* Dkt. 26-10 at 3-5; Dkt. 26-

OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
AND FOR PRELIMINARY
INJUNCTION - 41
(3:18-CV-05275-RBL)

HOLLAND & HART LLP
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869

1  11 at 5, 7, 8, 9, 12, 13; Dkt. 26-12. Given the longstanding statements, actions, and inactions

2  of the Commission, a mandatory injunction that would effectively shutter a social video game

3  is unnecessary, unwarranted, and against the public interest.

4  **VII.   CONCLUSION**

5      High 5 respectfully asks this Court to deny both motions.

6

7      DATED this 17th day of August 2020.

8                                   _s/ Mark Rosencrantz_
                                    Christopher A. Wright, WSBA #26601
9                                   Mark Rosencrantz, WSBA #26552
                                    Emilia J. Sweeney, WSBA #23371
10                                  Attorneys for Defendant
                                    CARNEY BADLEY SPELLMAN, P.S.
11                                  701 Fifth Avenue, Suite 3600
                                    Seattle, WA 98104
12                                  Tel: (206) 622-8020 / Fax: (206) 467-8215
                                    E-mail:  wright@carneylaw.com
13                                          rosencrantz@carneylaw.com
                                    sweeney@carneylaw.com
14

15

16                                  _s/ Erik F. Stidham_
                                    Erik F. Stidham (Admitted _Pro Hac Vice_)
17                                  Jennifer M. Jensen _(Admitted Pro Hac Vice_)
                                    Teague I. Donahey (Admitted _Pro Hac Vice_)
18                                  Holland & Hart LLP
                                    800 W. Main Street, Suite 1750
19                                  Boise, ID 83702
                                    Tel: (208) 342-5000 / Fax: (208) 343-8869
20                                  E-mail: efstidham@hollandhart.com
                                          jmjensen@hollandhart.com
21                                          tidonahey@hollandhart.com

22                                  Robert C. Ryan (_Admitted Pro Hac Vice_)
                                    Holland & Hart LLP
23                                  5441 Kietzke Lane
                                    Reno, NV 89511
24                                  Tel: (775) 327-3000 / Fax: (775) 786-6179
                                    E-mail:  rcryan@hollandhart.com

25

26

OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
AND FOR PRELIMINARY
INJUNCTION - 42
(3:18-CV-05275-RBL)

1

## <u>CERTIFICATE OF SERVICE</u>

2

3

4

I hereby certify that on this 17th day of August, 2020, I electronically filed the foregoing **HIGH 5 GAMES, LLC'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND FOR PRELIMINARY INJUNCTION** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

5

6

7

8

9

**Attorneys for Plaintiff**
Cecily C. Shiel
TOUSLEY BRAIN STEPHENS PLLC
1700 7th Ave Ste 2200
Seattle WA 98101-4416
Tel: (206) 682-5600
cshiel@tousley.com

10

11

12

13

**Attorneys for Plaintiff**
Benjamin H. Richman
EDELSON PC
350 North LaSalle St 14th Fl
Chicago IL 60654
Tel: (312) 589-6370
brichman@edelson.com

14

15

16

17

18

19

20

21

**Attorneys for Plaintiff**
Todd Logan
Rafey S. Balabanian
Eve-Lynn Rapp
Brandt Silver-Korn
EDELSON PC
123 Townsend St Ste 100
San Francisco CA 94107
Tel: (415) 638-9660
tlogan@edelson.com
rbalabanian@edelson.com
erapp@edelson.com
bsilverkorn@edelson.com

22

23

*/s/ Stacy Gust*
Stacy Gust, Legal Assistant

24

25

26

OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
AND FOR PRELIMINARY
INJUNCTION - 43
(3:18-CV-05275-RBL)

**HOLLAND & HART LLP**
800 W. MAIN STREET, SUITE 1750
BOISE, ID 83702
TEL: 208.342.5000
FAX: 208.343.8869