UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SEAN WILSON, individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>PTT, LLC, d/b/a HIGH 5 GAMES, LLC,<br><br>　　　　　　Defendant. | Case No. C18-5275RSL<br><br>ORDER CERTIFYING CLASSES AND DENYING PRELIMINARY INJUNCTION |

This matter comes before the Court on "Plaintiff's Motion for Class Certification and for Preliminary Injunction." Dkt. # 142.[1] Having reviewed the memoranda, declarations, and exhibits submitted by the parties and having heard the arguments of counsel,[2] the Court finds as follows:

---

[1] A redacted version of the motion is available for public viewing at Dkt. # 143.

Defendant's response memorandum is significantly overlength at slightly more than forty-one pages of substantive text rather than the twenty-four pages allowed by the local civil rules. Defendant asserts that, because plaintiff's motion incorporated two requests for relief, namely class certification and preliminary injunction it is entitled to double the allotted page limit. The filing of a single motion does not give the responding party the right to file multiple separate response memoranda regardless of the number of claims at issue or the nature of the relief requested. Nor does it justify the filing of a single overlength response, as defendant did here. Had plaintiff not filed an overlength reply, the Court would have ignored the unauthorized pages of defendant's memorandum.

[2] Defendant's objections to plaintiff's evidence are considered in the text.

ORDER CERTIFYING CLASSES AND
DENYING PRELIMINARY INJUNCTION - 1

# I. BACKGROUND

Defendant develops and makes available to Washington residents casino-themed games that can be played on mobile devices, including High 5 Casino and High 5 Vegas. Downloading the applications is free, and first-time users are given virtual coins to use in the animated slot machines and for other game play. Dkt. # 82 at ¶ 3. The slot machines and games cannot be played without virtual coins, and coins are won and lost based on a spin's outcome. Both applications make virtual coins available for free during play, but use different means to do so. High 5 Casino makes new coins available to the user when the application is opened, on an every four hour schedule, through a daily bonus, and when the player exits the game to spin a wheel in the application's "lobby." *Id.* at ¶ 5. High 5 Vegas also provides virtual coins through a daily bonus, but its primary method for distributing free coins is a counter at the top center of the screen display that constantly ticks up, adding to a balance of free virtual coins. The counter ticks up regardless of whether the application is open or closed, until a set maximum is reached. The player may push a button marked "COLLECT" at any time to add the coins in the counter to his or her bank of virtual coins. *Id.* at ¶ 4. With regards to both High 5 Casino and High 5 Vegas, if the player's rate of play exceeds the free virtual coins on offer at any given time, he or she must stop playing or may purchase additional coins.

Plaintiff Sean Wilson began playing High 5 Casino in 2013. Dkt. # 154 at 28-29. He played for years using only the virtual coins he won in the game or that were offered for free within the application. On December 17, 2016, however, he needed additional coins in order to continue his play and purchased 20,000 coins for $1.99. *Id.* at 29, 30, and 32. Plaintiff last accessed High 5 Casino in April of 2017. He has never played High 5 Vegas. In April 2018, plaintiff filed this lawsuit, asserting that defendant's on-line casino games constitute illegal gambling under Washington's Recovery of Money Lost at Gambling Act ("RMLGA"), that defendant violated the Washington Consumer Protection Act ("CPA"), and that defendant was unjustly enriched by plaintiff's payment.

Plaintiff seeks to certify two classes, one for the recovery of damages and the other for injunctive relief, comprised of:

> All individuals in Washington who purchased virtual casino chips on either High 5 Casino or High 5 Vegas after April 9, 2014 ("Damages Class").
>
> All individuals in Washington who played either High 5 Casino or High 5 Vegas after April 9, 2014 ("Injunctive Class").

Dkt. # 142 at 14. Defendant opposes class certification on a number of grounds, many of which are based on the assertion that the named plaintiff suffered no cognizable injury or is otherwise not typical/representative of the proposed classes.

