UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RICK LARSEN, individually and on behalf of all others similarly situated,<br>　　　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>PTT, LLC, doing business as High 5 Games, LLC; HIGH 5 ENTERTAINMENT LLC,<br>　　　　　　　　　　Defendant. | Case No. 3:18-cv-05275-TMC<br><br>ORDER GRANTING MOTION TO AMEND COMPLAINT AND TO BIFURCATE AND STAY AMENDED CLAIMS |

## I.   INTRODUCTION

On June 11, 2024, this Court held on summary judgment that Defendant High 5 Games (H5G), a developer of "social casino" games, violated Washington's Recovery of Money Lost at Gambling Act ("RMLGA") and Consumer Protection Act ("CPA"), and is liable to Plaintiff Rick Larsen[1] in this class action suit. Dkt. 408. The Court also concluded that a jury must decide the amount of damages H5G owes to the Class under the RMLGA and CPA. *Id.*

Before the summary judgment ruling, but after the Class was certified, H5G transferred all assets related to its social casino games to a subsidiary, High 5 Entertainment LLC (H5E), in

---

[1] When the case was filed, the named plaintiff was Sean Wilson, for whom Rick Larsen was substituted as class representative on March 6, 2023 (Dkt. 216). The Court will refer to Plaintiff throughout this order as "Larsen" or "Plaintiff" for clarity.

ORDER GRANTING MOTION TO AMEND COMPLAINT AND TO BIFURCATE AND STAY AMENDED CLAIMS - 1

October 2022. Upon learning of the asset transfer in early December 2023, Larsen moved on January 4, 2024 to amend his complaint to add H5E as a defendant for the existing RMLGA and CPA claims based on the same facts alleged against H5G. Dkt. 250. The Court granted Larsen leave to amend and authorized supplemental discovery into H5E's liability to Larsen and the Class. Dkt. 285.

Two months after the close of supplemental discovery, H5E moved for summary judgment, arguing Larsen lacked standing for his claims against it because he did not play the casino games once H5E took them over, and thus, was not injured by H5E. Dkt. 426. Larsen cross-moved for partial summary judgment, asserting that H5E "owns and operates the exact same illegal social casino business" as H5G and therefore should be liable to the Class based on the reasoning of the Court's summary judgment ruling against H5G. Dkt. 435. On September 5, 2024, Larsen filed his opposition to H5E's summary judgment motion, arguing for the first time that H5E is an "alter ego" of H5G and should be considered a single entity for the purposes of its liability to the Class after October 2022, when H5E took ownership of the games. Dkt. 467. Concurrently, Larsen filed this motion for leave to amend his complaint a third time to (1) add factual allegations pertaining to H5E's corporate form and liability for pre-October 2022 transactions and (2) add a Uniform Voidable Transactions Act (UVTA) claim against H5G and H5E. Dkt. 463. The Court held oral argument on November 13, 2024. Dkt. 511.

Having considered the parties' briefing, oral argument, and the relevant record, the Court GRANTS Larsen's motion to amend the complaint. Under the Court's discretion to bifurcate matters to promote convenience and avoid prejudice, the Court bifurcates Larsen's amended factual allegations and UVTA claim and STAYS their resolution until after the upcoming damages trial against H5G.

## II. BACKGROUND

The factual and procedural background of this case is recounted in prior orders. *See* Dkt. 408 at 2–6; Dkt. 514 at 3–8. Thus, in this Order, the Court reviews only the facts and procedural history relevant to the instant motion.

Larsen alleges that High 5 Casino and High 5 Vegas, "social casino" games developed by Defendant High 5 Games (H5G), are illegal under Washington law because they amount to unlicensed gambling, violate the Washington Consumer Protection Act, and have unjustly enriched H5G. *See generally* Dkt. 354. Larsen played virtual slot machines in High 5 Casino and possibly High 5 Vegas. *See* Dkt. 319-6 at 3; Dkt. 275-11 at 2. Larsen purchased virtual coins, which are required to spin the virtual slots, totaling $7,470.50 in Washington after April 9, 2014, but before October 1, 2022. *See id.* at 2–3; Dkt. 467 ¶ 1; Dkt. 481 ¶ 1.

