The Honorable Tiffany M. Cartwright

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RICK LARSEN, individually and on behalf of all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PTT, LLC (d/b/a HIGH 5 GAMES, LLC), a Delaware limited liability company, and HIGH 5 ENTERTAINMENT LLC, a New Jersey limited liability company,<br><br>Defendants. | No. 3:18-cv-05275-TMC<br><br>**DEFENDANT HIGH 5 GAMES, LLC'S MOTIONS *IN LIMINE***<br><br>**Noting Date:** January 15, 2025 |

Defendant High 5 Games, LLC ("H5G"), through its attorneys, submits these Motions *in Limine*.

### CERTIFICATE OF CONFERRAL

Pursuant to W.D. Wash. L.R. 7(d)(5) counsel for H5G certifies that they conferred with counsel for Plaintiff on Monday, December 23, 2024 via Microsoft Teams Meeting and through follow-up email on December 30, 2024. Plaintiff opposes these Motions.

### LEGAL STANDARD

Trial courts have inherent authority to rule on motions *in limine* and make evidentiary rulings in advance of trial, *see Luce v. United States*, 469 U.S. 38, 41 n.4 (1984), thus allowing for a more complete, considered analysis of "thorny" evidentiary issues, *see United States v. Grullon*, 996 F.3d 21, 28 n.8 (1st Cir. 2021). One of the purposes of a motion *in limine* is to limit or exclude unfairly prejudicial evidence of questionable legal relevance prior to trial. *See*

*generally* Fed. R. Evid. 401, 402. The Court may exclude even relevant evidence if its probative value is substantially outweighed by the risk of undue prejudice, confusion, or delay. Fed. R. Evid. 403. Addressing these matters *in limine* will resolve issues that would otherwise "'clutter up the trial.'" *See City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017) (citation omitted).

## MOTIONS *IN LIMINE*

H5G requests the Court enter an Order precluding Plaintiff, his attorneys, and his witnesses from offering the evidence below through argument, testimony, or evidence of any kind.

### I. The Court Should Not Allow the Platform Spreadsheets Into Evidence.

The Court should preclude the introduction of Plaintiff's trial exhibit numbers 1–11 (the "Platform Spreadsheets"), *see* Declaration of Craig Stewart ("Stewart Decl.") ¶ 4, for two reasons: they are (1) summary exhibits lacking the proper foundation; and (2) inadmissible hearsay meeting no exception.

#### A. The Platform Spreadsheets are improper summary exhibits.

*First*, the Platform Spreadsheets are summary evidence for which Plaintiff did not—and cannot now—lay adequate foundation. The Platform Spreadsheets fit the definition of summaries of voluminous materials admissible of evidence under Rule 1006(a). They are compilations of large quantities of "raw data" that Meta, Google, Apple, and Amazon (the "Platforms") claim to collect and store in the ordinary course of business, *see Amarel v. Connell*, 102 F.3d 1494, 1517 (9th Cir. 1996) (emphasis omitted), although—for the record—it is entirely unclear what type of database or format in which the information is normally stored.. With the use of an undisclosed process entirely unknown to H5G (or Plaintiff, for that matter), the Platforms seemingly mined underlying, undisclosed data to create these charts as a "practicable means of making [the data] available to judge and jury." *See* Fed. R. Evid. 10006 advisory committee note. But even if the

DEFENDANT HIGH 5 GAMES, LLC'S
MOTIONS IN LIMINE – PAGE 2
(3:18-CV-05275-TMC)

HOLLAND & HART LLP
555 17TH STREET, SUITE 3200
DENVER, CO 80202
TEL: 303.295.8000
FAX: 208.343.8869

Platform Spreadsheets did not independently qualify as summary exhibits under Fed. R. Evid. 1006 (they do), as "[c]omputer-generated evidence [that] consists essentially of a compilation of data," they'd still need to satisfy the standards applicable to "charts, graphs, and summaries." *See* 1 MATTHEW BENDER, FEDERAL EVIDENCE PRACTICE GUIDE § 5.12[2] (2024).

Summary exhibits like the Platform Spreadsheets are only admissible if the proponent "establish[es] a foundation that (1) the underlying materials upon which the summary is based are admissible in evidence, and that (2) those underlying documents were made available to the opposing party for inspection." *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1259 (9th Cir. 1984); *see also* 1 MATTHEW BENDER, FEDERAL EVIDENCE PRACTICE GUIDE § 5.12[2] (2024) (for computer-generated compilations, "the underlying data must be admissible as well as available for examination"). Plaintiff and the Platforms failed to make available the materials or the methodology underlying these summary exhibits, leaving H5G "powerless to verify their accuracy." *Paddack*, at 1261; *see also Vasey v. Martin Marietta Corp.*, 29 F.3d 1460, 1468–69 (10th Cir. 1994) (affirming exclusion of summary evidence where district court was unable to assure itself of the accuracy of the information contained therein). As significant discrepancies between H5G's internal records and the Platform Spreadsheets demonstrate, this is more than a formalistic objection and underscores why courts require parties to produce the materials underlying such summaries. Dkt. #408 at 21–22 (acknowledging this very inaccuracy as precluding summary judgment on damages).

