UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RICK LARSEN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PTT, LLC, doing business as High 5 Games, LLC; HIGH 5 ENTERTAINMENT LLC<br><br>Defendant. | Case No. 3:18-cv-05275-TMC<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS |

## I.    INTRODUCTION

In April 2018, Plaintiff[1] Rick Larsen sued Defendant High 5 Games ("H5G"), a developer of "social casino" games, alleging violations of state law and seeking certification of a class of all persons in Washington who bought and lost virtual coins playing H5G's games. This litigation is now in its seventh year, and a damages trial begins next month after this Court found that H5G is liable to the Class. Now before the Court is Larsen's Motion for Discovery Sanctions. Dkt. 477. In this motion, Larsen alleges that H5G and High 5 Entertainment ("H5E"),

---

[1] When the case was filed, the named plaintiff was Sean Wilson, for whom Rick Larsen was substituted as class representative on March 6, 2023 (Dkt. 216). The Court will refer to Plaintiff throughout this order as "Larsen" or "Plaintiff" for clarity.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS - 1

an H5G subsidiary that took over operations of the social casino games in October 2022, engaged in pervasive discovery misconduct throughout the case. Larsen seeks monetary and non-monetary sanctions under Rule 37(b)(2)(A) and Rule 26(g).

As explained further below, the Court finds that H5G failed to produce millions of responsive documents over several years, even after the Court had ordered it to do so by granting Larsen's motions to compel. H5G, through its counsel, also filed certifications with the Court attesting that it had conducted good-faith searches and produced all responsive documents, when that was far from the truth. H5G's discovery misconduct only came to light after the Court ordered its in-house and outside counsel to submit detailed declarations about their actions taken in discovery, in lieu of appointing a special master. Those declarations revealed that H5G's document searches were not done in good faith, and that responsive documents that had been collected sat unproduced in a Google Drive folder for more than a year due to what H5G and its outside counsel describe as a "miscommunication" between themselves. Millions of responsive documents were ultimately not produced until after discovery into H5G's actions had closed. Meanwhile, H5G had transferred operation of the social casino games to a new subsidiary. These actions ultimately prejudiced Larsen's ability to develop evidence supporting his Consumer Protection Act theories and to pursue injunctive relief on behalf of the Class.

This conduct warrants non-monetary and monetary sanctions under Federal Rule of Civil Procedure 26 and 37. Under Rule 37(b)(2)(A)(ii), the Court prohibits H5G from: (1) opposing the admission at trial of any untimely-produced documents related to the targeting of gambling addiction on the basis that those documents relate to non-Washington users; and (2) arguing to the factfinder that those documents are insufficient to show that H5G targeted Class members with gambling addiction because they relate to non-Washington users. This sanction does not prevent H5G from raising other good-faith objections or from presenting other admissible

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS - 2

evidence or argument about its alleged targeting of gambling addicts. Under Rule 37(b)(2)(C) and Rule 26(g)(3), H5G and its counsel from Holland & Hart ("H&H") must also pay the reasonable expenses caused by their discovery misconduct. The award of expenses will be joint and several against H5G and H&H.

## II. BACKGROUND

The factual and procedural background of this case is recounted in prior orders. *See* Dkt. 408 at 2–6; Dkt. 514 at 3–8. Thus, in this Order, the Court reviews only the facts and procedural history relevant to the instant motion.

In April 2018, Plaintiff filed his original complaint against Defendant H5G seeking certification of a class of all persons in Washington who bought and lost virtual coins playing H5G's "social casino" games. *See generally* Dkt. 1. Larsen alleges that High 5 Casino and High 5 Vegas, social casino games developed by H5G, are illegal because they violate Washington's Recovery of Money Lost at Gambling Act ("RMLGA"), Consumer Protection Act ("CPA"), and have unjustly enriched H5G. *See generally* Dkt. 354. This Court certified a Damages Class and an Injunctive Class in January 2021. *See generally* Dkt. 170. The Court denied Plaintiff's request for preliminary injunctive relief, in part because Plaintiff lacked evidence to support a finding that Defendant intentionally targeted users displaying addictive tendencies. *Id.* at 15–16.

