UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RICK LARSEN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PTT, LLC, doing business as High 5 Games, LLC; HIGH 5 ENTERTAINMENT LLC,<br><br>Defendant. | Case No. 3:18-cv-05275-TMC<br><br>ORDER ON MOTIONS IN LIMINE |

Before the Court are Plaintiff Rick Larsen's and Defendant High 5 Games's (H5G) motions in limine (Dkt. 520, 524). The Court has considered the parties' briefs and heard oral argument at the pretrial conference on January 21, 2025.

## I. BACKGROUND

Plaintiff Rick Larsen brings this class action on behalf of all persons in Washington who bought and lost virtual coins playing two of H5G's "social casino" games, High 5 Casino and High 5 Vegas. The Court concluded at summary judgment that H5G's games amount to illegal gambling under Washington law, violating the state's Recovery of Money Lost at Gambling Act (RMLGA) and Consumer Protection Act (CPA). Dkt. 408; *see* RCW 4.24.070; RCW 19.86.010.

ORDER ON MOTIONS IN LIMINE - 1

Larsen seeks to recover the class members' actual damages under the RMLGA and CPA and an award of treble damages under the CPA. A damages trial is set to begin on February 3, 2025. The parties each filed motions in limine on December 30, 2024 and responded on January 15, 2025. The Court addresses each motion in turn.

## II.  DISCUSSION

### A.  Legal Standard

"A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area." *Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1162 n.4 (9th Cir. 2013).

"To exclude evidence on a motion in limine the evidence must be inadmissible on all potential grounds." *Goodman v. Las Vegas Metro. Police Dep't,* 963 F. Supp. 2d 1036, 1047 (D. Nev. 2013) (internal quotations omitted). "[I]f not, the evidentiary ruling is better deferred until trial, to allow for questions of foundation, relevancy, and prejudice to be resolved with the appropriate context." *Romero v. Washington*, No. 2:20-cv-01027-TL, 2023 WL 6458871, at *1 (W.D. Wash. Oct. 4, 2023).

In ruling on motions in limine, courts do not "resolve factual disputes or weigh evidence." *United States v. Meech*, 487 F. Supp. 3d 946, 952 (D. Mont. 2020). The inquiry is discretionary. *See United States v. Layton*, 767 F.2d 549, 554 (9th Cir. 1985).

### B.  Plaintiff's Motions in Limine

Plaintiff Larsen brings just one motion to limine: to admit the transaction data produced by third parties Apple, Google, Meta, and Amazon (the "Platforms") in response to subpoenas requesting documents showing all Washington-based transactions for High 5 Casino and High 5 Vegas on those platforms. Dkt. 520. Larsen argues that these records have been sufficiently authenticated by declarations from records custodians under Federal Rule of Evidence 902(11) and that they are admissible as records of a regularly conducted activity under Federal Rule of

Evidence 803(6). *See* Dkt. 520 at 5. In its motions in limine, H5G moves to exclude the same documents, arguing they lack proper foundation and that they are inadmissible hearsay. Dkt. 524 at 2–6. The Court therefore addresses these motions together.

    *1.*    *The Platform spreadsheets are not summary exhibits under Rule 1006(a).*

H5G first argues that the Platform spreadsheets should be excluded because they are "summary" evidence under Federal Rule of Evidence 1006(a). Rule 1006(a) provides: "The court may admit as evidence a summary, chart, or calculation offered to prove the content of voluminous admissible writings, recordings, or photographs that cannot be conveniently examined in court." H5G argues that because the spreadsheets were produced from larger databases maintained by the Platforms, they are "summaries," and they should not be admitted because the entirety of the underlying database was not made available to H5G for examination. Dkt. 524 at 3. This argument is unpersuasive. As explained below, spreadsheets produced from computer databases are routinely admitted as business records under Federal Rule of Evidence 803(6). "Because the spreadsheets are admissible as business records, and are therefore evidence in themselves, they are not 'summaries' as defined in Federal Rule of Evidence 1006." *Smith v. Alt. Resources Corp.*, 128 F. App'x 614, 615 (9th Cir. 2005) (citing *Hughes v. United States*, 953 F.2d 531, 540 (9th Cir. 1992)); *see also United States v. Channon*, 881 F.3d 806, 811 (10th Cir. 2018) (rejecting argument "that the process by which the data was selected and then transferred" to an Excel spreadsheet rendered it a summary rather than original).

