UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RICK LARSEN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PTT, LLC, doing business as High 5 Games, LLC,<br><br>Defendant. | Case No. 3:18-cv-05275-TMC<br><br>ORDER DENYING DEFENDANT HIGH 5 GAMES, LLC'S MOTION TO VACATE ENHANCED DAMAGES AWARD OR APPLY THE STATUTORY CAP |

## I.   INTRODUCTION

After nearly seven years of litigation, a jury awarded Plaintiff Rick Larsen damages in his class action suit against Defendant High 5 Games ("High 5" or "H5G") for violating Washington's Recovery of Money Lost at Gambling Act ("RMLGA") and Consumer Protection Act ("CPA"). Dkt. 609. The jury awarded Larsen and the Class both actual damages and enhanced damages under the CPA. *Id.*

The CPA's damages provision states that, in addition to actual damages, "*the court* may, in its discretion, increase the award of damages up to an amount not to exceed three times the actual damages sustained." RCW 19.86.090 (emphasis added). Before the trial, the Court asked the parties whether the Seventh Amendment requires a federal jury to decide enhanced damages

ORDER DENYING DEFENDANT HIGH 5 GAMES, LLC'S MOTION TO VACATE ENHANCED DAMAGES AWARD OR APPLY THE STATUTORY CAP - 1

under the CPA and, if so, how the jury should be instructed. Dkt. 544. The parties agreed that the Seventh Amendment and Federal Rule of Civil Procedure 38 provide a right to a jury trial in federal court on enhanced damages. Dkt. 556 at 1–6; Dkt. 557 at 2–3. High 5 also argued that because of the Seventh Amendment jury right, the CPA's enhanced damages provision is preempted and inapplicable in federal court. Dkt. 557 at 3–6. Finally, the parties differed on how the jury—assuming it would determine enhanced damages—should calculate the award given the CPA's statutory cap. Dkt. 557 at 6–10; Dkt. 538 at 10; *see* RCW 19.86.090 ("[S]uch increased damage award for violation of RCW 19.86.020 may not exceed twenty-five thousand dollars.").

The Court agreed with the parties' analysis on the right to submit actual and enhanced damages to the jury. Dkt. 563 at 2. Because Defendant's preemption argument was made one week before trial and without opportunity for Larsen to respond, the Court declined to consider it but allowed High 5 to renew its argument in a post-trial motion. *Id.* The Court also declined to instruct the jury on how the statutory cap would be applied. *See* Dkt. 601, 609. Instead, the Court determined it would apply the statutory cap following the jury's verdict, as is often done in cases subject to the cap on damages under Title VII of the Civil Rights Act. *See, e.g.*, *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 504, 509–10 (9th Cir. 2000).

After a weeklong trial, the jury awarded named Plaintiff Larsen $7,470.50 in actual damages and $4,183.48 in enhanced damages. Dkt. 609 at 1–2. The jury also awarded the Class $17,742,855.64 in actual damages and $7,185,856.53 in enhanced damages. *Id.* The Court then invited briefing on how to apply the CPA's statutory cap to the enhanced damages award before entering judgment on the jury's verdict. *See* Dkt. 608.

Before the Court is High 5's Motion to Vacate Enhanced Damages Award or Apply the Statutory Cap. Dkt. 615. Having reviewed the parties' briefing and the relevant record, the Court

ORDER DENYING DEFENDANT HIGH 5 GAMES, LLC'S MOTION TO VACATE ENHANCED DAMAGES AWARD OR APPLY THE STATUTORY CAP - 2

DENIES the motion. In a separate document, the Court will enter judgment on the jury's verdict under Federal Rule of Civil Procedure 54(b). *See* Dkt. 608, 609.

## II.    BACKGROUND

The factual and procedural background of this case is recounted in several prior orders. *See* Dkt. 408 at 2–6; Dkt. 514 at 3–8. Thus, in this Order, the Court reviews only the facts and procedural history relevant to the instant motion.

On April 6, 2018, Plaintiff[1] filed his complaint against High 5 seeking certification of a class of all persons in Washington who purchased and lost virtual coins playing High 5's "social casino" games, High 5 Casino and High 5 Vegas. *See generally* Dkt. 1. Plaintiff alleged that High 5's operation of social casino applications in Washington (1) constitutes an illegal gambling operation—meaning that High 5 is liable for damages under the state's Recovery of Money Lost at Gambling Act, RCW 4.24.070 ("RMLGA"), (2) violates the state's Consumer Protection Act, RCW 19.86.010, et seq. ("CPA") because the games are illegal gambling harmful to the public interest, and (3) unjustly enriches High 5 with the sale of virtual coins. *See id.* at 9–16.

