1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RICK LARSEN, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>        v.<br><br>PTT, LLC (d/b/a HIGH 5 GAMES, LLC), and HIGH 5 ENTERTAINMENT, LLC,<br><br>                    Defendant. | Case No. 3:18-cv-05275-TMC<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' PARTIAL MOTION TO DISMISS THIRD AMENDED COMPLAINT |

## I.    INTRODUCTION

More than seven years after this class action suit began, and following a jury trial on damages for his original claims, Plaintiff Rick Larsen resumes his remaining claims—which the Court previously stayed and bifurcated—against Defendant High 5 Games ("H5G"), a developer of "social casino" games, and its subsidiary, Defendant High 5 Entertainment LLC ("H5E").

Before the Court is Defendants' Motion to Partially Dismiss Plaintiff's Third Amended Complaint. Dkt. 613. Having reviewed the parties' briefing and the relevant record, the Court clarifies that it dismissed Larsen's unjust enrichment claim against H5E for lack of standing in the Court's prior summary judgment order. Dkt. 514. Thus, the Court DENIES Defendants'

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' PARTIAL MOTION TO DISMISS
THIRD AMENDED COMPLAINT - 1

motion to dismiss the unjust enrichment claim against H5E as moot. The Court also GRANTS the motion to dismiss Larsen's unjust enrichment claim against H5G, finding he abandoned the claim before the damages trial.

## II.    BACKGROUND

The factual and procedural background of this case is recounted in several prior orders. *See* Dkt. 408 at 2–6; Dkt. 514 at 3–8. Thus, in this Order, the Court reviews only the facts and procedural history relevant to the instant motion.

On April 6, 2018, Plaintiff[1] filed his complaint against H5G seeking certification of a class of all persons in Washington who purchased and lost virtual coins playing H5G's social casino games, High 5 Casino and High 5 Vegas. *See generally* Dkt. 1. Plaintiff alleged that H5G's operation of social casino applications in Washington (1) constituted an illegal gambling operation—meaning that H5G is liable for damages under the state's Recovery of Money Lost at Gambling Act, RCW 4.24.070 ("RMLGA"), (2) violated the state's Consumer Protection Act, RCW 19.86.010, et seq. ("CPA") because the games are illegal gambling harmful to the public interest, and (3) unjustly enriched H5G with the sale of virtual coins. *See id.* at 9–16. The Court granted Plaintiff's motion to certify a "Damages Class" and "Injunctive Class" in January 2021. Dkt. 170. The "Damages Class" comprises all Washington individuals who purchased virtual coins in High 5 Casino or High 5 Vegas after April 9, 2014. *Id.* at 16.

Larsen moved for partial summary judgment against H5G on his RMLGA and CPA claims, asking the Court to find H5G liable and establish a "baseline" amount of damages under both claims. Dkt. 275. H5G cross-moved for summary judgment on all claims in Larsen's

---

[1] When the case was filed, the named plaintiff was Sean Wilson, for whom Rick Larsen was substituted as class representative on March 6, 2023. Dkt. 216. The Court will refer to Plaintiff throughout this order as "Larsen" or "Plaintiff" for clarity.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' PARTIAL MOTION TO DISMISS THIRD AMENDED COMPLAINT - 2

complaint. Dkt. 269. On June 11, 2024, the Court granted Larsen's summary judgment motion in part, finding H5G liable to the Damages Class for violating the RMLGA and CPA. Dkt. 408 at 8–19. Because genuine factual disputes remained on damages owed, the Court ordered a jury trial to determine the amount of damages. *Id.* at 19–23. The Court also denied H5G's summary judgment motion on Larsen's unjust enrichment claim. *Id.* at 23–24.

On October 1, 2022, before the summary judgment ruling but after the Class was certified, H5G transferred all assets related to its social casino games to H5E. *See* Dkt. 285 at 1; Dkt. 250 at 4. Upon learning of the asset transfer, the Court granted Larsen's motion to add H5E as a defendant in its Second Amended Complaint ("SAC") and to conduct supplemental discovery into H5E's liability to Larsen and the Class. Dkt. 285. Following supplemental discovery, the parties cross-moved for summary judgment. Dkt. 426, 435.

On December 12, 2024, the Court ruled that Larsen lacked standing to sue H5E for alleged injuries to the Class after October 1, 2022 because he did not play or purchase virtual coins from High 5 Casino or High 5 Vegas once H5E operated the games. Dkt. 514 at 16. On the same day, the Court bifurcated "new allegations" in Larsen's proposed Third Amended Complaint ("TAC") regarding (1) H5E's alter ego liability for pre-October 2022 transactions, and (2) a Uniform Voidable Transactions Act ("UVTA") claim against H5G and H5E. Dkt. 515 at 15. The Court stayed resolution of these two claims until after the damages trial. *Id.* at 16. In a separate order, the Court gave Defendants until February 28, 2025 to answer or otherwise respond to the TAC. Dkt. 530.