## II. DISCUSSION

**A. Article III Standing**

Defendant contends that Mr. Wilson did not suffer an "injury in fact" because he received the full benefit of the bargain he struck, namely $1.99 in exchange for 20,000 virtual coins that could be played in High 5 Casino. Defendant cites cases in which consumer protection act and unfair business practices claims were dismissed because the plaintiffs had not alleged a cognizable economic injury. Dkt. # 153 at 20-21. Standing, however, "derives from the case-or-controversy requirement" and depends on the facts alleged and the claims asserted. *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1549 (2016), as revised (May 24, 2016). Although a fraud or breach of contract claim has not "traditionally been regarded as providing a basis for a lawsuit in English or American courts" where the claimant obtained the expected benefits of the bargain and could therefore not articulate an actual injury (*Id.*), the legislature has the power to "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law" (*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 578 (1992)). While legislative fiat cannot do away with the case and controversy requirement (by, for example, creating a right of action divorced from any concrete harm), the legislature "has the power to define injuries and articulate chains of causation that will give rise to a case or controversy

ORDER CERTIFYING CLASSES AND
DENYING PRELIMINARY INJUNCTION - 3

where none existed before." *Lujan*, 504 U.S. at 580 (J. Kennedy, concurring in part and concurring in judgment).

In this case, the Washington legislature has determined that a person who participates in illegal gambling is entitled to recover his or her losses from the proprietor for whose benefit the game was played or dealt. RCW 4.24.070. The statute, by its terms, requires a loss of money or a thing of value in order to give rise to a cause of action and therefore does not create a claim in the absence of actual, concrete harm. Plaintiff lost $1.99 on an allegedly illegal gambling application developed and maintained by defendant. The alleged injury is fairly traceable to defendant's conduct and can be redressed by pursuing this RMLGA claim. There is, therefore, a justiciable case or controversy between the parties, and plaintiff has standing to pursue his RMLGA claim.

With regards to plaintiff's CPA claim, RCW 19.86.020 makes "unfair or deceptive acts or practices in the conduct of any trade or commerce" unlawful, and RCW 19.86.090 authorizes "[a]ny person who is injured in his or her business or property by a violation of RCW 19.86.020 ... [to] bring a civil action in superior court." Plaintiff has clearly alleged a cognizable injury to business or property that is both actual and concrete. *Meyer v. U.S. Bank Nat. Ass'n*, 530 B.R. 767, 781 (W.D. Wash. 2015), *aff'd sub nom. Meyer v. Nw. Tr. Servs. Inc*., 712 F. App'x 619 (9th Cir. 2017) (quoting *Mason v. Mortg. Am., Inc.*, 114 Wn.2d 842, 854 (1990)). He therefore has standing to litigate whether the conduct that caused his loss was unfair and/or deceptive. *See Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 787 (2013) (noting that an act can be unfair for purposes of a CPA claim without also having to be deceptive).

Similarly, plaintiff has standing to pursue an unjust enrichment claim, having indisputably benefitted defendant in the sum of $1.99. Whether defendant's enrichment was unjust is a merits issue to be determined at a later date.

**B. Prerequisites of a Class**

Pursuant to Fed. R. Civ. P. 23(a), a court may certify a class only if:

ORDER CERTIFYING CLASSES AND
DENYING PRELIMINARY INJUNCTION - 4

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

A court must conduct a rigorous analysis to determine whether a purported class satisfies the prerequisites of Rule 23. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012). The Rule "does not set forth a mere pleading standard:" the party seeking class certification must "affirmatively demonstrate his compliance with the Rule -- that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, *etc*." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis in original).

**(1) Numerosity**

Defendant does not dispute that the proposed class is of sufficient size to meet the numerosity requirement. *See Ali v. Menzies Aviation, Inc.*, 2016 WL 4611542 (W.D. Wash. Sept. 6, 2016) ("As a general rule a potential class of 40 members is considered impractical to join.") (citing *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)). Its objections to plaintiff's evidence regarding the number of chip purchases made by Washington residents is therefore moot.