On April 6, 2018, Plaintiff filed his original complaint against H5G seeking certification of a class of all persons in Washington who purchased and lost virtual coins playing H5G's social casino games. *See generally* Dkt. 1. He alleged that H5G's operation of social casino applications in Washington (1) constitutes an illegal gambling operation—meaning that H5G is liable for damages under the state's Recovery of Money Lost at Gambling Act, RCW 4.24.070 ("RMLGA"), (2) violates the state's Consumer Protection Act, RCW 19.86.010, et seq. ("CPA") because the games are illegal gambling harmful to the public interest, and (3) unjustly enriches H5G with the sale of virtual coins. *See* Dkt. 1 at 9–16. The complaint was first amended on March 8, 2023 (Dkt. 217) to substitute Larsen in place of the original named plaintiff, who had moved out of the country. *See* Dkt. 196 at 1.

On December 5, 2023, Plaintiff deposed H5G's CEO Anthony Singer and learned for the first time that H5G had transferred all social casino assets to a subsidiary, H5E, on October 1, 2022, more than a year before this disclosure. *See* Dkt. 285 at 1; Dkt. 250 at 4. Mr. Singer also

testified that H5G had about $900,000 on hand, while H5E generated at least $20 million in revenue in the preceding year and had about $4 million cash on hand. Dkt. 250-1 at 20.

Larsen moved to amend the complaint a second time to add H5E as a defendant because "High 5 Entertainment was a proper and necessary defendant in this Action, operating the at-issue social casinos and receiving all of the revenue from spending on virtual chips [since October 2022]." Dkt. 250 at 2. Larsen argued amendment would not impede progress on the case because the requested amendment "does not add any new legal claims or theories[.]" *Id.* at 3. He urged that not adding H5E as a defendant would harm the interests of the Class by "potentially mak[ing] [H5G] judgment-proof." *Id.*

The Court granted Larsen's motion to add H5E as a defendant on January 26, 2024. Dkt. 285 at 1. The Court also authorized Larsen to conduct supplemental discovery, writing: "(4) Plaintiff shall have until April 19, 2024,[2] to complete limited discovery regarding High 5 Entertainment, in particular the formation of the LLC and its relationship to defendant and the games at issue[.]" *Id.* at 2. On February 29, 2024, Larsen filed the second amended complaint ("SAC") adding H5E as a defendant for the existing RMLGA, CPA, and unjust enrichment claims based on the same facts alleged against H5G. *See* Dkt. 354 at 1, 4. The SAC refers to H5G's transfer of social casino assets to H5E in 2022 and H5E's corporate form and membership. Dkt. 354 ¶¶ 8, 23. It does not contain new legal claims or theories as to H5E's liability to the Class. *See id;* Dkt. 497 at 2.

The High 5 entities produced over 2.2 million documents during four months of supplemental discovery. Dkt. 464 at 3.[3] Before the May 24, 2024 discovery deadline, Larsen also

---

[2] The Court later extended the discovery deadline to May 24, 2024. Dkt. 393.

[3] The timing of these productions—some of which were responsive to discovery served years earlier—is the subject of a pending sanctions motion. Dkt. 477.

ORDER GRANTING MOTION TO AMEND COMPLAINT AND TO BIFURCATE AND STAY AMENDED CLAIMS - 4

deposed Singer again, this time as the Rule 30(b)(6) organizational representative for H5E. Dkt. 464 at 2; Dkt. 464-5. Singer's testimony revealed more facts about H5E's relationship to H5G. Singer is the managing member of both entities. Dkt. 464-5 at 4. Singer is H5E's only corporate officer. *Id.* at 8. Singer and his wife, Lisa Singer, an H5G employee, appear to make all corporate decisions for H5E. *See id.* at 9. Acies Investment, a gaming-focused firm and the sole external investor in H5E, only has observational rights on H5E's Board. *See* 464-5 at 8; Dkt. 435-1 at 9. H5G officers, and many employees who worked on social casino games before the asset transfer, continue to work on the games post-transfer under a service contract with H5E. *See* 464-5 at 7.

On June 11, 2024, between the discovery and dispositive motions deadlines regarding H5E, the Court granted Larsen's summary judgment motion against H5G in part, concluding that H5G is liable to the Damages Class for violating the RMLGA and CPA. Dkt. 408 at 8–19; *see* Dkt. 393. Because genuine factual disputes remained on damages owed, the Court ordered a jury trial to determine the amount of damages. Dkt. 408 at 19–23. The damages trial is scheduled for February 3, 2025. Dkt. 316.