Because Plaintiff did not satisfy step two, H5G cannot evaluate admissibility under step one. H5G is also unable to examine whether the summary exhibits "fairly represent" the underlying raw data, yet another requirement for admissibility in the Ninth Circuit. *See Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1516 (9th Cir. 1985), *superseded in part by statute on other grounds*, 28 U.S.C. § 1961 (1982); *see also* 1 MATTHEW BENDER, FEDERAL EVIDENCE PRACTICE GUIDE § 5.12[2] (2024) ("computer-generated output must accurately represent the underlying

DEFENDANT HIGH 5 GAMES, LLC'S
MOTIONS IN LIMINE – PAGE 3
(3:18-CV-05275-TMC)

HOLLAND & HART LLP
555 17TH STREET, SUITE 3200
DENVER, CO 80202
TEL: 303.295.8000
FAX: 208.343.8869

data"). Under Ninth Circuit law, H5G is "not required to take [the Platform's] word" that the summary data accurately represents transactions made in Washington during the applicable time period. *See Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 623 (9th Cir. 1993). As a result, the Platform Spreadsheets are inadmissible. *See Paddack*, 745 F.2d at 1261; *see also Davis*, 751 F.2d at 1516 (affirming district court's exclusion of summary exhibit where offering party did not make available the underlying documents until just before trial); *Intel*, 6 F.3d at 623 (setting aside fee award because documents underlying billing summaries were not made available to responding party).

### B. The Platform Spreadsheets are not business records.

*Second*, the Platform Spreadsheets are out of court statements offered to prove the truth of the matter asserted (*i.e.*, the amount that the Class was ostensibly injured) and therefore constitute inadmissible hearsay. *See* Fed. R. Evid. 801(c); Fed. R. Evid. 802. This Court has previously indicated that the Platform Spreadsheets may be admissible as business records under Fed. R. Evid. 803(6). *See* Dkt. #408 at 21 ("[E]vidence that has been compiled from a computer database is also admissible as a business record." (alteration in original) (quoting *U-Haul Intern., Inc. v. Lumbermens Mut. Cas. Co.*, 576 F.3d 1040, 1043–44 (9th Cir. 2009)).

But the Platform Spreadsheets plainly do not qualify for business record treatment because *they were created for the express purpose of this litigation*. *See Paddack*, 745 F.2d at 1258–59; *see also Clark v. Los Angeles*, 650 F.2d 1033, 1037 (9th Cir. 1981). As *U-Haul* makes clear, regardless of whether the data was stored electronically, "the important issue is whether the database . . . was compiled in the ordinary course of business." 576 F.3d at 1044 (citation omitted). Here, there is no indication that the Platforms maintained a *state-specific* and *customer-specific* database to track the purchases from each app. To the contrary, the numerous errors inherent in the spreadsheets (moles that Plaintiff has tried to whack by submitting amended data and summaries, *compare* Dkt. #278, ¶ 13, *with* Dkt. #339, ¶ 4) indicate that "many of the normal

DEFENDANT HIGH 5 GAMES, LLC'S
MOTIONS IN LIMINE – PAGE 4
(3:18-CV-05275-TMC)

HOLLAND & HART LLP
555 17TH STREET, SUITE 3200
DENVER, CO 80202
TEL: 303.295.8000
FAX: 208.343.8869

checks upon the accuracy of business records are not operative." *See Paddack*, 745 F.2d at 1259 (citation omitted). These inaccuracies also demonstrate that the Platform Spreadsheets are "lacking in trustworthiness." *See id.* at 1259 n.7; *see also* Fed. R. Evid. 803(6)(E) (documents inadmissible as business records if the circumstances of their creation indicate untrustworthiness).

The custodial declarations from the various platform representatives, listed as Plaintiff's trial exhibits 16–21, do not change this calculation. *See* Stewart Decl., Exs. 1-2 and ¶ 7. "Rather than cure the spreadsheets' lack of trustworthiness, the declarations compound it." *MSP Recovery Claims Series LLC v. Farmers Ins. Exch.*, Nos. 22-55610 & 22-55613, 2023 U.S. App. LEXIS 27084, at *5 (9th Cir. Oct. 12, 2023). First, the declarations themselves are classic hearsay inadmissible under Rule 801. Second, they are rife with obvious errors and misrepresentations. *See, e.g.*, *United States v. Babichenko*, No. 1:18-cr-00258-BLW, 2022 U.S. Dist. LEXIS 91397, *4–9 (D. Idaho May 19, 2022) (certifications proffered under Rule 902(11) deficient where extrinsic circumstances raised concerns regarding their accuracy). For example, the declarants assert that the Platform Spreadsheets were compiled in the ordinary course of business, even though they were created in response to a subpoena issued in this litigation. Dkt. #277-6–9, 277-13, 277-16, and 277-1919.

The declarations also fail to explain *how* the Platform Spreadsheets were created—*i.e.*, what sources the Platforms pulled from and what processes the Platforms used to (1) identify transactions from Washington users and (2) amalgamate those transactions into a single document. Without that information, even setting aside the facially apparent errors, the declarations fail to authenticate the Platform Spreadsheets as records maintained in the ordinary course of the Platforms' businesses. Where, as here, the declarations intending to certify data compilations as business records do not explain the methodology inherent in compiling the data, the Court cannot consider the compilations to be self-authenticating business records under Fed.