Merits discovery followed class certification, and among Plaintiff's discovery requests were documents and communications that included search terms related to gambling addiction ("RFP No. 67"). Dkt. 187–2 at 3, 7. The request specifically identified Slack as an example of a messaging platform for which communications were sought. *Id.* at 7. H5G objected to RFP No. 67 as "not relevant" and unduly burdensome, prompting Plaintiff to ask the Court to compel production. Dkt. 186. The Court granted the motion to compel in January 2023, ordering H5G to "complete production of all documents responsive to RFP No. 67 within twenty-one (21) days of

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS - 3

this Order." Dkt. 213. In November 2023, more than five and a half years into this litigation, Larsen again sought the Court's intervention to compel production of responsive documents, arguing that H5G's production of "fewer than 3,600 documents" to date was "surprisingly low" for a consumer class action and anomalous when compared to litigation against other "social casino" operators. Dkt. 232 at 2; Dkt. 233 ¶ 3. One of the requests identified in this motion, RFP No. 17, targeted documents showing how H5G responded when a user communicated with the company about gambling addiction. Dkt. 232 at 5. Larsen also asked the Court to order H5G to certify that it had "completed good faith searches . . . and produced all responsive documents" given discovery would close within the month. Dkt. 232 at 8–9. The Court granted both requests. Dkt. 245 at 4–5. On January 19, 2024, H5G—through its attorneys at H&H—certified that it had "produced all responsive documents, including those documents responsive to [the Court's Order]." Dkt. 267 at 2.

Around this same time, Plaintiff learned—via depositions of H5G's CEO and former lead customer service representative—that H5G employees primarily used Slack for internal communications and a platform called Zendesk to communicate with users. Dkt. 260 at 2. Yet Plaintiffs argued that in the almost six years of litigation, H5G had "produced no Zendesk messages and only a handful of recent (post-November 2022) Slack messages." *Id.* Although this Court denied Plaintiff's motion to appoint a special master, it ordered H5G and its counsel to file detailed declarations about their discovery efforts, including on the Slack and Zendesk platforms. Dkt. 365 at 1–2. Based on H5G's repeated representations that it had satisfied its obligation to search for Slack messages by conducting "manual searches," *see* Dkt. 371, the Court ordered H5G to describe in detail what it meant by a "manual search." Dkt. 365 at 2.

On April 1, 2024, H5G's in-house counsel, Adam Weiner, and its outside counsel, H&H, filed the Court-ordered declarations detailing their discovery conduct. Dkt. 378; Dkt. 379;

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS - 4

Dkt. 380. The declarations revealed that what H5G meant by a "manual search" was this: because H5G chose not to "subscribe to the upgraded version of Slack that allows a user to search the entire Slack database," Mr. Weiner—the company's top lawyer—only searched Slack channels that either (1) he "personally was a part of," or (2) that "everyone in the company could access." Dkt. 379 ¶ 19. He then took screenshots of messages he believed were responsive and sent them to outside counsel at H&H. *Id.* ¶ 20. Mr. Weiner admitted that this made the searches "limited in scope." *Id.* ¶ 19. Indeed, it is obvious that if a company searches only a small portion of its potentially responsive messaging channels, its document productions will be similarly truncated.

        H5G conceded that the belated effort it launched, after the March 2024 Court order, to search the company's entire Slack database for responsive documents had been an option throughout discovery. *See id.* ¶¶ 20, 67. Mr. Weiner also conceded that up until the March 2024 Order, he did not produce responsive documents through Zendesk—even when receiving keyword "hits"—after concluding it was infeasible. *See id.* ¶ 25 ("When searches turn up tens of thousands of hits (as was the case with the searches I ran in response to RFP 68 & 67), it is not feasible for me to manually export those results one-by-one . . . [and] those communications are exceedingly unlikely to be responsive.") (internal citation omitted).