    *2.*    *If authenticated, the Platform spreadsheets are admissible business records.*

Second, H5G argues that the Platform spreadsheets cannot be admitted under the hearsay exception for business records because they were extracted from the Platforms' larger databases for the purpose of litigation. Dkt. 524 at 4–6. This argument mischaracterizes the relevant case law and the nature of the exhibits. Federal Rule of Evidence 803(6) provides an exception to the

ORDER ON MOTIONS IN LIMINE - 3

rule against hearsay for "records of a regularly conducted activity," which is commonly referred to as the "business records" exception. The rule provides an exception for:

> A record of an act . . . if: (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business . . . (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) . . . (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6). The Ninth Circuit has "made clear that for the purposes of Rule 803(6), it is immaterial that the business record is maintained in a computer rather than in company books." *U-Haul Intern., Inc. v. Lumbermens Mut. Cas. Co.*, 576 F.3d 1040, 1043 (9th Cir. 2009) (cleaned up). "A logical extension on that principle is that evidence that has been compiled from a computer database is also admissible as a business record, provided it meets the criteria of Rule 803(6)." *Id.* at 1043–44.

The fact that the Platforms prepared the spreadsheets in response to subpoenas is immaterial so long as the underlying databases—and thus, the relevant data—were maintained in the ordinary course of business. "Printouts prepared specifically for litigation from databases that were compiled in the ordinary course of business are admissible as business records to the same extent as if the printouts were, themselves, prepared in the ordinary course of business. The important issue is whether the database, not the printout from the database, was compiled in the ordinary course of business." *Id.* at 1044 (quoting B. Weinstein and M.A. Berger, *Weinstein's Federal Evidence* § 901.08[1] (2d. ed. 2006)). Other circuits are in accord. *See, e.g.*, *Channon*, 881 F.3d at 811 (rejecting argument that transferring records from a database "into spreadsheets for purposes of litigation eliminates the business records exception"). H5G has not presented evidence that either the source of the information (the Platforms, who are neutral third parties) or

ORDER ON MOTIONS IN LIMINE - 4

its method of preparation shows a lack of trustworthiness. Therefore, so long as the requirements of Rule 803(6) are shown by foundational testimony or certification, the Platform spreadsheets are admissible as business records.

   **3.** *The certifications from the Platforms' record custodians are sufficient for Apple, Amazon, and Google.*

Federal Rule of Evidence 902(11) describes the circumstances under which business records are self-authenticating:

> The original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)–(C), as shown by a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court. Before the trial or hearing, the proponent must give an adverse party reasonable written notice of the intent to offer the record — and must make the record and certification available for inspection — so that the party has a fair opportunity to challenge them.

Fed. R. Evid. 902(11). Plaintiff Larsen has elected to use this type of certification to authenticate the Platform spreadsheets, and he has complied with the requirement of giving H5G notice of his intent to offer the records and provided the spreadsheets and certifications for H5G to review and challenge in these motions.

At the pretrial conference, the Court heard argument from the parties over the sufficiency of the certifications from the Platforms' record custodians, and expressed concern that without a live witness, the jury would not hear more detail about the contents of the records themselves. Following the conference, however, the Court carefully reviewed the spreadsheets, the certifications, the evidence rules, and the applicable case law. In considering the parties' arguments, the Court is mindful not to substitute its own judgment about the persuasive value of calling a live witness for the requirements of the rules of evidence. As the Committee Notes to Rule 902(11) explain, this portion of the rule was added specifically to "set[] forth a procedure by which parties can authenticate certain records of regularly conducted activity, other than

ORDER ON MOTIONS IN LIMINE - 5

through the testimony of a foundation witness." Similarly, the Committee Notes to Rule 803 explain that this amendment "provides that the foundation requirements of Rule 803(6) can be satisfied under certain circumstances without the expense and inconvenience of producing time-consuming foundation witnesses." As another district court in this Circuit has explained, the Rules "go hand in hand" to allow Rule 902(11) declarations to "serve as a functional equivalent to live witness testimony." *United States v. Kahre*, 610 F. Supp. 2d 1261, 1263 (D. Nev. 2009).