The Court granted Plaintiff's motion to certify a "Damages Class" and "Injunctive Class" in January 2021. Dkt. 170. The "Damages Class" comprises all Washington individuals who purchased virtual coins in High 5 Casino or High 5 Vegas after April 9, 2014. *Id.*

Larsen moved for partial summary judgment against High 5 on his RMLGA and CPA claims, asking the Court to find High 5 liable and establish a "baseline" amount of damages under both claims. Dkt. 275. On June 11, 2024, the Court granted Larsen's summary judgment

---

[1] When the case was filed, the named plaintiff was Sean Wilson, for whom Rick Larsen was substituted as class representative on March 6, 2023. Dkt. 216. The Court will refer to Plaintiff throughout this order as "Larsen" or "Plaintiff" for clarity.

ORDER DENYING DEFENDANT HIGH 5 GAMES, LLC'S MOTION TO VACATE ENHANCED DAMAGES AWARD OR APPLY THE STATUTORY CAP - 3

motion in part, finding High 5 liable to the Damages Class for violating the RMLGA and CPA. Dkt. 408 at 8–19. Because genuine factual disputes remained on damages owed, the Court ordered a jury trial to determine the amount of damages. *Id.* at 19–23.

Before the damages trial, Larsen brought a motion in limine to admit transaction records of users' virtual coin purchases in High 5 Casino and High 5 Vegas processed through four nonparty online platforms ("Platform data"). Dkt. 520. The Court ruled that Platform data certifications from three of the platforms—Apple, Amazon, and Google—met the requirements of Federal Rules of Evidence 803 and 902 for admissible business records. Dkt. 555 at 8. Although certification of Platform data from Meta (the fourth platform where High 5's virtual coins were processed) did not meet the business records authentication requirements, the Court concluded that the spreadsheets could still be admitted through a live foundation witness. *Id.* at 7. On the fourth day of the jury trial, February 6, 2025, the Meta Platform data was admitted through a Meta records custodian. *See* Dkt. 602.

Also before the trial, the Court ordered the parties to file supplemental briefs on whether the Seventh Amendment requires a federal jury to decide enhanced damages under the CPA and, if so, how the jury should be instructed. Dkt. 544. The CPA's damages provision states that, in addition to actual damages, "*the court* may, in its discretion, increase the award of damages up to an amount not to exceed three times the actual damages sustained." RCW 19.86.090 (emphasis added). The parties agreed that despite this language, the Seventh Amendment and Federal Rule of Civil Procedure 38 provide a right to a jury trial in federal court on enhanced damages under the CPA. Dkt. 556 at 1–6; Dkt. 557 at 2–3. High 5 also argued that given the Seventh Amendment jury right, the CPA's enhanced damages provision is preempted because it allows only "the court . . . in its discretion" to increase the damages award. Dkt. 557 at 4 (quoting RCW 19.86.090). Finally, the parties disagreed on how the jury—assuming it would determine

ORDER DENYING DEFENDANT HIGH 5 GAMES, LLC'S MOTION TO VACATE ENHANCED DAMAGES AWARD OR APPLY THE STATUTORY CAP - 4

enhanced damages—should calculate the award. *Id.* at 6–10; Dkt. 538 at 10. Larsen argued that "trebling is appropriate on each separate transaction" to purchase coins by a Class member given "each transaction was on its own an illegal gambling transaction." Dkt. 538 at 10. High 5 asserted that enhanced damages must be capped on a per-plaintiff basis. Dkt. 557 at 6. And because Larsen did not prove "specified damages amounts for each class member" through the Platform data, High 5 concluded that the CPA's "statutory $25,000 cap applies to [the] 'sum total' of the actual damages, whatever it may be." *Id.* at 7–8.

The Court agreed that actual and enhanced damages should be submitted to the jury, noting that it tracked the conclusions of other courts in this district holding that the enhanced damages provision of a similar statute, Washington's Insurance Fair Conduct Act ("IFCA"), is subject to the Seventh Amendment's jury trial right. Dkt. 563 at 2 (first citing *F.C. Bloxom Co. v. Fireman's Fund Ins.*, No. C10- 1603RAJ, 2012 WL 5992286 (W.D. Wash. Nov. 30, 2012)); then citing *MKB Constructors v. Am. Zurich Ins. Co.*, No. C13-0611JLR, 2015 WL 1188533 (W.D. Wash. Mar. 16, 2015), *aff'd*, 711 F. App'x 834, 838 (9th Cir. 2017)). Because Defendant's preemption argument was made one week before trial and without opportunity for Larsen to respond, the Court declined to consider it but allowed High 5 to renew its argument in a post-trial motion. *Id.* The Court also declined to instruct the jury on how the statutory cap would be applied. *See* Dkt. 601, 609. Instead, the Court determined it would apply the statutory cap following the jury's verdict, as is often done in cases subject to the cap on damages under Title VII of the Civil Rights Act. *See, e.g.*, *Passantino*, 212 F.3d at 504, 509–10.