Leading up to the February 3, 2025 jury trial, the parties engaged in pretrial motions practice. On January 13, 2025, Larsen submitted his trial brief. Dkt. 538. The trial brief reviewed the Court's prior orders on his RMLGA and CPA claims, previewed its positions on actual and enhanced damages under the CPA for the upcoming trial, and outlined "Other Issues" in the

case, including the two bifurcated claims that would not be resolved at trial. *Id.* at 11, 12–13 ("[T]he Court granted Plaintiff leave to amend his complaint to add alter ego allegations and a Uniform Voidable Transfer Act claim. . . . The Court bifurcated these issues from the upcoming damages trial."). Larsen did not reference his unjust enrichment claim against H5G in the trial brief. *See id.* Then on January 29, 2025, the Court signed and adopted the parties' pretrial order. Dkt. 568. Like the trial brief, there is no mention of Larsen's unjust enrichment claim. *See id.* Similarly, the unjust enrichment claim was not mentioned at the pretrial conference, *see* Dkt. 565, or in Larsen's proposed jury instructions or verdict form. Dkt. 541, 542. And, at the close of H5G's case at trial, Larsen did not include the unjust enrichment claim in his Federal Rule of Civil Procedure 50(a) motion for judgment as a matter of law. Dkt. 600.

After a weeklong trial in February 2025, the jury awarded Larsen, as named Plaintiff, $7,470.50 in actual damages and $4,183.48 in enhanced damages. Dkt. 609 at 1–2. The jury also awarded the Class $17,742,855.64 in actual damages and $7,185,856.53 in enhanced damages. *Id.* The Court then invited briefing on how to apply the CPA's statutory cap to the enhanced damages award before entering judgment on the jury's verdict. *See* Dkt. 608. On June 11, 2025, the Court denied H5G's motion to vacate the enhanced damages award or apply the statutory cap. Dkt. 628. The Court entered judgment on the jury's verdict under Rule 54(b). Dkt. 629.

On February 28, 2025, Defendants moved the Court to partially dismiss the remaining claims in Larsen's Third Amended Complaint. Dkt. 613. Larsen responded on March 24, 2025, Dkt. 618,[2] and H5G replied on March 28, 2025, Dkt. 619. Larsen then filed a reply on March 31, 2025. Dkt. 621. The motion is fully briefed and ripe for review.

---

[2] Larsen's response was one court day late "due to an inadvertent calendaring error[.]" Dkt. 621 at 1–2; *see* LCR 7(d)(4). The Court declines to strike Larsen's response as untimely filed, *see* Dkt. 619 at 3–4, because there is no indication the delay was made in bad faith or that

### III.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Rule 12(b)(6) motions may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation omitted). To survive a Rule 12(b)(6) motion, the complaint "does not need detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles,* 250 F.3d 668, 689 (9th Cir. 2001) (citation modified). However, the Court "may take notice of matters of public record without converting the motion to dismiss into a motion for summary judgment." *United States v. Washington*, 20 F. Supp. 3d 777, 815–16 (W.D. Wash. 2004) (citing *Lee*, 250 F.3d at 689). This includes taking "judicial notice of [the Court's] own records[.]" *Id.* at 816 (first citing Fed. R. Evid. 201(c); then citing *Chandler v. United States,* 378 F.2d 906, 909 (9th Cir.1967)).

---

Defendants suffered any prejudice as a result. *See Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1260 (9th Cir. 2010) (holding district court erred in denying request for extension of time and motion to accept late-filed opposition because "the record is devoid of any indication either that . . .  counsel acted in bad faith or that an extension of time would prejudice defendants").

1

2

### IV.    DISCUSSION

**A.    The Court dismissed Larsen's unjust enrichment claim against H5E in its prior order.**

The parties agree that the Court dismissed all of Larsen's direct liability claims against H5E for lack of standing. Dkt. 618 at 6; Dkt. 619 at 4; *see* Dkt. 514 at 16 ("Because Larsen did not play or purchase virtual coins from High 5 Casino or High 5 Vegas when H5E owned and operated the games, he does not have standing to sue H5E for alleged injuries to the Class after October 1, 2022."). For avoidance of doubt, the Court clarifies that its dismissal of Larsen's direct claims against H5E for lack of standing included his unjust enrichment claim against H5E. *See id.* Accordingly, the Court DENIES H5E's motion to dismiss the unjust enrichment claim against H5E as moot.