**(2) Commonality**

In order to satisfy the commonality criterion, the class members' claims "must depend upon a common contention of such a nature that it is capable of classwide resolution." *Wal-Mart*, 564 U.S. at 338. A class meets the commonality requirement when "the common questions it has raised are 'apt to drive the resolution of the litigation' no matter their number." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014). As defendant's opposition makes abundantly clear, the key question related to liability under RMLGA is whether the virtual chips in defendant's games are "things of value" for purposes of RCW 4.24.070. Defendant argues that they are not because players may have, or could obtain, free chips to extend their game play

ORDER CERTIFYING CLASSES AND
DENYING PRELIMINARY INJUNCTION - 5

instead of purchasing coins, but that argument is part of the broader, common issue.[3] If the "things of value" question is resolved in plaintiff's favor, other common questions arise, such as:

    a) Whether defendant's games satisfy the statutory definition of "gambling."

    b) Whether class members' recoverable losses under RMLGA are coextensive with the money they spent purchasing virtual coins.

    c) Whether a violation of Washington's gambling laws constitutes a per se unfair or deceptive act for purposes of the CPA.

    d) Whether defendant's conduct is "unfair" for purposes of the CPA.

    e) Whether a violation of Washington's gambling laws impacts the public interest for purposes of the CPA.

    d) Whether plaintiff's transfer of funds to defendant in the context of the illegal gambling games alleged enriched defendant and whether that enrichment was unjust.

    f) Whether plaintiff's claim for injunctive relief is viable.

Each of these questions relates to defendant's alleged operation of a gambling game in violation of Washington law, the answers to these questions will be the same for every class member, and they are apt to drive the resolution of one or more claims asserted. Commonality is satisfied.

**(3) Typicality**

The typicality requirement "ensures that the interests of the class representative aligns with the interests of the class." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (internal quotation marks omitted). The named plaintiff's claims need not be identical to those of the absent class members, but they must be reasonably similar in light of the injuries suffered and the conduct that allegedly caused the injuries. *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014); *Torres v. Mercer Canyons, Inc.*, 835 F.3d 1125, 1141 (9th Cir. 2016). Class certification

---

[3] To the extent defendant is arguing that the differences in the way chips are dispersed in High 5 Casino and High 5 Vegas is material to the class certification analysis, that argument is considered below in the typicality discussion.

ORDER CERTIFYING CLASSES AND
DENYING PRELIMINARY INJUNCTION - 6

is not appropriate if there is a danger that the absent class members will suffer because their representative is preoccupied with defenses unique to him or herself. *Hanon v. Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

Defendant argues that plaintiff's claims are not typical of absent class members who played High 5 Vegas, that plaintiff is uniquely subject to impeachment, that plaintiff lacks prudential standing or is judicially-estopped from asserting claims, that his CPA injury is not caused by the same conduct that allegedly injured absent class members, and that his equitable unjust enrichment claim is uniquely subject to an unclean hands defense.

(a) High 5 Vegas

Based on the existing record, it appears that normal play on both High 5 Casino and High 5 Vegas will at times result in a player having too few chips to satisfy the minimum bet requirement to continue playing. At that point, the player has to cease play or purchase virtual coins. It is that facet of the game - that players must part with actual money to obtain tokens that extend the privilege of playing the game - that allegedly violates Washington's gambling laws and gives rise to a claim for recovery under RMLGA. That defendant can articulate some variety in the games it has developed does not mean that the variations are material to plaintiff's claims.

(b) Impeachment

Defendant accuses plaintiff of making incredible and/or unsupported statements in the complaint and during his deposition. None of the asserted statements touches on issues that are likely to become a preoccupation at trial (*Fosmire v. Progressive Max Ins. Co.*, 277 F.R.D. 625, 632-33 (W.D. Wash. 2011)), nor do they disassociate plaintiff's claims from those of the absent class members in any way (*Wal-Mart*, 564 U.S. at 349, n.5).