On July 25, 2024, H5E moved for summary judgment or to compel arbitration of Larsen's claims on several grounds, including that Larsen lacks standing to pursue claims against H5E on behalf of the Class because his alleged injuries, while traceable to H5G, are not traceable to H5E. *See* Dkt. 426 at 7. The same day, Larsen cross-moved for partial summary judgment, arguing that H5E is liable to the Damages Class under the RMLGA and CPA for the same conduct as H5G once H5E took over the games in October 2022. Dkt. 435 at 5.

On September 5, 2024, Larsen filed his opposition to H5E's motion for summary judgment, alleging for the first time that H5E is an "alter ego" of H5G and that "maintain[ing] the fiction of corporate separateness" is inequitable. Dkt. 466 at 7, 14. Concurrently, Larsen filed

ORDER GRANTING MOTION TO AMEND COMPLAINT AND TO BIFURCATE AND STAY AMENDED CLAIMS - 5

the present motion to amend his complaint a third time to: (1) add factual allegations pertaining to H5E's corporate form and liability for pre-October 2022 transactions; and (2) add a Uniform Voidable Transactions Act (UVTA) cause of action. Dkt. 463 at 2–3. Larsen acknowledged that his motion to amend is at least partially precipitated by H5E's jurisdictional arguments, including standing. *See* Dkt. 502 at 3; Dkt. 467 at 3. The Court heard oral argument on November 13, 2024. Dkt. 511.

Concurrent to this Order, the Court granted H5E's motion for summary judgment (and denied Larsen's cross motion), concluding that Larsen lacked standing to sue H5E for its own violations of the RMLGA and CPA after it took over operations of H5G's social casino games in October 2022. Dkt. 514. The Court dismissed without prejudice Larsen's claims against H5E for those alleged violations. *Id.* The Order did not address H5E's liability to the Class for pre-October 2022 transactions when H5G owned and operated the games. *See id.* The motion to amend is fully briefed and ripe for the Court's consideration.

### III. LEGAL STANDARDS

A scheduling order sets trial and related dates "to provide a reasonable schedule for the resolution of disputes." *Scarlett v. Doe*, No. C19-1418JLR, 2020 WL 13517858, at *1 (W.D. Wash. July 20, 2020). Under Federal Rule of Civil Procedure 16(b)(4), a scheduling order "may be modified only for good cause and with the judge's consent." Good cause exists if the pretrial schedule "cannot reasonably be met despite the diligence of the party seeking the extension." Fed. R. Civ. P. 16(b) advisory committee's note to 1983 amendment. "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). Modification is justified where, despite diligent efforts of the moving party, issues arise "which could not have been reasonably

foreseen or anticipated at the time of the Rule 16 scheduling conference[.]" *Scarlett*, 2020 WL 13517858, at *1 (citations omitted).

If the movant shows good cause to amend their pleading after the deadline set by the scheduling order, the movant must next demonstrate that amendment is proper under Rule 15. *See Johnson*, 975 F.2d at 609. Under Rule 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." *Id.* The Court must apply this policy "with extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citations omitted).

The Court has discretion to grant or deny a request to amend but must provide justification when it denies a request. *Foman v. Davis*, 371 U.S. 178, 182 (1962). A Rule 15(a)(2) motion to amend "generally shall be denied only upon showing of bad faith, undue delay, futility, or undue prejudice to the opposing party." *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1152 (9th Cir. 2011) (cleaned up); *see also Foman*, 371 U.S. at 182. "The crucial factor is prejudice . . . while delay alone no matter how lengthy is an insufficient ground for denial of leave to amend." *Travelers Prop. Cas. Co. of America v. AF Evans Co.*, No. C10-1110-JCC, 2012 WL 12882900, at *2 (W.D. Wash. Aug. 30, 2012) (cleaned up). "In exercising this discretion, a court must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981) (citing *Conley v. Gibson*, 355 U.S. 41, 47–48 (1957)); *see also Chudacoff*, 649 F.3d at 1152.