DEFENDANT HIGH 5 GAMES, LLC'S
MOTIONS IN LIMINE – PAGE 5
(3:18-CV-05275-TMC)

HOLLAND & HART LLP
555 17TH STREET, SUITE 3200
DENVER, CO 80202
TEL: 303.295.8000
FAX: 208.343.8869

R. Evid. 902(11). *See, e.g.*, *Babichenko*, 2022 U.S. Dist. LEXIS 91397, *7–8 ("With digital records . . . the proponent needs to tell the adverse party how a particular data set was generated . . ."); *United States v. Weigand*, No. 20-cr-188 (JSR), 2021 U.S. Dist. LEXIS 28417, at *7–8 (S.D.N.Y. Feb. 14, 2021) ("The certification must explain, of course, how the requested information was extracted from the database.").

The Platform Spreadsheets are inadmissible summary exhibits and hearsay. The Court should bar their entry into evidence.

## II.     Davis Cannot Summarize the Inadmissible Platform Spreadsheets.

Likewise, the Court should preclude Plaintiff from offering testimony, evidence, or other argument to prove his damages based on the calculations contained in the Declarations of Shawn Davis, *see* Dkts. #278 & 339. This Court previously ruled that Davis's summaries of the data contained in the Platform Spreadsheets are "based on simple arithmetic" and are therefore "governed by Federal Rule of Evidence 1006" rather than Rule 702. Dkt. #366 at 1–2.

As a fact witness, then, Davis can only testify as to admissible matters of which he has personal knowledge. Fed. R. Evid. 602. Davis—an employee at *Plaintiff's counsel's law firm*, Dkt. #278, ¶ 2—has no personal knowledge of the data contained in the Platform Spreadsheets. He did not create the spreadsheets. He has no association with the Platforms and cannot testify to those companies' practices or their ordinary course of business. *See id.*, ¶ 4 ("*I was informed by Plaintiff's counsel* that each file contained in-app purchase transaction information from Amazon, Apple, Google, and Meta for the state of Washington." (emphasis added)). His only association with the spreadsheets is that he reviewed them in this litigation at the request of Plaintiff's counsel and imported the source files into a SQL database. *Id.* And the declarations do not indicate that Davis so much as reviewed the Platform Spreadsheets with any level of detail before importing them into his SQL database and performing the requested calculations. *See generally* Dkt. #278, 339.

DEFENDANT HIGH 5 GAMES, LLC'S
MOTIONS IN LIMINE – PAGE 6
(3:18-CV-05275-TMC)

HOLLAND & HART LLP
555 17TH STREET, SUITE 3200
DENVER, CO 80202
TEL: 303.295.8000
FAX: 208.343.8869

What Davis has done is plainly not enough to establish personal knowledge of the data he purports to summarize. *See, e.g.*, *Auto Indus. Supplier ESOP v. SNAPP Sys.*, No. 03-74357, 2008 U.S. Dist. LEXIS 105961, at *24 (E.D. Mich. Dec. 23, 2008) (precluding summary testimony where witness "made the calculations" but (1) "was not involved in the day-to-day operations" of the company that provided the underlying data, (2) "did not create the underlying documents," (3) was "not the custodian of the documents"; and (4) "did not review the underlying documents"). Reviewing, analyzing, and testifying to evidence outside the scope of personal knowledge is the realm of expert testimony. Fed. R. Evid. 703. The Court has made clear that Davis does not and cannot qualify or testify as an expert in this capacity. Dkt. #366 at 1–2.

Even if Davis did have the requisite personal knowledge, however, his summaries do not satisfy *Paddack*'s two-step test. *See* 745 F.2d at 1259. Davis's calculations are summaries of the Platform Spreadsheets, which themselves are exhibits summarizing underlying data that has not been produced. *See supra* § I.A. And if the accuracy of the documents underlying Davis's summaries is unverifiable, then Davis's summaries necessarily flunk *Paddack*'s second step. *See id.* Additionally, the Platform Spreadsheets are hearsay not satisfying any exception. *See supra* § I.B. Thus, Davis's summaries of their contents would also be inadmissible under *Paddack*'s first step. *See* 745 F.2d at 1260 (audit report based on business records that did not qualify for hearsay exception was inadmissible under Rule 1006).

### III. The H5G Spreadsheets Are Hearsay Satisfying No Exception and Will Confuse the Issues.

Like the Platform Spreadsheets, Plaintiff's trial exhibit numbers 14 and 15 (the "H5G Spreadsheets"), *see* Stewart Decl. ¶ 8, are out of court statements offered to prove the truth of the matter asserted (the amount that the Class was ostensibly injured). The Court should preclude the introduction of the H5G Spreadsheets as inadmissible hearsay that do not meet any exception.

First, the H5G Spreadsheets are not business records under Fed. R. Evid. 803(6). Like the Platform Spreadsheets, they were created for litigation, *see* Stewart Decl., Ex. 3 (Bate Dep.,

DEFENDANT HIGH 5 GAMES, LLC'S
MOTIONS IN LIMINE – PAGE 7
(3:18-CV-05275-TMC)

HOLLAND & HART LLP
555 17TH STREET, SUITE 3200
DENVER, CO 80202
TEL: 303.295.8000
FAX: 208.343.8869

59:17-60:13), which undercuts their reliability, *see Paddack*, 745 F.2d 1258–59. Plus, the source of information and other circumstances associated with their creation indicate a lack of trustworthiness. *See id.* at 1259 n.7; Fed. R. Evid. 803(6)(E). Christopher Bate, the man who created the H5G Spreadsheets, admitted that he did not "have a great way to say a transaction happened in Washington"; therefore, the H5G Spreadsheets are mere "approximations and estimates." Stewart Decl., Ex. 3 (Bate Dep. 65:6-9); *see also id.*, 13:16-17 ("I don't know which players live in Washington"); *id.*, 35:5-20 ("Q: Is this an accurate capture of all transactions that have been made within the state of Washington? . . . A: I don't have a very good idea of that . . . I don't know how accurate it is."). Approximations and estimates made in connection with litigation are not sufficiently trustworthy to be considered reliable. As such, the H5G Spreadsheets do not qualify as business records.[1]