        H5G's counsel, H&H, also admitted that nearly all of the 118 gigabytes ("GBs") of communications responsive to RFP No. 67 were not produced to Plaintiff until after the March 2024 Court order. Dkt. 378 ¶¶ 22–24. H&H explained that, in response to this Court's January 2023 Order compelling production of documents responsive to RFP No. 67, Dkt. 213, H5G uploaded 118 GBs of responsive material to a Google Drive it shared with H&H throughout February 2023. Dkt. 378 ¶¶ 22–23. H&H downloaded and transferred a few hundred documents from Google Drive on February 14 to the Relativity platform that the parties used in discovery,

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS - 5

but "due to a miscommunication," H&H was "unaware" that H5G's in-house counsel continued to upload responsive documents to Google Drive the rest of the month. *Id.* ¶ 23–24. H&H "did not discover the miscommunication that left the remainder of the documents unreviewed until March 28, 2024[.]" *Id.* ¶ 24.

Within three months of the March 2024 Order, H5G and H5E had produced over 3 million new responsive documents, roughly half of which (totaling more than 2 million pages) Plaintiff contends responded to RFP No. 67.[2] Dkt. 401 ¶ 19. The productions contain communications, including from Slack and Zendesk, that may be relevant to the Class's argument that H5G targeted users displaying addictive tendencies. *See, e.g.*, Dkt. 401-1 at 2 ("Please provide us with a list of whale monetizers . . . who we want to target for coin drainage."); Dkt. 401-24 at 2 ("I've been addicted to your game for years now[.]"); Dkt. 401-6 at 4 ("I would like to ask for a full refund . . . i really am an addict and im not supposed to be on any gambling sites . . . im not gon[n]a recover from this los[s] I put my family in please[.]").

On June 11, 2024, the Court granted Larsen's summary judgment motion against H5G in part, concluding that H5G is liable to the Damages Class for violating the RMLGA and CPA. Dkt. 408 at 8–19; see Dkt. 393. Because genuine factual disputes remained on damages owed, the Court ordered a jury trial to determine the amount of damages. Dkt. 408 at 19–23. The damages trial is scheduled for February 3, 2025. Dkt. 316. On December 12, 2024, the Court concluded that Larsen lacked standing to sue H5E for the same violations arising from its operation of the social casino games, because he stopped playing the games before the ownership

---

[2] In October 2022, H5G transferred all social casino assets, including High 5 Casino and High 5 Vegas, to H5E. Dkt. 250 at 4. On January 26, 2024, this Court granted Larsen's motion to add H5E as a Defendant. Dkt. 285 at 1. As part of that Order, the Court also authorized Larsen to conduct supplemental discovery into H5E's relationship with H5G. *Id.* at 2. Responsive productions for supplemental discovery into H5E and belated production related to H5G following the March 2024 Order were provided concurrently. *See* Dkt. 401 ¶ 19.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS - 6

transfer. Dkt. 514. For the same reason, Larsen lacked standing to seek injunctive relief for H5E's alleged ongoing operation of the games in Washington. *Id.*

### III.    DISCUSSION

Larsen moves for sanctions against H5G and H5E under Federal Rule of Civil Procedure 37(b)(2) for their failure to timely produce documents responsive to RFP No. 67. Dkt. 477 at 10–14. Larsen also moves for sanctions under Rule 26(g) for H5G's false certification that it had "produced all responsive documents." *Id.* at 15–16; Dkt. 267 at 2. Larsen seeks to bar H5G and H5E from offering "any argument or evidence at trial" that it did not target gambling addicts in Washington. Dkt. 477-1 at 2. Larsen also asks the Court to impose a $100,0000 monetary sanction on H5G and H&H, jointly and severally, and payable to the Class. *Id.* The sanctions motion is fully briefed and ripe for the Court's consideration.