The Court has therefore examined each certification offered by Larsen to determine whether it satisfies Rules 803 and 902.

*Amazon*: The Amazon certifications state that they are provided by an employee of Amazon who is a records custodian; that the spreadsheets were produced in response to the subpoenas sent to Amazon in this case; that the spreadsheets "reflect Amazon's original records or information extracted from Amazon's original records created, kept, maintained, and relied upon by Amazon in the ordinary course of business"; and that the records "were prepared by [Amazon] personnel, in the ordinary course of business at or near the time of the acts, conditions, or events recorded." Dkt. 277-21, Dkt. 523. This is sufficient to authenticate the spreadsheets.

*Apple*: The Apple certification states that it is provided by a custodian of records for Apple; that the spreadsheets are "true copies of original records maintained by Apple that were subpoenaed by Plaintiffs in connection with the captioned matter"; that the spreadsheets "were kept in the course of the regularly conducted business activity of Apple and were prepared as a regular practice and custom"; and that they were "prepared by the personnel of Apple in the ordinary course of business at or near the time of the act or event reported thereon, and by a person or persons with knowledge of and a business duty to record or transmit those matters." Dkt. 275-8. This too is sufficient.

ORDER ON MOTIONS IN LIMINE - 6

*Google*: The Google certification states that it is made by a custodian of records authorized to submit the certification in response to Plaintiff's subpoena. Dkt. 277-15. It states that the accompanying files contain "true and correct copies of records" pertaining to H5G's apps in the Google Play store; that the documents "reflect records made and retained by Google"; that the records "were made at or near the time the data was acquired, entered, or transmitted to or from Google"; that "the records were kept in the course of a regularly conducted activity of Google"; and that the "making of the records were a regular practice of that activity." *Id.* This is also sufficient.

*Meta*: Unlike the other three Platform certifications, those provided by Meta do not attest to when the records were made or whether making the records was a regular practice of Meta's business activity. *See* Dkt. 275-10; Dkt. 437-11. Instead, Meta's certifications say only that the data was "obtained from a data warehouse used in the ordinary course of Meta's business to store logging data," and that the declarant is "familiar with the data warehouse from which the data produced to Plaintiff is stored and retrieved." *Id.* This is insufficient to meet the requirements of Rules 803 and 902.

Except for the certification from Meta, the cases cited by H5G are not comparable to the circumstances here. In *MSP Recovery Claims Series v. Farmers Insurance*, the proponent of the evidence sought to introduce spreadsheets that were created during the litigation "from third-party data, MAO data, and defendant discovery." No. 22-55610, 2023 WL 6633838, at *1 (9th Cir. Oct. 12, 2023). The certifications offered to authenticate the records "never declare that the spreadsheets are their own business records." *Id.* at *2. In *United States v. Babichenko*, the district court considered spreadsheets and records certifications from Amazon that are similar in many ways to the spreadsheets offered here—but with one material difference. 2022 WL 1591891, at *1–2 (May 19, 2022). In *Babichenko*, Amazon sent a follow-up email that clarified

ORDER ON MOTIONS IN LIMINE - 7

that the information contained in the spreadsheets "is the product of an internal investigation, *requiring analytical efforts beyond merely collecting records maintained in the ordinary course of business*." *Id.* at *2. It was this disclaimer that led the district court to sustain an objection to authenticating the documents by certification, and instead require a live witness. *See id.* But for the disclaimer, the Court observed that Amazon's certifications—which are substantially similar to those at issue here—"would appear to be sufficient to meet the requirements" of Rule 803(6) and 902(11). *Id.*

Because the certifications from Apple, Amazon, and Google meet the requirements of Federal Rules of Evidence 803 and 902 and establish that the spreadsheets produced by those third parties are admissible business records, the Court GRANTS Plaintiff's motion in limine to admit those spreadsheets. The Court DENIES Plaintiff's motion with respect to the spreadsheets produced by Meta. Those spreadsheets may still potentially be admitted at trial, but only through the testimony of a live foundation witness.

C. **Defendant's Motions in Limine**

    *1.* *Defendant's motion to exclude the platform data*

H5G moves to exclude the platform data that Larsen seeks to admit. The Court's ruling on this motion is set forth above in its ruling on Plaintiff's motion. This motion in limine is DENIED.