On February 7, 2025, after a weeklong trial, the jury awarded named Plaintiff Larsen $7,470.50 in actual damages and $4,183.48 in enhanced damages. Dkt. 609 at 1–2. The jury also awarded the Class $17,742,855.64 in actual damages and $7,185,856.53 in enhanced damages. *Id.* The Court set a deadline for High 5's post-trial motion on the statutory cap's application to

ORDER DENYING DEFENDANT HIGH 5 GAMES, LLC'S MOTION TO VACATE ENHANCED DAMAGES AWARD OR APPLY THE STATUTORY CAP - 5

the enhanced damages award and reserved entering judgment until the Court ruled on that motion. Dkt. 608. The Court also asked the parties to address two questions in their briefs: (1) What would the statutory cap on enhanced damages be for a hypothetical plaintiff who sued High 5 individually and incurred $50,000 in actual damages, all in coin purchases smaller than $25,000?; and (2) If enhanced damages should be capped on a per-class member basis, is there sufficient evidence in the record to do so, and how would the Court calculate those amounts? Dkt. 611.

On February 28, 2025, High 5 moved the Court to vacate the enhanced damages award or apply the statutory cap. Dkt. 615. Larsen responded on March 17, 2025, Dkt. 616, and High 5 replied on March 21, 2025, Dkt. 617. Having reviewed the parties' briefing and the relevant record, the Court DENIES High 5's motion to vacate the enhanced damages award or apply the statutory cap. Accordingly, by separate document, the Court will enter judgment on the jury's verdict under Federal Rule of Civil Procedure 54(b).

### III.  DISCUSSION

The Court first addresses High 5's argument that the Seventh Amendment preempts an enhanced damages award under the CPA in federal court. This argument fails because the allocation of responsibility between court and jury is a matter of federal procedural law; there is no conflict between the jury trial right and the substantive protections of the CPA. Next, the Court addresses High 5's argument that the CPA's statutory cap should be applied on a per-plaintiff basis, and that on the record presented at trial, this requires reducing the enhanced damages award for the Class to $25,000. Because there is no authority for limiting the enhanced damages provision of the CPA on a per-plaintiff basis, the Court concludes that the statutory cap should be applied on a per-violation basis, and that this application is consistent with the text and purpose of the CPA. Here, because the jury's enhanced damage award to the Class is less than

the actual damages sustained by the Class—and no individual violation of the CPA caused more than $1,800 in actual damages—the entire enhanced damages award is within the statutory cap and may be upheld.

### A. The jury's enhanced damages award is permissible under the Seventh Amendment and Rule 38.

High 5 argues that, while the Court's decision to allow a jury to determine enhanced damages under the CPA conformed with the Seventh Amendment, it contravened Washington state law authorizing that only "the court may, in its discretion, increase" the damages award. Dkt. 615 at 4–5 (quoting RCW 19.86.090). High 5 thus asserts that "enhanced damages are preempted and the jury's award of enhanced damages should be vacated." *Id.* at 7. Larsen argues that the Court appropriately supplanted state procedural law in the CPA with federal procedural law and, because no conflict exists between state and federal law, there is no basis to vacate the jury's enhanced damages award. Dkt. 616 at 6–8. The Court agrees with Larsen.

"In suits at common law . . . the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Courts of the United States, than according to the rules of common law." U.S. Const., Amend. VII. The Seventh Amendment applies solely to federal courts. *R.J. Reynolds Tobacco Co. v. Shewry,* 423 F.3d 906, 924 (9th Cir. 2005) ("[T]he Seventh Amendment's guarantee of the right to a civil trial by jury does not apply to the states[.]"). As the parties agreed, and this Court affirmed in its pretrial order, the enhanced damages provision of the CPA is subject to the Seventh Amendment's jury trial right. Dkt. 563 at 1–2 (first citing *F.C. Bloxom Co.*, 2012 WL 5992286, at *4–5 (concluding that a claim for enhanced damages under a similar statute, Washington's IFCA, is subject to the Seventh Amendment); and then citing *MKB Constructors*, 2015 WL 1188533, at *29–31 (same)).