**B.    Larsen abandoned his unjust enrichment claim against H5G.**

Defendants argue that Larsen abandoned his direct claim of unjust enrichment against H5G when he failed to pursue it—or even mention it—at the February 2025 jury trial, and that the claim should therefore be dismissed. Dkt. 613 at 8–9; Dkt. 619 at 4–6. Larsen makes two counterarguments. Procedurally, Larsen contends that Defendants cannot properly raise an abandonment theory based on his litigation conduct because a motion to dismiss is "limited to Plaintiff's allegations in the Third Amended Complaint." Dkt. 618 at 8. Substantively, Larsen asserts that because the February 2025 jury trial was limited to damages and the Court "bifurcated Plaintiff's remaining claims for later determination," Larsen's actions cannot be construed as abandoning the unjust enrichment claim. *Id.* at 9. He also points out that as a claim in equity, unjust enrichment could not have been tried by the jury so failing to raise it at trial also does not show abandonment.

1     The Court finds neither of Larsen's counterarguments persuasive and agrees with

2  Defendants that he abandoned his unjust enrichment claim against H5G.

3     First, the Court can properly consider Larsen's litigation conduct regarding the unjust

4  enrichment claim in a motion to dismiss. In the Ninth Circuit, a court may "take notice of matters

5  of public record," including "prior rulings" and the judicial record in its own case, "without

6  converting the motion to dismiss into one for summary judgment." *Washington*, 20 F. Supp. 3d

7  at 815–16 (citations omitted). Here, Defendants base their argument that Larsen abandoned the

8  unjust enrichment claim against H5G on his failure to raise the issue in any pretrial matter

9  (including in the pretrial order or trial brief and at the pretrial conference), during the trial itself,

10  and in any post-trial motions. Dkt. 613 at 5–6, 8–9. Because "a federal district court can take

11  judicial notice of its own records," *Chandler,* 378 F.2d at 909 (citing cases), the Court may

12  evaluate Defendants' abandonment argument on the merits. *See Washington*, 20 F. Supp. 3d at

13  815–16.

14     Second, Larsen abandoned his unjust enrichment claim when he had multiple

15  opportunities to raise the claim before, during, and after trial and failed to do so. "A party

16  abandons an issue when it has a full and fair opportunity to ventilate its views with respect to an

17  issue and instead chooses a position that removes the issue from the case." *BankAmerica Pension

18  Plan v. McMath*, 206 F.3d 821, 826 (9th Cir. 2000); *see also United States v. Osborne,* No. 20-

19  10404, 2022 WL 264555, at *1 (9th Cir. Jan. 28, 2022) ("A party can abandon an argument in

20  the district court by failing to pursue it.") (citing cases).

21     By failing to include his unjust enrichment claim in the pretrial order, Larsen "cho[se] a

22  position that remove[d] the issue from the case." *See McMath*, 206 F.3d at 826. Under Rule

23  16(d), a pretrial order "controls the course of the action unless the court modifies it." Fed. R. Civ.

24  P. 16(d). A pretrial order "has the effect of amending the pleadings." *In re Hunt*, 238 F.3d 1098,

1101 (9th Cir. 2001) (quoting *999 v. C.I.T. Corp.,* 776 F.2d 866, 871 n.2 (9th Cir. 1985)). The Ninth Circuit has held that a pretrial order "should be liberally construed to permit any issues at trial that are embraced within its language." *DP Aviation v. Smiths Indus. Aerospace & Def. Sys. Ltd.*, 268 F.3d 829, 841 (9th Cir. 2001) (citations omitted). "However, particular evidence or theories which are not at least implicitly included in the order are barred unless the order is first modified to prevent manifest injustice." *Id.* (citation modified).

Larsen's unjust enrichment claim is neither explicitly nor "implicitly included" in the pretrial order. *See id.* The pretrial order, which this Court signed and adopted, states in its "Claims and Defenses" section that Larsen "will pursue at trial the following claims," and lists his RMLGA and CPA claims. Dkt. 568 at 1. Not listed in that section, or in any other part of the pretrial order, is the unjust enrichment claim. *See generally id.*

Larsen argues that the claim's absence in pretrial matters, including in the pretrial order, merely reflects that the jury trial was limited to damages and that "other liability questions [were] bifurcated and pending for later determination[.]" Dkt. 618 at 9. But Plaintiff nevertheless discussed the bifurcated claims—which would not be part of the upcoming trial—in his trial brief. Dkt. 538 at 12–13. And in discussing these claims, he only referenced that the new allegations in the Third Amended Complaint were bifurcated and stayed. *Id.* ("[T]he Court granted Plaintiff leave to amend his complaint to add alter ego allegations and a Uniform Voidable Transfer Act claim. . . . The Court bifurcated these issues from the upcoming damages trial."). Like the pretrial order, Larsen suggested no procedure at or during trial to resolve the unjust enrichment claim, let alone mention that it was still an outstanding issue. *See generally id.*