(c) Prudential Standing

Plaintiff purchased $1.99 worth of virtual coins in the High 5 Casino application on December 16, 2016. Two weeks later, he filed a Chapter 7 bankruptcy petition. His original schedule of assets, which was filed on January 16, 2017, stated that he had no contingent claims

ORDER CERTIFYING CLASSES AND
DENYING PRELIMINARY INJUNCTION - 7

against third parties to count among his assets. The trustee granted plaintiff a discharge one month later. Defendant argues, based on these bare facts, that the trustee, rather than plaintiff, is the real party in interest with regards to the claims asserted in this litigation and that plaintiff is therefore atypical because he lacks prudential standing. *See Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 289 (2008); *Dunmore v. U.S.*, 358 F.3d 1107, 1112 (9th Cir. 2004).

As the party arguing that the causes of action in question are part of the bankruptcy estate, defendant bears the burden of proof. *See In re Bolton*, 584 B.R. 44, 51 (Bankr. D. Idaho 2018). Defendant does not cite the bankruptcy code or make any effort to define the assets of the estate in support of its prudential standing argument.[4] While it is true that the filing of a bankruptcy petition transfers all legal or equitable interests a debtor may have as of the commencement of the case to the bankruptcy estate (*Turner v. Cook*, 362 F.3d 1219, 1225-26 (9th Cir. 2004) (quoting 11 U.S.C. § 541(a)(1)), legal or equitable interests acquired after the commencement of the case transfer to the estate only if estate assets were used in the acquisition (*MacKenzie v. Neidorf*, 534 B.R. 369, 372 (9th Cir. BAP 2015) (citing 11 U.S.C. § 541(a)(7)).

How these provisions apply in this case is unclear given that defendant ignores potentially relevant events in making its argument. In November 2015, more than a year before plaintiff made his purchase, the Honorable Marsha J. Pechman, United States District Judge for the Western District of Washington, determined that virtual chips necessary to play on a virtual gambling platform are not "things of value" and dismissed claims under RMLGA and the CPA, and for unjust enrichment. *Kater v. Churchill Downs Inc.*, 2015 WL 9839755 (W.D. Wash. Nov. 19, 2015). That decision was reversed in March 2018 in *Kater v. Churchill Downs Inc.*, 886 F.3d 784 (9th Cir. 2018), more than a year after plaintiff's bankruptcy had been discharged. Plaintiff filed this lawsuit shortly after the Ninth Circuit issued its decision.

Regardless whether defendant could have shown that plaintiff lacked prudential standing

---

[4] Defendant asserted that it would file a motion for summary judgment on the standing issue "in the coming weeks," but no such motion has been filed. Dkt. # 153 at 24, n.4.

ORDER CERTIFYING CLASSES AND
DENYING PRELIMINARY INJUNCTION - 8

at the time this lawsuit was filed, once defendant raised the issue, plaintiff moved to reopen his bankruptcy proceeding so that he could schedule the claims asserted herein as newly-discovered assets. He recently obtained the trustee's approval of the claimed exemption and a court order reclosing the case. *See In re Sean Patrick Wilson*, B.R. 16-45252, Dkt. # 21-32 (Bankr. W.D. Wash. 2020). The Court therefore finds no prudential bar to plaintiff's pursuit of these claims.

(d) Judicial Estoppel

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). "In the bankruptcy context, the federal courts have developed a basic default rule: If a plaintiff-debtor omits a pending (or soon-to-be-filed) lawsuit from the bankruptcy schedules and obtains a discharge (or plan confirmation), judicial estoppel bars the action." *Ah Quin v. County of Kauai Dept. of Transp.*, 733 F.3d 267, 271 (9th Cir. 2013). Such a rule generally comports with the Supreme Court's analysis in *New Hampshire v. Maine*, 532 U.S. 742 (2001), because the positions taken are inconsistent ("there is not a claim" vs. "there is a claim"), the bankruptcy court accepted the prior representation (by allocating resources, discharging debts, and/or reorganizing debtors in reliance thereon), and the debtor obtained an unfair advantage (creditors did not have a chance to assess and benefit from the undisclosed assets before discharge or reorganization). *Ah Quin*, 733 F.3d at 271. Barring litigation of claims that were not disclosed in bankruptcy also furthers the underlying goal of judicial estoppel, which is "to protect the integrity of the judicial process" by prohibiting parties from "playing fast and loose with the courts." *New Hampshire*, 532 U.S. at 749-50; *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990).