### IV.   DISCUSSION

**A.   Larsen was reasonably diligent in pleading new claims against H5E.**

Larsen demonstrates good cause to amend his complaint. "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609 (9th Cir. 1992). In contrast, "carelessness is not compatible with a finding of

diligence." *Id.* After this Court authorized supplemental discovery into H5E's relationship to H5G and the social casino games at issue, Larsen was reasonably diligent in developing the facts underlying his proposed amendments. *See* Dkt. 285 at 2. Through discovery, Larsen learned that the High 5 entities share the same CEO, H5E's only corporate officer. Dkt. 464-5 at 4, 8. Larsen discovered that the corporate officers and employees who ran the games at H5G before they were transferred continued to run them after the asset transfer to H5E under a service agreement. *See id.* at 7. Larsen also learned that Acies, the one external investor in H5E, only had observational rights on H5E's Board, further demonstrating H5G's "ultimate oversight" of H5E. Dkt. 435-1 at 9; Dkt. 464-5 at 8, 13. These findings represent most of the factual amendments proposed in the Third Amended Complaint ("TAC"). *See* Dkt. 464-3 at 9–10.

      H5E nevertheless argues that the "foundational basis for the Motion" was known nine months prior when Larsen filed his second Motion to Amend the complaint and add H5E as a party. Dkt. 497 at 4. H5E cites the second Motion's discussion of H5G's transfer of the social casino games to H5E without the Class's knowledge and Larsen's fear that H5G has "attempted to make itself judgment proof," arguing that these assertions show Larsen was "careless[]" in not making the amendments he now seeks given he already had access to the underlying facts. *Id.* at 1–2, 4; Dkt. 250 at 2–3.

      Although H5E is correct that Larsen knew enough about H5G's asset transfer to a "partially-owned non-party subsidiary"—and its potential implications for the Class—to add H5E to the complaint, Larsen did not allege facts about H5G's ongoing control of H5E because he had not yet learned about the nature of their relationship. *See* Dkt. 250 at 3; Dkt. 463 at 5–6. This Court's authorization of discovery into the "formation of [H5E] and its relationship to [H5G] and the games at issue" shows that Larsen learned many of the facts underlying the proposed amendments *because of* discovery. *See* Dkt. 285 at 2; Dkt. 463 at 4–7.

ORDER GRANTING MOTION TO AMEND COMPLAINT AND TO BIFURCATE AND STAY AMENDED CLAIMS - 8

Larsen's actions between the end of discovery and the filing of the TAC also do not rise to "carelessness," especially given the heightened requirements for alleging fraud. *See Johnson*, 975 F.2d at 609; *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). H5E argues that even if Larsen developed the facts during discovery to allege that H5E is an alter ego of H5G and that a potentially fraudulent transfer of assets took place, "*all* of the material facts that form the basis for [Plaintiff's] requested amendment . . . were known to him no later than May 2024." Dkt. 497 at 6 (emphasis in original) (cleaned up). Larsen filed his third Motion to Amend on September 5, over three months after discovery ended. *See id*; Dkt. 463. While Larsen may have been able to file the present Motion sooner, a delay of three months does not make an otherwise diligent party careless, especially considering the volume of discovery produced in a limited time. *See, e.g.*, *Chamberlain Grp., Inc. v. Nassimi*, No. C09-5438BHS, 2010 WL 2948562, at *2 (W.D. Wash. July 23, 2010) (party diligent when moving three months after "relevant documents were disclosed in a relatively large production"); *Oppenheimer v. eXp Realty LLC*, No. 221CV01304RAJBAT, 2023 WL 1805568, at *2 (W.D. Wash. Jan. 17, 2023) (party diligent despite "three or more months' delay" between discovery of new facts and amendment) (collecting cases).

The timing of Larsen's amendment is further justified by what it alleges, particularly his UVTA claim. "Rule 9(b) requires that, when fraud is alleged, 'a party must state with particularity the circumstances constituting fraud[.]'" *Kearns*, 567 F.3d at 1124 (quoting Fed. R. Civ. P. 9(b)). Rule 9(b)'s heightened pleading standard applies to fraudulent transfer actions, such as Larsen's UVTA claim. *See Aqua-Chem, Inc. v. Marine Sys., Inc.*, No. C13–2208JLR, 2014 WL 795922, at *6 (W.D. Wash. Feb. 27, 2014) ("This [9(b)] standard applies to fraudulent transfer actions[.]"); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003) (finding claims "grounded in fraud" or that "sound in fraud" must satisfy the particularity