Nor are the H5G Spreadsheets admissions of a party opponent. Bate did not have authority to speak for H5G on the subject of Washington-based transactions, Rule 801(d)(2)(C), since he had no knowledge or expertise on the subject, *see generally* Stewart Decl., Ex. 3. And the H5G Spreadsheets weren't made within the scope of Bates' relationship with the company, since their creation was well outside the range of his daily tasks. See Fed. R. Evid. 801(d)(2)(D).

Finally, even if the H5G Spreadsheets are not inadmissible hearsay, they should still be barred under Rule 403 as material that will confuse the issues. This Court should exercise "its authority to protect the trier from being misled" and exclude this evidence that is "so inaccurate" that any probative value is "outweighed by the danger of confusing the issues." 6 JACK B.

---

[1] Davis's testimony—which makes clear that he has no way of verifying the accuracy of the H5G Spreadsheets—also precludes their authentication under Rule 901(b)(8). *Cf. Sampson v. Sisters of Mercy of Willard*, No. 3:12-cv-00824, 2015 U.S. Dist. LEXIS 84108, at *6–8 (N.D. Ohio June 29, 2015) (computer printouts could not be authenticated under Rule 901 by witness who testified: "I don't have any way of verifying that the information is accurate. You know, this isn't part of the scope of what I do on a daily basis . . . . So I can't say whether it's accurate or inaccurate.").

DEFENDANT HIGH 5 GAMES, LLC'S
MOTIONS IN LIMINE – PAGE 8
(3:18-CV-05275-TMC)

HOLLAND & HART LLP
555 17TH STREET, SUITE 3200
DENVER, CO 80202
TEL: 303.295.8000
FAX: 208.343.8869

Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 1008.05[4] (Brodin, et al., ed. 2024).

### IV. The Court Should Preclude Irrelevant and Unfairly Prejudicial Exhibits, Testimony, or Argument Concerning H5G's Non-Washington Operations.

Plaintiff has signaled that evidence regarding players that are most likely not located in Washington will be critical to his trial strategy. *See e.g.*, Stewart Decl., Ex 4 (Plaintiff's Trial Ex. 25) (discussing player who lives in Taiwan); Stewart Decl., Ex. 5 (Plaintiff's Trial. Ex. 49) (circulating list of non-active players and asking whether international players included on the list should be eliminated); Stewart Decl., Ex. 8 (Plaintiff's Trial Ex. 37) at 2 (player communication indicating that she is located in Canada—"Sent from my Bell Samsung device over Canada's largest network"). Plaintiff has even gone so far as to preemptively try to prevent H5G from objecting to the proffer of these irrelevant documents. Dkt, #477 at 5–6, 8–9. The Court should preclude Plaintiff from offering these communications and other evidence related to H5G's nationwide and international operations that have no demonstrable link to Washington. Such evidence is irrelevant to the narrowed scope of the upcoming trial, *see* Fed. R. Evid. 401, and will unfairly prejudice H5G and unnecessarily confuse the jury if admitted, *see* Fed. R. Evid. 403.

The upcoming trial is a damages trial. With that in mind, the sole issue before the jury is "the amount of damages owed by [H5G] to the Damages Class under Larsen's RMLGA and CPA claims." Dkt. #408 at 24, ¶ 3. And, as this Court has made clear, the only damages at issue are virtual coin purchases within High 5 Casino or High 5 Vegas that were made *in the state of Washington* between April 9, 2014 and October 1, 2022. *See* Dkt. #170 at 16 (defining damages Class to include only "individuals in Washington"). That means that exhibits, testimony, or

DEFENDANT HIGH 5 GAMES, LLC'S
MOTIONS IN LIMINE – PAGE 9
(3:18-CV-05275-TMC)

Holland & Hart LLP
555 17th Street, Suite 3200
Denver, CO 80202
Tel: 303.295.8000
Fax: 208.343.8869

argument referencing H5G's games by players outside Washington state, and in most instances in jurisdictions where H5G's games are not illegal gambling, has no tendency to prove or disprove any part of the parties' claims or defenses. Put simply, "[e]vidence suggesting that [H5G] may have caused damage to [parties outside the damages class] is wholly irrelevant to the issue of whether it caused damage to [the damages class]." *See Klepper v. Mont. Dep't of Transp.*, No. CV-11-41-M-DWM-JCL, 2012 U.S. Dist. LEXIS 1318, at *8–9 (D. Mont. Jan. 5, 2012) (granting motion *in limine*). The Court should exclude evidence relating to H5G's operations in other states and countries as irrelevant under Rule 401.