A.    **Legal standards**

The Federal Rules equip this Court with a broad array of sanctions to punish and deter misconduct. *See* Fed. R. Civ. P. 37(b)(2)(A); *United States v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365, 1369 (9th Cir. 1980). When a party fails to "obey an order to provide or permit discovery," this Court may impose sanctions including "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence[.]" Fed. R. Civ. P. 37(b)(2)(A). Rule 37 also provides that "[i]nstead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses . . . caused by the failure[.]" Fed. R. Civ. P. 37(b)(2)(C). The party against whom an award of expenses is sought bears the burden of showing their "failure was substantially justified" or that an award is otherwise "unjust." Fed. R. Civ. P. 37(b)(2)(C); *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 784 (9th Cir. 1983). Rule 37's twin aims are "to penalize those whose conduct may be deemed to warrant such a sanction, [and] to

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS - 7

deter those who might be tempted to such conduct in the absence of such a deterrent." *E.E.O.C. v. Fry's Elecs., Inc.*, 287 F.R.D. 655, 658 (W.D. Wash. 2012).

Parties can also seek sanctions related to the certification of discovery responses. Fed. R. Civ. P. 26(g)(3); *Mills v. Zeichner*, No. C23-1130JLR, 2024 WL 37108, at *3 (W.D. Wash. Jan. 3, 2024). "[E]very discovery request, response, or objection must be signed by at least one attorney of record." Fed. R. Civ. P. 26(g)(1). The attorney's signature certifies to the court that the disclosure "is complete and correct as of the time it is made." Fed. R. Civ. P. 26(g)(1)(A)-(B). "If a certification violates this rule without substantial justification, the court . . . must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both." Fed. R. Civ. P. 26(g)(3). Like Rule 37, sanctions "may include an order to pay the reasonable expenses . . . caused by the violation." *See id.* Rule 26 is "an objective standard that is 'heavily dependent on the circumstances of each case.'" *Mills v. Zeichner*, 2024 WL 37108, at *4 (quoting Fed. R. Civ. P. 26(g) advisory committee's note to 1983 amendment).

B. **H5G's discovery misconduct violated Rule 37.**

H5G's failure to obey this Court's Order compelling timely production of addiction-related documents and communications, Dkt. 213, is sanctionable misconduct under Rule 37. Mr. Weiner admitted that he failed, entirely or substantially, to search the company's primary external communication platform with users (Zendesk) and primary internal communication platform between employees (Slack). Dkt. 379 ¶¶ 19, 25; *see* Dkt. 260 at 2. Mr. Weiner's decision to manually search only the limited Slack channels he had access to—instead of H5G's Slack database—and to unilaterally determine that thousands of Zendesk hits were "unlikely to be responsive" to RFP No. 67 is sanctionable misconduct. Dkt. 379 ¶¶ 19–20, 25; *see Tucker v. BMW of N. Am., LLC*, No. C20-5050 BHS, 2022 WL 800902, at *1 (W.D. Wash. Feb. 7, 2022)

(granting sanctions where defendant "engage[d] in some discovery, [but] unilaterally narrowed the scope of discovery and the Court's order.").

H5G and its counsel also failed to produce millions of pages of responsive documents sitting on a Google Drive until this Court issued another Order, Dkt. 365, compelling detailed declarations of Defendant's discovery efforts. Dkt. 378 ¶¶ 22–24; Dkt. 477 at 8. H&H argues that the oversight was due to "miscommunication" between itself and H5G, and once discovered, it "admitted the mistake" and produced "four million pages of additional documents in a span of three months." Dkt. 378 ¶ 23; Dkt. 503 ¶ 14. The Court finds it hard to believe that in over a year between February 2023 and March 2024, H&H never confirmed with its client that the few hundred documents it downloaded from the Google Drive were the complete production—especially when during that year, the Court required H&H to certify that its client's productions were complete and conducted in good faith. Dkt. 232, 267.