    *2.* *Defendant's motion to limit Shawn Davis's testimony*

H5G asks the Court to preclude Larsen "from offering testimony, evidence, or other argument to prove his damages based on the calculations contained in the Declarations of Shawn Davis." Dkt. 524 at 6. As H5G acknowledges, the Court has previously indicated that Mr. Davis's testimony will be limited to calculations summarizing the amounts contained in the platform data spreadsheets. *See* Dkt. 366. While Mr. Davis may explain that the spreadsheets

were produced in response to Plaintiff's subpoenas, and may explain his summary calculation, the Court will not permit Mr. Davis to offer any substantive testimony about the contents of the spreadsheets. Allowing a summary calculation of the amounts in the spreadsheets is admissible under Federal Rule of Evidence 1006, which states: "The court may admit as evidence a summary, chart, or calculation offered to prove the content of voluminous admissible writings, recordings, or photographs that cannot be conveniently examined in court, whether or not they have been introduced into evidence." Plaintiffs have complied with this rule because they have made the underlying spreadsheets available for examination and copying, and they can be produced in court. This motion in limine is DENIED.

      **3.**     *Defendant's motion to exclude spreadsheets created by their Rule 30(b)(6) designee*

H5G next asks the Court to exclude spreadsheets showing Washington-based transactions for its apps that were prepared by its own corporate designee under Federal Rule of Civil Procedure 30(b)(6), Christopher Bate. Dkt. 524 at 7. H5G argues that the spreadsheets are not business records under FRE 803(6) because they were prepared for litigation and that Bate's testimony that the spreadsheets reflect "approximations" of user location show that the records are untrustworthy. *Id.* at 8. H5G also argues the spreadsheets should not be considered statements of a party opponent because "he had no knowledge or expertise on the subject." *Id.*

Larsen responds that the spreadsheets are statements of a party opponent because they were "made by a person whom the party authorized to make a statement on the subject" or "made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(C), (D). Larsen points out that H5G designated Mr. Bate, a senior data scientist at High 5 Games, to testify on "whether or how High 5 tracks user activity by state, [and] whether and how High 5 tracks IP addresses associated with virtual

ORDER ON MOTIONS IN LIMINE - 9

coin purchases." Dkt. 548-1 at 4. Larsen also argues that the spreadsheets are business records, because while the spreadsheet itself was created for litigation, it merely extracted information from High 5's existing electronic business records. *See U-Haul*, 576 F.3d at 1043–44 ("The important issue is whether the database, not the printout from the database, was compiled in the ordinary course of business.") (quoting B. Weinstein and M.A. Berger, *Weinstein's Federal Evidence* § 901.08[1] (2d. ed. 2006)). As Mr. Bate testified in his deposition, he created the spreadsheet by running "a SQL query" with parameters including "any purchase made by a user ID that we had at any point in time received geo location data based on their IP that it was a Washington login." Dkt. 548-1 at 10.

The Court is satisfied that Plaintiffs can lay a foundation to show that the spreadsheets created by Mr. Bate reflect High 5's records of regularly conducted activity and are High 5's statements offered by its opponent. High 5's arguments that its own records are untrustworthy go to weight, not admissibility. This motion in limine is DENIED.

  **4.**  *Defendant's motion to exclude documents concerning non-Washington operations*

H5G next asks the Court to exclude any evidence—such as evidence of H5G's marketing or monetization strategies or communications with players—that concerns app users outside of Washington. Dkt. 524 at 9. The Court has already ruled that H5G is precluded from making this argument as a sanction for its severe discovery misconduct. Dkt. 549. Independent of that ruling, the Court finds that evidence of H5G's marketing and monetization strategies towards its larger customer base is probative of those strategies in Washington state, and that evidence is relevant to treble damages. "The purposes behind the CPA's treble damage provision include (1) financial rehabilitation of the injured consumer; (2) encouraging private citizens to bring actions benefiting the public; (3) deterrence; and (4) punishment." *Gamble v. State Farm Mut. Auto Ins. Co.*, 2022 WL 92985, at *7 (W.D. Wash. Jan. 10, 2022). Evidence that H5G targeted vulnerable

ORDER ON MOTIONS IN LIMINE - 10

users to encourage greater spending on its apps is relevant to whether its business practices warrant punishment through treble damages. There is no evidence to suggest that H5G, during the time frame at issue in this damages trial, treated Washington players differently from those located elsewhere. Nor is the probative value of this evidence substantially outweighed by the danger of unfair prejudice or confusion of the issues. Whether tried to a jury or the bench, the factfinder is capable of understanding the difference between evidence that goes to the amount of actual damages incurred in Washington state and evidence that goes to whether H5G's business practices support an award of treble damages. This motion in limine is DENIED.