Despite this agreement, High 5 argues that—rather than this federal court applying the federal procedural guarantee of a jury trial to the enhanced damages claims—the solution to this conflict between the Seventh Amendment and the text of the CPA is to prohibit enhanced damages claims in federal court altogether. Dkt. 615 at 4–7. Under High 5's theory, if a plaintiff brings a CPA claim in state court, they may seek enhanced damages. But if a plaintiff brings their claim in federal court—or their state case is successfully removed—the ability to seek enhanced damages evaporates. *See id.* at 7. High 5 does not cite a single federal case to support this argument, nor any analogous example of a federal court choosing to strip away a state-law remedy entirely rather than let a jury apply it.

Instead, High 5's argument rests on Washington state law on the doctrine of severability when a state statute contains a constitutional flaw. *See State v. Carter*, 3 Wn.3d 198, 213–14, 548 P.3d 935 (2024). These cases are inapposite because the application of the Seventh Amendment in federal court does not render the CPA "unconstitutional." *See* Dkt. 615 at 2. It just means that in federal court, federal procedural rules have supremacy over state ones, even when the federal court is applying state substantive law under its diversity jurisdiction.

Once this familiar analysis is conducted, High 5's argument is easily rejected. Federal courts sitting in diversity "apply state substantive law and federal procedural law." *Hanna v. Plumer*, 380 U.S. 460, 465 (1965). The court "must first determine whether [the federal rule] answers the question in dispute." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) (citation omitted); *see also In re Cnty. of Orange*, 784 F.3d 520, 527 (9th Cir. 2015) ("When confronted with an *Erie* question, we first ask whether a Federal Rule of Civil Procedure or a federal law governs.") (citing *Hanna*, 380 U.S. at 465). "If so, [courts] apply that [federal] rule—even in the face of a countervailing state rule—as long as it is constitutional and

within the scope of the Rules Enabling Act, 28 U.S.C. § 2072." *Cnty. of Orange*, 784 F.3d at 527 (citations omitted).

Here, Rule 38 "answers the question in dispute"—when a CPA claim is raised in federal court, the issue of enhanced damages must be resolved by a jury. *See Shady Grove*, 559 U.S. at 398. Rule 38 provides that "[t]he right of trial by jury as declared by the Seventh Amendment to the Constitution . . . is preserved to the parties inviolate." Fed. R. Civ. P. 38(a); *see also* Fed. R. Civ. P. 39(a) ("When a jury trial has been demanded under Rule 38 . . . the trial on all issues so demanded must be by jury unless . . . there is no federal right to a jury trial."); *F.C. Bloxom Co.*, 2012 WL 5992286, at *4 ("Rule 38 requires federal courts to preserve the Seventh Amendment jury trial right in *all* federal cases, even cases like this one involving only state law claims.") (emphasis in original). Thus, the Court must follow Rule 38 so long as it is "constitutional and within the scope of the Rules Enabling Act[.]" *Cnty. of Orange*, 784 F.3d at 527 (citations omitted); *see also Shady Grove*, 559 U.S. at 398 ("We do not wade into *Erie*'s murky waters unless the federal rule is inapplicable or invalid.") (citation omitted).

Because Rule 38 is constitutionally and statutorily authorized, Washington state law does not prevent its application to claims for enhanced damages under the CPA. *See Shady Grove*, 559 U.S. at 406 ("Congress has undoubted power to supplant state law, and . . . to prescribe rules for the courts it has created[.]"). The Supreme Court has explained that, through the Rules Enabling Act, Congress allowed it to promulgate rules of procedure so long as those rules do not "abridge, enlarge or modify any substantive right." *See id.* at 406–07 (quoting 28 U.S.C. § 2072(b)). To comply with this mandate, the rule "must really regulate procedure." *Id.* at 407 (citation modified) (explaining that procedural rules regulate only "the manner and the means" through which litigants' rights are enforced). The Supreme Court has never found a Federal Rule of Civil Procedure invalid because it is substantive and not procedural. *See id.* More relevant

ORDER DENYING DEFENDANT HIGH 5 GAMES, LLC'S MOTION TO VACATE ENHANCED DAMAGES AWARD OR APPLY THE STATUTORY CAP - 9

here, both the Supreme Court and the Ninth Circuit have held that whether a judge or jury decides questions is a procedural rule. *See, e.g.*, *Simler v. Conner*, 372 U.S. 221, 222 (1963) ("[T]he right to a jury trial in the federal courts is to be determined as a matter of federal law in diversity as well as other actions."); *Cnty. of Orange*, 784 F.3d at 529 (a rule "which allocates tasks between a judge and a jury" describes "merely a form and mode of enforcing the law. . . . Such rules are procedural under *Erie*") (citations omitted); *Granite State Ins. Co. v. Smart Modular Tech., Inc.*, 76 F.3d 1023, 1026–27 (9th Cir. 1996) ("In a diversity action, federal law governs whether a party is entitled to a jury trial and if so, on what issues.").