Nor is Plaintiff's argument that he did not abandon his equitable claim because a jury trial does not represent a "full and fair opportunity" to try the issue persuasive. *See* Dkt. 618 at 9–10 (quoting *McMath*, 206 F.3d at 826). The Ninth Circuit recently considered a party's

abandonment of equitable claims by not raising them at a jury trial. In *G.P.P., Inc. v. Guardian Prot. Prods., Inc.,* the Ninth Circuit reviewed a district court's determination that the plaintiff abandoned five equitable claims when it failed to include any reference to them at trial:

> GIS abandoned the claims in question by failing to proceed with them during the trial. The claims were all equitable in nature[.] . . . However, by excluding all references to these issues in its proposed jury instructions and verdict form, GIS declined to submit these claims to the jury for an advisory ruling. Further, following trial, GIS neglected to submit the claims to the judge for a post-trial equitable ruling. . . . Even after trial, when its abandonment of the claims was solidified, GIS continued to advocate for a favorable outcome [which] . . . [t]he district court rejected . . . and concluded that dismissal with prejudice was appropriate.

126 F.4th 1367, 1381 (9th Cir. 2025). Although the question presented on appeal was whether the plaintiff's abandonment of the claims also constituted "voluntary dismissal" under the state statute at issue, the Ninth Circuit did not dispute the district court's abandonment finding. *See id.* at 1383 ("GIS's voluntary abandonment of its claims here did not operate as a voluntary dismissal for purposes of [the statute][.]").

Like the plaintiff in *G.P.P.*, Larsen "abandoned the claim[] in question by failing to proceed with [it] during the trial." *See id.* at 1381. In addition to "excluding all references to [unjust enrichment] in [his] proposed jury instructions and verdict form" that might be used for an advisory ruling, *see id.*, Larsen also excluded any reference to the unjust enrichment claim in the pretrial order, trial brief, or during the pretrial conference. *See* Dkt. 541; Dkt. 542; Dkt. 568; Dkt. 565. Similarly, once H5G rested its case at trial, Larsen's 50(a) motion included no reference to the unjust enrichment claim. Dkt. 600. Finally, while Larsen now "advocate[s] for a favorable outcome" on the viability of his unjust enrichment claim against H5G, he did not "submit the claim[] to the [Court] for a post-trial equitable ruling" or even raise the issue as one that required resolution post-trial until Defendants' motion to dismiss. *See G.P.P.*, 126 F.4th at 1381; Dkt. 618.

Because the Court bifurcated and stayed only the new allegations against Defendants, Dkt. 515 at 15, and Larsen had a "full and fair opportunity to ventilate [his] views" on the unjust enrichment claim before, during, and after the February 2025 trial, the Court deems that he "remove[d] the issue from the case." *See McMath*, 206 F.3d at 826 (citation omitted). Accordingly, Defendants' motion to dismiss Larsen's unjust enrichment claim, Dkt. 613, against H5G is GRANTED. Plaintiff's unjust enrichment claim against H5G is dismissed with prejudice. *See G.P.P.*, 126 F.4th at 1381; *see also Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1094 (9th Cir. 2011) ("A plaintiff may voluntarily abandon a claim even though his decision may affect the jurisdiction of a federal court; after all, the claim he abandons—once dismissed with prejudice—is the price he pays."); *T.B. by & through Brenneise v. San Diego Unified Sch. Dist.*, No. 08-CV-28-MMA (WMC), 2012 WL 12953527, at *3 (S.D. Cal. July 23, 2012) (dismissing party's abandoned claims with prejudice when "[t]he parties had a full and fair opportunity to litigate all their claims" and dismissal with prejudice "will put to rest this lengthy and contentious litigation") (citations omitted).

## V.    CONCLUSION

For the reasons described above, the Court GRANTS in part and DENIES in part Defendants' Partial Motion to Dismiss Plaintiff's Third Amended Complaint. Dkt. 613. Having already dismissed Larsen's unjust enrichment claim against H5E for lack of standing in the Court's prior Order, Dkt. 514, Defendants' motion to dismiss the unjust enrichment claim against H5E is DENIED as moot. Because the Court finds Larsen abandoned his unjust enrichment claim against H5G, the motion to dismiss the unjust enrichment claim against H5G is GRANTED. Larsen's unjust enrichment claim against H5G is DISMISSED WITH PREJUDICE.

Dated this 27th day of June, 2025.

Tiffany M. Cartwright
United States District Judge