There is no indication that plaintiff was aware that his $1.99 purchase of virtual chips gave rise to a viable cause of action at the time he filed his bankruptcy petition and schedules. In fact, the controlling law was against him. These circumstances do not raise an inference that

ORDER CERTIFYING CLASSES AND
DENYING PRELIMINARY INJUNCTION - 9

plaintiff was playing fast and loose with the courts or was otherwise seeking an unfair advantage. In addition, plaintiff has now availed himself of "a permissible alternative to judicial estoppel" by reopening his bankruptcy proceeding and disclosing the previously unscheduled claim. *Dunmore*, 358 F.3d at 1113, n. 3. Plaintiff is not judicially estopped from pursuing the claims asserted here.

### (e) CPA Injury/Causation

Defendant argues that "Wilson's CPA claim is atypical because he cannot show that he was injured by the same conduct that allegedly injured other class members." Dkt. # 153 at 33. On the record provided, the conduct alleged and the nature of the resulting injury appear to be exactly the same as to all class members. Defendant fails to identify any differences, instead arguing only that plaintiff will be unable to establish an unfair or deceptive trade practice. Given that this is one of the common questions raised in the case, its existence does not show that plaintiff is atypical of the class.

### (f) Unclean Hands Defense

Finally, defendant maintains that plaintiff's equitable claim of unjust enrichment is subject to a unique unclean hands defense insofar as plaintiff knowingly engaged in illegal gambling. Defendant does not argue that plaintiff's conduct was, in fact, unlawful or illegal. While the legislature has seen fit to regulate the proprietor of gambling facilities and operations, requiring licenses and creating liability for gamblers' losses in unlicensed operations, defendant has not cited an affirmative prohibition on the conduct in which plaintiff engaged or shown that plaintiff's breach of any law is the foundation for his claims. If defendant can establish an unclean hands defense that applies only to the named plaintiff, the Court will revisit certification and/or plaintiff's earlier request to amend the complaint to add an additional plaintiff.

The Court finds that Mr. Wilson's claims are "reasonably co-extensive with those of absent class members." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Each

ORDER CERTIFYING CLASSES AND
DENYING PRELIMINARY INJUNCTION - 10

class member has claims based on the same alleged conduct and, if plaintiff establishes his claims, such proofs would also establish the claims of the absent class members. On the current record, there does not appear to be any unique defense or characteristic that will preoccupy plaintiff to the detriment of the class. Thus, typicality is met here.

**(4) Adequacy of Representation**

Two questions determine adequacy: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (quoting *Hanlon*, 150 F.3d at 1020). As discussed above, the named plaintiff's claims and interests are aligned with those of the class, and there is no reason to suspect that he will not pursue the statutory and common law claims to the fullest extent possible. Defendants argue, however, that the named's plaintiff's credibility is so damaged that he should be considered an inadequate representative of the class. Dkt. # 153 at 29-30. The alleged misstatements either reflect plaintiff's theory of the case or memory of events (which have not yet been proven to be incorrect) or are immaterial. At best, plaintiff's allegation regarding the bottom end of the price range for which defendant sells virtual chips displays a lack of attention to detail, but it is not disqualifying in the circumstances presented here. Based on the existing record, there is little, if any, chance that the misstatements identified by defendant could adversely impact adjudication of plaintiff's individual claims or the claims asserted on behalf of the class.

The Court finds that both the named plaintiff and plaintiff's counsel have demonstrated a commitment to vigorously prosecuting this action on behalf of the class and will do so in an adequate manner.

**B. Maintenance of a Damages Class under Rule 23(b)(3)**

Plaintiff argues that the provisions of Rule 23(b)(3) apply, pursuant to which the Court is required to find:

ORDER CERTIFYING CLASSES AND
DENYING PRELIMINARY INJUNCTION - 11

that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the likely difficulties in managing a class action.