requirement of Rule 9(b)). Given that Larsen was required to plead at least his UVTA claim with particularity, the time between the end of discovery and Larsen's motion to amend does not demonstrate "carelessness." *See Strategic InStore Sols., Inc. v. idX Corp.*, No. C09-388 MJP, 2009 WL 10723387, at *2 (W.D. Wash. Nov. 20, 2009) (citation omitted) (party diligent where it spent "7 weeks investigating potential fraud" because Rule 9(b) requires "more than the usual investigation before filing . . . complaint"); *see also Cent. Freight Lines, Inc. v. Amazon Fulfillment Servs.*, No. C17-0814JLR, 2019 WL 1115257, at *4 (W.D. Wash. Mar. 11, 2019) ("heightened pleading standards for fraud" justifies some delay in filing amendment even when plaintiff was aware of potential defendant's involvement at the time of initial filing). Because Larsen was reasonably diligent in developing the facts underlying his proposed amendments, he has established "good cause" to satisfy Rule 16.

**B.   There is no evidence of bad faith or undue delay, and little prejudice to H5E in allowing leave to amend.**

The Court grants Larsen's request for leave to amend his complaint. If the movant shows good cause to amend their pleading after the deadline set by the scheduling order, the movant must next demonstrate that amendment is proper under Rule 15. *See Johnson*, 975 F.2d at 609. The Court must grant leave to amend "freely" and "with extreme liberality." Fed. R. Civ. P. 15(a)(2); *Eminence*, 316 F.3d at 1051 (citations omitted). As the party opposing amendment, the burden is on H5E to show prejudice. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987). H5E argues that the proposed amendments were made in bad faith, will cause undue delay, and pose "significant prejudice" to H5G and H5E.[4] Dkt. 497 at 7–11.

---

[4] H5E does not argue the proposed amendments are futile, so the Court does not address this factor.

ORDER GRANTING MOTION TO AMEND COMPLAINT AND TO BIFURCATE AND STAY AMENDED CLAIMS - 10

### 1.  Bad Faith

H5E has failed to show that Larsen's proposed amendments are made in bad faith. In the context of a motion for leave to amend, bad faith means acting with an "intent to deceive, harass, mislead, delay or disrupt." *Wizards of the Coast LLC v. Cryptozoic Entm't LLC*, 309 F.R.D. 645, 651 (W.D. Wash. 2015) (citations omitted). Bad faith is more than acting with bad judgment or negligence; the opposing party must demonstrate the "conscious doing of a wrong because of dishonest purpose or moral obliquity[.]" *Id.* (quoting *United States v. Manchester Farming P'ship*, 315 F.3d 1176, 1185 (9th Cir. 2003)).

Following High 5's change in ownership of the social casino games more than four years into this litigation, the Court granted Larsen supplemental discovery into H5E's "relationship" to its corporate parent and "the games at issue." Dkt. 285 at 2; Dkt. 250 at 1–2. By investigating that relationship, Larsen discovered facts not previously known to the Class about H5E and H5G's shared corporate structure and H5G's "ultimate supervision" of the games after they were transferred to H5E in October 2022. Larsen's motion to add allegations pertaining to H5E's corporate form and liability for pre-October 2022 transactions as well as a UVTA cause of action flows from conduct—and the resulting Court-directed discovery of that conduct—that occurred years into the present litigation. *See McCullough v. Travelers Home & Marine Ins. Co.,* No. C17-1234-JCC, 2017 WL 6604395, at *2 (W.D. Wash. Dec. 27, 2017) (no bad faith where amendment responded to conduct occurring after plaintiff filed initial suit); *see also Sanh v. Opportunity Fin., LLC*, No. C20-0310RSL, 2021 WL 2530783, at *1 (W.D. Wash. Jun. 21, 2021) (no bad faith where amendment responded to misstated facts in prior complaint which plaintiff had based on defendants' representations). Far from acting in bad faith, Larsen's conduct shows a good faith attempt to gather underlying facts to support the amendments.

ORDER GRANTING MOTION TO AMEND COMPLAINT AND TO BIFURCATE AND STAY AMENDED CLAIMS - 11

Nor is there any evidence that Larsen's motion to amend, filed contemporaneously with his opposition to H5E's summary judgment motion, was a "bad-faith tactical move" to avoid summary judgment. *See* Dkt. 497 at 11. Even if the timing kept H5E from addressing the amendments in their initial motion for summary judgment, H5E did address them in its reply brief, Dkt. 481, and at oral argument, Dkt. 513 at 43–54. And Larsen received no tactical advantage in the Court's determination of the summary judgment motions. *See* Dkt. 514. Absent more, H5E cannot demonstrate that the timing of Larsen's amendment was "a conscious doing of a wrong because of dishonest purpose or moral obliquity." *Wizards of the Coast LLC*, 309 F.R.D. at 651.