Even if the Court does find that this out-of-state evidence has probative value, it should nevertheless exclude it under Rule 403 as unfairly prejudicial/unnecessarily confusing. *See United States v. Espinoza-Baza*, 647 F.3d 1182, 1190 (9th Cir. 2011). These facts are analogous to those of *Krekelberg v. City of Minneapolis*, 991 F.3d 949, 955–57 (8th Cir. 2021). There, plaintiff sued local government entities and individual officers for violations of the Driver's Protection Privacy Act. *Id.* at 952. The Eighth Circuit found that the district court violated Rule 403 by admitting evidence of 850 time-barred or otherwise dismissed impermissible drivers-license data-access claims that did not relate to the remaining defendants and should not "have been considered in the jury's damages calculation." *Id.* at 956. In the words of the Eight Circuit: admission of this evidence was "likely to 'divert the jury's attention from the real dispute in the case'—namely, the 74 accesses" that were actually at issue, *id.* at 957.

So too here. Admitting evidence of transactions and player interactions that occurred outside of Washington (and thus outside the scope of the certified damages class) would be extraordinarily prejudicial because it would take the focus off the transactions and player

DEFENDANT HIGH 5 GAMES, LLC'S
MOTIONS IN LIMINE – PAGE 10
(3:18-CV-05275-TMC)

HOLLAND & HART LLP
555 17TH STREET, SUITE 3200
DENVER, CO 80202
TEL: 303.295.8000
FAX: 208.343.8869

interactions that are *actually* at issue. Just as in *Krekelberg*, it would be an abuse of discretion to admit this evidence because it "would . . . tend[] to increase the amount of damages on an impermissible basis." *Id.* The Court should make clear that Plaintiff is foreclosed from offering this irrelevant, unfairly prejudicial, and highly confusing out-of-state evidence at trial.

### V. Player Communications are Inadmissible Hearsay Satisfying No Exception.

Plaintiff has attached various player communications to his pre-trial pleadings, intimating that he intends to use them at trial. *E.g.*, Dkt. #400 at 2, 9; Dkt. #438, at 6–7. But—even setting aside the inflammatory content of these player messages, *see infra* Section VI—they are inadmissible because they constitute double hearsay satisfying no exception. Plaintiff should be barred from offering these out-of-court statements as evidence at trial.

There are two types of player communications that Plaintiff has suggested he intends to use at trial. *See* Dkt. #400 at 2 (noting that some cited documents are "High 5 Communication[s]" and some are "Player Communication[s]"). The first are Zendesk tickets, which are customer service tickets that a player may submit to H5G's customer service team. *See, e.g.*, See Stewart Decl., Exs. 8, 10 (Plaintiff's Trial Exs. 37 & 60). The second are Slack messages or emails between H5G employees where the employees appear to reference messages that players submitted via Zendesk. *See, e.g.*, Stewart Decl., Ex. 11 (Plaintiff's Trial Ex. 69). Both types of documents contain multiple levels of hearsay, and each layer of hearsay must satisfy an exception to the hearsay rule. *Salas v. Toyota Motor Sales*, 2:15-cv-08629-HDV-Ex, 2024 U.S. Dist. LEXIS 46482, at *10 (C.D. Cal. Feb. 2, 2024) (applying Fed. R. Evid. 805 to customer communications); *Wolf v. Procter & Gamble Co.*, 555 F. Supp. 613, 620–21 (D.N.J. 1982) (same).

DEFENDANT HIGH 5 GAMES, LLC'S
MOTIONS IN LIMINE – PAGE 11
(3:18-CV-05275-TMC)

HOLLAND & HART LLP
555 17TH STREET, SUITE 3200
DENVER, CO 80202
TEL: 303.295.8000
FAX: 208.343.8869

The Slack messages and emails are themselves hearsay: they are out of court communications between H5G employees who will not be testifying at trial. It's possible that some of these communications could be admissible as business records. *See Mays v. United Ass'n Local 290 Apprenticeship*, 407 F. Supp. 3d 1121, 1141 (D. Or. 2019) (explaining framework for determining whether emails qualify as business records). But even if the internal messages between the employees are admissible under that (or another) exception, the underlying messages discussed in the emails—which were sent in from players via Zendesk—would still have to be covered by some other hearsay exception.

The same analysis applies to the Zendesk tickets themselves, which are also double hearsay. Although the fact that the tickets are collected and stored in the Zendesk database likely makes the *tickets* business records, the *contents* of the tickets are still hearsay that must meet an exception to be admissible. *Salas*, 2024 U.S. Dist. LEXIS 46482, at *10 ("The surface level of hearsay—*i.e.*, the record that a complaint was made—may be admissible" as a business record, but "the underlying customer complaints cannot be admitted for their truth unless a *different* exception applies.").

No such exception applies to the underlying communications, regardless of their final form. *Mary Kay, Inc. v. Weber*, 601 F. Supp. 2d 839, 850–51 (N.D. Tex. 2009). These communications are *not* business records because the "authors" of the complaints—the *players*—were not acting in the course of a regularly conducted business activity when they submitted them. *Id.* at 850. It's well established that "the assurance of accuracy under the business records exception does not extend to individuals who act outside the regular course of the business." *Heath v. Tristar Prods.*, No. 2:17-cv-2869-GMN-BNW, 2021 U.S. Dist. LEXIS

DEFENDANT HIGH 5 GAMES, LLC'S
MOTIONS IN LIMINE – PAGE 12
(3:18-CV-05275-TMC)

HOLLAND & HART LLP
555 17TH STREET, SUITE 3200
DENVER, CO 80202
TEL: 303.295.8000
FAX: 208.343.8869

135774, at *7 (D. Nev. July 21, 2021) (citing Fed. R. Evid. 803(6) advisory committee notes). Because the players who sent in these communications do not even work at H5G, their communications simply cannot have been submitted in the ordinary course of business. *See id.*

Nor are these communications present sense impressions, since there is no evidence that the players sent messages through Zendesk "immediately" after the declarant experienced an issue. *See Wolf*, 555 F. Supp. at 620–21 (rejecting exception for complaints to a consumer hotline and explaining that "the reliability of present sense impressions is based partially upon the fact that the statement is usually made to a person in a position to observe the event or condition and to check misstatements"). Even if they were, the declarant would need to be at trial to testify as to the foundation for this hearsay exception, and Plaintiff has not disclosed any of the players who submitted these communications as potential witnesses. At bottom, these communications are inadmissible double- or triple-hearsay statements, and the Court should preclude Plaintiff from offering them at trial.