But even if taken at face value, a "miscommunication between attorneys because each believed the other had taken responsibility . . . does not constitute substantial justification[.]" *Clearly Food & Beverage Co., Inc. v. Top Shelf Beverages, Inc.*, No. C13-1763JLR, 2015 WL 1263338, at *2 (W.D. Wash. Mar. 18, 2105) (internal quotations omitted). Counsel learned of the mistake more than one year after the initial Order, Dkt. 213, compelling Defendant to produce documents responsive to RFP No. 67. Dkt. 378 ¶ 24. And this belated discovery only surfaced because of the Court's subsequent Order requiring detailed declarations from H5G and H&H. *See id.* ¶ 25. Because "[b]elated compliance with discovery orders does not preclude the

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS - 9

imposition of sanctions," H5G's[3] actions are sanctionable misconduct under Rule 37. *See Payne v. Exxon Corp.*, 121 F.3d 503, 508 (9th Cir. 1997).

C.  **H5G's false certification also violated Rule 26.**

H5G—through its attorneys at H&H—falsely certified that it had "produced all responsive documents" months before it belatedly produced "four million pages of additional documents" following another Court Order. *See* Dkt. 267 at 2; Dkt. 503 ¶ 14. H5G argues its January 2024 certification did not violate Rule 26 because it was "(1) "not related to Slack, Zendesk, or RFP 67; and (2) made in good faith." Dkt. 503 at 16. First, the record shows that the certification Plaintiff sought—and that this Court granted—referred to H5G's discovery obligations generally. *See* Dkt. 232 at 8–9; Dkt. 245 at 4–5. Although Larsen sought responsive documents for 16 RFPs (not including RFP No. 67) in his November 2023 Motion, he asked the Court to order H5G to certify it had completed production of "all responsive documents." Dkt. 232 at 8–9 ("Plaintiff respectfully requests that the Court order High 5 to certify that, for all RFPs it was compelled to or agreed to respond to . . . High 5 has completed good faith searches and has produced all responsive documents."). The Court's Order compelling certification mirrors Plaintiff's request. *See* Dkt. 245 at 4–5 ("Defendant shall . . . certify that it has completed good faith searches in response to the initial requests for production, as compelled by the Court, and/or as agreed . . . and that it has produced all responsive documents."). Finally, H5G's own certification, via H&H, was not limited to the outstanding RFPs referred to in the November 2023 Motion. Dkt. 267 at 2 ("High 5 has produced all responsive documents, including those documents responsive to RFPs 13, 16, 17, and 49.") (footnote omitted).

---

[3] H5E did not violate Rule 37 because the Court ordered H5G to produce documents responsive to RFP No. 67. *See* Dkt. 213. The Order was also made more than one year before H5E was joined in the case. *See* Dkt. 285.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS - 10

     Neither H5G, nor its counsel, demonstrated "good faith" when it certified to the Court that it had obeyed its discovery obligations. H&H certified in January 2024 that it had "completed good faith searches" and had "produced all responsive documents." Dkt. 267 1–2. Less than two months later—and after Plaintiff learned through depositions that Slack and Zendesk were primary forms of communication at H5G—this Court ordered H5G and counsel to produce detailed declarations of their discovery efforts. Dkt. 365 at 2–3. Only because of this last Order was it revealed that H&H had never reviewed 118 GBs of responsive materials allegedly collected by its client more than a year earlier. *See* Dkt. 378 ¶¶ 24–25. The Order also prompted Mr. Weiner's admission of his plainly deficient Slack and Zendesk searches. Dkt. 379 ¶¶ 19–20, 25. "As counsel, [H&H] had an affirmative obligation to ensure that [H5G] conducted diligent and thorough searches for discoverable material and that discovery responses were complete and correct when made." *Corker v. Costco Wholesale Corp.*, No. 2:19-cv-00290-RSL, 2023 WL 4623753, at *2 (W.D. Wash. July, 19, 2023) (citing See Fed. R. Civ. P. 26(g)). As above, there was no explanation for H5G's[4] false representation beyond the purported "miscommunication" between Defendant and counsel. Dkt. 378 ¶ 23. This is not substantial justification. *See Clearly Food & Beverage Co., Inc.*, 2015 WL 1263338, at *2; *see also Play Visions, Inc. v. Dollar Tree Stores, Inc.*, No. C09-1769 MJP, 2011 WL 2292326, at *8 (W.D. Wash. June 8, 2011) (sanctions warranted under Rule 26 when counsel's "false and/or misleading certifications" accompanied its failure to make "an independent inquiry into how documents were stored, and how thoroughly they were searched for and produced.").