     5.     *Defendant's motion to exclude player communications*

H5G asks the Court to exclude communications between its players and the company on the basis that the records contain two layers of hearsay: (1) the substance of the player's underlying communication; and (2) the company's record of the communication or discussion about it amongst employees. Dkt. 524 at 11–12. But the company's documentation—whether on Slack or Zendesk—can be admissible as a business record. Fed. R. Evid. 803(6). And the underlying communication from the player is not offered for the truth of the matter asserted. Fed. R. Evid. 801(c)(2). Rather, as Plaintiff persuasively explains, Dkt. 547 at 14–15, the communications are offered for their notice to and effect on the listener. *See United States v. Lopez*, 913 F.3d 807, 826 (9th Cir. 2019) ("[A]n out-of-court statement is *not* hearsay if offered for any purpose other than the truth of whatever the statement asserts. One common application of this principle is admitting a declarant's out-of-court statement for the purpose of establishing what effect it had on the listener.") (internal citation omitted). A message from a user expressing concern that they are experiencing gambling addiction is not being offered to prove that individual in fact had a gambling addiction—it is being offered to show H5G's knowledge of

these complaints from its customers and how the company responded. This evidence is relevant to treble damages. This motion in limine is DENIED.

   6.   *Defendant's motion to exclude documents with "incendiary language"*

H5G next asks the Court to exclude communications from players that reference addiction, and internal H5G communications referring to high-spending players as "whales," on the grounds that this evidence is improper lay opinion testimony, is irrelevant, and is unfairly prejudicial. Dkt. 524 at 13–17. First, players describing their own experience with H5G's games using terms such as "addiction" is not improper medical opinion testimony "based on scientific, technical, or other specialized knowledge." *See* Fed. R. Evid. 701(c). This evidence is not being offered as a medical diagnosis or for the purpose of proving that any individual player was experiencing clinical addiction. Instead, it is offered to show how H5G responded to reports from players that they were struggling to control how much they spent on the games, and how this aligned with H5G's practice of targeting large spenders for monetization. As the Court has explained above, this evidence is relevant to treble damages, and its probative value is not outweighed by a danger of unfair prejudice. Similarly, evidence that H5G employees referred to high-spending players as "whales" is relevant to Plaintiff's argument that treble damages are warranted to punish H5G for targeting consumers who showed signs of vulnerability to addiction. Although that evidence may be prejudicial to H5G, it has not shown that this prejudice is unfair. This motion in limine is DENIED.

   7.   *Defendant's motion to exclude reference to bifurcated claims*

Since the Court has bifurcated Plaintiff's alter ego and Uniform Voidable Transaction Act claims against H5G and co-defendant H5E, H5G asks the Court to exclude "any exhibits, testimony, or argument referencing H5E and the asset transfer that occurred on October 1, 2022." Dkt. 524 at 17. This Court agrees that the asset transfer is not relevant to this damages

ORDER ON MOTIONS IN LIMINE - 12

trial and creates an undue risk of confusing the issues. Fed. R. Evid. 401, 403. In response, Larsen argues that H5G may open the door to evidence of the asset transfer based on its own presentation of the case. Dkt. 547 at 17–18. If Larsen believes that has occurred during the trial, he must raise the issue with the Court before introducing evidence of or mentioning the asset transfer in front of the jury. For now, this motion in limine is GRANTED.

**8.**   *Defendant's motion to exclude reference to settlements in other cases*

Finally, H5G asks the Court to exclude any reference to settlements Plaintiff's counsel has reached with other gaming companies. Dkt. 524 at 18. The Court agrees that settlements with other companies are not relevant to this damages trial and are inadmissible under Federal Rule of Evidence 408. This motion in limine is GRANTED.

### III.   CONCLUSION

It is so ordered.

Dated this 23rd day of January, 2025.

Tiffany M. Cartwright
United States District Judge