Rule 38, which "only governs whether a judge or jury decides questions," is procedural and falls within the scope of the Rules Enabling Act. *F.C. Bloxom Co.*, 2012 WL 5992286, at *5; *see Cnty. of Orange*, 784 F.3d at 527. Thus, "it governs—[Washington's] law notwithstanding[.]" *Shady Grove*, 559 U.S. at 398. Furthermore, the result High 5 advocates for would undermine the *Erie* doctrine's "core policies" of preventing forum shopping and inequitable administration of the laws. *Cnty. of Orange*, 784 F.3d at 528 (citing *Hanna*, 380 U.S. at 468). A CPA defendant who manages to remove their case to federal court would be relieved of the threat of enhanced damages; a defendant in state court would not be so lucky. There is no authority to support this result, and High 5's argument fails. Plaintiff's enhanced damages claims were properly submitted to the jury.

**B.    The CPA's statutory cap applies on a per-violation basis.**

High 5 asserts that if enhanced damages are available under the CPA, they should be capped at $25,000 per class member. Dkt. 615 at 7–9. And, because Plaintiff established the Class's actual damages at trial through proof of transactions on High 5's apps—but did not allocate those transactions to individual class members—High 5 contends this method should result in reducing the enhanced damages awarded to the Class from $7,185,856.53 to $25,000 (in

other words, one-third of one percent of the jury's award). *Id.* at 9–12. High 5 contends this is supported by the language of the CPA's damages provision and other cases in this district applying the statutory cap. Dkt. 615 at 7 (citations omitted). Larsen argues instead that enhanced CPA damages may be awarded on a per-violation basis, citing a different part of the provision's language, how "violation" is defined in other parts of the CPA, and related cases in Washington and this district. Dkt. 616 at 9–12.

Larsen's argument that the Class could seek enhanced damages for each transaction in High 5's apps that violated the CPA is persuasive. The Court's "fundamental purpose in construing statutes is to ascertain and carry out the intent of the legislature." *In re Schneider*, 173 Wn.2d 353, 363, 268 P.3d 215 (2011) (citation omitted). Courts applying Washington law "derive legislative intent solely from the plain language of the statute, considering the text of the provision, the context of the statute, related provisions, amendments, and the statutory scheme as a whole." *PeaceHealth St. Joseph Med. Ctr. v. Dep't of Rev.*, 196 Wn.2d 1, 7–8, 468 P.3d 1056 (2020) (citation omitted). "Where the statutory language is ambiguous—allowing for more than one reasonable interpretation—we may turn to canons of statutory construction, legislative history, and relevant case law." *Matter of Dependency of Baby Boy B.*, 3 Wn.3d 569, 574, 554 P.3d 1196 (2024) (citations omitted).

First, the statutory language of the CPA's enhanced damages provision does not plainly require that trebled damages be capped on a per-plaintiff basis. The provision states:

> Any person who is injured in his or her business or property by a violation . . . may bring a civil action in superior court to enjoin further violations, to recover the actual damages sustained by him or her, or both . . . . In addition, the court may, in its discretion, increase the award of damages up to an amount not to exceed three times the actual damages sustained: PROVIDED, That such increased damage award for violation of RCW 19.16.020 may not exceed twenty-five thousand dollars[.]

RCW 19.86.090.

ORDER DENYING DEFENDANT HIGH 5 GAMES, LLC'S MOTION TO VACATE ENHANCED DAMAGES AWARD OR APPLY THE STATUTORY CAP - 11

High 5 emphasizes that the provision's language begins with "[a]ny person," arguing this shows that the unit of measure for actual damages, and thus potential treble damages, is on a per-person basis. *See* Dkt. 615 at 7–8 ("[T]he statute allows the court to increase the sum total of the 'person['s]' damages award—*i.e.*, on a per-plaintiff basis.") (citation omitted). This limitation is certainly correct for the trebling portion of the enhanced damages provision—the factfinder may "increase the award of damages up to an amount not to exceed three times the actual damages sustained" by the person who brings the civil action. RCW 19.86.090.

But the statute places two limitations on enhanced damages: they may not exceed three times the actual damages sustained, and "such increased damage award for violation of RCW 19.86.020 may not exceed twenty-five thousand dollars." *Id.* The question presented is how to interpret the second limitation. And to the extent the statutory language supports either of the parties' interpretations, it better supports Larsen's argument that enhanced damages are capped on a per-violation basis. *See id.* ("Any person who is injured . . . by a violation[.]"); *see also id.* ("That such increased damage award for violation of RCW 19.86.020 may not exceed twenty-five thousand dollars[.]"). In any case, the Court does not find that the "plain language of the statute mandates" enhanced damages be capped on a per-plaintiff basis. *See* Dkt. 615 at 7.