**(1) Common Issues Predominate**

The first Rule 23(b)(3) finding requires an evaluation of "the relationship between the common and individual issues." *Hanlon*, 150 F.3d at 1022. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id.* Viewed through a comparative lens, the common questions identified above are significant and, if decided in plaintiff's favor, will go far in establishing both his individual claims and defendant's liability to the absent class members. The common questions also predominate over any individualized defenses. As shown in other related cases pending before the undersigned, damage calculations will utilize information that is entirely computerized and available from third parties: the damages issues will not overwhelm the common issues.[5]

**(2) Superiority of Class Action**

The second Rule 23(b)(3) finding requires the court to evaluate alternative mechanisms of dispute resolution based on the factors listed above in Rule 23(b)(3)(A)-(D). *See Zinser v.*

---

[5] Defendant identifies a number of "individual issues" it intends to explore with each claimant, such as (1) whether each purchase of coins was subject to Washington law, (2) whether their hands were unclean, (3) what prompted their purchase of coins, (4) whether they obtained the benefit of their bargain, and (5) whether the type of injury at issue was reasonably avoidable. It appears that these topics are irrelevant, will be addressed through computerized data, or will have a common answer.

ORDER CERTIFYING CLASSES AND
DENYING PRELIMINARY INJUNCTION - 12

*Accufix Research Institute, Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001). Defendant argues that the superior mechanism for resolving this dispute is for each player who lost money on High 5 Casino and High 5 Vegas to file an individual action. "Even if efficacious, [individual] claims would not only unnecessarily burden the judiciary, but would prove uneconomic for potential plaintiffs" given the potential litigation costs. *Hanlon*, 150 F.3d at 1023. Some class members, like Mr. Wilson, have an individual claim of only a few dollars, making a lawsuit illogical even if success on the CPA claim were assured. Although some class members may have individual claims in the tens of thousands of dollars, it is unclear how many such individuals exist and, regardless, the vast majority of the class has suffered monetary losses that pale in comparison to the costs of litigation. *Brown v. Consumer Law Associates, LLC*, 283 F.R.D. 602, 615-16 (E.D. Wash. 2012) (holding that class adjudication of class members' claims was superior to separate individual actions when the claims were "relatively small," in the range of $5,000 to $10,000). Because the class members would have little interest in pursuing individual actions, the first factor weighs in favor of class action treatment.

      As for existing litigation, the Court is unaware of any other litigation pending against defendant for the claims plaintiff asserts. Thus, treating plaintiff's claims as a class action appears to promote judicial economy. The third factor, desirability of concentrating the litigation in a particular forum, weighs in favor of class action treatment because the proposed classes are limited to individuals in Washington who are subject to Washington law. The Western District is therefore "an entirely logical place for the case to proceed." *Brown*, 283 F.R.D. at 616. The fourth factor, difficulties in managing the class action, also supports class action treatment. The computerized nature of the conduct at issue will make identifying class members fairly straightforward and will ensure that discovery on a classwide basis is comparatively manageable. In addition, this single class action will require fewer judicial (and defense) resources than managing separate suits brought by the admittedly numerous individuals who make up the class.

ORDER CERTIFYING CLASSES AND
DENYING PRELIMINARY INJUNCTION - 13

## C. Maintenance of a Damages Class under Rule 23(b)(2)

Fed. R. Civ. P. 23(b)(2) authorizes representative litigation if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Although defendant attempts to distinguish plaintiff and/or his claims from those of the absent class members, plaintiff's theory of the case is that the gambling games developed and operated by defendant cause compensable loss to every player who purchases virtual coins within the applications. This conduct is generally applicable to the class and, if plaintiff is able to prove the elements of his claims, final injunctive or declaratory relief applying to the class as a whole would be appropriate.