### 2. Undue Delay

Granting Larsen leave to amend will not result in undue delay. Undue delay is "delay that prejudices the nonmoving party or imposes unwarranted burdens on the court." *Id*.

H5E argues that courts have "consistently disfavored and denied late motions to amend . . . when the facts and the theory have been known to the party seeking amendment since filing of the operative complaint." Dkt. 497 at 10 (quoting *Lochridge v. City of Tacoma*, 315 F.R.D. 596, 598–99 (W.D. Wash. 2014) (cleaned up)). But Larsen developed most of the facts underlying H5E's corporate form and UVTA allegations *after* the Court granted leave to amend the complaint a second time. *See supra* Part IV, Section A. H5E argues that Larsen still delayed "no fewer than three months" from the end of discovery to the filing of the proposed amendments. Dkt. 497 at 10. But "delay alone no matter how lengthy is an insufficient ground for denial of leave to amend," *Travelers*, 2012 WL 12882900, at *2 (cleaned up), and Rule 15(a) does not specify any deadline for additional amendments.

H5E also argues that granting leave to amend will delay the damages trial. Dkt. 497 at 11. Among the factors courts consider in evaluating undue delay is proximity to the trial date.

ORDER GRANTING MOTION TO AMEND COMPLAINT AND TO BIFURCATE AND STAY AMENDED CLAIMS - 12

*Wizards of the Coast LLC*, 309 F.R.D. at 651 (citing *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 798–99). But H5E's argument that granting leave to amend will delay the upcoming damages trial can be avoided by bifurcating the amended claims and staying their resolution until after the trial, *infra* Part IV, Section C, mitigating prejudice to H5E or "unwarranted burden[]" on the Court. *See Wizards of the Coast LLC*, 309 F.R.D. at 651.

        3.     *Prejudice*

Finally, there is little prejudice to H5E if the Court grants Larsen leave to amend because (1) the proposed allegations do not greatly alter this case and (2) the new claims could be brought in collateral litigation. Prejudice is defined as "undue difficulty in prosecuting a lawsuit as a result of a change of tactics or theories on the part of the other party." *Wizards of the Coast LLC*, 309 F.R.D. at 652 (cleaned up). The party opposing amendment must show "substantial prejudice" to justify denying leave to amend. *Id.* H5E's primary argument is that Larsen filed his proposed amendments after the dispositive motion deadline for H5E's liability to the Class, requiring H5E to "restructure their discovery and litigation strategy" at great time and expense. Dkt. 497 at 7–8, 9; *see also* Dkt. 513 at 46 ("The discovery that occurred as to the existing claims does not cover everything we would do as a defendant.").

Any changes to H5E's litigation or discovery strategy resulting from the amendments appear nominal. Larsen seeks to add factual allegations and a fraud claim related to H5E's vicarious liability for transactions that occurred before October 2022 when H5G owned and operated the games at issue. *See* Dkt. 463 at 3. These amendments, as described *supra*, extend from discovery granted by this Court into H5E's relationship with H5G and thus do not "greatly alter the nature of litigation[.]" *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1988). Further, there has already been focused discovery completed for the new factual allegations and UVTA claim. *See* Dkt. 463 at 3. That granting the amendment creates the

"prospect of additional discovery needed by the non-moving party" does not by itself "constitute[] a sufficient showing of prejudice." *Bell v. Lee*, No. 13-cv-05820-SI, 2023 WL 4237582, at *4 (citation omitted).