### VI. Documents that Include Incendiary Language Not Related to How Much Washington Players Spent Are Inadmissible.

Plaintiff apparently intends to put forward communications from players that make claims about addiction to help establish damages for his CPA claim. *E.g.*, Exs. 8, 10 (Plaintiff's Trial Exs. 37 and 60); *see also* Craig Decl., Ex. 12 (10:12-11:25) (Plaintiff's counsel explaining intent to utilize these documents to bolster treble damages theory). Even if these communications weren't inadmissible hearsay (they are), *see supra* Section V, they provide improper lay witness opinion under Rule 701, have no probative value under Rule 401, and are unfairly prejudice H5G under Rule 403. In the same vein, internal H5G communications using phrases such as "whale," *see e.g.*, Stewart Decl., Ex. 4–7, 9 (Plaintiff's Trial Exs. 25, 49, 63, 56, & 29), are not only

DEFENDANT HIGH 5 GAMES, LLC'S
MOTIONS IN LIMINE – PAGE 13
(3:18-CV-05275-TMC)

HOLLAND & HART LLP
555 17TH STREET, SUITE 3200
DENVER, CO 80202
TEL: 303.295.8000
FAX: 208.343.8869

contextually unmoored, but they have no probative value under Rule 401 and are unfairly prejudicial under Rule 403. The Court should exclude these documents.

### A. Player Communications that Purport to Self-Diagnose Addiction Are Improper Lay Witness Testimony.

*First*, documents referencing "addiction" are medical opinions that are inappropriate for lay testimony under Fed. R. Evid. 701(c). "[A]ddiction is a complex behavioral and physiological process that cannot be fully explained, identified, or diagnosed by a lay witness." *Sowers v. R.J. Reynolds Tobacco Co.*, No. 3:09 C 11829, 2015 U.S. Dist. LEXIS 192209, at *13 (M.D. Fla. Jan. 23, 2015) (citation omitted). It is a "clinical concept" and thus, the "appropriate for expert testimony." *Conley v. R.J. Reynolds Tobacco Co.*, 286 F. Supp. 2d 1097, 1112 (N.D. Cal. Dec. 26, 2002).

Although non-expert witnesses may offer testimony about habits based on their observations and their personal knowledge, they may not offer conclusory statements diagnosing "addiction." *Jacobson v. R.J. Reynolds Tobacco Co.*, No. 1:12-cv-23781-UU, 2013 U.S. Dist. LEXIS 192321, at *8–9 (S.D. Fla. Aug. 26, 2013) (permitting witness testimony about smoking habits based on the witness's own observations, but prohibiting any use of the word "addiction" where it involved a conclusion about addiction to nicotine); *Sowers*, 2015 U.S. Dist. LEXIS 192209, at *13 (same); *see also Hrichak v. Pion*, 498 F. Supp. 2d 380, 382–83 (D. Me. 2007) (precluding lay witnesses from testifying as to medical diagnosis or suggesting a causal relationship, permitting them only to testify as to symptoms actually observed). Put simply, players submitting complaints are simply not qualified to provide expert opinion regarding medical diagnoses to the jury. The court should exclude any player communications regarding addiction-related issues on this ground alone.

DEFENDANT HIGH 5 GAMES, LLC'S
MOTIONS IN LIMINE – PAGE 14
(3:18-CV-05275-TMC)

HOLLAND & HART LLP
555 17TH STREET, SUITE 3200
DENVER, CO 80202
TEL: 303.295.8000
FAX: 208.343.8869

### B. Player Communications Referencing Addiction Are Irrelevant and Unfairly Prejudicial.

The Court should also exclude player communications that discuss addiction under Rules 401 and 403 because they are unduly prejudicial and lack probative value. Although the Court has already determined that H5G is liable for CPA violations, Dkt. #408 at 24, ¶ 2, the player communications have no probative value for the singular issue in this trial: quantifying the past economic injuries that Plaintiff and the Class allegedly incurred in purchasing virtual chips. Dkt. #458 at 18 (citing Second Amended Complaint and explaining that, based on allegations contained therein, Plaintiff is cabined to seeking remuneration for lost funds rather than emotional damages).

At trial, the jury will be tasked with calculating the "*actual damages*" incurred by Plaintiff and the class "in [their] business or property" by playing the games. RCW 19.86.090 (first emphasis added). "Personal injuries," such as emotional distress, "are not compensable under the CPA." *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 858 P.2d 1054, 1064 (Wash. 1993); *see also White River Ests. v. Hiltbruner*, 953 P.2d 796, 797 n.1 (Wash. 1998) ("[E]motional distress damages are not available for a violation of the CPA."). It necessarily follows that the evidence presented to the jury must relate only to Plaintiff's and the class's actual pecuniary damages, not any personal injury such as addiction or emotional distress, and that evidence employing such topics is unfairly prejudicial. The only purpose of showing this evidence to the jurors would be to elicit their sympathy, a purpose "which runs afoul of Fed. R. Evid. 403." *United States v. Pintado-Isiordia*, 448 F.3d 1155, 1158 (9th Cir. May 26, 2006).