---

[4] As above, H5E did not violate Rule 26 because H5G's false certification that it fulfilled its discovery obligations referred to conduct before H5E was a party to the case. *See* Dkt. 267 at 2; Dkt. 285.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS - 11

**D.    Some evidentiary and argument-based sanctions and payment of reasonable expenses are appropriate.**

1.    *Non-monetary sanctions under Rule 37(b)(2)(A)(ii)*

Sanctions are warranted under Rule 37(b)(2)(A)(ii) because the late disclosure of documents—produced after discovery into H5G closed and only after multiple court orders—prejudiced Plaintiff. "It is well established in the Ninth Circuit that [Rule 37(b)(2)] 'provides a wide range of sanctions for a party's failure to comply with court discovery orders.'" *Tucker*, 2022 WL 800902, at *1 (quoting *Sumitomo Marine & Fire Ins. Co.*, 617 F.2d at 1369 (9th Cir. 1980)); *see also Payne*, 121 F.3d at 510 ("The scope of sanctions for failure to comply with a discovery order is committed to the sound discretion of the district court.").[5] First, the untimely disclosure of documents responsive to RFP No. 67 prevented Plaintiff from pursuing targeted follow-up discovery on the extent to which H5G targeted Washington users displaying addictive tendencies. Dkt. 477 at 14; Dkt. 507 at 8. The late disclosure also prevented Plaintiff from pursuing potentially successful injunctive relief while H5G still operated the games. *See* Dkt. 477 at 9. In January 2021, the Court found Plaintiff's theory that H5G targeted gambling addicts "viable" but denied a preliminary injunction in part for a lack of evidence. Dkt. 170 at 15–16. By the time Plaintiff finally received all documents responsive to RFP No. 67, H5G had

---

[5] H5G incorrectly analyzes the legal standard district courts use to assess Rule 37(b)(2)(A)(ii) sanctions where the requested sanction(s) do not include dismissal or default. *See Adriana Intern. Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990) ("We have identified five factors that a district court must consider before dismissing a case or declaring a default: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions."); Dkt. 503 at 14–16 (describing this test as applicable to any sanctions under Rule 37(b)(2)(A)–(C)). Larsen seeks a less drastic sanction—to bar Defendants from offering "any argument or evidence at trial" that it did not target gambling addicts in Washington. Dkt. 477-1 at 2. Because Larsen does not seek default or a finding that his allegations are established, the five-factor test from *Adriana* does not control. *See id.*

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS - 12

transferred operation of the casino games to its subsidiary, leading to the Court's eventual conclusion that the Class lacked standing to seek injunctive relief against H5E. Dkt. 477 at 9; *see* Dkt. 503 ¶ 14; Dkt. 514.

Given H5G's significant discovery misconduct concerning RFP No. 67, the Court will impose some evidentiary and argument-based sanctions under Rule 37(b)(2)(A)(ii). H5G will be prohibited from: (1) opposing the admission at trial of any untimely-produced documents related to the targeting of gambling addiction on the basis that those documents relate to non-Washington users; and (2) arguing to the factfinder that those documents are insufficient to show that H5G targeted Class members with gambling addiction because they relate to non-Washington users. This sanction does not prevent H5G from raising other good-faith objections or from presenting other admissible evidence or argument about its alleged targeting of gambling addicts. And this sanction does not unfairly prejudice H5E because its actions are not at issue in the upcoming damages trial.

The Court declines to impose the total evidentiary and argument bar requested by Larsen because H5G eventually complied with his discovery requests, even if egregiously delayed. *Cf. United States v. Schmidt,* No. C16-0985RSL, 2017 WL 6021477, at *1 (W.D. Wash. Oct. 24, 2017) (imposing evidentiary bar when continued failure to respond to discovery requests "effectively precluded plaintiff from investigating and analyzing his defenses."); *Gibson v. City of Kirkland*, No. C08-0937-JCC, 2009 WL 666885, at *1-2 (W.D. Wash. Mar. 11, 2009) (imposing evidentiary bar because plaintiff repeatedly failed to provide timely discovery and eventual production was insufficient and "substantially prejudiced" the defense).