High 5's proposed per-plaintiff limitation on enhanced damages would also be inconsistent with how courts have interpreted related provisions of the CPA. *See PeaceHealth St. Joseph Med. Ctr.* 196 Wn.2d at 7–8 (statutory interpretation should consider "the statutory scheme as a whole"). When the State brings an action to enforce the CPA, the civil penalty provision, RCW 19.86.140, "provides that a statutory penalty for violating the CPA is mandatory." *State v. Living Essentials, LLC*, 8 Wn. App. 2d 1, 36, 436 P.3d 857 (2019). That provision requires that "[e]very person who violates RCW 19.86.030 or 19.86.040 shall pay a civil penalty of up to three times the unlawful gains or loss avoided as a result of each violation,"

and "[e]very person who violates 19.86.020 shall forfeit and pay a civil penalty of not more than $7,500 for each violation." RCW 19.86.140. Relevant here, Washington courts have expressly rejected limiting penalties for "violations" on a per-consumer basis.

In *State v. Ralph Williams' North West Chrysler Plymouth, Inc.*, the Washington Supreme Court considered a challenge to the lower court's ruling that civil penalties "should be assessed on the basis of one penalty per consumer and not on the basis of one penalty per violation." 87 Wn.2d 298, 316, 553 P. 2d 423 (1976). Distinguishing its position from the California Supreme Court's interpretation of similar statutory language that "determined the number of violations by the number of aggrieved consumers," the Washington Supreme Court "decline[d] to follow the one-violation-per-consumer rule." *Id.* As the court explained, its interpretation "gives the provision its needed flexibility and is also consistent with RCW 19.86.920" and its command that the CPA be "liberally construed that its beneficial purposes may be served." *Id.* at 316 n.11 (quoting RCW 19.86.920).

Other Washington courts have rejected attempts to limit penalties on a per-consumer basis, even when tied to numerous and repeated violations of the statute. In *State v. Comcast Cable Communications Management, LLC*, the Court of Appeals overturned the lower court for basing civil penalties "on a per-consumer, rather than a per-account, basis." 16 Wn. App. 2d 664, 689, 482 P.3d 925 (2021). The trial court found that Comcast violated the CPA by enrolling Washington consumers in Service Protection Plan accounts without first obtaining affirmative consent for each account. *Id.* at 690. Because "Comcast violated the Consumer Protection Act by subscribing accounts, rather than consumers, to the Service Protection Plan without consent," the lower court erred by not assessing civil penalties on the 30,946 Washington accounts that Comcast subscribed without consent. *Id.* at 670, 690–91.

Similarly, for a deceptive mailer that violated the CPA in *State v. LA Investors, LLC*, the Court of Appeals affirmed that a penalty be applied to "each of the 256,998 mailers sent to Washington consumers." 2 Wn. App. 2d 524, 546, 410 P.3d 1183 (2018); *see also Living Essentials, LLC*, 8 Wn. App. 2d at 34, 37 (awarding per-violation penalties based on "the number of times the deceptive advertisements were aired in Washington," representing "violat[ions] [of] the CPA more than 24,000 times"). The court explained: "The [CPA] does not limit the possible number of violations to the number of aggrieved consumers." *LA Investors, LLC*, 2 Wn. App. 2d at 545.

High 5 argues that unlike the enhanced damages provision in RCW 19.86.090, the civil penalty language in RCW 19.86.140 "plainly mandates a per-violation penalty," and that Washington cases rejecting a per-consumer interpretation do not "translate to the private individual context." Dkt. 617 at 5. But while High 5 is correct that the cases discussed above analyzed RCW 19.86.140, the courts explained their reasoning for awarding penalties on a per-violation basis by also looking to the broader purpose of the CPA. *See, e.g.*, *Ralph Williams*, 87 Wn.2d at 316 n.11 (reasoning that the court's rejection of a "one-violation-per-consumer" rule was based in part on following the legislature's mandate that the CPA be "liberally construed that its beneficial purposes may be served") (quoting RCW 19.86.920); *Living Essentials, LLC*, 8 Wn. App. 2d at 35–36 (upholding the lower court's per-violation penalty in part by explaining "Washington courts recognize two basic tenets of trade law in effectuating the purpose of chapter 19.86 RCW. . . . First, no one should be permitted to profit from unfair and deceptive conduct [and] [s]econd, fair dealing must be encouraged at all stages of commerce.") (citation modified); *Comcast Cable Commc'ns Mgmt., LLC*, 16 Wn. App. 2d at 689 ("[T]he Consumer Protection Act does not limit the possible number of violations to the number of aggrieved consumers.")