## D. Preliminary Injunction

In addition to requesting certification of the proposed Injunction Class under Fed. R. Civ. P. 23(b)(2), plaintiff also seeks immediate injunctive relief as follows:

> Pending final disposition of this case, Defendant is enjoined from selling—from within Washingt or coins, or other virtual tokens or credits, for use in virtual slot machines or other simulated gambling in internet-based casino-style apps, including, but not limited to, High 5 Casino and High 5 Vegas.

Dkt. # 142 at 26. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief,[6] that the balance of equities tips in his favor, and that an injunction is in the public

---

[6] Plaintiff deleted the offending High 5 Casino application years ago and has never played High 5 Vegas: he is therefore not likely to suffer irreparable harm in the absence of preliminary relief. Having successfully argued that a class should be certified, however, plaintiff is permitted to seek injunctive relief based on alleged class members' injuries and has provided a declaration from a class member who is currently playing High 5 Casino and experiencing emotional distress and anxiety, if not addiction. Dkt. # 144-7.

ORDER CERTIFYING CLASSES AND
DENYING PRELIMINARY INJUNCTION - 14

interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In his motion, plaintiff argues only that he is likely to succeed on the merits of his CPA claim. Dkt. # 142 at 26-29.

The first element of a CPA claim requires a showing of an "unfair" or "deceptive" act, which plaintiff identifies as defendant's "operation of (unregulated) virtual slot machines." *Id.* at 27. Plaintiff argues that defendant's conduct is unfair under the formulation of that term provided in a 1985 state appellate court decision, which itself cites to federal cases from the 1970s. *Id.* at 28 (citing *Blake v. Fed. Way Cycle Ctr.*, 40 Wn. App. 302, 310 (1985)). More recent pronouncements of the Washington Supreme Court make clear that, while a detailed definition of "unfair" remains elusive, it should be interpreted so as "to complement the body of federal law governing restraints of trade, unfair competition and unfair, deceptive, and fraudulent acts or practices in order to protect the public and foster fair and honest competition." *Klem*, 176 Wn.2d at 787-88 (quoting RCW 19.86.920). The current trend in federal law makes "unfair" a practice that "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits." *Klem*, 176 Wn.2d at 787 (quoting 15 U.S.C. § 45(n)).

Whether plaintiff will be able to make such a showing (or otherwise convince the Court that defendant's conduct is "unfair" for purposes of the CPA) is unclear. Offering an interactive application with in-game purchase options is not, in and of itself, injurious to consumers, making an in-game purchase is generally within the control of the consumer, and obtaining the desired product, as described and for a known price, is seldom a viable basis for a consumer protection or trade practices claim. Plaintiff argues, however, that defendant intentionally targets consumers who have displayed addictive tendencies in a way that is "unfair." While the theory is viable, the evidence plaintiff offers in support of this contention constitutes hearsay, deals with games other than the ones at issue in this litigation, and/or cannot support a finding of "substantial injury to

ORDER CERTIFYING CLASSES AND
DENYING PRELIMINARY INJUNCTION - 15

consumers" at this preliminary stage. Plaintiff himself found High 5 Casino to be boring and not of sufficient interest to occupy his time. Whether defendant's "operation of (unregulated) virtual slot machines" is likely to pose a threat of substantial injury to consumers cannot be determined on the existing record.

### III. CONCLUSION

For all of the foregoing reasons, plaintiff's motion for class certification is GRANTED. It is hereby ORDERED that the following class is certified pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3):

> All individuals in Washington who purchased virtual casino chips on either High 5 Casino or High 5 Vegas after April 9, 2014 ("Damages Class").

The following class is certified pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2):

> All individuals in Washington who played either High 5 Casino or High 5 Vegas after April 9, 2014 ("Injunctive Class").

Sean Wilson is appointed representatives of the class. Plaintiff's counsel is designated as counsel for the class. Plaintiff's motion for a preliminary injunction is DENIED.

Dated this 21st day of January, 2021.

*[signature]*
Robert S. Lasnik
United States District Judge

ORDER CERTIFYING CLASSES AND
DENYING PRELIMINARY INJUNCTION - 16