Any prejudice toward H5E is also mitigated by the likelihood that if Larsen is denied leave to amend, his new claims could be brought in collateral litigation, whether tied to post-judgment enforcement of the damages trial verdict and/or as standalone claim against H5E. *See generally* Dkt. 513 at 39–41; 47–49. Judicial efficiency counsels granting the motion to amend where at least some discovery related to the proposed amendments has already taken place. *See Ocean Garden Products Inc. v. Blessings Inc.*, No. CV-18-00322-TUC-RM, 2020 WL 3579164, at *3 (D. Ariz. Jun. 30, 2020) (granting leave to amend when defendant did not show they would be prejudiced and amendment would further the interest of judicial efficiency by preventing post-judgment litigation); *see also Cram. v. Electronic Data Systems Corp.*, No. 07cv1842-LAB (NLS), 2008 WL 11337624, at *3 (S.D. Cal. May. 23, 2008) (granting leave to amend when there is "potential for separate or redundant litigation" if leave is not granted). Further, Larsen's purpose for seeking the amendments is to "protect [the Class's] interests" and ensure it can collect the judgment from the High 5 entities responsible. *See* Dkt. 463 at 9. Although the new claims against H5E can be adjudicated outside of this action, this Court is empowered to freely give leave to amend "when justice so requires." *See Eminence Cap.*, 316 F.3d at 1051; Fed. R. Civ. P. 15(a)(2).

The Court therefore concludes that Larsen's proposed amendment was not made in bad faith, will not cause undue delay, and will not substantially prejudice H5E. Accordingly, Larsen's motion for leave to amend is granted.

ORDER GRANTING MOTION TO AMEND COMPLAINT AND TO BIFURCATE AND STAY AMENDED CLAIMS - 14

**C.    Larsen's amendments are bifurcated and stayed until after the damages trial.**

To avoid disruption of the parties' preparation for the upcoming damages trial, the Court will bifurcate and stay Larsen's new claims against H5E. "[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) (collecting cases). As part of that authority, district courts have "broad discretion to bifurcate a trial." *Jinro Am., Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 998 (9th Cir. 2001), opinion amended on denial of reh'g, 272 F.3d 1289 (9th Cir. 2001). Rule 42(b) provides that a district court can bifurcate a trial "[f]or convenience, to avoid prejudice, or to expedite and economize." These are independent reasons, any one of which is enough to order bifurcation. *See Boone v. City of Los Angeles*, 522 Fed. App'x 402, 403 (9th Cir. 2013). Additionally, a court may bifurcate sua sponte. *Wilmotte v. National Railroad Passenger Corp.*, No. C18-0086 BHS, 2019 WL 4072137, at *1 (W.D. Wash. Aug. 29, 2019).

Bifurcation of the new allegations in Larsen's proposed amended complaint is warranted to promote convenience and avoid prejudice in consideration of the upcoming trial. The damages trial against H5G is scheduled for February 3, 2025. Dkt. 316. To "resolve Plaintiff's claims [against H5G] as currently pled, and . . . do it during a trial beginning February 3, 2025," bifurcation is appropriate so the trial can proceed as planned and the parties' trial preparations are not disrupted. *See* Dkt. 497 at 9. Further, staying litigation over the fraudulent transfer claim and H5E's potential liability for any judgment entered against H5G until after the damages award against H5G is known may allow the parties to better evaluate the remaining claims and expedite the rest of the case. *See* Fed. R. Civ. P. 42(b); Dkt. 463 at 3. The only prejudice the parties will suffer is "delay in the ultimate resolution of the[] claims." *See Wilmotte*, 2019 WL 4072137, at *1; Dkt. 497 at 9. "While there may be some prejudice in this delay, the Court finds

ORDER GRANTING MOTION TO AMEND COMPLAINT AND TO BIFURCATE AND STAY AMENDED CLAIMS - 15

that it is not undue prejudice." *Id.* Accordingly, the Court uses it "broad discretion to bifurcate" Larsen's amendments regarding H5E's alter ego liability for pre-October 2022 transactions and his UVTA claim and stay their resolution until after the damages trial. *See Jinro Am., Inc.* 266 F.3d at 998.

## V.   CONCLUSION

The Court GRANTS Plaintiff Rick Larsen's motion to amend the complaint (Dkt. 463). For the reasons explained above, the Court bifurcates Larsen's amendments in the proposed Third Amended Complaint (TAC) regarding (1) factual allegations pertaining to H5E's corporate form and liability for pre-October 1, 2022 transactions and (2) the Uniform Voidable Transactions Act cause of action against H5G and H5E.

Larsen may file the proposed TAC within 14 days of entry of this Order. The parties shall then meet and confer within 14 days of the filing of the TAC to discuss a schedule for Defendants to answer or otherwise respond to the TAC given the Court's bifurcation order and the upcoming trial. The parties shall submit their proposed schedule to the Court in a joint status report within 7 days of their conference.

Dated this 12th day of December, 2024.

Tiffany M. Cartwright
United States District Judge