To the extent Plaintiff might attempt to argue that the player messages referencing addiction are relevant to a potential award of treble damages, the argument would fail for two

DEFENDANT HIGH 5 GAMES, LLC'S
MOTIONS IN LIMINE – PAGE 15
(3:18-CV-05275-TMC)

HOLLAND & HART LLP
555 17TH STREET, SUITE 3200
DENVER, CO 80202
TEL: 303.295.8000
FAX: 208.343.8869

reasons. *First*, under RCW 19.86.090, "treble damages are within the Court's discretion (and not the jury's)." *Innovative Sols. Int'l, Inc. v. Houlihan Trading Co., Inc.*, No. 2:22-CV-00296-JCC, 2024 U.S. Dist. LEXIS 215492, at *36 (W.D. Wash. Nov. 26, 2024); *see also Anderson v. State Farm Fire & Cas. Co.*, No. 3:20-CV-05119-DGE, 2024 U.S. Dist. LEXIS 135682, at *2–3 (W.D. Wash. July 31, 2024). Put differently, treble damages are not the jury's concern. Evidence intended to prove or disprove entitlement to treble damages is therefore both completely irrelevant to this jury trial and unfairly prejudicial under Rule 403.

*Second*, even assuming that Plaintiff can establish "actual damages"—the predicate to an award of treble damages under the CPA, *Sign-O-Lite Signs v. Delaurenti Florists*, 825 P.2d 714, 721 (Wash. Ct. App. 1992)—addiction-related evidence would still be irrelevant to the Court's decision whether to treble the award. "The purposes of the treble damages provision are: '(1) financial rehabilitation of the injured consumer, (2) encouraging private citizens to bring actions benefiting the public, (3) deterrence, and (4) punishment.'" *Ten Bridges, LLC v. Midas Mulligan, LLC*, No. C19-1237JLR, 2021 U.S. Dist. LEXIS 193335, *16 (W.D. Wash. Oct. 6, 2021). Addiction-related evidence, which tends to show only unrecoverable emotional damages, does not fit under any of the relevant factors. *See id.* (declining to impose treble damages where treble damages would not serve the policy behind the treble damages provision).

**C.    H5G communications referencing players, including references such as "whales," are irrelevant and unfairly prejudicial.**

Similarly, the Court should exclude H5G communications that make references to players, including references such as "whales," under Rules 401 and 403 because they are unduly prejudicial and lack probative value. These communications have no probative value for the singular issue in this trial: quantifying the past economic injuries that Plaintiff and the Class

DEFENDANT HIGH 5 GAMES, LLC'S
MOTIONS IN LIMINE – PAGE 16
(3:18-CV-05275-TMC)

**HOLLAND & HART LLP**
555 17TH STREET, SUITE 3200
DENVER, CO 80202
TEL: 303.295.8000
FAX: 208.343.8869

allegedly incurred in purchasing virtual chips. Like the irrelevant evidence and not-at-issue evidence in *Krekelberg*, out-of-context evidence of internal H5G communications using industry jargon like "whales" is intended simply to paint H5G as a "bad actor." 991 F.3d at 957. At bottom, these inflammatory documents should not be presented to the jury.

**VII.   The Court Should Preclude Irrelevant and Unfairly Prejudicial Evidence Pertaining to Plaintiff's Newly Added Alter Ego and UVTA Claims.**

On December 12, 2024, this Court exercised its discretion to bifurcate the case. Dkt. #515 at 15. Given the Court's recent orders, the only issue at the February trial is damages; specifically, how much H5G—and H5G alone—owes Plaintiff and the Class for violations of the CPA and RMLGA. *See supra* § IV. This means that Plaintiff's recently added alter ago and Uniform Voidable Transaction Act claims against H5G and H5E are not at issue. Given this context, the Court should exclude any exhibits, testimony, or argument referencing H5E and the asset transfer that occurred on October 1, 2022. Not only does this evidence lack all probative value, it's also unfairly prejudicial and runs a serious risk of confusing the issues for the jury. *Cf. Escobar v. Nev. Helicopter Leasing, LLC*, No. 13-00598 HG-WRP, 2020 U.S. Dist. LEXIS 38980, at *22 (D. Haw. Mar. 6, 2020) (granting motion *in limine* seeking to preclude reference to trial as bifurcated or to the possibility of a second trial); *United States v. Anderson*, 933 F.2d 1261, 1276 (5th Cir. 1991) (district court did not abuse its discretion in excluding evidence of pending lawsuit due to confusion of issues).

Allowing Plaintiff to raise even the specter of fraudulent transfer at this damages-only trial would undermine this Court's decision to bifurcate the trial for the express reason of "avoid[ing] prejudice." Dkt. #515 at 2, 15. The Court should enter an order clarifying that Plaintiff is foreclosed from presenting such evidence under Rules 401–403.