2.  *Monetary sanctions under Rules 37(b)(2)(C) and 26(g)(3)*

Monetary sanctions are warranted under both Rule 37(b)(2)(C) and Rule 26(g)(3) because of H5G and its counsel, H&H's, discovery misconduct. Rule 37(b)(2)(C) requires the

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS - 13

Court order the "disobedient party, the attorney advising that party, or both to pay the reasonable expenses" caused by its failure unless it was "substantially justified" or the award would be "unjust." Similarly, under Rule 26(g)(3), "[i]f a certification violates this rule without substantial justification, the court . . . must impose an appropriate sanction" on the signer, the party on whose behalf the signer was acting, or both. An appropriate sanction "may include an order to pay the reasonable expenses . . . caused by the violation." Fed. R. Civ. P. 26(g)(3).

As described above, H5G—individually or through its attorneys at H&H—violated Rule 37(b)(2) by failing to produce Court-ordered discovery responsive to RFP No. 67. *Supra* Part III, Section B. H5G—individually or through its attorneys at H&H—also violated Rule 26 by falsely certifying it had conducted searches in good faith and "produced all responsive documents." *Supra* Part III, Section C. Given that neither of the violations were "substantially justified," H5G and H&H must pay the reasonable expenses caused by their discovery misconduct. Fed. R. Civ. P. 37(b)(2)(C); 26(g)(3). The Court will impose the award of expenses against H5G and H&H jointly and severally. *See Toth v. Trans World Airlines, Inc.,* 862 F.2d 1381, 1387 (9th Cir. 1988) (rejecting a due process challenge to a sanction for violating Rule 37 imposed jointly and severally on counsel and client); *Play Visions, Inc. v. Dollar Tree Stores, Inc.*, No. C09–1769 MJP, 2011 WL 2292326, at *10 (W.D. Wash. Mar. 11, 2009) (imposing Rule 26 sanctions jointly and severally on counsel and client).

The Court declines to impose Plaintiff's requested monetary sanction of $100,000, Dkt. 477 at 14, 16, because Plaintiff has not demonstrated that it is connected to the discovery misconduct at issue, or the reasonable expenses incurred by Plaintiff because of the misconduct. Fed. R. Civ. P. 37(b)(2)(C) (court may impose fees "caused by the failure"); Fed. R. Civ. P. 26(g)(3) (court may impose fees "caused by the violation"). Despite Plaintiff's counsel's representation that they "expressly disclaim" an award of attorney's fees, *see* Dkt. 477 at 14, it is

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS - 14

up to the Court to decide the appropriate monetary sanction permitted by the Federal Rules of Civil Procedure. If counsel ultimately chooses to allocate that award to the recovery for the Class, that is between them and their clients. But the amount of the sanction must be based on the expenses caused by the discovery misconduct, to be determined through a fee petition.

## IV.  CONCLUSION

For the foregoing reasons, the Court the Court GRANTS IN PART and DENIES IN PART Larsen's Motion for Discovery Sanctions. Dkt. 477. High 5 Games will be prohibited from: (1) opposing the admission at trial of any untimely-produced documents related to the targeting of gambling addiction on the basis that those documents relate to non-Washington users; and (2) arguing to the factfinder that those documents are insufficient to show that H5G targeted Class members with gambling addiction because they relate to non-Washington users. H5G and its counsel from Holland & Hart must also pay the reasonable expenses caused by their discovery misconduct. The award of expenses will be joint and several against H5G and H&H. Because the parties are in the midst of trial preparations, and the Court's resolution of this motion was delayed, the Court will set a deadline for Plaintiff's fee petition to determine the amount of the sanction following the conclusion of the damages trial against H5G.

Dated this 17th day of January, 2025.

Tiffany M. Cartwright
United States District Judge