ORDER DENYING DEFENDANT HIGH 5 GAMES, LLC'S MOTION TO VACATE ENHANCED DAMAGES AWARD OR APPLY THE STATUTORY CAP - 14

(citation modified). Interpreting the statutory cap on enhanced damages to also apply on a per-violation rather than per-consumer basis honors the same legislative intent.

This interpretation is also consistent with the fact that each illegal gambling transaction at issue in this case would be separately actionable under the CPA. The cases discussed above make clear that each illegal act—here, each sale of virtual coin packages—is a separate violation of the statute. *See, e.g.*, *Comcast Cable Commc'ns Mgmt., LLC*, 16 Wn. App. 2d at 691 (enrollment in each account without consent was a separate violation); *LA Investors, LLC*, 2 Wn. App. 2d at 547 (each deceptive mailer was a separate violation). This interpretation is reinforced by the fact that each transaction is subject to its own statute of limitations. In this case, for example, the damages class was limited to transactions that occurred within the four years before Plaintiff filed his complaint. Dkt. 170 at 16; *see* RCW 19.86.120 ("Any action to enforce a claim for damages under RCW 19.86.090 shall be forever barred unless commenced within four years after the cause of action accrues.") If a cause of action accrued with each sale of virtual coins, and would have been subject to a $25,000 cap on enhanced damages for that single violation had it been pursued individually, why should the availability of enhanced damages be reduced when thousands of violations are combined for efficiency in class litigation? High 5 does not provide a persuasive answer to this question, and the result it advocates for would contradict the legislative intent of the CPA.

Finally, High 5 points to cases specifically analyzing the CPA's enhanced damages provision, but the authorities it cites are, at best, ambiguous on how the statutory cap should be applied in this case. Dkt. 615 at 7–9. High 5 first cites *North Seattle Health Center Corp. v. Allstate Fire & Casualty Insurance Co.*, where the court declined to consider the defendant insurer's request in a motion for default judgment that enhanced damages be applied for each invoice from plaintiffs' unlawfully licensed medical clinics. No. C14-1680JLR, 2016 WL

ORDER DENYING DEFENDANT HIGH 5 GAMES, LLC'S MOTION TO VACATE ENHANCED DAMAGES AWARD OR APPLY THE STATUTORY CAP - 15

1643979, at *5 n.4 (W.D. Wash. Apr. 26, 2016). But the court noted that the posture of the case contributed to its decision not to consider each invoice a separate harm under the CPA. *See id.* ("[I]n the context of this motion for default judgment, the court declines to exercise its discretion to award Allstate treble damages totaling more than $25,000.00.").

High 5 also mischaracterizes *In re Bryce*, 491 B.R. 157, 186 (W.D. Wash. Bankr. 2013) as standing for the prospect "that the statutory cap may be applied to the damages arising from each independent, substantive violation of the CPA." Dkt. 615 at 8 (citation omitted). In High 5's view, an "independent, substantive violation of the CPA" means each independent method of *how* a defendant has violated the statute. *See id.* High 5 argues that because the Court "determined High 5's CPA liability based on one statutory 'violation'—operating an illegal gambling game in violation of the RMLGA," each plaintiff is limited to enhanced damages for that single type of unfair practice, regardless of how many times High 5 sold them illegal coin packages. *Id.* at 8–9. High 5's argument fails for two reasons.

First, this definition of one "violation" is completely at odds with the numerous Washington cases cited above explaining that each unfair or deceptive *act* is a violation of the CPA. Sending the deceptive mailer in *LA Investors, LLC* was unquestionably only one method of violating the statute. *See* 2 Wn. App. 2d at 539–45 (concluding that mailer had the capacity to deceive a substantial portion of the public). But because the defendant sent the mailer to Washington consumers 256,998 times, it could be penalized for each mailing: "Each deceptive act is a separate violation." *Id.* at 545–47; *see also, e.g.*, *State v. Mandatory Poster Agency, Inc.*, 199 Wn. App. 506, 525–26, 398 P. 3d 1271 (2017) (each of defendant's 79,354 solicitations was a violation); *Comcast Cable Comms. Mgmt.*, 16 Wn. App. 2d at 670, 691 (each of the 30,946 accounts subscribed without consent was a violation).