DEFENDANT HIGH 5 GAMES, LLC'S
MOTIONS IN LIMINE – PAGE 17
(3:18-CV-05275-TMC)

HOLLAND & HART LLP
555 17TH STREET, SUITE 3200
DENVER, CO 80202
TEL: 303.295.8000
FAX: 208.343.8869

**VIII. Evidence of Settlements in Other, Similar Cases is Inadmissible Under Rule 408 and Rule 403.**

Time and again, Plaintiff's counsel has tried to use settlements it has reached with *other* gaming companies as leverage in *this* case. *E.g.*, Dkt. #466 at 15–16; #479 at 3; Dkt. #420 at 1. But any evidence of or reference to settlements in other, similar cases is inadmissible under Fed. R. Evid. 408. *See, e.g.*, *McDevitt v. Guenther*, 522 F. Supp. 2d 1272 (D. Haw. 2007) ("The Ninth Circuit has established that it will apply Rule 408's prohibition on evidence from a prior settlement with a third party . . . ."). Rule 408 reflects an understanding that settlement discussions and agreements have little probative value because they are often "motivated by a desire for peace rather than from a concession of the merits of the claim." *United States v. Contra Costa Cnty. Water Dist.*, 678 F.2d 90, 92 (9th Cir. 1982). This is even more true here, where H5G was not a party to the settlements. *See id.* ("giv[ing] additional importance to the fact that appellant was not a party" to the settlement when excluding the evidence). Here, the potential for prejudice against H5G is severe, inviting the jury to use settlements for a case not at issue to calculate the amount of damages H5G must pay. As such, any evidence of settlements from other cases is likewise inadmissible under Rule 403 and should be barred for that reason as well.

### III. CONCLUSION

For the aforementioned reasons, the Court should grant H5G's motions *in limine*.

DATED this 31st day of December, 2024.

        *s/ Mark Rosencrantz*
        Christopher A. Wright, WSBA #26601
        Mark Rosencrantz, WSBA #26552
        Attorneys for Defendant

DEFENDANT HIGH 5 GAMES, LLC'S
MOTIONS IN LIMINE – PAGE 18
(3:18-CV-05275-TMC)

HOLLAND & HART LLP
555 17TH STREET, SUITE 3200
DENVER, CO 80202
TEL: 303.295.8000
FAX: 208.343.8869

CARNEY BADLEY SPELLMAN, P.S.
701 Fifth Avenue, Suite 3600
Seattle, WA 98104
Tel: (206) 622-8020
E-mail: wright@carneylaw.com
          rosencrantz@carneylaw.com

 *s/ Craig Stewart*
Craig Stewart (Admitted *Pro Hac Vice*)
Jessica J. Smith (Admitted *Pro Hac Vice*)
Bria Y. Smith (Admitted *Pro Hac Vice*)
Aja R. Robbins (Admitted *Pro Hac Vice*)
Holland & Hart LLP
555 17th Street, Ste 3200
Denver, CO 80202
Tel: (303) 295-8000
E-mail: cstewart@hollandhart.com
          jjsmith@hollandhart.com
          bysmith@hollandhart.com
          arrobbins@hollandhart.com

Erik F. Stidham (Admitted *Pro Hac Vice*)
Teague I. Donahey (Admitted *Pro Hac Vice*)
Holland & Hart LLP
800 W. Main Street, Suite 1750
Boise, ID 83702
Tel: (208) 342-5000
E-mail: efstidham@hollandhart.com
          tidonahey@hollandhart.com

Robert C. Ryan (*Admitted Pro Hac Vice*)
Holland & Hart LLP
5441 Kietzke Lane
Reno, NV 89511
Tel: (775) 327-3000
E-mail: rcryan@hollandhart.com

*I certify that this memorandum contains 5,573 words, in compliance with the Local Civil Rules*

DEFENDANT HIGH 5 GAMES, LLC'S
MOTIONS IN LIMINE – PAGE 19
(3:18-cv-05275-TMC)

**HOLLAND & HART LLP**
555 17TH STREET, SUITE 3200
DENVER, CO 80202
TEL: 303.295.8000
FAX: 208.343.8869

# CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of December, 2024, I electronically filed the foregoing **DEFENDANT HIGH 5 GAMES, LLC'S MOTIONS IN LIMINE** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**Attorneys for Plaintiff**
Cecily C. Jordan
TOUSLEY BRAIN STEPHENS PLLC
1700 7th Ave Ste 2200
Seattle WA  98101-4416
Tel: (206) 682-5600
cjordan@tousley.com

**Attorneys for Plaintiff**
Jay Edelson
Alexander G Tievsky
Amy B. Hausmann
Victor Cedano
Megan Delurey
Nicholas Rosinia
EDELSON PC
350 North LaSalle St 14th Fl
Chicago IL  60654
Tel: (312) 589-6370
jedelson@edelson.com
atievsky@edelson.com
abhausmann@edelson.com

**Attorneys for Plaintiff**
Todd Logan
Rafey S. Balabanian
Brandt Silver-Korn
EDELSON PC
150 California Street, 18th Floor
San Francisco CA  94111
Tel: (415) 212-9300
tlogan@edelson.com
rbalabanian@edelson.com
bsilverkorn@edelson.com

/s/ Craig Stewart
Craig Stewart, Attorney for Defendant

DEFENDANT HIGH 5 GAMES, LLC'S
MOTIONS IN LIMINE – PAGE 20
(3:18-CV-05275-TMC)

HOLLAND & HART LLP
555 17TH STREET, SUITE 3200
DENVER, CO 80202
TEL: 303.295.8000
FAX: 208.343.8869