ORDER DENYING DEFENDANT HIGH 5 GAMES, LLC'S MOTION TO VACATE ENHANCED DAMAGES AWARD OR APPLY THE STATUTORY CAP - 16

Second, *Bryce* is better read as allowing enhanced damages for each CPA *injury* suffered by a plaintiff, not each "independent, substantive" theory of how the CPA was violated. 491 B.R. at 186. *Bryce* involved a couple forced into Chapter 13 bankruptcy who sued their lenders across several federal, state, and common-law claims. *Id.* at 169. The court found two CPA injuries: (1) the "[p]laintiffs were monetarily injured in this loan transaction in paying a usurious rate of interest," under the state's usury statute; and (2) the "[p]laintiffs were also injured financially by this loan transaction which required fees . . . that were never provided to them," as required by the state's Mortgage Brokers Practices Act. *Id.* at 185. The plaintiffs requested exemplary, or enhanced, damages for each CPA violation. *Id.* The court first observed that "a separate exemplary damage award for multiple CPA violations is sometimes permissible." *Id.* Because the violations in this case "resulted in two separate *injuries*: (1) excess interest paid . . . and (2) damages in the amount of fees paid," the Court awarded damages for each violation. *Id.* at 186 (emphasis added). Thus, while the plaintiffs' injuries happened to be tied to two causes of action, the court awarded enhanced damages because plaintiffs proved they suffered separate monetary injuries with each violation. *See id.*

This is also consistent with the holding of *Edmonds v. John L. Scott Real Est., Inc.*, the case on which both *Bryce* and *North Seattle Health Center* relied. 87 Wn. App. 834, 850, 942 P.2d 1072 (1997). In *Edmonds*, the plaintiff alleged that the defendant had violated the CPA through multiple unfair practices and misrepresentations in a real estate transaction. *See id.* at 844–49. But those violations resulted in the same, single injury: the plaintiff lost her earnest money of $5,001. *Id.* at 850. The Washington Court of Appeals held that "multiple awards of exemplary damages are not authorized by the statute where more than one CPA violation results in a single harm." *Id.* In contrast, the class members here suffered a separate, actionable injury each time they lost money through the sale of High 5's illegal coin packages. Applying the

statutory cap on a per-transaction basis does not run counter to *Bryce*, *North Seattle Health Center*, or *Edmonds*.

Because the Court applies the CPA's statutory cap on a per-violation, *i.e.*, per-transaction basis, the jury's enhanced damages award for the Class is not affected. The evidence submitted during the trial shows that no individual coin package purchased in High 5 Casino or High 5 Vegas exceeded an amount that, when enhanced by the jury's proportional award, reaches the $25,000 statutory cap. *See* Dkt. 567-4 at 10 (Deanna Ishakawa's testimony that $1800 is the highest virtual coin package that can be purchased); Dkt. 602 (admission of Platform data spreadsheets that do not show any individual transactions over $1800); RCW 19.86.090 ("That such increased damage award for violation of RCW 19.86.020 may not exceed twenty-five thousand dollars[.]"). Without the cap, the jury could have trebled the actual damages for each transaction, resulting in a potential enhanced damages award of over $35 million. *See* Dkt. 609. Instead, the jury awarded enhanced damages of less than the actual damages proven. *See id.* Accordingly, the court will enter judgment on the jury's enhanced damages award of $7,185,856.53. Dkt. 609.

C.     **Entry of judgment under Rule 54(b).**

Before the trial, the Court allowed Plaintiff to file a Third Amended Complaint asserting new claims under the Uniform Voidable Transactions Act against H5G and co-Defendant High 5 Entertainment ("H5E"). Dkt. 515. But the Court bifurcated and stayed those claims so as not to delay the damages trial for Plaintiff's RMLGA and CPA claims against H5G. *Id.* Because the bifurcated claims remain, the jury's verdict "adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties." Fed. R. Civ. P. 54(b). Under that same rule, however, "the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." *Id.* As the

Court explained to the parties on the record following the jury's verdict, here there is no just reason for delay. The bifurcated claims remaining in the case are substantively different and relate to Plaintiff's ability to collect on the jury's verdict. *See* Dkt. 518. Entering final judgment now on the claims adjudicated at trial will allow Plaintiff to begin collection efforts—potentially resolving the bifurcated claims—and allow H5G to appeal now from any rulings that affect its liability under the RMLGA and CPA. *See Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 7–9 (1980). This serves both the interests of the parties and "judicial administrative interests[.]" *See id.* at 8.

## IV.   CONCLUSION

For the reasons stated, the Court DENIES High 5's motion, Dkt. 615, to vacate the enhanced damages award or apply the statutory cap. By separate document, the Court will enter judgment on the jury's verdict, Dkt. 609, awarding named Plaintiff Rick Larsen $7,470.50 in actual damages and $4,183.48 in enhanced damages. The Court will also enter judgment on the jury's verdict, *id.*, awarding the Class $17,742,855.64 in actual damages and $7,185,856.53 in enhanced damages.

Dated this 11th day of June, 2025.

Tiffany M. Cartwright
United States District Judge